**EXHIBIT "G"**

August 6, 2013                                       USPS certified mail # 7 3/1 0770 0000 5740 9879

IVAYLO DODEV
6312 S 161ST WAY
GILBERT, AZ 85298

RE: Creditor Account #0014052088

**On July 2, 2013, I directed a letter to you demanding that you specifically provide lawful bona fide proof of your alleged claim in this instant matter and to present this proof by lawfully designated means. (See attached letter).**

**This letter is lawful notification, NOTICE TO SUE, to SELECT PORTFOLIO SERVING, INC., (DEBT COLLECTOR). Please be advised you have failed to respond properly to the letter you received on July 2, 2013 by USPS, certified mail # 9114901075742388810503**

SELECT PORTFOLIO SERVICING, INC. has NOT proven the following as requested on July 2, 2013

1.  A copy of the contract that binds myself, Ivaylo Dodev, and DEBT COLLECTOR
2.  PROOF OF CLAIM via certified, notarized, specific, and relevant documents that DEBT COLLECTOR:
    a.  Has any contract or agreement which lawfully compels Ivaylo Dodev to accept and/or respond to any communications from DEBT COLLECTOR
    b.  Is a lawful and valid party of interest in this matter pursuant to Federal Debt Collection Act, Civil Rules of Procedure in the State of Arizona (See also Federal Rules of Civil Procedure 17(a))
    c.  Is not an unrelated third party
    d.  Is not an unrelated third party debt collector
    e.  Did not purchase this alleged debt for an agreed upon cost from an alleged other COMPANY, CORPORATION, or Party
    f.  Is not acting on its own behalf and/or interests in this instant matter.

Therefore, you have acquiesced and agreed that you have no legal and lawful authority to contact me regarding this private and personal matter. If you continue in your fraudulent efforts to collect a debt that is not owed to you, I will take all steps to insure that my rights are not further violated, including a timely lawsuit against you if you continue with this course of action.

Do not attempt to contact me via phone as I cannot validate or verify the person on the phone so I will only respond to written correspondence addressed to: Ivaylo Dodev, 6312 South 161st Way, Gilbert, Arizona. If you disagree with anything in this letter, then rebut that with which you disagree, in writing, with particularity, to me, within 10 days of this letter's date, and support your disagreement with evidence, fact and valid Law. Your failure to respond, as stipulated, is your agreement with and admission to the fact that everything in this letter is true, correct, legal, lawful, and is your irrevocable agreement attesting to this, fully binding upon you, in any court in America, without your protest or objection or that of those who represent you.

All Rights Reserved,

_Ivaylo Dodev_ (signature)

Ivaylo Dodev

STATE OF ARIZONA                    )
                                    ) SS
COUNTY OF MARICOPA                  )

Subscribed and sworn to (or affirmed) before me on this ＿ day of August —, 2013 by Ivaylo Dodev, proved to me on the basis of satisfactory evidence to be the man who appeared before me.

Executed by my own free will

_____ (Seal)

Notary Public

Lizette Cornejo
Notary Public
Maricopa County, Arizona
My Comm. Expires 09-30-15

June 2, 2013

IVAYLO DODEV
6312 S 161ST WAY
GILBERT, AZ 85298

RE: Creditor Account #0014052088

This letter is lawful notification to SELECT PORTFOLIO SERVING, INC., (DEBT COLLECTOR), as the first step of due process of law pursuant to **Sec. 806 of Fair Debt Collection Practices Act,** the **Bill of Rights** and the **Federal Constitution**, in particular Amendments 1, 4, 5, 7, and 14. Please take Notice that Ivayo Dodev **requires <u>BONA FIDE PROOF  (in good faith and without deceit) that your claim is lawful and valid.</u>**

Please take lawful notice that in order to effect this *<u>BONA FIDE PROOF</u>*, **Error! Reference source not found.**,via any legally authorized representative, is lawfully required and hereby demanded to respond point by point in Truth, Fact, and Evidence to each and every item set forth in this correspondence before Ivaylo Dodev or his Authorized Representative can make an offer to settle DEBT COLLECTOR alleged claim in this matter.

Please provide the following:

1. A copy of the contract that binds myself, Ivaylo Dodev, and DEBT COLLECTOR
2. PROOF OF CLAIM via certified, notarized, specific, and relevant documents that DEBT COLLECTOR:

    a. Has any contract or agreement which lawfully compels Ivaylo Dodev to accept and/or respond to any communications from DEBT COLLECTOR
    b. Is a lawful and valid party of interest in this matter pursuant to Federal Debt Collection Act, Civil Rules of Procedure in the State of Arizona (See also Federal Rules of Civil Procedure 17(a)).
    c. Is not an unrelated third party
    d. Is not an unrelated third party debt collector
    e. Did not purchase this alleged debt for an agreed upon cost from an alleged other COMPANY, CORPORATION, or Party
    f. Is not acting on its own behalf and/or interests in this instant matter.

Please have your legally authorized representative respond via signed affidavit, under pain and penalty of perjury, and enclose copies of all relevant documents that demonstrate BONA FIDE PROOF OF YOUR CLAIM within 30 (thirty) days of receipt of this letter, via certified mail.  TIME IS OF THE ESSENCE.

Your failure to respond in truth, fact, and evidence, to each of the above items, point by point as stipulated, is SELECT PORTFOLIO SERVING, INC.'S, (DEBT COLLECTOR), admission to the fact DEBT COLLECTOR has no valid claim in this instant matter and DEBT COLLECTOR, and its agents or principals, are attempting to take my property through theft by deception or larceny by trickery; both of which are felonies.  Your silence is your tacit admission to the fact that you have no valid claim in this instant matter.

All Rights Reserved,

Ivaylo Dodev



**UNITED STATES**
**POSTAL SERVICE.**

Date: August 12, 2013

Ivaylo Dodev:

The following is in response to your August 12, 2013 request for delivery information on your Signature Confirmation™ item number 23110770000057409879.  The delivery record shows that this item was delivered on August 8, 2013 at 10:06 am in SALT LAKE CITY, UT 84115 to W DANIELS. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,
United States Postal Service

<u>**WHEN RECORDED, MAIL TO:**</u>

IVAYLO DODEV
6312 S. 161st Way
GILBERT, AZ 85298

SENT VIA CERTIFIED MAIL 2308325000030152349

AUGUST 30, 2011

**BANK OF AMERICA, N.A.**
400 National Way
Simi Valley, CA 93065

**Bank of New York Mellon, N.A.**
101 Barclay St. 4W
New York, NY 10286

**RECONTRUST COMPANY, N.A.**
2380 Performance Dr. TX2-985-07-03
Richardson, TX 75082

**MERS**
1818 Library Street, suite 300
Reston, VA 20190

**FIRST MAGNUS FINANCIAL CORPORATION**
603 N. Wilmot Rd
Tucson, AZ 85711

**BANK OF NEW YORK**
400 National Way
Simi Valley, CA 93065

RE: Account No.: LOAN # 6531180433 and 147338494
IVAYLO DODEV, 6312 S. 161st Way, Gilbert, AZ 85298

ATTN: LEGAL

<u>**NOTICE OF COMPLAINT**</u>

To: BANK OF AMERICA, N.A., NO TRUSTEE ON DEED OF TRUST, FIRST MAGNUS FINANCIAL CORPORATION, MERS, BANK OF NEW YORK, RECONTRUST COMPANY, N.A. and others:

Today, August 30, 2011, I am filing a complaint with you, the Comptroller of the Currency and the Arizona Attorney General and the Arizona Department of Financial Institutions, the Arizona Secretary of State, the Maricopa County Attorney and Recorder among other investigative institutions. You denied my previous Complaints and ignored my demands. The Attorney General of Arizona has already responded with an investigation to similar complaints filed by others, and filed a Complaint against Bank of America based on fraud. My case is similar to the numerous cases which led to this ruling against Bank of America. Further, the Supreme Court of Massachusetts ruled against US Bank National Association for fraudulent assignments. Their complaint largely identifies the complaints I have with you. Again, I submit these demands and statements for your review and action.

There are many issues that I have discovered which I feel are illegal and/or incorrect, but I will only discuss a few. A few of my concerns in reference to my promissory note are:
  a) Unless an asset is transferred into a lifetime trust, the asset does not become trust property. Was there a legal transfer into this trust that claims to be the beneficiary of my note?
  b) The assignment of a mortgage without transfer of the underlying promissory note is a nullity. I understand that the Deed of Trust and promissory note were separated at the inception of the loan.

Page 15 of 75

ANY ATTEMPT TO FILE A COPY OF THE NOTE AS THE ORIGINAL NOTE SHALL BE CONSIDERED A CRIMINAL ACT, PURSUANT TO ARS. 39-161.

DO NOT ATTEMPT to reestablish the note as this would be a fraud upon the court pursuant to Arizona law. Pursuant to Arizona Rules of Civil Procedure Rule 17 and Federal rules of Civil procedure rule 17.

The NOTE was purposely destroyed and was not lost and as such any claim that said note was lost would be perjury.

This and/or any communication may be recorded and used as evidence in any court in accordance with Rule 902.

There is substantially more that is available to cite so I will stop here. I believe the point about lack of standing has been made. Again, if I am wrong please feel free to show it by providing verifiable Proof Of Claim. [*BLACK'S LAW DICTIONARY: VERIFICATION. Confirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition.*]

There is a purported contract under which BANK OF AMERICA, N.A. claims I must perform. There are serious discrepancies that have been uncovered in the preliminary audit of the transaction. BANK OF AMERICA, N.A. as the purported agent and un-named parties [John Does 1 to 1000] have a clearly defined duty under the law of contracts to provide each and every one of the five essential components that are required to establish a lawful contract. With at least three of the essential components missing from the contract under discussion, BANK OF AMERICA, N.A. cannot enforce or collect on this unconscionable contract... check any edition of Black's Law Dictionary under "contract". Under the definition of Fraud in the factum: "misrepresentation as to the nature of a writing (contract) that a person signs with neither knowledge nor reasonable opportunity to obtain knowledge of its character or essential terms". The presence of any type of fraud in a contract "vitiates" the contract: cancels it from its inception and there is no statute of limitations on discovering fraud. I invoke my right to equal protection under the law and to "seek a remedy for the breach of those duties" (Contract as defined in Black's Law Dictionary 6th Edition).

Proof of Claim is hereby **demanded** in order to validate BANK OF AMERICA, N.A.' standing as Real Party In Interest and/or Holder In Due Course of the Note and Mortgage, proving lawful authority to have commenced the foreclosure action on my home, and BANK OF AMERICA, N.A.' authority as agent, or any other party that may choose to reveal its identity, to act in its behalf in demanding and collecting payments from me. I herewith [again] demand that BANK OF AMERICA, N.A. produce for my inspection **all original documents** that I was entitled to at the closing of the refinance transaction on my home, to also include the 1003 application, the final HUD-1 Settlement, the Deed of Trust, all disclosures, the appraisal, the Note, the allonge to the Note, and the agency agreement between BANK OF AMERICA, N.A., and any other party that may choose to come forth. If any document cannot be produced, state the reason why it cannot be produced. These documents are needed to perform a full forensic fingerprint and signature analysis. I further **demand** the following documents if they are available: (If they are not available please state why they are not available)

1) The 2046 balance sheet as it relates to the original "loan" which is a mandatory filing pursuant to Title 12 U.S.C. 248 & 347

*(handwritten in left margin, rotated):* Proof of Claim delivered, 09/16/2011 to BofA *(illegible)*

2) The 1099 OID (Original Issued Document)
3) The S3 A registration statement
4) The 424 B-5 prospectus
5) The RC S & RC B call schedules.
6) The FAS 125, 133, 140, 5, and 95. [FASB (Financial Accounting Standards BANK OF AMERICA, N.A. rd) part of GAAP (Generally Accepted Accounting Standards)]
These documents will be needed as part of my forensic analysis on this loan in its entirety.

In the event a valid Proof of Claim in the form of what is asked for above cannot be produced within 10 days, BANK OF AMERICA, N.A. agrees that a Deed of Release and full Reconveyance to me is to be issued and filed in the office of the County Recorder. Failing the voluntary production of that above mentioned documentation or the issue of Deed of Release and Full Reconveyance shall be interpreted as an invitation to exercise my right to remedy through more formal proceedings where BANK OF AMERICA, N.A. and other parties named will be compelled to respond at a much greater monetary outlay, when an action for injunctive relief and quiet title, which is now being composed, is filed in the appropriate court. I would rather we settle this matter administratively, but if forced I will deliver-serve a filed copy of the Complaint, the action, memorandums of law, interrogatories, and request for admissions and Temporary Restraining Order. It is your choice, voluntary now or compelled explanation later.

While this letter is written in part for purposes of settlement and compromise, it is already a demand letter which can and will be used as necessary. It is therefore not a confidential communication protected under the rules of settlement disclosures and correspondence.

You have previously been presented with proper notices of deceptive lending practices in the closing on the above-referenced loans and lack of standing to prosecute a foreclosure. Within said notices was contained equitable resolution to this matter to be a set-off to the entire account. That is, settle with me by declaring the account paid as agreed and issuing a Deed of Full Reconveyance. This will avoid the time, expense, and damage awards should I decide to seek all remedy that I am entitled to through more formal proceedings.

Notwithstanding the above, BANK OF AMERICA, N.A. cannot state affirmatively that the borrower is or is not in default, the lender is in default of its obligations under applicable Federal and State laws, the lender at the closing, the servicing agent, and the named Beneficiary on the Deed of Trust are not the real parties in interest (i.e., they lack standing to proceed to judicial or non-judicial sale), the trustee and lender lack authority to proceed but have intentionally and problematically filed papers and posted notices as though the authority was present. See: A.R.S. § 39-161. Presentment of false instrument for filing; classification [a class 6 felony]

I HEREWITH DEMAND THE NAMES AND CONTACT INFORMATION ALONG WITH A DESCRIPTION OF THE SECURITY SOLD, THE ASSIGNMENT MADE, AGREEMENTS SIGNED, BETWEEN ALL OF THE MORTGAGE BROKERS, REAL ESTATE BROKERS, DEVELOPERS, APPRAISERS, MORTGAGE AGGREGATORS, INVESTMENT BANKERS, RETAIL OR OTHER SELLER OF SECURITIES AND THE INVESTORS WHO PURCHASE MORTGAGED THE SECURITIES.

Based upon information received from the experts in this case and based upon my own factual and legal investigation there appear to be claims in addition to the claims stated in prior correspondence, which claims based upon the following summary, are in most cases not

other professionals to forestall the loss, for which services demand is herewith made under the terms of the mortgage and all applicable Federal (TILA, RESPA, RICO) and State Law..

YOUR CONDUCT, IF YOU PROCEED, CONSTITUTES CRIMINAL THEFT AND CIVIL THEFT OF THE REAL PROPERTY SUBJECT TO THE MORTGAGE, NOTE AND PROCEEDINGS YOU HAVE POSTED AND FILED. Accordingly your position, in the absence of any authority to do so under law is invalid and illegal. DEMAND IS HEREWITH MADE THAT ALL EFFORTS AT FORECLOSURE, SALE, OR EVICTION BE STOPPED IMMEDIATELY.

Any further attempts at collection will result in further action taken by me for all remedies available in law and equity in both administrative proceedings, and judicial forums possessing competent jurisdiction, which will seek damages for unfair trade practices, treble damages under applicable law for RICO, FTC, consequential damages and refunds, attorney fees, court costs, and all other available remedies in law or equity. Stop any and all negative reporting to the credit bureaus.

It is an established fact that the problems such as the Assignment of Deed of Trust was not filed by BANK OF AMERICA, N.A./FIRST MAGNUS FINANCIAL CORPORATION. Stop all legal and/or foreclosure proceedings now. I presume that any forthcoming legal action will be postponed pending the amicable resolution of this loan. Please ONLY contact me via mail at the above address. Do not contact me telephonically.
Thank you very much for your time and assistance.

Sincerely,

IVAYLO DODEV
Loan Account No.: # LOAN # 6531180433 and 147338494

**CC: Attorney General of Arizona**
    **Securities and Exchange Commission**
    **Arizona Bar Association**
    **Arizona Department of Financial Institutions**
    **County Recorder**

**Federal Deposit Insurance Corporation**
**Comptroller of the Currency**
**Arizona Secretary of State**
**Federal Reserve**
**County Attorney**

**UNITED STATES POSTAL SERVICE**

SIGNATURE CONFIRMATION NUMBER:

2308 3250 0000 3015 2349

Postage and Signature Confirmation fees must be paid before mailing.

(Please Print Clearly)

93065

**POSTAL CUSTOMER:**
Keep this receipt. For Inquiries
Access internet web site at
*www.usps.com* ®
or call 1-800-222-1811

☒ Priority Mail™ Service
☐ First-Class Mail® parcel
☐ Package Services parcel

Date: 09/16/2011

IVAYLO DODEV:

The following is in response to your 09/16/2011 request for delivery information on your Signature Confirmation(TM) item number 2308 3250 0000 3015 2349. The delivery record shows that this item was delivered on 09/01/2011 at 08:47 AM in SIMI VALLEY, CA 93065 to N HERNANDEZ. The scanned image of the recipient information is provided below.

Signature of Recipient:

NELSON A. HERNANDEZ

Address of Recipient:        400 Countrywide

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

**EXHIBIT "H"**

**Offer to Pay the Entire Amount Due**

# Offer Number I

**Sent to all Defendants**

**via Certified Mail with Return Receipt**

**Ivaylo T Dodev**
**c/o 6312 S 161st Way,**
**Gilbert Arizona 85298**

# NOTICE OF DEFAULT AND OPPORTUNITY TO CURE
# WITH NEW GOOD-FAITH OFFER TO PAY
# THE TOTAL AMOUNT DUE

January 14, 2013

To:    All Related Lenders, Servicers and Trustees

Matt Hollingsworth, CEO of Select Portfolio Servicing, Inc.
3815 South West Temple
Salt Lake City, UT 84115

RE: Loan/Account No. 0014052088, for 6312 S 161st Way, Gilbert, AZ 85298

**NOTICE TO PRINCIPAL IS NOTICE TO AGENT.**
**NOTICE TO AGENT IS NOTICE TO PRINCIPAL.**

To all related lenders, servicers, and trustees:

I, the undersigned, Ivaylo T Dodev, some time ago made a good-faith OFFER TO PAY THE TOTAL AMOUNT DUE in the form of an Electronic Funds Transfer (EFT) Instrument. It is well documented that your officers, agents, or employees failed, refused, or neglected to either accept it, or reject it, according to well-settled Uniform Commercial Code (UCC) and American Jurisprudence procedures.

Under the American laws of Presentment, I am hereby presenting you with my DUE PROCESS NOTICE OF DEFAULT AND OPPORTUNITY TO CURE.

Due to the large amount of cash involved, and the need for accuracy, this new Good-Faith OFFER TO PAY THE TOTAL AMOUNT DUE, is lawfully made with the reasonable condition of your Presentment to the undersigned, of an itemized and Verified PAYOFF STATEMENT, including any and all, principal, interest, taxes, insurance, late fees, penalties, escrow fees, and/or other charges actually due and payable on a future date set certain.

**OFFER TO PAY THE TOTAL AMOUNT DUE** – Ivaylo T Dodev

I also need the actual street address wherein I can bring the total amount of cash due, to exchange for my *original* Trust Deed or Mortgage and Promissory Note in order to lawfully complete and finalize this transaction.

If this final transaction is to be held at a third-party escrow company, I will also need to know their name, address, and phone number to be able to fulfill my part of the obligation in this good-faith final transaction.

I am also requesting that this material information be presented to me within a reasonable ten (10) days as **TIME IS OF THE ESSENCE**.

Sincerely,

Ivaylo T Dodev

COPY:
Brian T. Moynihan, CEO of Bank of America
Bank of America, Co0-000-00-00, 100 North Tyron Street, Charlotte, NC 28255-0001

Valerie Young, Customer Advocate, Office of the CEO and President
Bank of America, Co0-000-00-00, 100 North Tyron Street, Charlotte, NC 28255-0001

Payoff Department
Bank of America, Tx2-981-03-13, 7105 Corporate Drive, Plano, TX 75024

Michael J. Meehan
Blank Rome LLP, One Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998

Gerald Hassell, CEO and President of Bank of New York Mellon
Bank of New York Mellon, One Wall Street, New York, NY 10286

Candice Pitcher, Vice President of Compliance
3815 South West Temple, Salt Lake City, UT 84115

Comptroller of the Currency
Administrator of National Banks, Washington, DC 20219



**UNITED STATES**
**POSTAL SERVICE™**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 2133. The delivery record shows that this item was delivered on 01/16/2013 at 10:17 AM in SALT LAKE CITY, UT 84115 to W DANIELS. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



 **UNITED STATES POSTAL SERVICE**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 2126. The delivery record shows that this item was delivered on 01/17/2013 at 10:53 AM in NEW YORK, NY 10007 to F ROBINSON. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



 **UNITED STATES POSTAL SERVICE.**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 2096. The delivery record shows that this item was delivered on 01/16/2013 at 11:44 AM in CHARLOTTE, NC 28255 to M DURHAM. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



 **UNITED STATES POSTAL SERVICE**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 2140. The delivery record shows that this item was delivered on 01/16/2013 at 10:17 AM in SALT LAKE CITY, UT 84115 to W DANIELS. The scanned image of the recipient information is provided below.

Signature of Recipient:





Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



**UNITED STATES POSTAL SERVICE.**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 2102. The delivery record shows that this item was delivered on 01/16/2013 at 11:44 AM in CHARLOTTE, NC 28255 to M DURHAM. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service




## UNITED STATES
## POSTAL SERVICE.

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 2157. The delivery record shows that this item was delivered on 01/17/2013 at 08:55 AM in PHILADELPHIA, PA 19103 to M URICOECHEA. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



 **UNITED STATES POSTAL SERVICE**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 2119. The delivery record shows that this item was delivered on 01/17/2013 at 02:14 PM in PLANO, TX 75024 to S WHITMORE. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:

7105 Corporate

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



# Offer to Pay the Entire Amount Due

# Offer Number II

### Sent to all Defendants

## via Certified Mail with Return Receipt

**Ivaylo T Dodev**
c/o 6312 S 161st Way,
**Gilbert Arizona 85298**

# NEW NOTICE OF DEFAULT AND OPPORTUNITY TO CURE, WITH NEW GOOD-FAITH OFFER TO PAY THE TOTAL AMOUNT DUE

January 31, 2013

To:     All Related Lenders, Servicers and Trustees

**Matt Hollingsworth, CEO of Select Portfolio Servicing, Inc.**
**3815 South West Temple**
**Salt Lake City, UT 84115**

RE: Loan/Account No. 0014052088 AKA 147338494, for 6312 S 161st Way, Gilbert, AZ 85298, AKA 23410 S 161st way, Gilbert AZ 85297

### NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT
### NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL

To all related lenders, servicers, and trustees, c/o the President and CEO of Select Portfolio Servicing.:

I, the undersigned, Ivaylo T Dodev, hereby again, makes another good-faith OFFER TO PAY THE TOTAL AMOUNT DUE.

Under the American laws of Presentment, I am hereby presenting you with my DUE PROCESS NOTICE OF DEFAULT AND OPPORTUNITY TO CURE.

Due to the large amount of cash involved, and the need for accuracy, this new Good-Faith OFFER TO PAY THE TOTAL AMOUNT DUE, is lawfully made with the reasonable condition of your Presentment to the undersigned, of an itemized and Verified PAYOFF STATEMENT, including any and all, principal, interest, taxes, insurance, late fees, penalties, escrow fees, and/or other charges actually due and payable on a future date set certain.

Again, I also need the actual street address wherein I can bring the total amount of cash due, to exchange for my *original* Trust Deed or Mortgage and Promissory Note

**OFFER TO PAY THE TOTAL AMOUNT DUE – Ivaylo T Dodev**

in order to lawfully complete and finalize this transaction.

Again, if this final transaction is to be held at a third-party escrow company, I will also need to know their name, address, and phone number to be able to fulfill my part of the obligation in this good-faith final transaction.

Again, I am also requesting that this material information be presented to me within a reasonable ten (10) days as **TIME IS OF THE ESSENCE**.

Sincerely,

Ivaylo T Dodev

COPY:
Brian T. Moynihan, CEO of Bank of America
Bank of America, Co0-000-00-00,100 North Tyron Street, Charlotte, NC 28255-0001

Valerie Young, Customer Advocate, Office of the CEO and President
Bank of America, Co0-000-00-00, 100 North Tyron Street, Charlotte, NC 28255-0001

Payoff Department
Bank of America, Tx2-981-03-13, 7105 Corporate Drive, Plano, TX 75024

Michael J. Meehan/Blank Rome LLP
One Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998

Gerald Hassell, CEO and President of Bank of New York Mellon
Bank of New York Mellon, One Wall Street, New York, NY 10286

Candice Pitcher, Vice President of Compliance
3815 South West Temple, Salt Lake City, UT 84115

Comptroller of the Currency
Administrator of National Banks, Washington, DC 20219

**OFFER TO PAY THE TOTAL AMOUNT DUE** – Ivaylo T Dodev

 **UNITED STATES POSTAL SERVICE.**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3642. The delivery record shows that this item was delivered on 02/04/2013 at 08:09 AM in SALT LAKE CITY, UT 84115 to W DANIELS. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:    3811 S. West Temple

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

SIGNATURE CONFIRMATION NUMBER: 2311 0770 0000 4732 3642

Postage and Signature Confirmation fees must be paid before mailing.

(Please Print Clearly)
Hollingsworth

84115

HIGLEY AZ 85236 Postmark Here
JAN 31 2013

**POSTAL CUSTOMER:**
Keep this receipt. For inquiries:
Access internet web site at
*www.usps.com* ®
or call 1-800-222-1811

☐ Priority Mail™ Service
☐ First-Class Mail® parcel
☐ Package Services parcel

 **UNITED STATES POSTAL SERVICE.**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3666. The delivery record shows that this item was delivered on 02/05/2013 at 10:09 AM in PHILADELPHIA, PA 19103 to M URICOECHEA. The scanned image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service





**UNITED STATES POSTAL SERVICE**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3659. The delivery record shows that this item was delivered on 02/05/2013 at 08:03 AM in CHARLOTTE, NC 28255 to M DURHAM. The scanned image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



 **UNITED STATES POSTAL SERVICE**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3635. The delivery record shows that this item was delivered on 02/04/2013 at 08:09 AM in SALT LAKE CITY, UT 84115 to W DANIELS. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:    3813 S. West Temple

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



 **UNITED STATES POSTAL SERVICE**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3673. The delivery record shows that this item was delivered on 02/04/2013 at 06:05 AM in CHARLOTTE, NC 28255 to M DURHAM. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service





**UNITED STATES**
**POSTAL SERVICE**

Date: 02/10/2013

IVAYLO DODEV:

The following is in response to your 02/10/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3628. The delivery record shows that this item was delivered on 02/04/2013 at 10:58 AM in NEW YORK, NY 10007 to F ROBINSON. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



**Offer to Pay the Entire Amount Due**

# Offer Number III

**Sent to all Defendants**

**via Certified Mail with Return Receipt**

**Ivaylo T Dodev**
**c/o 6312 S 161st Way,**
**Gilbert Arizona 85298**

## NOTICE OF DEFAULT AND OPPORTUNITY TO CURE
## WITH NEW GOOD-FAITH OFFER TO PAY
## THE TOTAL AMOUNT DUE

February 19, 2013

To:    All Related Lenders, Servicers and Trustees

**Matt Hollingsworth, CEO of Select Portfolio Servicing, Inc.**
**3815 South West Temple**
**Salt Lake City, UT 84115**

RE: Loan/Account No. 0014052088 for 6312 S 161st Way, Gilbert, AZ 85298, AKA 23410 S 161st way, Gilbert AZ 85297

### NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT
### NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL

To all related lenders, servicers, and trustees, c/o SELECT PORTFOLIO SERVICING, INC.

I, the undersigned, Ivaylo T Dodev, hereby again, makes another good-faith OFFER TO PAY THE TOTAL AMOUNT DUE.

Under the American laws of Presentment, I am hereby presenting you with my DUE PROCESS NOTICE OF DEFAULT AND OPPORTUNITY TO CURE.

Due to the large amount of cash involved, and the need for accuracy, this new Good-Faith OFFER TO PAY THE TOTAL AMOUNT DUE, is lawfully made with the reasonable condition of your Presentment to the undersigned, of an itemized and Verified PAYOFF STATEMENT, including any and all, principal, interest, taxes, insurance, late fees, penalties, escrow fees, and/or other charges actually due and payable on a future date set certain.

Again, I also sincerely believe that I have a right to see court admissible evidence that would prove that all Trust Deed and Promissory Note transfers from the original

**OFFER TO PAY THE TOTAL AMOUNT DUE** – Ivaylo T Dodev

lender to the last purchaser were lawfully endorsed as required by law, rendering the last purchaser as the "holder in due course," and not merely a "holder," and thus has lawful standing to foreclose.

Again, I also need the actual street address wherein I can bring the total amount of cash due, to exchange for my *original* Trust Deed or Mortgage and Promissory Note in order to lawfully complete and finalize this transaction.

Again, if this final transaction is to be held at a third-party escrow company, I will also need to know their name, address, and phone number to be able to fulfill my part of the obligation in this good-faith final transaction.

Again, I am also requesting that this material information be presented to me within a reasonable ten (10) days as **TIME IS OF THE ESSENCE**.

Sincerely,

Ivaylo T Dodev

COPY:
Brian T. Moynihan, CEO of Bank of America
Bank of America, Co0-000-00-00, 100 North Tyron Street, Charlotte, NC 28255-0001

Valerie Young, Customer Advocate, Office of the CEO and President
Bank of America, Co0-000-00-00, 100 North Tyron Street, Charlotte, NC 28255-0001

Payoff Department
Bank of America, Tx2-981-03-13, 7105 Corporate Drive, Plano, TX 75024

Michael J. Meehan
Blank Rome LLP, One Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998

Gerald Hassell, CEO and President of Bank of New York Mellon
Bank of New York Mellon, One Wall Street, New York, NY  10286

KaJay Williams, Consumer Ombudsman Specialist
Candice Pitcher, Vice President of Compliance
3815 South West Temple, Salt Lake City, UT 84115

Comptroller of the Currency
Administrator of National Banks, Washington, DC 20219

**OFFER TO PAY THE TOTAL AMOUNT DUE** – Ivaylo T Dodev

 **UNITED STATES**
**POSTAL SERVICE.**

Date: 03/04/2013

IVAYLO DODEV:

The following is in response to your 03/04/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3833. The delivery record shows that this item was delivered on 02/21/2013 at 10:19 AM in SALT LAKE CITY, UT 84115 to W DANIELS. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service


**UNITED STATES**
**POSTAL SERVICE**␊

Date: 03/04/2013

IVAYLO DODEV:

The following is in response to your 03/04/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3871. The delivery record shows that this item was delivered on 02/22/2013 at 10:35 AM in NEW YORK, NY 10007 to F ROBINSON. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service





**UNITED STATES**
**POSTAL SERVICE.**

Date: 03/04/2013

IVAYLO DODEV:

The following is in response to your 03/04/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3840. The delivery record shows that this item was delivered on 02/22/2013 at 09:00 AM in PHILADELPHIA, PA 19103 to M URICOECHEA. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service


**UNITED STATES POSTAL SERVICE.**

Date: 03/04/2013

IVAYLO DODEV:

The following is in response to your 03/04/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3864. The delivery record shows that this item was delivered on 02/25/2013 at 07:09 AM in CHARLOTTE, NC 28255 to M DURHAM. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



 **UNITED STATES POSTAL SERVICE.**

Date: 03/04/2013

IVAYLO DODEV:

The following is in response to your 03/04/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3857. The delivery record shows that this item was delivered on 02/25/2013 at 07:09 AM in CHARLOTTE, NC 28255 to M DURHAM. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



 **UNITED STATES POSTAL SERVICE.**

Date: 03/04/2013

IVAYLO DODEV:

The following is in response to your 03/04/2013 request for delivery information on your Signature Confirmation(TM) item number 2311 0770 0000 4732 3826. The delivery record shows that this item was delivered on 02/21/2013 at 10:19 AM in SALT LAKE CITY, UT 84115 to W DANIELS. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

**Offer to Pay the Entire Amount Due**

# Offer Number IV

**Sent to all Defendants**

**via Certified Mail with Return Receipt**

**Ivaylo T Dodev**
c/o 6312 S 161st Way,
Gilbert Arizona 85298

## NOTICE OF DEFAULT AND OPPORTUNITY TO CURE
## WITH NEW GOOD-FAITH OFFER TO PAY
## THE TOTAL AMOUNT DUE

March 5, 2013

To:      All Related Lenders, Servicers and Trustees

Matt Hollingsworth, CEO of Select Portfolio Servicing, Inc.
3815 South West Temple
Salt Lake City, UT 84115

RE: Loan/Account No. 0014052088, AKA 147338494, for 6312 S 161st Way, Gilbert, AZ 85298, AKA 23410 S 161st way, Gilbert AZ 85297

**NOTICE TO PRINCIPAL IS NOTICE TO AGENT.**
**NOTICE TO AGENT IS NOTICE TO PRINCIPAL.**

To all related lenders, servicers and trustees, c/o Select Portfolio Servicing, Inc.

I, the undersigned, Ivaylo T. Dodev, hereby again, makes yet another good-faith OFFER TO PAY THE TOTAL AMOUNT DUE.

Under the American laws of Presentment, I am hereby presenting you with my DUE PROCESS NOTICE OF DEFAULT AND OPPORTUNITY TO CURE.

Due to the large amount of cash involved, and the need for accuracy, this new Good-Faith OFFER TO PAY THE TOTAL AMOUNT DUE, is lawfully made with the reasonable condition of your Presentment to the undersigned, of an itemized and Verified PAYOFF STATEMENT, including any and all, principal, interest, taxes, insurance, late fees, penalties, escrow fees, and/or other charges actually due and payable on a future date set certain.

Again, I also sincerely believe that I have a right to see court admissible evidence that would prove that all Trust Deed or Mortgage, and Promissory Note transfers from the original lender to the last purchaser were lawfully endorsed as required by law,

rendering the last purchaser as the "holder in due course," and not merely a "holder," and thus has lawful standing to foreclose.

I also sincerely believe that I am entitled to see admissible evidence that will prove all document endorsements were not signed by people who were actually known as Robo-signers.

Again, I also need the actual street address wherein I can bring the total amount of cash due, to exchange for my *original* Trust Deed or Mortgage and Promissory Note in order to lawfully complete and finalize this transaction.

Again, if this final transaction is to be held at a third-party escrow company, I will also need to know their name, address, and phone number to be able to fulfill my part of the obligation in this good-faith final transaction.

Again, I am also requesting that this material information be presented to me within a reasonable ten (10) days as **TIME IS OF THE ESSENCE**.


Sincerely,

_Ivaylo Dodev_ (signature)

Ivaylo T. Dodev


COPY:

Brian T. Moynihan, CEO of Bank of America
Bank of America, Co0-000-00-00,100 North Tyron Street, Charlotte, NC 28255-0001

Dominic Ware, Customer Advocate, Office of the CEO and President
Valerie Young, Customer Advocate, Office of the CEO and President
Bank of America, Co0-000-00-00, 100 North Tyron Street, Charlotte, NC 28255-0001

Payoff Department
Bank of America, Tx2-981-03-13, 7105 Corporate Drive, Plano, TX 75024

Louise Bowes, Michael J. Meehan, Courtney Magnarella
Blank Rome LLP, One Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998


**OFFER TO PAY THE TOTAL AMOUNT DUE** – Ivaylo T Dodev

Gerald Hassell, CEO and President of Bank of New York Mellon
Bank of New York Mellon, One Wall Street, New York, NY 10286

Candice Pitcher, Vice President of Compliance
3815 South West Temple, Salt Lake City, UT 84115

KaJay Williams, Consumer Ombudsman Specialist
Mindy Bee, Relationship Manager
P.O Box 65250
Salt Lake City, Utah 84165

Consumer Financial Protection Bureau
P.O. Box 4503
Iowa City, IA 52244

Comptroller of the Currency
Administrator of National Banks, Washington, DC 20219

English          Customer Service          USPS Mobile                                                          Register / Sign In

 **USPS.COM**

Search USPS.com or Track Packages

Quick Tools          Ship a Package          Send Mail          Manage Your Mail          Shop          Business Solutions

## Track & Confirm

GET EMAIL UPDATES          PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 9505510219393064491628 | Priority Mail® | Delivered | March 07, 2013, 10:13 am | SALT LAKE CITY, UT 84165 | **Expected Delivery By:** March 7, 2013 USPS Tracking / Delivery Confirmation™ |
| Show Details ⊖ | | | | | |
| 9505510219393064491970 | Priority Mail® | Delivered | March 08, 2013, 6:42 am | IOWA CITY, IA 52244 | **Expected Delivery By:** March 8, 2013 USPS Tracking / Delivery Confirmation™ |
| Show Details ⊖ | | | | | |
| 9505510219393064492182 | Priority Mail® | Delivered | March 07, 2013, 9:11 am | PHILADELPHIA, PA 19103 | **Expected Delivery By:** March 7, 2013 USPS Tracking / Delivery Confirmation™ |
| Show Details ⊖ | | | | | |
| 9505510219393064492366 | Priority Mail® | Delivered | March 07, 2013, 10:28 pm | CHARLOTTE, NC 28255 | **Expected Delivery By:** March 7, 2013 USPS Tracking / Delivery Confirmation™ |
| Show Details ⊖ | | | | | |
| 9505510219393064492564 | Priority Mail® | Delivered | March 07, 2013, 1:55 pm | NEW YORK, NY 10007 | **Expected Delivery By:** March 7, 2013 USPS Tracking / Delivery Confirmation™ |
| Show Details ⊖ | | | | | |
| 9505510219393064492755 | Priority Mail® | Delivered | March 07, 2013, 10:14 am | SALT LAKE CITY, UT 84115 | **Expected Delivery By:** March 7, 2013 USPS Tracking / Delivery Confirmation™ |
| Show Details ⊖ | | | | | |
| 9505510219393064492946 | Priority Mail® | Delivered | March 07, 2013, 10:28 pm | CHARLOTTE, NC 28255 | **Expected Delivery By:** March 7, 2013 USPS Tracking / Delivery Confirmation™ |
| Show Details ⊖ | | | | | |
| 9505510219393064493158 | Priority Mail® | Delivered | March 07, 2013, 10:14 am | SALT LAKE CITY, UT 84115 | **Expected Delivery By:** March 7, 2013 USPS Tracking / Delivery Confirmation™ |
| Show Details ⊖ | | | | | |

GET EMAIL UPDATES          PRINT DETAILS

### Check on Another Item

What's your label (or receipt) number?

Find

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

Copyright© 2013 USPS. All Rights Reserved.

**EXHIBIT "I"**



**Federal Title Agency, LLC**

Recording Requested By:
FIRST MAGNUS FINANCIAL CORPORATION

Return To:
FIRST MAGNUS FINANCIAL CORPORATION

603 N. WILMOT
TUCSON, AZ 85711

Prepared By:

FIRST MAGNUS FINANCIAL CORPORATION
603 N. WILMOT
TUCSON, AZ 85711

RECEIVED
JAN 19 2007

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20061646998 12/18/2006 03:48
52354-22-2-2–
ELECTRONIC RECORDING

610 ████ 3494 D2 001 002

[Space Above This Line For Recording Data]

# DEED OF TRUST

LOAN NO.: ████0433
ESCROW NO.: 00052354001

MIN 100039265311804332
MERS Phone: 1-888-679-6377

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    DECEMBER 12, 2006
together with all Riders to this document.
(B) "Borrower" is
IVAYLO T. DODEV, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
23410 SOUTH 161ST WAY, GILBERT, AZ 85297
(C) "Lender" is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

Lender is a CORPORATION
organized and existing under the laws of ARIZONA

Initials:

ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3003  1/01 (rev. 6/02)
VMP-6A(AZ) (0205)                    Page 1 of 15        LENDER SUPPORT SYSTEMS INC. MERS6AAZ.NEW (05/04)

2/2



Lender's mailing address is
603 North Wilmot Road, Tucson, AZ 85711
(D) "Trustee" is

Trustee's mailing address is

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated    DECEMBER 12, 2006
The Note states that Borrower owes Lender
SIX HUNDRED EIGHTY ONE THOUSAND SEVEN HUNDRED FIFTY AND NO/100 X X X X X X

Dollars
(U.S. $ 681,750.00              ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    JANUARY 01, 2037
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [XX] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

Initials

VMP-6A(AZ) (0208)                    Page 2 of 15                    Form 3003  1/01 (rev. 6/02)

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
           COUNTY       of           MARICOPA        :
          [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF ......AND BEING MORE PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 304-77-004              which currently has the address of
                 23410 SOUTH 161ST WAY             [Street]
          GILBERT             [City] , Arizona     85297     [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials:

VMP-6A(AZ) (0206)                 Page 3 of 15             Form 3003  1/01  (rev. 6/02)

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials:

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: ____

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: [signature]

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials:

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials

VMP-6A(AZ) (0208)                    Page 9 of 15                    Form 3003  1/01 (rev. 6/02)

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law.  After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale.  Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. Release.  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee.  Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Time of Essence.  Time is of the essence in each covenant of this Security Instrument.

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____
-Witness

_____
-Witness

_____(Seal)          _____(Seal)
IVAYLO T DODEV                    -Borrower                                              -Borrower

_____(Seal)          _____(Seal)
                                   -Borrower                                              -Borrower

_____(Seal)          _____(Seal)
                                   -Borrower                                              -Borrower

_____(Seal)          _____(Seal)
                                   -Borrower                                              -Borrower

STATE OF ARIZONA                    ,    Maricopo          County ss:

The foregoing instrument was acknowledged before me this 13th December 2016       by
IVAYLO T DODEV



**FAITH E. VILLA**
Notary Public - Arizona
Maricopa County
Expires 12/31/09

My Commission Expires: 12/31/09

_____
Notary Public

Initials

**EXHIBIT "J"**

Recording Requested By:
Ivaylo Dodev

When recorded mail documents to:
Ivaylo Dodev
6312 S 161st Way
Gilbert, AZ 85298
APN No. 304-77-004W

SPACE ABOVE THIS LINE FOR RECORDING DATA

# DEED OF REVOCATION

Revocation of DEED OF TRUST by TRUSTOR for lack of lawful execution by BENEFICIARY, along with cancellation of first lien security instrument, MIN: 100039265311804332, along with cancellation of trustee sale, Instrument Number: 2011-0706281.

I, Ivaylo T., a living man, of the family Dodev, made in the Creator's image, in the capacity of IVAYLO T. DODEV, lawful owner of the landed estate IVAYLO T. DODEV and its real property and interest, accept the oaths of all lawful officers and bind them to it, and in return extend my sovereign immunity to carry out this lawful order. This public record under the seal of a competent court is guaranteed full faith and credit per Article 4 Section 1 of the United States Constitution.

As TRUSTOR I sealed a Deed of Trust lacking a TRUSTEE and TRUSTEE address, and naming FIRST MAGNUS FINANCIAL CORPORATION, INC., along with MERS, as BENEFICIARY on December 12th, 2006, witnessed by FAITH E. VILLA, a Notary Public. The first page of the Deed of Trust, signature page and Notary page; attached hereto and made a part hereof (Exhibit A).

Evidence of said Deed of Trust can be found in the Official Records of Maricopa County Recorder HELEN PURCELL, filed for record December 18, 2006, Instrument Number: 2006-1646998. Further evidence can be found through the records of Federal Title Agency, LLC, Escrow No.: 00052354001

Under the lawful powers of the TRUSTOR of this modern statutory DEED OF TRUST, I revoke said Deed of Trust due to lack of execution and or delivery acknowledgment by the beneficiary or its agent. For a Deed of Trust to be considered lawfully recorded, or legal and valid, the execution, acknowledgement, form and record must be performed in adherence to the lawful process §A.R.S. 33-411, 33-412, 33-417. The beneficiary shall acknowledge delivery of a Deed of Trust and until then the TRUSTOR has the power to revoke. I have executed that power here, now, today.

Initials: _____

Further, a testament that aforementioned beneficiary or its agents no longer have any valid or secured interest in the trust property can be found in the cancellation of trustee sale by RECONSTRUCT COMPANY, N.A. on March 15, 2013. Evidence of cancellation can be found in the Official Records of Maricopa County Recorder Office, Recorder HELEN PURCELL, filed for record March 19th, 2013, Instrument Number: 2013-0250732.

Therefore, all rents, issues, profits and rights and titles that are the beneficial interest of this Deed of Trust are to be immediately reverted absolutely to me in the name of my landed estate IVAYLO T. DODEV.  I further declare the Trustee and its Successors of said Deed of Trust free and discharged from any further responsibility of the administration and management of said Deed of Trust and the principle thereof.

My wish to revoke said Deed of Trust is now a matter of public record as my freewill act and deed, witnessed under my hand and seal and lawfully acknowledged and attested to with full faith and credit as guaranteed by Article 4 section 1 of the United States of America Constitution.

Offered at Arm's Length on this _15th_ day of July 2013, and executed in my authorized capacity as my free will act and deed

By:_____

I, Ivaylo Dodev, ARR, Explicitly Without Prejudice

STATE OF ARIZONA                                    )
                                                    ) SS
COUNTY OF MARICOPA                                  )

Subscribed and sworn to (or affirmed) before me on this _15_ day of July, 2013 by Ivaylo Dodev, proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, as his free will act and deed, for the purposes and considerations therein expressed. I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing statement is true and correct. WITNESS my hand and the official seal.

Executed by my own free will

_____ (Seal)
Notary Public

Curtis Fetter
NOTARY PUBLIC
MARICOPA COUNTY, ARIZONA
My Commission Expires
04-26-2015

Initials

Page 2 of 2

**EXHIBIT "K"**

SEE "PREPAYMENT PENALTY ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

**MIN:** 100039265311804332
**MERS Phone:** 1-888-679-6377

LOAN NO.:  ████ 0433

# ADJUSTABLE RATE NOTE
### (MTA - Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

DECEMBER 12, 2006                    MESA                    ARIZONA
[Date]                              [City]                   [State]

23410 SOUTH 161ST WAY, GILBERT, AZ 85298
[Property Address]

*This is a True and Certified Copy of the Original*

**1.  BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $          681,750.00          (this amount is called "Principal"), plus interest, to the order of Lender.  The Principal amount may increase as provided under the terms of this Note but will never exceed  ONE HUNDRED FIFTEEN AND 000/1000THS  (     115.000     %) of the Principal amount I originally borrowed.  This is called the "Maximum Limit."  Lender is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
    **(A) Interest Rate**
    Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of      1.750      %.  The interest rate I will pay may change.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

    **(B) Interest Rate Change Dates**
    The interest rate I will pay may change on the      1st      day of      FEBRUARY, 2007      , and on that day every month thereafter.  Each date on which my interest rate could change is called an "Interest Rate Change Date."  The new rate of interest will become effective on each Interest Rate Change Date.  The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

    **(C) Index**
    Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index.  The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields").  The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.  The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

    **(D) Calculation of Interest Rate Changes**
    Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding      THREE AND 400/1000THS      percentage point(s) (     3.400     %) ("Margin") to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  This rounded amount will be my new interest rate until the next Interest Rate Change Date.  My interest will never be greater than      9.950      %.  Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

Initials:

PayOption ARM Note - MTA Index
FE-5312 (0511)                         Page 1 of 5                    LENDER SUPPORT SYSTEMS, INC. FE5312XX.COU (12/05)

3.   **PAYMENTS**

   **(A) Time and Place of Payments**
   I will make a payment every month.
   I will make my monthly payments on the    1st    day of each month beginning on    FEBRUARY, 2007    .
I will make these payments every month until I have paid all the Principal and Interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied
to interest before Principal. If, on    JANUARY 01, 2037    , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "Maturity Date."

   I will make my monthly payments at    First Magnus Financial Corporation, An Arizona Corporation
603 North Wilmot Road, Tucson, AZ 85711
or at a different place if required by the Note Holder.


   **(B) Amount of My Initial Monthly Payments**
   Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $    2,435.51
unless adjusted under Section 3(F).


   **(C) Payment Change Dates**
   My monthly payment may change as required by Section 3(D) below beginning on the 1st day of    FEBRUARY, 2008    ,
and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also
will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment"
is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change
Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest
due then negative amortization will occur.
   I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided
in Section 3(F) or 3(G) below.


   **(D) Calculation of Monthly Payment Changes**
   At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that
would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity
date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The
result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly
payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5%
limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply
to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by
taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to
pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have
the option to pay the Full Payment for my monthly payment.


   **(E) Additions to My Unpaid Principal**
   Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject
to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the
interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment
date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the
interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and
will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate
required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply
the payment as provided in Section 3(A).


   **(F) Limit on My Unpaid Principal; Increased Monthly Payment**
   My unpaid Principal can never exceed the Maximum Limit equal to    ONE HUNDRED FIFTEEN AND 000/1000THS    percent
( 115.000 %) of the Principal amount I originally borrowed. My unpaid principal could exceed that Maximum Limit due to

PayOption ARM Note - MTA Index
F5-5312 (0511)                                    Page 2 of 5                              Initials

Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G) Required Full Payment

On the      fifth      Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again.  I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H) Payment Options

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) Interest Only Payment:  the amount that would pay the interest portion of the monthly payment at the current interest rate.  The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Fully Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) 15 Year Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments.  This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**4.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      FIFTEEN      ( 15 ) calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be      5.000      % of my overdue payment of Principal and Interest.  I will pay this late charge promptly but only once on each late payment.

**PayOption ARM Note - MTA Index**
**FE-5312 (0511)**                          Page 3 of 5                              Initials: _____

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10.    WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    SECURED NOTE**
In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option

PayOption ARM Note - MTA Index
FE-5312 (0511)                                    Page 4 of 5                                    Initials

shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
IVAYLO T DODEV                      -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                          -Borrower


PayOption ARM Note - MTA Index
FE-5312 (0511)                                    Page 5 of 5

DATE: DECEMBER 12, 2006
BORROWER: IVAYLO T DODEV

LOAN #: ████0433
PROPERTY ADDRESS: 23410 SOUTH 161ST WAY, GILBERT, AZ 85297

## PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated     DECEMBER 12, 2006     , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

### BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

If within the first     TWELVE     months after the execution of this Note, I make prepayment(s), the total of which exceeds     136,350.00     amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of     6 MONTHS     advance interest on the amount by which the total of my prepayment(s) during the 12-month period exceeds     20.000 %     of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment. I will pay this Prepayment Penalty regardless of whether I sell the Property or refinance the loan with the same Lender or Note Holder.

### NOTICE TO THE BORROWER

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

All other terms and conditions of the above referenced Note remain in full force and effect.

_____     _____
IVAYLO T DODEV              Borrower        Date  Dec 13 2006

_____     _____
                           Borrower        Date

_____     _____
                           Borrower        Date

_____     _____
                           Borrower        Date