# Offer to Pay the Entire Amount Due

# Offer Number IV

## Sent to all Defendants

## via Certified Mail with Return Receipt

**Ivaylo T Dodev**
**c/o 6312 S 161st Way,**
**Gilbert Arizona 85298**

# NOTICE OF DEFAULT AND OPPORTUNITY TO CURE WITH NEW GOOD-FAITH OFFER TO PAY THE TOTAL AMOUNT DUE

March 5, 2013

To: All Related Lenders, Servicers and Trustees

Matt Hollingsworth, CEO of Select Portfolio Servicing, Inc.
3815 South West Temple
Salt Lake City, UT 84115

RE: Loan/Account No. 0014052088, AKA 147338494, for 6312 S 161st Way, Gilbert, AZ 85298, AKA 23410 S 161st way, Gilbert AZ 85297

**NOTICE TO PRINCIPAL IS NOTICE TO AGENT.**
**NOTICE TO AGENT IS NOTICE TO PRINCIPAL.**

To all related lenders, servicers and trustees, c/o Select Portfolio Servicing, Inc.

I, the undersigned, Ivaylo T. Dodev, hereby again, makes yet another good-faith OFFER TO PAY THE TOTAL AMOUNT DUE.

Under the American laws of Presentment, I am hereby presenting you with my DUE PROCESS NOTICE OF DEFAULT AND OPPORTUNITY TO CURE.

Due to the large amount of cash involved, and the need for accuracy, this new Good-Faith OFFER TO PAY THE TOTAL AMOUNT DUE, is lawfully made with the reasonable condition of your Presentment to the undersigned, of an itemized and Verified PAYOFF STATEMENT, including any and all, principal, interest, taxes, insurance, late fees, penalties, escrow fees, and/or other charges actually due and payable on a future date set certain.

Again, I also sincerely believe that I have a right to see court admissible evidence that would prove that all Trust Deed or Mortgage, and Promissory Note transfers from the original lender to the last purchaser were lawfully endorsed as required by law,

rendering the last purchaser as the "holder in due course," and not merely a "holder," and thus has lawful standing to foreclose.

I also sincerely believe that I am entitled to see admissible evidence that will prove all document endorsements were not signed by people who were actually known as Robo-signers.

Again, I also need the actual street address wherein I can bring the total amount of cash due, to exchange for my *original* Trust Deed or Mortgage and Promissory Note in order to lawfully complete and finalize this transaction.

Again, if this final transaction is to be held at a third-party escrow company, I will also need to know their name, address, and phone number to be able to fulfill my part of the obligation in this good-faith final transaction.

Again, I am also requesting that this material information be presented to me within a reasonable ten (10) days as **TIME IS OF THE ESSENCE**.

Sincerely,

Ivaylo T. Dodev

COPY:

Brian T. Moynihan, CEO of Bank of America
Bank of America, Co0-000-00-00,100 North Tyron Street, Charlotte, NC 28255-0001

Dominic Ware, Customer Advocate, Office of the CEO and President
Valerie Young, Customer Advocate, Office of the CEO and President
Bank of America, Co0-000-00-00, 100 North Tyron Street, Charlotte, NC 28255-0001

Payoff Department
Bank of America, Tx2-981-03-13, 7105 Corporate Drive, Plano, TX 75024

Louise Bowes, Michael J. Meehan, Courtney Magnarella
Blank Rome LLP, One Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998

Gerald Hassell, CEO and President of Bank of New York Mellon
Bank of New York Mellon, One Wall Street, New York, NY 10286

Candice Pitcher, Vice President of Compliance
3815 South West Temple, Salt Lake City, UT 84115

KaJay Williams, Consumer Ombudsman Specialist
Mindy Bee, Relationship Manager
P.O Box 65250
Salt Lake City, Utah 84165

Consumer Financial Protection Bureau
P.O. Box 4503
Iowa City, IA 52244

Comptroller of the Currency
Administrator of National Banks, Washington, DC 20219

English Customer Service USPS Mobile Register / Sign In

USPS.COM

Search USPS.com or Track Packages

Quick Tools Ship a Package Send Mail Manage Your Mail Shop Business Solutions

# Track & Confirm

GET EMAIL UPDATES PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 9505510219393064491628<br>Show Details | Priority Mail® | Delivered | March 07, 2013, 10:13 am | SALT LAKE CITY, UT 84165 | **Expected Delivery By:** March 7, 2013<br>USPS Tracking / Delivery Confirmation™ |
| 9505510219393064491970<br>Show Details | Priority Mail® | Delivered | March 08, 2013, 6:42 am | IOWA CITY, IA 52244 | **Expected Delivery By:** March 8, 2013<br>USPS Tracking / Delivery Confirmation™ |
| 9505510219393064492182<br>Show Details | Priority Mail® | Delivered | March 07, 2013, 9:11 am | PHILADELPHIA, PA 19103 | **Expected Delivery By:** March 7, 2013<br>USPS Tracking / Delivery Confirmation™ |
| 9505510219393064492366<br>Show Details | Priority Mail® | Delivered | March 07, 2013, 10:28 pm | CHARLOTTE, NC 28255 | **Expected Delivery By:** March 7, 2013<br>USPS Tracking / Delivery Confirmation™ |
| 9505510219393064492564<br>Show Details | Priority Mail® | Delivered | March 07, 2013, 1:55 pm | NEW YORK, NY 10007 | **Expected Delivery By:** March 7, 2013<br>USPS Tracking / Delivery Confirmation™ |
| 9505510219393064492755<br>Show Details | Priority Mail® | Delivered | March 07, 2013, 10:14 am | SALT LAKE CITY, UT 84115 | **Expected Delivery By:** March 7, 2013<br>USPS Tracking / Delivery Confirmation™ |
| 9505510219393064492946<br>Show Details | Priority Mail® | Delivered | March 07, 2013, 10:28 pm | CHARLOTTE, NC 28255 | **Expected Delivery By:** March 7, 2013<br>USPS Tracking / Delivery Confirmation™ |
| 9505510219393064493158<br>Show Details | Priority Mail® | Delivered | March 07, 2013, 10:14 am | SALT LAKE CITY, UT 84115 | **Expected Delivery By:** March 7, 2013<br>USPS Tracking / Delivery Confirmation™ |

GET EMAIL UPDATES PRINT DETAILS

**Check on Another Item**

What's your label (or receipt) number?

Find

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

Copyright© 2013 USPS All Rights Reserved.

# EXHIBIT "I"

**Federal Title Agency, LLC**

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20061646998 12/18/2006 03:48
52354-22-2-2--
ELECTRONIC RECORDING

Recording Requested By:
FIRST MAGNUS FINANCIAL CORPORATION

Return To:
FIRST MAGNUS FINANCIAL CORPORATION CW-P

603 N. WILMOT
TUCSON, AZ 85711

RECEIVED
JAN 19 2007

Prepared By:

FIRST MAGNUS FINANCIAL CORPORATION
603 N. WILMOT
TUCSON, AZ 85711

(22)

610 [redacted] 8494 D2 001 002

[Space Above This Line For Recording Data]

# DEED OF TRUST

LOAN NO.: [redacted]0433
ESCROW NO.: 00052354001

MIN 1000392653111804332
MERS Phone: 1-888-679-6377

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 12, 2006, together with all Riders to this document.

(B) "Borrower" is
IVAYLO T. DODEV, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
23410 SOUTH 161ST WAY, GILBERT, AZ 85297

(C) "Lender" is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

Lender is a CORPORATION
organized and existing under the laws of ARIZONA

Initials:



2/2

Lender's mailing address is
603 North Wilmot Road, Tucson, AZ 85711
(D) "Trustee" is

Trustee's mailing address is

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated DECEMBER 12, 2006.
The Note states that Borrower owes Lender
SIX HUNDRED EIGHTY ONE THOUSAND SEVEN HUNDRED FIFTY AND NO/100 X X X X X X
Dollars
(U.S. $ 681,750.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 01, 2037.
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [XX] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

Initials:

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of MARICOPA :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF ......AND BEING MORE PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 304-77-004 which currently has the address of
23410 SOUTH 161ST WAY [Street]
GILBERT [City] , Arizona 85297 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials:

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials:

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials:

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials:

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials:

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials:

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials:

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials:

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials:

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Time of Essence. Time is of the essence in each covenant of this Security Instrument.

Initials:

**BY SIGNING BELOW**, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________________________ -Witness

_______________________________ -Witness

IVAYLO T DODEV _______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

STATE OF ARIZONA , Maricopa County ss:

The foregoing instrument was acknowledged before me this 13th December 2006 by IVAYLO T DODEV

FAITH E. VILLA
Notary Public - Arizona
Maricopa County
Expires 12/31/09

My Commission Expires: 12/31/09

Notary Public



Initials:

# EXHIBIT "J"

Recording Requested By:
Ivaylo Dodev

When recorded mail documents to:
Ivaylo Dodev
6312 S 161st Way
Gilbert, AZ 85298
APN No. 304-77-004W

SPACE ABOVE THIS LINE FOR RECORDING DATA

# DEED OF REVOCATION

Revocation of DEED OF TRUST by TRUSTOR for lack of lawful execution by BENEFICIARY, along with cancellation of first lien security instrument, MIN: 100039265311804332, along with cancellation of trustee sale, Instrument Number: 2011-0706281.

I, Ivaylo T., a living man, of the family Dodev, made in the Creator's image, in the capacity of IVAYLO T. DODEV, lawful owner of the landed estate IVAYLO T. DODEV and its real property and interest, accept the oaths of all lawful officers and bind them to it, and in return extend my sovereign immunity to carry out this lawful order. This public record under the seal of a competent court is guaranteed full faith and credit per Article 4 Section 1 of the United States Constitution.

As TRUSTOR I sealed a Deed of Trust lacking a TRUSTEE and TRUSTEE address, and naming FIRST MAGNUS FINANCIAL CORPORATION, INC., along with MERS, as BENEFICIARY on December 12th, 2006, witnessed by FAITH E. VILLA, a Notary Public. The first page of the Deed of Trust, signature page and Notary page; attached hereto and made a part hereof (Exhibit A).

Evidence of said Deed of Trust can be found in the Official Records of Maricopa County Recorder HELEN PURCELL, filed for record December 18, 2006, Instrument Number: 2006-1646998. Further evidence can be found through the records of Federal Title Agency, LLC, Escrow No.: 00052354001

Under the lawful powers of the TRUSTOR of this modern statutory DEED OF TRUST, I revoke said Deed of Trust due to lack of execution and or delivery acknowledgment by the beneficiary or its agent. For a Deed of Trust to be considered lawfully recorded, or legal and valid, the execution, acknowledgement, form and record must be performed in adherence to the lawful process §A.R.S. 33-411, 33-412, 33-417.The beneficiary shall acknowledge delivery of a Deed of Trust and until then the TRUSTOR has the power to revoke. I have executed that power here, now, today.

Initials: [signature]

Further, a testament that aforementioned beneficiary or its agents no longer have any valid or secured interest in the trust property can be found in the cancellation of trustee sale by RECONSTRUCT COMPANY, N.A. on March 15, 2013. Evidence of cancellation can be found in the Official Records of Maricopa County Recorder Office, Recorder HELEN PURCELL, filed for record March 19th, 2013, Instrument Number: 2013-0250732.

Therefore, all rents, issues, profits and rights and titles that are the beneficial interest of this Deed of Trust are to be immediately reverted absolutely to me in the name of my landed estate IVAYLO T. DODEV. I further declare the Trustee and its Successors of said Deed of Trust free and discharged from any further responsibility of the administration and management of said Deed of Trust and the principle thereof.

My wish to revoke said Deed of Trust is now a matter of public record as my freewill act and deed, witnessed under my hand and seal and lawfully acknowledged and attested to with full faith and credit as guaranteed by Article 4 section 1 of the United States of America Constitution.

Offered at Arm's Length on this 15th day of July 2013, and executed in my authorized capacity as my free will act and deed

By: [signature]

I, Ivaylo Dodev, ARR, Explicitly Without Prejudice

STATE OF ARIZONA )
) SS
COUNTY OF MARICOPA )

Subscribed and sworn to (or affirmed) before me on this 15 day of July, 2013 by Ivaylo Dodev, proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, as his free will act and deed, for the purposes and considerations therein expressed. I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing statement is true and correct. WITNESS my hand and the official seal.

Executed by my own free will

[signature] (Seal)

Notary Public

Curtis Fetter
NOTARY PUBLIC
MARICOPA COUNTY, ARIZONA
My Commission Expires
04-28-2015

Initials: [initials]

**EXHIBIT "K"**

SEE "PREPAYMENT PENALTY ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

LOAN NO.: [redacted]0433

MIN: 100039265311804332
MERS Phone: 1-888-679-6377

# ADJUSTABLE RATE NOTE
## (MTA - Twelve Month Average Index - Payment Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.

| DECEMBER 12, 2006 | MESA | ARIZONA |
|---|---|---|
| [Date] | [City] | [State] |

23410 SOUTH 161ST WAY, GILBERT, AZ
[Property Address]

This is a True and Certified Copy of the Original

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 681,750.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed ONE HUNDRED FIFTEEN AND 000/1000THS ( 115.000 %) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.750 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the 1st day of FEBRUARY, 2007 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 400/1000THS percentage point(s) ( 3.400 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than 9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

Initials:

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the 1st day of each month beginning on FEBRUARY, 2007. I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 01, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at First Magnus Financial Corporation, An Arizona Corporation 603 North Wilmot Road, Tucson, AZ 85711 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 2,435.51 unless adjusted under Section 3(F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of FEBRUARY, 2008, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN AND 000/1000THS percent (115.000 %) of the Principal amount I originally borrowed. My unpaid principal could exceed that Maximum Limit due to

Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**4. NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN ( 15 ) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**
In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option

shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| IVAYLO T DODEV _____ (Seal) -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | _____ (Seal) -Borrower |

DATE: DECEMBER 12, 2006
BORROWER: IVAYLO T DODEV

LOAN #: [redacted]9433
PROPERTY ADDRESS: 23410 SOUTH 161ST WAY, GILBERT, AZ 85297

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated DECEMBER 12, 2006, and is incorporated into and amends and supplements the Note of the same date (the "Note") given by FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION (the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

## BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

If within the first TWELVE months after the execution of this Note, I make prepayment(s), the total of which exceeds 136,350.00 amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of 6 MONTHS advance interest on the amount by which the total of my prepayment(s) during the 12-month period exceeds 20.000 % of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment. I will pay this Prepayment Penalty regardless of whether I sell the Property or refinance the loan with the same Lender or Note Holder.

## NOTICE TO THE BORROWER

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

All other terms and conditions of the above referenced Note remain in full force and effect.

[signature] IVAYLO T DODEV — Borrower    Dec 13 2006 — Date

__________ Borrower    __________ Date

__________ Borrower    __________ Date

__________ Borrower    __________ Date

# EXHIBIT "L"

# FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: LEGAL | FROM: IVAYLO DODEV |
| COMPANY: BANK OF AMERICA, N.A., BANK OF NEW YORK, FIRST MAGNUS FINANCIAL CORPORATION, MERS RECONTRUST COMPANY, N.A. | DATE: AUGUST 30, 2011 |
| FAX NUMBERS: | PAGES: INCLUSIVE |
| PHONE NUMBERS: | SENDER'S REFERENCE NUMBER: LOAN # 6531180433 and 147338494 **MIN# 10003926531180433 and 1473384942** |
| RE: IVAYLO DODEV 6312 S. 161st Way, Gilbert, AZ 85298 | YOUR REFERENCE NUMBER: Letter of Rescission and Cancellation and Notice of Complaint and Demands |

To: BANK OF AMERICA, N.A., NO TRUSTEE ON DEED OF TRUST, FIRST MAGNUS FINANCIAL CORPORATION, MERS, BANK OF NEW YORK, RECONTRUST COMPANY, N.A. and others:

Today, August 30, 2011, I am filing a complaint with you, the Comptroller of the Currency and the Arizona Attorney General and the Arizona Department of Financial Institutions, the Arizona Secretary of State, the Maricopa County Attorney and Recorder among other investigative institutions. You denied my previous Complaints and ignored my demands. The Attorney General of Arizona has already responded with an investigation to similar complaints filed by others, and filed a Complaint against Bank of America based on fraud. My case is similar to the numerous cases which led to this ruling against Bank of America. Further, the Supreme Court of Massachusetts ruled against US Bank National Association for fraudulent assignments. Their complaint largely identifies the complaints I have with you. Again, I submit these demands and statements for your review and action.

There are many issues that I have discovered which I feel are illegal and/or incorrect, but I will only discuss a few. A few of my concerns in reference to my promissory note are:

a) Unless an asset is transferred into a lifetime trust, the asset does not become trust property. Was there a legal transfer into this trust that claims to be the beneficiary of my note?
b) The assignment of a mortgage without transfer of the underlying promissory note is a nullity. I understand that the Deed of Trust and promissory note were separated at the inception of the loan.
c) A trustee's act that is contrary to the trust agreement is void. The new trustee has created documents that are incorrect and have been completed by Robo Signers. There was never a Trustee on my Deed of Trust, thus making my Deed of Trust and Note void.
d) If my note was just assigned to this trust you say it is on the same day that you recorded the Substitution of Trustee and Notice of Trustee's Sale documents, where was it for the previous five years? Are you saying that it was in some other trust? On my Deed of Trust

recorded December 18, 2006, it says that First Magnus Financial Corporation is the lender and Mortgage Electronic Registration Systems, Inc. (MERS) is the beneficiary. Who is the trustee? Who is the real beneficiary? The assignment that was created by ReconTrust Company, N.A. by that Robo Signer shows Bank of New York is the beneficiary, when MERS shows it to be Bank of New York Mellon, N.A., a completely different entity, which makes the Notice of Trustee's Sale null and void. Which one is the real beneficiary?

e) The only document that was purportedly recorded legally was the Deed of Trust showing that First Magnus Financial Corporation is the lender and MERS is the beneficiary, yet there was never a Trustee on this document, making it null and void. On this Deed of Trust, a legal three party contract, it is legally deficient because two of the three parties are missing. The Trustee and the Beneficiary are not legal entities to do any legal cause. How and when did that get changed? This only assignment that you created and recorded was fraudulent. This Assignment was created, signed, notarized and recorded on the same day and time as the Substitution of Trustee and Notice of Trustee's Sale documents. Obviously, this is a clear sign of the sloppiness of my loan and legal documentation, and the fraudulent activity within to cover it up. My Note was transferred into a trust at the inception of my loan, as recorded on the MERS Milestone on my Note referenced above.

f) My Deed of Trust is missing two parties of a legal document, the Trustee and Beneficiary (MERS), who has no beneficial interest in my note, and due to Legal Cause, the only way to substitute a trustee in is with Legal Cause. You are creating illegal documents using my Deed of Trust above as a basis.

**IT IS HEREBY DEMANDED THAT YOU IMMEDIATELY VOID THE NOTICE OF TRUSTEE'S SALE, CEASE AND DESIST ALL TRUSTEE'S SALE ACTIVITIES AND WITHIN TWENTY DAYS, RELEASE OR CORRECT ALL FALSE DOCUMENTS YOU HAVE RECORDED OR CAUSED TO BE RECORDED IN CONNECTION WITH THE BELOW REFERENCED PROPERTY.**

You are hereby noticed that you have participated in a process that is statutorily and contractually out of compliance and VOID!

IT IS HEREBY DEMANDED THAT YOU CEASE AND DESIST and CANCEL the above referenced sale as noticed by the Notice of Trustee's Sale which you have recorded or caused to have recorded in the above referenced County of Maricopa, Arizona.

There are numerous violations of the Deed of Trust that you purport to be proceeding through as well as provisions of Arizona Statutory requirements relating to the exercise of the "power of sale" You have not met the presumptions of A.R.S. § 33-811 (B) and (C) of contractual and statutory compliance. Violations include noticing, recording, mailing, publishing and posting of notice of sale and the conduct of the sale as more fully described below. Since you proceeded with the Trustee's Sale your actions are considered an attempt to unlawfully convert title of real property though the filing of forged and/or groundless documents in a public office.

The Arizona Supreme Court has ruled that foreclosing parties must strictly comply with the statutory scheme of requirements applicable to the notice and conduct of a non-judicial Trustee's Sale. Further the court has ruled that any Trustee's Sale which is held without complying with such statutory requirements is VOID. The court has also ruled that a party availing himself of the contractual provisions providing for a sale and forfeiture must comply

strictly with all the requirements of the contract. You have not met the obligations of such compliance as further set-forth below.

Below are the items of non-compliance with the Arizona Trustee's Sale process found thus far.

**Contractual Violations**

According to the Arizona Supreme Court if you wish to avail yourself of a contractual provision providing for forfeiture you are required to comply strictly with all of the requirements of the contract as indicated in the below cited rulings.

1. The Deed of Trust, Section 22, for the referenced property states, "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument." The Lender, FIRST MAGNUS FINANCIAL CORPORATION, has never provided such a notice to the Borrower as is required by this contractual provision.

2. Further, the Deed of Trust, Section 22, paragraph 1, subsection (c) for the referenced property states the Lender is required to invoke the power of sale on "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured." No party has provided a breach notice allowing the contractually required 30 day cure period prior to invoking a power of sale or other remedies permitted by Applicable Law. Therefore, this foundational basis upon which a power of sale may be exercised has not been met and any action by you to initiate a Notice of Trustee's Sale is void.

3. The Deed of Trust, Section 24 for the referenced property states "Lender may, ... appoint a successor trustee to any Trustee appointed hereunder." You are in violation of the contractual provisions as the Lender, FIRST MAGNUS FINANCIAL CORPORATION, who is named in the Deed of Trust has never made an appointment of a "successor trustee" to the party so designated in the Notice of Trustee's Sale. Therefore, the Notice of Trustee's Sale is void as the cited Trustee has no authority to exercise a "power of sale" against the property.

4. The Deed of Trust, Section 15 states you must meet notice requirements which are "also required under Applicable Law." There are additional requirements under Applicable Law in Arizona. A.R.S. § 33-807.01 requires that you attempt to contact me with a 30 day written notice "to explore options to avoid foreclosure" prior to the recordation of a Notice of Trustee's Sale. No such Written Notice has been delivered to me in the required time period.

According to the Arizona Supreme Court you are required to strictly comply with all statutory notice requirements for Trustee's Sales as indicated in the statutes and cited rulings below.

**Statutory Civil Violations**

5. A.R.S. § 33-420 (A), states, "A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action." You have caused such documents to be recorded in the county recorder's office. Per document, you are liable for a minimum sum of five thousand dollars and you may be liable for treble damages as my home has gone to trustee's sale based upon forged or groundless recorded documents which may contain material misstatements, false claims or are otherwise invalid.

6. A.R.S. § 33-420 (C), states "A person who is named in a document which purports to create an interest in, or a lien or encumbrance against, real property and who knows that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid shall be liable to the owner or title holder for the sum of not less than one thousand dollars, or for treble actual damages, whichever is greater, and reasonable attorney fees and costs as provided in this section, if he willfully refuses to release or correct such document of record within twenty days from the date of a written request from the owner or beneficial title holder of the real property." Again, you are named in such documents and have the opportunity to take corrective actions. If you take no such action within the twenty days from this notice, you will be liable to me "for the sum of not less than one thousand dollars, or for treble actual damages, which ever is greater…"

**Deed of Trust Statutory Violations**

7. MERS (Mortgage Electronic Registration Systems, Inc.) is designated as the "Beneficiary" in the Deed of Trust. For MERS to be a "Beneficiary" is a factual impossibility. MERS states on its own homepage, www.MERSinc.org, "MERS is an innovative process that simplifies the way mortgage ownership and servicing rights are originated, sold and tracked." MERS is strictly a process with a database; it cannot meet the statutory definition (A.R.S. § 33-801) of a "Beneficiary." A process is merely a methodology and a database is a compilation of information and it cannot be a "Beneficiary" as it cannot receive payments nor can it ever hold title to an instrument pertaining to real property or the real property itself. The process elaborating how "mortgage ownership and servicing rights are originated, sold and tracked" does not create statutory status as a Beneficiary. The Beneficiary cited in the Notice of Trustee's Sale never received an authorization from an original Beneficiary as there never was a statutorily compliant Beneficiary in the Deed of Trust. Since there was never a

Beneficiary established in the Deed of Trust, the Deed of Trust is void and of no force and effect. The indicated Beneficiary has no authorization to initiate a "power of sale" against the property.

8. In the event the Borrower, or someone on behalf of the Borrower, were to satisfy all obligations the Deed of Trust seeks to secure; MERS would be unable to offer the satisfaction of obligation which is required under A.R.S. § 47-3602. This is further indication that MERS is indeed NOT the Beneficiary of anything and has no authority to act in that capacity.

9. Since MERS cannot meet the contractual or statutory threshold of a Beneficiary, the Deed of Trust also fails as there can be no trust without a valid Beneficiary.

10. Additionally, MERS published Announcement Bulletin 2011-01 on 2011-02-16 (See http://www.mersinc.org/files/filedownload.aspx?id=678&table=ProductFile) in which it expressly stated that "their Members" were "NOT to foreclose in MERS' name."

11. Revised Statutes §33-804(F), which states: "Resignation by a trustee is made by recordation of a notice of resignation in the office of the county recorder of each county in which the trust property or some part of the trust property is situated at the time of the resignation. Written notice shall be given through registered or certified mail, with postage prepaid, to the Trustor and the beneficiary." No such Resignation has ever been recorded in the applicable county recorder's office. Therefore, since there was no current trustee listed on this deed of trust, this document is null and void, and can not be the original trustee as designated in the Deed of Trust. Since the original trustee, NO TRUSTEE NAMED, is still the trustee of record and has never exercised the power of sale as provided for in the Deed of Trust the Notice of Trustee's Sale is void and of no force and effect.

**Corporation Assignment of Deed of Trust Violations**

12. A.R.S. § 33-818 states that an "assignment of a beneficial interest under a trust deed… if acknowledged… shall from the time of being recorded … impart notice of the content." Additionally, A.R.S. § 33-412 (A) states, "All bargains, sales and other conveyances whatever of …, and deeds of trust and mortgages of whatever kind, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law." You are in violation of the statutory notice requirements for Trustee's Sales as, prior to the recording of the Notice of Trustee's Sale, there was never made a recorded and acknowledged assignment of beneficial interest by an authentic and authorized party to Mortgage Electronic Registration who is designated as the beneficiary in the recorded Notice of Trustee's Sale. A.R.S. § 33-420 (C), states, "A document purporting to create an interest in, or a lien or encumbrance against, real property not authorized by statute, judgment or other specific legal authority is presumed to be groundless and invalid." There is no valid document recorded in this County prior to the filing of a Notice of

Trustee's Sale which conveys beneficial interest to Mortgage Electronic Registration. Therefore, the Notice of Trustee's Sale is void as the cited Beneficiary has no authorization to exercise a "power of sale" against the property.

13. For the foregoing reasons, the Notice of Trustee's Sale is void and of no force and effect as the cited Beneficiary has no authorization to exercise a "power of sale" against the property.

**Substitution of Trustee Violations**

14. A valid Substitution of Trustee has never been made by a beneficiary with authority to appoint a successor trustee pursuant to A.R.S. § 33-804 (B) which states, "The beneficiary may at any time remove a trustee for any reason or cause and appoint a successor trustee, and such appointment shall constitute a substitution of trustee." The phrase 'for cause' must mean some cause affecting or concerning the ability or fitness of the trustee to perform the duty imposed upon him. It does not mean an arbitrary will of the appointing power, for that might be the outgrowth of mere whim, caprice, prejudice, or passion, which would, in reality, be no cause at all. The recorded Substitution of Trustee also fails to meet the requirements of A.R.S. § 33-804 (D) in that no document has ever been acknowledged that substitutes or appoints a trustee by an authorized Beneficiary or its agent. A.R.S. § 33-420 (C), states, "A document purporting to create an interest in, or a lien or encumbrance against, real property not authorized by statute, judgment or other specific legal authority is presumed to be groundless and invalid." A valid Substitution of Trustee to RECONTRUST COMPANY has never been made in accord with any contractual provision, Arizona statute or court action. Therefore, the Notice of Trustee's Sale is void as the cited Trustee has never been authorized to exercise a "power of sale" against the property.

15. Since the recorded Substitution of Trustee upon which the trustee's sale process is based are groundless and invalid pursuant to A.R.S. § 33-420; the entire Trustee's Sale process is groundless, void and of no force and effect.

16. The Substitution of Trustee recorded on the same day as the Notice of Trustee's Sale is not dated. The fact that this document is not dated invalidates this document. Additionally, there is no way to assure that the Darius Alexander personally appeared in front of the notary Alexis west. This nullifies the notary performed by Alexis West. Perhaps this is why there is a subsequent Substitution of Trustee filed four days after the recording of the Notice of Trustee's Sale This subsequent Substitution of Trustee is in-adequate in making an appointment of "ReconTrust Company" (see below) as the Trustee for purposes of exercising a power of sale. At the time of recording the Notice of Trustee's Sale, there was no TRUSTEE named on the Deed of Trust. But yet another problem surfaces in that there is no company registered in either a state or federal capacity named "ReconTrust Company." Clearly, the Substitutions of Trustee and all future-predicant documents are void and of no force and effect.

## Notice of Trustee's Sale Violations

17. The Notice of Trustee's Sale states that the Beneficiary is "Bank of New York." The Deed of Trust states that the Beneficiary is "Mortgage Electronic Registration Systems, Inc." There is no entity named "Bank of New York". The MERS Milestone shows the beneficiary to be the Bank of New York Mellon, N.A. This incongruity in these two documents renders the Notice of Trustee's Sale void as the named Beneficiary does not even exist. A non-existent entity could not exercise a power of sale against a Trustor. This oversight on the part of the Beneficiary and Trustee are forever causing a defect in the chain of title to the real property.

18. The address that you have listed on the Notice of Trustee's Sale is legally incorrect. You show 23410 S. 161st Way, Gilbert, AZ 85297 as the address that is being foreclosed on. That is not the current legal address. The legal address is 6312 S. 161st Way, Gilbert, AZ 85298. There is no address or property registered at that location at all. But that address is not participating in this Trustee's Sale process. For this matter there is no valid Notice of Trustee's Sale recorded against the Trustor's property.

## Procedural Notice Violations

19. A.R.S. § 33-809 (C), states "The trustee, within five business days after the recordation of a notice of sale, shall mail by certified or registered mail, with postage prepaid, a copy of the valid Notice of Trustee's Sale." I was not mailed such a copy within the required five business days after the recording of the Notice of Trustee's Sale.

20. A.R.S. § 33-809 (C), states that the parties to the trust deed shall be mailed "a statement that a breach or nonperformance of the trust deed or the contract or contracts secured by the trust deed, or both, has occurred." I was not mailed such a statement within the required five business days after the recording of the Notice of Trustee's Sale nor was one mailed with any required mailing of a copy of the recorded Notice of Trustee's Sale.

21. A.R.S. § 33-808 (A) (3), states that the property shall be posted with a copy of the Notice of Trustee's Sale. No proof exists that the property has ever been posted with such a copy of the Notice of Trustee's Sale.

22. A.R.S. § 33-808 (A) (4), states that there shall be published a written notice of the Notice of Trustee's Sale. No proof exists that such publishing took place in a "Newspaper of General Circulation" as required.

23. A.R.S. § 33-808 (A) (3), states that there shall be posted a written notice of the Notice of Trustee's Sale in a "Public place at the Superior Court in the County." No proof exists that such posting ever took place in this county's Superior Court as required.

## Notice of Trustee's Sale Violations

24. The Notice of Trustee's Sale is built upon a trail of false and forged documents. Such a sale is not within the confines of the Arizona Statutes or the Deed of Trust. The sale will be exercised under a power of sale for a "non-entity" beneficiary by a "non-entity" trustee. The chain of custody and the chain of title of both the Trustee and the Beneficiary leading to the Notice of Trustee's Sale are severely defective. "Bank of New York" (a non-entity) attempted to appoint "ReconTrust Company, N.A." to conduct an illegal sale that resulted in the property being granted to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE TRUST that it purportedly is in. This sale is void and of no force and effect.

## Statutory Criminal Violations

25. A.R.S. § 39-161, states, "A person who acknowledges, certifies, notarizes, procures or offers to be filed, registered or recorded in a public office in this state an instrument he knows to be false or forged, which, if genuine, could be filed, registered or recorded under any law of this state or the United States, or in compliance with established procedure is guilty of a class 6 felony." You are fully aware and herein redundantly noticed that the documents you have recorded or caused to have recorded with this county's recorder's office are false or forged. Your past and continued efforts to knowingly record false or forged documents are deemed by statute to be criminal in nature and subject to damages and other remedies as may be deemed appropriate by a court of law.

26. As demonstrated above, known criminal activity has taken place by you in proffering instruments for recordation in public offices within the state of Arizona. Your documents are false and forged and therefore any Notice of Trustee's Sale which is predicated on those documents is void and of no force and effect.

## Supporting Arizona Supreme Court Cases

*Patton v. First Federal Savings And Loan Association of Phoenix*, 118 Ariz. 473, 578 P.2d 152, 153 (1978) (holding, "If a trustee's sale, conducted pursuant to a deed of trust, is held without complying with statutory notice requirements, such a sale would be VOID, for statutes set forth only procedure for a valid trustee's sale. A.R.S. § 33-801 et seq.")

*Schaeffer v. Chapman*, 176 Ariz. 326, 861 P.2d 611 (1993) (holding, "We repeatedly have held that contracts will be strictly construed to avoid forfeitures" and "30-day notice period in deed of trust was separate from 90-day period set forth by statute and lenders' failure to give total of 120-day notice prior to sale was breach of deed of trust.")

*Glad Tidings Church of America v. Hinkley*, 71 Ariz. 306, 226 P.2d 1016 (holding, "the law does not favor forfeitures and if a party would avail himself of a contractual provision providing for such a forfeiture, he must comply strictly with all the requirements of the contract.")

**Federal Violations**

You are additionally noticed that there are violations of Federal Statutes including but not limited to the following.

27. According to the United States Postal Inspection Service Mail Fraud includes any scheme that attempts to unlawfully obtain money or valuables in which the postal system is used at any point in the commission of a criminal offense. There are two elements to mail fraud: (1) a scheme or artifice to defraud; and (2) a mailing to carry out the scheme. Pursuant to U.S.C.A 18 § 1341 you are participating in a scheme or artifice to defraud me of – title and possession of my real property. You have used the United States Postal Service in an attempt to unlawfully obtain money or valuables from me. You are attempting to divest me of my property. For the reasons cited above, the false documents you have devised and mailed in an intentional scheme to obtain property from me subject you to 18 U.S.C.A § 1341 which states as follows:

    > Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

28. Wire fraud, in the United States Code, is any criminally fraudulent activity that has been determined to have involved electronic communications of any kind, at any phase of the event. To commit wire fraud, one must (1) devise, or intend to devise, a scheme or artifice to defraud another person on the basis of a material representation, and (2) do it with the intent to defraud, and (3) do it through the use of interstate wire facilities (i.e. telecommunications of any kind). Pursuant to U.S.C.A 18 § 1343 you are participating in a scheme or artifice to defraud me of – title and possession of my real property. You

have used transmitted or caused to be transmitted material in an attempt to unlawfully obtain money or valuables from me. You are attempting to divest me of my property. For the reasons cited above, the false documents you have devised and wired in an intentional scheme to obtain property from me subject you to 18 U.S.C.A § 1343 which states as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

29. Pursuant to the Fair Debt Collections Practices Act 15 U.S.C.A. § 1692 et. seq., you are making "false, deceptive and misleading representations" in the collection of the alleged debt as there is not named in the recorded Notice of Trustee's Sale a valid Beneficiary or Trustee. You are not "vouched" as a Debt Collector entitled to pursue the collection of the alleged debt. You are threatening to "take an action that you cannot legally take." You are also representing that your insufficient documents are "legal process." You are using a "business or company name other than the true name of the debt collector's business or company."

30. Since you are communicating personal credit information you know to be false you are further in violation of the Fair Credit Reporting Act pursuant to 15 U.S.C.A § 1681 et. seq. Therefore, it is further demanded that you cease your erroneous reporting and expunge from my Credit Report any derogatory information you may have communicated to any and all Credit Reporting Agencies.

## Demand

IT IS HEREBY DEMANDED THAT YOU IMMEDIATELY VOID THE NOTICE OF TRUSTEE'S SALE, CEASE AND DESIST ALL TRUSTEE'S SALE ACTIVITIES AND WITHIN TWENTY DAYS, RELEASE OR CORRECT ALL FALSE DOCUMENTS YOU HAVE RECORDED OR CAUSED TO BE RECORDED IN CONNECTION WITH THE ABOVE REFERENCED PROPERTY.

A.R.S. § 808 (F), states, "The notice of trustee sale may not be rerecorded for any reason." Therefore, you are hereby demanded to file with this county's Recorder's Office a CANCELLATION OF NOTICE OF TRUSTEE'S SALE on the referenced Notice of Trustee's Sale immediately. You are also demanded to deliver to me a fully executed copy of the same document to me at the referenced property address.

There has been no notice of my right to file a lawsuit against you as per my rights. On January 07, 2011, the Massachusetts Supreme Court ruled against US Bank in the Ibanez Case, in a foreclosure-related case where these banks were foreclosing on a property where they had no right or authorization to do so. They did not have possession of the Deed of Trust, Promissory Note, or Title to properties they had bought at foreclosure sales, and the court stated that the banks failed to show they held the underlying mortgages at the time of foreclosure. As a result of a failure to hold these mortgages, these banks failed to show they acquired title to the properties. This is similar to my case. The legal citation on that case that applies here is U.S. Bank National Association v. Ibanez, 458 Mass. 637, 2011 WL 38071 (January 07, 2011). There are five other cases that I would cite also: In Re: Zitta, US Bankruptcy Court D. Arizona; US BK Court D. New Jersey, Kemp vs. ; US BK Court D. Eastern New York, In re: Agard; Bank of New York vs. Raftogianis, Superior Court of New Jersey; Arizona SB 1259, Proof of Ownership and Title.

Some of the complaints I have with you and the above entities is the Wrongful Lien and False Claim of my loan documentation, including my recorded documents on my property. Also included in this complaint is the Fraudulent handling and activity with my Note, as shown in the Uniform Commercial Code (UCC) Article 3-203 through 3-207; and UCC 3-301 through 3-308; and UCC 3-104 (a) through (d). To be specific, the Assignment on my Deed of Trust and Note was created by a Robo Signer on the same day and time, signed by his Robo Signer Notary and recorded on the same day August 24, 2011 to an unknown entity, Bank of New York.

This Assignment was fraudulently created, signed and notarized. The signor, signed it as an Assistant Secretary to Mortgage Electronic Registration Systems, Inc. (MERS), when he has never worked for MERS. He forged his name as an employee of MERS, when he never was. Then, his notary attested to the fact that he was an Assistant Secretary to MERS. When, in fact, both worked for Bank of America, N.A. or ReconTrust Company, N.A., who they were attempting to sign the Assignment over to. This is such blatant FRAUD and a conspiracy to cover the illegal handling of my Note and Deed of Trust. My note was separated at the inception of my loan, thus causing my Deed of Trust to be null and void. Of this three party contract, my Deed of Trust, two of the three parties are non-existent or not qualified to be in that position.

With an unknown trust or certificate as beneficiary for the trust that holds my Promissory Note and Deed of Trust, I have no specific address for the legal holder of my note to contact. There was no assignment of my Promissory Note and Deed of Trust to BANK OF NEW YORK or BANK OF AMERICA, N.A. from the inception of my loan, as recorded on the Mortgage Electronic Registration Systems (MERS). The last three documents that were recorded on my Deed of Trust and property were the Assignment, Substitution of Trustee and Notice of Trustee's Sale. All of them signed by a Robo-Signer, and all of the documents Fraudulent, signed without authority. This fraudulent and sloppy documentation and recording is part of what has caused all of this documentation to be fraudulent, thus making it null and void.

Because of this fraudulent Assignment, it caused several other legal documents to be recorded into public records, which were also fraudulent. These other documents, the Substitution of Trustee and the Notice of Trustee's Sale Documents, were filed and recorded fraudulently. There was no legal authorization to create or record the Substitution of Trustee document. This Substitution of Trustee document was fraudulently created, signed, notarized and recorded. The

Another big issues is: **WHY IS MY NOTE STILL BEING TRADED** in this Trust and in the MERS System **AFTER THE TRUST STOPPED OPERATING AND IS NO LONGER IN EXISTENCE?** IT IS EVIDENT IN THE MERS MILESTONE AND THE MERS DOC. This is Fraud with the SEC and also Bank Fraud. Under the UCC Article 3 and UCC Article 8, you can not do that. Also, once the Note was transferred to this Trust and converted to a Financial Instrument, no one can take it back out of the trust and convert it to Promissory Note again and take legal action against it, to include foreclosure. So, the foreclosure action that is being taken to sell my property on November 28, 2011 will be done so illegally, and without legal merit. The entire foreclosure action is thereby null and void.

You incorrectly transferred my loan to BANK OF AMERICA, N.A. and my Promissory Note to BANK OF NEW YORK showing that my loan was securitized, as the Note and Deed of Trust were separated and securitized. On further investigation, the Promissory Note is in a trust. BANK OF AMERICA, N.A. is the Master Servicer. Neither Bank of New York nor BANK OF AMERICA, N.A. is the beneficiary, as stated on the Deed of Trust. The Investors in the Trust that holds my Promissory Note above are the beneficiaries. Neither ReconTrust Company, N.A., Bank of New York nor BANK OF AMERICA, N.A. has the right to order any legal action against me or my home. The Note and Deed of Trust dated above were separated at the inception of the loan as indicated. Again, the note is considered null and void. You have committed felonies against me by illegally using my promissory note for your financial gain.

I demand that you reconvey my Deed of Trust back to me, or issue a Quit Claim Deed back to me on my property. I demand a copy of the agreement between the Servicer and Trustee on this property. I also demand a copy of the Pooling and Servicing Agreement and the agreement between the Certificated Holders on the Trust and the Trust. I also demand a copy of the Prospectus Supplement and Prospectus Dated for the above listed Trust, where my Promissory Note is being. Attached to this fax cover page is the Notice and findings of my Expert Bank Witness and Private Investigator, one of who found the Promissory Note, and the documentation mentioned above where there was an incorrect and possibly fraudulent transfer and no assignment of Deed of Trust. I also demand a copy of the following documents:

1) The 2046 balance sheet as it relates to the original "loan" which is a mandatory filing pursuant to Title 12 U.S.C. 248 & 347
2) The 1099 OID (Original Issued Document)
3) The S3 A registration statement
4) The 424 B-5 prospectus
5) The RC S & RC B call schedules.
6) The FAS 125, 133, 140, 5, and 95. [FASB (Financial Accounting Standards Board) part of GAAP (Generally Accepted Accounting Standards)]

I also demand that you provide me with a copy of all documents that I am entitled to from the inception of my loan to today's date. I also demand the Note, a Milestone indicating all transactions with my note and MERS Milestones on this note. Please only contact me via mail at the above address. Do not contact me via telephone. Do not report any negative activity on my loan or note with any of the Credit Bureaus. I demand all of the above under the Frank-Dodd Act. Thank you very much for your time.

IVAYLO DODEV LOAN # 6531180433 and 147338494

**WHEN RECORDED, MAIL TO:**
IVAYLO DODEV
6312 S. 161st Way
GILBERT, AZ 85298

SENT VIA CERTIFIED MAIL

AUGUST 30, 2011

**BANK OF AMERICA, N.A.**
400 National Way
Simi Valley, CA 93065

**Bank of New York Mellon, N.A.**
101 Barclay St. 4W
New York, NY 10286

**RECONTRUST COMPANY, N.A.**
2380 Performance Dr. TX2-985-07-03
Richardson, TX 75082

**MERS**
1818 Library Street, suite 300
Reston, VA 20190

**FIRST MAGNUS FINANCIAL CORPORATION**
603 N. Wilmot Rd
Tucson, AZ 85711

**BANK OF NEW YORK**
400 National Way
Simi Valley, CA 93065

RE: Account No.: LOAN # 6531180433 and 147338494
IVAYLO DODEV, 6312 S. 161st Way, Gilbert, AZ 85298

ATTN: LEGAL

## NOTICE OF COMPLAINT

To: BANK OF AMERICA, N.A., NO TRUSTEE ON DEED OF TRUST, FIRST MAGNUS FINANCIAL CORPORATION, MERS, BANK OF NEW YORK, RECONTRUST COMPANY, N.A. and others:

Today, August 30, 2011, I am filing a complaint with you, the Comptroller of the Currency and the Arizona Attorney General and the Arizona Department of Financial Institutions, the Arizona Secretary of State, the Maricopa County Attorney and Recorder among other investigative institutions. You denied my previous Complaints and ignored my demands. The Attorney General of Arizona has already responded with an investigation to similar complaints filed by others, and filed a Complaint against Bank of America based on fraud. My case is similar to the numerous cases which led to this ruling against Bank of America. Further, the Supreme Court of Massachusetts ruled against US Bank National Association for fraudulent assignments. Their complaint largely identifies the complaints I have with you. Again, I submit these demands and statements for your review and action.

There are many issues that I have discovered which I feel are illegal and/or incorrect, but I will only discuss a few. A few of my concerns in reference to my promissory note are:

a) Unless an asset is transferred into a lifetime trust, the asset does not become trust property. Was there a legal transfer into this trust that claims to be the beneficiary of my note?
b) The assignment of a mortgage without transfer of the underlying promissory note is a nullity. I understand that the Deed of Trust and promissory note were separated at the inception of the loan.

c) A trustee's act that is contrary to the trust agreement is void. The new trustee has created documents that are incorrect and have been completed by Robo Signers. There was never a Trustee on my Deed of Trust, thus making my Deed of Trust and Note void.

d) If my note was just assigned to this trust you say it is on the same day that you recorded the Substitution of Trustee and Notice of Trustee's Sale documents, where was it for the previous five years? Are you saying that it was in some other trust? On my Deed of Trust recorded December 18, 2006, it says that First Magnus Financial Corporation is the lender and Mortgage Electronic Registration Systems, Inc. (MERS) is the beneficiary. Who is the trustee? Who is the real beneficiary? The assignment that was created by ReconTrust Company, N.A. by that Robo Signer shows Bank of New York is the beneficiary, when MERS shows it to be Bank of New York Mellon, N.A., a completely different entity, which makes the Notice of Trustee's Sale null and void. Which one is the real beneficiary?

e) The only document that was purportedly recorded legally was the Deed of Trust showing that First Magnus Financial Corporation is the lender and MERS is the beneficiary, yet there was never a Trustee on this document, making it null and void. On this Deed of Trust, a legal three party contract, it is legally deficient because two of the three parties are missing. The Trustee and the Beneficiary are not legal entities to do any legal cause. How and when did that get changed? This only assignment that you created and recorded was fraudulent. This Assignment was created, signed, notarized and recorded on the same day and time as the Substitution of Trustee and Notice of Trustee's Sale documents. Obviously, this is a clear sign of the sloppiness of my loan and legal documentation, and the fraudulent activity within to cover it up. My Note was transferred into a trust at the inception of my loan, as recorded on the MERS Milestone on my Note referenced above.

f) My Deed of Trust is missing two parties of a legal document, the Trustee and Beneficiary (MERS), who has no beneficial interest in my note, and due to Legal Cause, the only way to substitute a trustee in is with Legal Cause. You are creating illegal documents using my Deed of Trust above as a basis.

**IT IS HEREBY DEMANDED THAT YOU IMMEDIATELY VOID THE <u>NOTICE OF TRUSTEE'S SALE</u>, CEASE AND DESIST ALL TRUSTEE'S SALE ACTIVITIES AND WITHIN TWENTY DAYS, RELEASE OR CORRECT ALL FALSE DOCUMENTS YOU HAVE RECORDED OR CAUSED TO BE RECORDED IN CONNECTION WITH THE BELOW REFERENCED PROPERTY.**

You are hereby noticed that you have participated in a process that is statutorily and contractually out of compliance and VOID!

IT IS HEREBY DEMANDED THAT YOU CEASE AND DESIST and CANCEL the above referenced sale as noticed by the <u>Notice of Trustee's Sale</u> which you have recorded or caused to have recorded in the above referenced County of Maricopa, Arizona.

There are numerous violations of the <u>Deed of Trust</u> that you purport to be proceeding through as well as provisions of Arizona Statutory requirements relating to the exercise of the "power of sale" You have not met the presumptions of A.R.S. § 33-811 (B) and (C) of contractual and statutory compliance. Violations include noticing, recording, mailing, publishing and posting of notice of sale and the conduct of the sale as more fully described below. Since you proceeded with the Trustee's Sale your actions are considered an attempt to unlawfully convert title of real property though the filing of forged and/or groundless documents in a public office.

The Arizona Supreme Court has ruled that foreclosing parties must strictly comply with the statutory scheme of requirements applicable to the notice and conduct of a non-judicial Trustee's Sale. Further the court has ruled that any Trustee's Sale which is held without complying with such statutory requirements is VOID. The court has also ruled that a party availing himself of the contractual provisions providing for a sale and forfeiture must comply strictly with all the requirements of the contract. You have not met the obligations of such compliance as further set-forth below.

Below are the items of non-compliance with the Arizona Trustee's Sale process found thus far.

**Contractual Violations**

According to the Arizona Supreme Court if you wish to avail yourself of a contractual provision providing for forfeiture you are required to comply strictly with all of the requirements of the contract as indicated in the below cited rulings.

1. The Deed of Trust, Section 22, for the referenced property states, "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument." The Lender, FIRST MAGNUS FINANCIAL CORPORATION, has never provided such a notice to the Borrower as is required by this contractual provision.

2. Further, the Deed of Trust, Section 22, paragraph 1, subsection (c) for the referenced property states the Lender is required to invoke the power of sale on "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured." No party has provided a breach notice allowing the contractually required 30 day cure period prior to invoking a power of sale or other remedies permitted by Applicable Law. Therefore, this foundational basis upon which a power of sale may be exercised has not been met and any action by you to initiate a Notice of Trustee's Sale is void.

3. The Deed of Trust, Section 24 for the referenced property states "Lender may, ... appoint a successor trustee to any Trustee appointed hereunder." You are in violation of the contractual provisions as the Lender, FIRST MAGNUS FINANCIAL CORPORATION, who is named in the Deed of Trust has never made an appointment of a "successor trustee" to the party so designated in the Notice of Trustee's Sale. Therefore, the Notice of Trustee's Sale is void as the cited Trustee has no authority to exercise a "power of sale" against the property.

4. The Deed of Trust, Section 15 states you must meet notice requirements which are "also required under Applicable Law." There are additional requirements under Applicable Law in Arizona. A.R.S. § 33-807.01 requires that you attempt to contact me with a 30 day written notice "to explore options to avoid foreclosure" prior to the recordation of a

Notice of Trustee's Sale. No such Written Notice has been delivered to me in the required time period.

According to the Arizona Supreme Court you are required to strictly comply with all statutory notice requirements for Trustee's Sales as indicated in the statutes and cited rulings below.

**Statutory Civil Violations**

5. A.R.S. § 33-420 (A), states, "A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action." You have caused such documents to be recorded in the county recorder's office. Per document, you are liable for a minimum sum of five thousand dollars and you may be liable for treble damages as my home has gone to trustee's sale based upon forged or groundless recorded documents which may contain material misstatements, false claims or are otherwise invalid.

6. A.R.S. § 33-420 (C), states "A person who is named in a document which purports to create an interest in, or a lien or encumbrance against, real property and who knows that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid shall be liable to the owner or title holder for the sum of not less than one thousand dollars, or for treble actual damages, whichever is greater, and reasonable attorney fees and costs as provided in this section, if he willfully refuses to release or correct such document of record within twenty days from the date of a written request from the owner or beneficial title holder of the real property." Again, you are named in such documents and have the opportunity to take corrective actions. If you take no such action within the twenty days from this notice, you will be liable to me "for the sum of not less than one thousand dollars, or for treble actual damages, which ever is greater..."

**Deed of Trust Statutory Violations**

7. MERS (Mortgage Electronic Registration Systems, Inc.) is designated as the "Beneficiary" in the Deed of Trust. For MERS to be a "Beneficiary" is a factual impossibility. MERS states on its own homepage, www.MERSinc.org, "MERS is an innovative process that simplifies the way mortgage ownership and servicing rights are originated, sold and tracked." MERS is strictly a process with a database; it cannot meet the statutory definition (A.R.S. § 33-801) of a "Beneficiary." A process is merely a methodology and a database is a compilation of information and it cannot be a

"Beneficiary" as it cannot receive payments nor can it ever hold title to an instrument pertaining to real property or the real property itself. The process elaborating how "mortgage ownership and servicing rights are originated, sold and tracked" does not create statutory status as a Beneficiary. The Beneficiary cited in the Notice of Trustee's Sale never received an authorization from an original Beneficiary as there never was a statutorily compliant Beneficiary in the Deed of Trust. Since there was never a Beneficiary established in the Deed of Trust, the Deed of Trust is void and of no force and effect. The indicated Beneficiary has no authorization to initiate a "power of sale" against the property.

8. In the event the Borrower, or someone on behalf of the Borrower, were to satisfy all obligations the Deed of Trust seeks to secure; MERS would be unable to offer the satisfaction of obligation which is required under A.R.S. § 47-3602. This is further indication that MERS is indeed NOT the Beneficiary of anything and has no authority to act in that capacity.

9. Since MERS cannot meet the contractual or statutory threshold of a Beneficiary, the Deed of Trust also fails as there can be no trust without a valid Beneficiary.

10. Additionally, MERS published Announcement Bulletin 2011-01 on 2011-02-16 (See http://www.mersinc.org/files/filedownload.aspx?id=678&table=ProductFile) in which it expressly stated that "their Members" were "NOT to foreclose in MERS' name."

11. Revised Statutes §33-804(F), which states: "Resignation by a trustee is made by recordation of a notice of resignation in the office of the county recorder of each county in which the trust property or some part of the trust property is situated at the time of the resignation. Written notice shall be given through registered or certified mail, with postage prepaid, to the Trustor and the beneficiary." No such Resignation has ever been recorded in the applicable county recorder's office. Therefore, since there was no current trustee listed on this deed of trust, this document is null and void, and can not be the original trustee as designated in the Deed of Trust. Since the original trustee, NO TRUSTEE NAMED, is still the trustee of record and has never exercised the power of sale as provided for in the Deed of Trust the Notice of Trustee's Sale is void and of no force and effect.

**Corporation Assignment of Deed of Trust Violations**

12. A.R.S. § 33-818 states that an "assignment of a beneficial interest under a trust deed… if acknowledged… shall from the time of being recorded … impart notice of the content." Additionally, A.R.S. § 33-412 (A) states, "All bargains, sales and other conveyances whatever of …, and deeds of trust and mortgages of whatever kind, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law." You are in violation of the statutory notice requirements for Trustee's Sales as, prior to the recording of the Notice of Trustee's Sale, there was never made a recorded

and acknowledged assignment of beneficial interest by an authentic and authorized party to Mortgage Electronic Registration who is designated as the beneficiary in the recorded Notice of Trustee's Sale. A.R.S. § 33-420 (C), states, "A document purporting to create an interest in, or a lien or encumbrance against, real property not authorized by statute, judgment or other specific legal authority is presumed to be groundless and invalid." There is no valid document recorded in this County prior to the filing of a Notice of Trustee's Sale which conveys beneficial interest to Mortgage Electronic Registration. Therefore, the Notice of Trustee's Sale is void as the cited Beneficiary has no authorization to exercise a "power of sale" against the property.

13. For the foregoing reasons, the Notice of Trustee's Sale is void and of no force and effect as the cited Beneficiary has no authorization to exercise a "power of sale" against the property.

**Substitution of Trustee Violations**

14. A valid Substitution of Trustee has never been made by a beneficiary with authority to appoint a successor trustee pursuant to A.R.S. § 33-804 (B) which states, "The beneficiary may at any time remove a trustee for any reason or cause and appoint a successor trustee, and such appointment shall constitute a substitution of trustee." The phrase 'for cause' must mean some cause affecting or concerning the ability or fitness of the trustee to perform the duty imposed upon him. It does not mean an arbitrary will of the appointing power, for that might be the outgrowth of mere whim, caprice, prejudice, or passion, which would, in reality, be no cause at all. The recorded Substitution of Trustee also fails to meet the requirements of A.R.S. § 33-804 (D) in that no document has ever been acknowledged that substitutes or appoints a trustee by an authorized Beneficiary or its agent. A.R.S. § 33-420 (C), states, "A document purporting to create an interest in, or a lien or encumbrance against, real property not authorized by statute, judgment or other specific legal authority is presumed to be groundless and invalid." A valid Substitution of Trustee to RECONTRUST COMPANY has never been made in accord with any contractual provision, Arizona statute or court action. Therefore, the Notice of Trustee's Sale is void as the cited Trustee has never been authorized to exercise a "power of sale" against the property.

15. Since the recorded Substitution of Trustee upon which the trustee's sale process is based are groundless and invalid pursuant to A.R.S. § 33-420; the entire Trustee's Sale process is groundless, void and of no force and effect.

16. The Substitution of Trustee recorded on the same day as the Notice of Trustee's Sale is not dated. The fact that this document is not dated invalidates this document. Additionally, there is no way to assure that the Darius Alexander personally appeared in front of the notary Alexis west. This nullifies the notary performed by Alexis West. Perhaps this is why there is a subsequent Substitution of Trustee filed four days after the recording of the Notice of Trustee's Sale This subsequent Substitution of Trustee is in-adequate in making an appointment of "ReconTrust Company" (see below) as the

Trustee for purposes of exercising a power of sale. At the time of recording the Notice of Trustee's Sale, there was no TRUSTEE named on the Deed of Trust. But yet another problem surfaces in that there is no company registered in either a state or federal capacity named "ReconTrust Company." Clearly, the Substitutions of Trustee and all future-predicant documents are void and of no force and effect.

**Notice of Trustee's Sale Violations**

17. The Notice of Trustee's Sale states that the Beneficiary is "Bank of New York." The Deed of Trust states that the Beneficiary is "Mortgage Electronic Registration Systems, Inc." There is no entity named "Bank of New York". The MERS Milestone shows the beneficiary to be the Bank of New York Mellon, N.A. This incongruity in these two documents renders the Notice of Trustee's Sale void as the named Beneficiary does not even exist. A non-existent entity could not exercise a power of sale against a Trustor. This oversight on the part of the Beneficiary and Trustee are forever causing a defect in the chain of title to the real property.

18. The address that you have listed on the Notice of Trustee's Sale is legally incorrect. You show 23410 S. 161st Way, Gilbert, AZ 85297 as the address that is being foreclosed on. That is not the current legal address. The legal address is 6312 S. 161st Way, Gilbert, AZ 85298. There is no address or property registered at that location at all. But that address is not participating in this Trustee's Sale process. For this matter there is no valid Notice of Trustee's Sale recorded against the Trustor's property.

**Procedural Notice Violations**

19. A.R.S. § 33-809 (C), states "The trustee, within five business days after the recordation of a notice of sale, shall mail by certified or registered mail, with postage prepaid, a copy of the valid Notice of Trustee's Sale." I was not mailed such a copy within the required five business days after the recording of the Notice of Trustee's Sale.

20. A.R.S. § 33-809 (C), states that the parties to the trust deed shall be mailed "a statement that a breach or nonperformance of the trust deed or the contract or contracts secured by the trust deed, or both, has occurred." I was not mailed such a statement within the required five business days after the recording of the Notice of Trustee's Sale nor was one mailed with any required mailing of a copy of the recorded Notice of Trustee's Sale.

21. A.R.S. § 33-808 (A) (3), states that the property shall be posted with a copy of the Notice of Trustee's Sale. No proof exists that the property has ever been posted with such a copy of the Notice of Trustee's Sale.

22. A.R.S. § 33-808 (A) (4), states that there shall be published a written notice of the Notice of Trustee's Sale. No proof exists that such publishing took place in a "Newspaper of General Circulation" as required.

23. A.R.S. § 33-808 (A) (3), states that there shall be posted a written notice of the Notice of Trustee's Sale in a "Public place at the Superior Court in the County." No proof exists that such posting ever took place in this county's Superior Court as required.

**Notice of Trustee's Sale Violations**

24. The Notice of Trustee's Sale is built upon a trail of false and forged documents. Such a sale is not within the confines of the Arizona Statutes or the Deed of Trust. The sale will be exercised under a power of sale for a "non-entity" beneficiary by a "non-entity" trustee. The chain of custody and the chain of title of both the Trustee and the Beneficiary leading to the Notice of Trustee's Sale are severely defective. "Bank of New York" (a non-entity) attempted to appoint "ReconTrust Company, N.A." to conduct an illegal sale that resulted in the property being granted to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE TRUST that it purportedly is in. This sale is void and of no force and effect.

**Statutory Criminal Violations**

25. A.R.S. § 39-161, states, "A person who acknowledges, certifies, notarizes, procures or offers to be filed, registered or recorded in a public office in this state an instrument he knows to be false or forged, which, if genuine, could be filed, registered or recorded under any law of this state or the United States, or in compliance with established procedure is guilty of a class 6 felony." You are fully aware and herein redundantly noticed that the documents you have recorded or caused to have recorded with this county's recorder's office are false or forged. Your past and continued efforts to knowingly record false or forged documents are deemed by statute to be criminal in nature and subject to damages and other remedies as may be deemed appropriate by a court of law.

26. As demonstrated above, known criminal activity has taken place by you in proffering instruments for recordation in public offices within the state of Arizona. Your documents are false and forged and therefore any Notice of Trustee's Sale which is predicated on those documents is void and of no force and effect.

**Supporting Arizona Supreme Court Cases**

*Patton v. First Federal Savings And Loan Association of Phoenix*, 118 Ariz. 473, 578 P.2d 152, 153 (1978) (holding, "If a trustee's sale, conducted pursuant to a deed of trust, is held without complying with statutory notice requirements, such a sale would be VOID, for statutes set forth only procedure for a valid trustee's sale. A.R.S. § 33-801 et seq.")

*Schaeffer v. Chapman*, 176 Ariz. 326, 861 P.2d 611 (1993) (holding, "We repeatedly have held that contracts will be strictly construed to avoid forfeitures" and "30-day notice period in deed of trust was separate from 90-day period set forth by statute and lenders' failure to give total of 120-day notice prior to sale was breach of deed of trust.")

*Glad Tidings Church of America v. Hinkley*, 71 Ariz. 306, 226 P.2d 1016 (holding, "the law does not favor forfeitures and if a party would avail himself of a contractual provision providing for such a forfeiture, he must comply strictly with all the requirements of the contract.")

**Federal Violations**

You are additionally noticed that there are violations of Federal Statutes including but not limited to the following.

27. According to the United States Postal Inspection Service Mail Fraud includes any scheme that attempts to unlawfully obtain money or valuables in which the postal system is used at any point in the commission of a criminal offense. There are two elements to mail fraud: (1) a scheme or artifice to defraud; and (2) a mailing to carry out the scheme. Pursuant to U.S.C.A 18 § 1341 you are participating in a scheme or artifice to defraud me of – title and possession of my real property. You have used the United States Postal Service in an attempt to unlawfully obtain money or valuables from me. You are attempting to divest me of my property. For the reasons cited above, the false documents you have devised and mailed in an intentional scheme to obtain property from me subject you to 18 U.S.C.A § 1341 which states as follows:

    > Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

28. Wire fraud, in the United States Code, is any criminally fraudulent activity that has been determined to have involved electronic communications of any kind, at any phase of the event. To commit wire fraud, one must (1) devise, or intend to devise, a scheme or

artifice to defraud another person on the basis of a material representation, and (2) do it with the intent to defraud, and (3) do it through the use of interstate wire facilities (i.e. telecommunications of any kind). Pursuant to U.S.C.A 18 § 1343 you are participating in a scheme or artifice to defraud me of – title and possession of my real property. You have used transmitted or caused to be transmitted material in an attempt to unlawfully obtain money or valuables from me. You are attempting to divest me of my property. For the reasons cited above, the false documents you have devised and wired in an intentional scheme to obtain property from me subject you to 18 U.S.C.A § 1343 which states as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

29. Pursuant to the Fair Debt Collections Practices Act 15 U.S.C.A. § 1692 et. seq., you are making "false, deceptive and misleading representations" in the collection of the alleged debt as there is not named in the recorded <u>Notice of Trustee's Sale</u> a valid Beneficiary or Trustee. You are not "vouched" as a Debt Collector entitled to pursue the collection of the alleged debt. You are threatening to "take an action that you cannot legally take." You are also representing that your insufficient documents are "legal process." You are using a "business or company name other than the true name of the debt collector's business or company."

30. Since you are communicating personal credit information you know to be false you are further in violation of the Fair Credit Reporting Act pursuant to 15 U.S.C.A § 1681 et. seq. Therefore, it is further demanded that you cease your erroneous reporting and expunge from my Credit Report any derogatory information you may have communicated to any and all Credit Reporting Agencies.

## <u>Demand</u>

IT IS HEREBY DEMANDED THAT YOU IMMEDIATELY VOID THE <u>NOTICE OF TRUSTEE'S SALE</u>, CEASE AND DESIST ALL TRUSTEE'S SALE ACTIVITIES AND WITHIN TWENTY DAYS, RELEASE OR CORRECT ALL FALSE DOCUMENTS YOU HAVE RECORDED OR CAUSED TO BE RECORDED IN CONNECTION WITH THE ABOVE REFERENCED PROPERTY.

A.R.S. § 808 (F), states, "The notice of trustee sale may not be rerecorded for any reason." Therefore, you are hereby demanded to file with this county's Recorder's Office a <u>CANCELLATION OF NOTICE OF TRUSTEE'S SALE</u> on the referenced <u>Notice of Trustee's</u>

Sale immediately. You are also demanded to deliver to me a fully executed copy of the same document to me at the referenced property address.

There has been no notice of my right to file a lawsuit against you as per my rights. On January 07, 2011, the Massachusetts Supreme Court ruled against US Bank in the Ibanez Case, in a foreclosure-related case where these banks were foreclosing on a property where they had no right or authorization to do so. They did not have possession of the Deed of Trust, Promissory Note, or Title to properties they had bought at foreclosure sales, and the court stated that the banks failed to show they held the underlying mortgages at the time of foreclosure. As a result of a failure to hold these mortgages, these banks failed to show they acquired title to the properties. This is similar to my case. The legal citation on that case that applies here is U.S. Bank National Association v. Ibanez, 458 Mass. 637, 2011 WL 38071 (January 07, 2011). There are five other cases that I would cite also: In Re: Zitta, US Bankruptcy Court D. Arizona; US BK Court D. New Jersey, Kemp vs. ; US BK Court D. Eastern New York, In re: Agard; Bank of New York vs. Raftogianis, Superior Court of New Jersey; Arizona SB 1259, Proof of Ownership and Title.

Some of the complaints I have with you and the above entities is the Wrongful Lien and False Claim of my loan documentation, including my recorded documents on my property. Also included in this complaint is the Fraudulent handling and activity with my Note, as shown in the Uniform Commercial Code (UCC) Article 3-203 through 3-207; and UCC 3-301 through 3-308; and UCC 3-104 (a) through (d). To be specific, the Assignment on my Deed of Trust and Note was created by a Robo Signer on the same day and time, signed by his Robo Signer Notary and recorded on the same day August 24, 2011 to an unknown entity, Bank of New York.

This Assignment was fraudulently created, signed and notarized. The signor, signed it as an Assistant Secretary to Mortgage Electronic Registration Systems, Inc. (MERS), when he has never worked for MERS. He forged his name as an employee of MERS, when he never was. Then, his notary attested to the fact that he was an Assistant Secretary to MERS. When, in fact, both worked for Bank of America, N.A. or ReconTrust Company, N.A., who they were attempting to sign the Assignment over to. This is such blatant FRAUD and a conspiracy to cover the illegal handling of my Note and Deed of Trust. My note was separated at the inception of my loan, thus causing my Deed of Trust to be null and void. Of this three party contract, my Deed of Trust, two of the three parties are non-existent or not qualified to be in that position.

With an unknown trust or certificate as beneficiary for the trust that holds my Promissory Note and Deed of Trust, I have no specific address for the legal holder of my note to contact. There was no assignment of my Promissory Note and Deed of Trust to BANK OF NEW YORK or BANK OF AMERICA, N.A. from the inception of my loan, as recorded on the Mortgage Electronic Registration Systems (MERS). The last three documents that were recorded on my Deed of Trust and property were the Assignment, Substitution of Trustee and Notice of Trustee's Sale. All of them signed by a Robo-Signer, and all of the documents Fraudulent, signed without authority. This fraudulent and sloppy documentation and recording is part of what has caused all of this documentation to be fraudulent, thus making it null and void.

Because of this fraudulent Assignment, it caused several other legal documents to be recorded into public records, which were also fraudulent. These other documents, the Substitution of Trustee and the Notice of Trustee's Sale Documents, were filed and recorded fraudulently.

There was no legal authorization to create or record the Substitution of Trustee document. This Substitution of Trustee document was fraudulently created, signed, notarized and recorded. The signature on this document is also forged, as it is not the same as other documents by Robo Signer. This signature is very different from the various other recorded documents by him.

Another issue with the fraudulent activity on my Note and Deed of Trust is: Is this a sloppy attempt to cover up the Fraud created on the Deed of Trust? Not only is the Deed of Trust and subsequent Assignment Fraudulent, it proves the Fraud, Forgery, and Perjury of the signors of this document recorded on August 24, 2011. This will be forwarded to the investigative agencies for their review on Bank of America, N.A., ReconTrust Company, N.A., and Bank of New York Mellon, N.A. This is more acts of blatant Fraud, among other crimes, committed against me and on my loan documentation.

With these fraudulent Assignments and Substitution of Trustee Documents recorded, it gave ReconTrust Company, N.A. the ability to create and file the Notice of Trustee's Sale document to foreclose on my home. It is obvious that they created the above documents, ever so sloppily and illegally, so that they could create this Notice of Trustee's Sale (NOT). Both notaries on these two documents, the Assignment and the Substitution of Trustee, committed fraud, forgery and perjury on these documents. All three people on these two documents work for ReconTrust Company, N.A., the purported and self appointed trustee to my Deed of Trust and Promissory Note. ReconTrust Company, N.A. did not have any right or legal authority on my Note or Deed of Trust. It is evident that these documents were fraudulently created solely for the purpose of foreclosing on my home. **On this NOT, it states that ReconTrust Company, N.A. is the beneficiary, which the Assignments show that they are not. Also, on my Deed of Trust, MERS is the beneficiary, not ReconTrust Company, N.A. This makes the Note and the NOT null and void. The three signors of these recorded documents and the notaries should be investigated for their fraud, forgery and perjury of legal documents on my property. All three are employees of the purported trustee, ReconTrust Company, N.A. These illegal acts will be forwarded to the proper agencies for their investigation. The recorded NOT on my property is fraudulent, null and void.**

The only person or company that could have assigned any of these documents was the beneficiary, MERS, if done so when the document or note was actually assigned. Not now, where the assignment is either nonexistent, or fabricated in order for the foreclosing trustee to get legal right to foreclose on my property. A copy of these facts will be forwarded to the Arizona State Bar Association for further investigation on ReconTrust Company, N.A.

Neither RECONTRUST COMPANY, N.A., BANK OF AMERICA, N.A., MERS nor BANK OF NEW YORK has any authority to file any documents or give any notice on my mortgage or Promissory Note. There should have been an assignment done when the note was actually transferred on DECEMBER 18, 2006, as is stated on the MERS Milestone with the above MIN # on my property. There is no filing of proof of claim. This causes an FDIC claim, and consequently, will be forwarded to the FDIC as well. This also causes a Title Claim, and will be forwarded to the Title Company for a claim on the Title Insurance.

Along with the previously submitted Notices and Demands, further investigation has proven that on **DECEMBER 18, 2006**, I acquired my Deed of Trust and Promissory Note where FIRST MAGNUS FINANCIAL CORPORATION is my lender and MERS is my Beneficiary, and there is NO TRUSTEE LISTED ON MY DEED OF TRUST. Nowhere does it show any transfer to

BANK OF AMERICA, N.A. or BANK OF NEW YORK from FIRST MAGNUS FINANCIAL CORPORATION. There is no Assignment of my Promissory Note or Deed of Trust from First Magnus Financial Corporation or MERS to the Trust or Certificate where it is being held and traded now, as still reported on the MERS Milestone, even though it has been through foreclosure. It legally should have been done at the inception of my loan in 2006, not now when Bank of America, N.A. and ReconTrust Company, N.A. is attempting to foreclose on my home. Nowhere is it documented that BANK OF AMERICA, N.A. or ReconTrust Company, N.A. has any authority to sign on behalf of Bank of New York, First Magnus Financial Corporation, MERS or the unknown or Listed TRUSTEE ON MY DEED OF TRUST.

The note is being traded in an unknown trust that Bank of New York is the trustee of. I have demanded to see the earnings of my note in this trust, and where the profit and loss statements are for my review. I also have demanded to see and verify the documents confirming the taxes paid to the Internal Revenue Service on these earnings on my note and the fees paid to the Securities and Exchange Commission. I also demand to know the investors of the trust where my note is being traded, along with all of their contact information.

There is no documentation that shows the current holder of my Promissory Note has any right to hold or be in possession of my note. I demand to know who the holder of my note is and where it is. Since there have been no legal assignments on my Promissory Note, I am assuming that it is being held and traded illegally, and I demand that my Deed of Trust be reconveyed back to me. The actual assignment of my Promissory Note should have been done when the Promissory Note and Deed of Trust was assigned and transferred to this unknown trust over five (5) YEARS ago. Therefore, unless proven otherwise, and a current copy of the Promissory Note dated **DECEMBER 18, 2006** is provided with the Allonge and all current transfers, assignments, endorsements and stamps, the note is considered null and void. You have transacted my Promissory Note and Deed of Trust incorrectly and possibly illegally by separating the two and causing illegal and fraudulent assignments, again causing an FDIC and Title claim with the Lender and Title Company because of the Defect of Title. At this point, the title cannot be transferred. There is no disclosure, and the title is not proper or judicially correct. It is unknown at this time where my Promissory Note is being held, and traded. Further investigation will retrieve the milestones at MERS and the SEC for verification. I demand a copy of these documents showing the Milestones of my Promissory Note.

There was no transfer or assignment of my Promissory Note or Deed of Trust to give any of these companies or people the authorization to take any legal action or foreclose on my property. I actually accepted and signed my paperwork, including the Deed of Trust and Promissory Note on DECEMBER 18, 2006, as notarized and recorded. It appears that my note was illegally assigned and securitized prior to me endorsing or authorizing this note. I was induced to sign this document, because it had already been sold prior to me doing the deal, or authorizing my credit to be used, thus committing an illegal act against me. My note was assigned to a trust on DECEMBER 18, 2006, thus starting the securitization of my Promissory Note. I have demanded all documents on this note and loan documents, to include the MERS Milestones, to see what Trust or Certificate the Promissory Note is being traded, bought and sold. This is creating an obvious FDIC claim, and an impossibility for any title company to give clean and clear title to my property, without knowing who owns the Promissory Note and Deed of Trust, or chain of title. There is no evidence that any taxes have been paid on my note or earning made for the past three (3) years. How many felonies have been committed with my note, against my wishes?

Another big issues is: **WHY IS MY NOTE STILL BEING TRADED** in this Trust and in the MERS System **AFTER THE TRUST STOPPED OPERATING AND IS NO LONGER IN EXISTENCE?** IT IS EVIDENT IN THE MERS MILESTONE AND THE MERS DOC. This is Fraud with the SEC and also Bank Fraud. Under the UCC Article 3 and UCC Article 8, you can not do that. Also, once the Note was transferred to this Trust and converted to a Financial Instrument, no one can take it back out of the trust and convert it to Promissory Note again and take legal action against it, to include foreclosure. So, the foreclosure action that is being taken to sell my property on November 28, 2011 will be done so illegally, and without legal merit. The entire foreclosure action is thereby null and void.

You incorrectly transferred my loan to BANK OF AMERICA, N.A. and my Promissory Note to BANK OF NEW YORK showing that my loan was securitized, as the Note and Deed of Trust were separated and securitized. On further investigation, the Promissory Note is in a trust. BANK OF AMERICA, N.A. is the Master Servicer. Neither Bank of New York nor BANK OF AMERICA, N.A. is the beneficiary, as stated on the Deed of Trust. The Investors in the Trust that holds my Promissory Note above are the beneficiaries. Neither ReconTrust Company, N.A., Bank of New York nor BANK OF AMERICA, N.A. has the right to order any legal action against me or my home. The Note and Deed of Trust dated above were separated at the inception of the loan as indicated. Again, the note is considered null and void. You have committed felonies against me by illegally using my promissory note for your financial gain.

I demand that you reconvey my Deed of Trust back to me, or issue a Quit Claim Deed back to me on my property. I demand a copy of the agreement between the Servicer and Trustee on this property. I also demand a copy of the Pooling and Servicing Agreement and the agreement between the Certificated Holders on the Trust and the Trust. I also demand a copy of the Prospectus Supplement and Prospectus Dated for the above listed Trust, where my Promissory Note is being. Attached to this fax cover page is the Notice and findings of my Expert Bank Witness and Private Investigator, one of who found the Promissory Note, and the documentation mentioned above where there was an incorrect and possibly fraudulent transfer and no assignment of Deed of Trust. I also demand a copy of the following documents:

1) The 2046 balance sheet as it relates to the original "loan" which is a mandatory filing pursuant to Title 12 U.S.C. 248 & 347
2) The 1099 OID (Original Issued Document)
3) The S3 A registration statement
4) The 424 B-5 prospectus
5) The RC S & RC B call schedules.
6) The FAS 125, 133, 140, 5, and 95. [FASB (Financial Accounting Standards Board) part of GAAP (Generally Accepted Accounting Standards)]

The original Note and Deed of Trust was sold/assigned/transferred to BANK OF AMERICA, N.A. as should be stipulated in the Pooling and Servicing Agreement (PSA) of this servicer, yet it is not. The original Note was not endorsed by manual or facsimile signature in BLANK form and was not properly endorsed. The Beneficiary, who appears to be BANK OF AMERICA, N.A./FIRST MAGNUS FINANCIAL CORPORATION or Mortgage Electronic Registration Systems (MERS), has no authority to transfer any authority on my Deed of Trust. The Original Trustee is NO TRUSTEE ON DEED OF TRUST Below is a list of charges:

1. There is no one entity as in a lender foreclosing on the home, but an economic interest. TARP and FDIC programs do offer significant conflicts in terms and meanings which are grounds to hold up a foreclosure.
2. The foreclosing entity is backed by the FDIC. The government support is directed from the Department of Treasury. The foreclosure is deceptive and not what you see and grounds to file injunction to stop foreclosure.
3. This foreclosure madness requires the foreclosing entity to bridge the gap between securitizations and stock registrants. I intend to use the FDIC to confirm how the foreclosure can be stopped where parties bringing the recovery are lost to the form and substance of their collateral.
4. I am moving to stop my foreclosure under the true meaning of a security in a mortgage or deed is the right of holder in due course to foreclose. By the FDIC admission, the foreclosure offers no holder in due course upon a preconditioned transfer by assignment.
5. By the FDIC declining to comment, I do believe Washington is likewise concerned with my findings in regards to the accounting rules breach and FAS 140 3. Servicers cannot foreclose without breaching the accounting rules under GAAP.
6. Risk Loss Share is in fact a FDIC participating factor in "each" foreclosure by member banks and is administered by on a loan by loan basis. This is the strongest argument made to obtain a stay for a proposed sale.

Below is the Notice and findings of my Expert Bank Witness and Private Investigator.

According to the research of the Expert Bank Witness who will testify in court if this proceeds:

a. The Deed of Trust shows that the BENEFICIARY appears to be <u>MERS</u>. The Original Trustee is NO TRUSTEE ON DEED OF TRUST Ins. There was no recording to change either the Trustee or the Beneficiary up to this point. On the face of the Deed of Trust sent to me by BANK OF AMERICA, N.A. On behalf of FIRST MAGNUS FINANCIAL CORPORATION that was recorded through the County Recorder. A Notice of Mortgagee's Intention to Foreclose was never filed by **FIRST MAGNUS FINANCIAL CORPORATION**, hence they had no authority to authorize, pursue or conduct any actions of collection on the above property.
b. Had BANK OF AMERICA, N.A. been properly substituted in as Trustee, Lender, or Beneficiary, they still remain only the servicer of the Trust Fund and MERS with no beneficial interest, secured interest or any standing in this loan.

Therefore, aside from never executing proper substitution, the naming of this or any Substitute Trustee is invalid.

c. NO ASSIGNMENT OF DEED OF TRUST: THIS WAS NOT FILED THOUGH THE COUNTY RECORDER. Now Mortgage Electronic Registration Systems, Inc. (MERS) is attempting to assign the Deed of Trust to BANK OF AMERICA, N.A. MERS was the original Beneficiary named on the Deed of Trust "as nominee for the Lender." They do not and have never had any beneficial interest in this loan as has been decided in many of the courts including the local Superior Court.

d. Naming (MERS) as the Beneficiary voids the Deed of Trust, because it creates an immediate cloud on title and impedes the marketability of title. The reason it creates a cloud on title is that on its very face, it's a declaration that the parties are naming an uncapitalized interest in the property to affect a series of unrecorded transactions that will not be recorded in accordance with Arizona recording statutes.

e. From the beginning, when and if MERS is designated as the Beneficiary on the deed of trust, which it intended and did include with the language, in bold print, in the Deed of Trust stating "**MERS is the Beneficiary under this Security Instrument,**" it is indicated that from inception of the transaction, MERS and the other Defendants intended to make unrecorded, off record transfers. I have named this the "MERS Gap" and it has a devastating effect on the certainty of real estate transactions that the recording statutes are designed to protect. At the close when the property is sold, conveyed, refinanced, or foreclosed, there is contemplated a new series of documents that will be concurrently created and will disclose the "present owner" of the beneficial interest in the property. In between, in the years of MERS gap, one can ascertain that there have been a series of transfers and possible third party owners, who were unrecorded and undisclosed, and who may be lying in wait with potential claims against the interests in the property.

f. Designation of MERS as the Beneficiary instantly clouds title beyond the point where it can be cured. Therefore, it is void at the time of execution. The deed of trust is void and the property cannot be sold pursuant to a void of deed of trust. Any purported sales on a failed deed of trust are likewise of no legal effect, but void at the inception.

g. Designating MERS as the Beneficiary has the same legal effect as filling out the Beneficiary in blank. Arizona law holds that a blank deed of trust is invalid.

h. The interest in the obligation, the note as evidence of the obligation, and the security interest for the obligation were transferred without recording the change in ownership of an interest in real property in the appropriate county records. This was accomplished by the creation of a record keeping service known as MERS, which is named in the Deed of Trust as a Beneficiary and a nominee but not as a holder or lender except for the purposes of deceiving the borrower and the clerk's office where the document was to be recorded. The purpose as expressed by industry members of MERS and MERS itself is to side-step state recording requirements. The effect of the exclusive use of MERS or any private parallel system of record keeping, without complying with state law by recording appropriate documents within the county in which the subject property or property interest is located, is to create a permanent cloud on title and marketability of title; this cloud exists because of the disclosure of MERS as a parallel record keeping system but withholding the records from the state and notice to the world of the parties who could claim an interest in the property, the obligation, the note or the security interest.

i. Looking at who the Assignor and Assignee are brings up many more questions as to what is really going on. The Assignor is BANK OF AMERICA, N.A. (How did they become assignor?) And they are now assigning it to a Trust for securitization. NO TRUSTEE ON DEED OF TRUST Ins. is already the Trustee for the Trust Fund when the Loan was sold/transferred into it shortly after the close of escrow.

j. There is no way that any of this can take place according to the rules in the Pooling & Servicing Agreement and according to REMIC, along with the Agreement between the Servicer and the Trustee.

k. The only potential holder in due course of a note falls within one or more of the following classifications:

(1) Investors who purchased asset backed securities in which ownership of the loans were described with sufficient specificity as to at least express the intent to convey ownership of the obligation as evidenced by the Promissory Note and an interest in real property consisting of security interest held by an entity that was described as the Beneficiary of a Trust created by an instrument entitled Deed of Trust;

(2) Insurers that paid some party on behalf of said investors;

(3) Counterparties on credit default swaps;

(4) Conveyances or constructive trusts arising by operation of law through cross collateralization and over-collateralization within the aggregate asset pools or later within the Special Purpose Vehicle tranches ("tranches") is an industry term of art referring to the types of division within a Special Purpose Vehicle);

(5) The United States Treasury Department through the Troubled Assets Relief Program in which approximately $600 billion of $700 billion has been authorized and paid to purchase or pay the obligation on "troubled" (non-performing) assets, with loans such as Me's being designated as a class of assets targeted by TARP;

(6) The United States Federal Reserve, which has extended credit on said troubled assets and has exercised options to purchase said troubled assets;

(7) Any other arty that has traded in mortgage backed securities from the aggregated pools or securitized tranches containing interests in the loans.

l. The parties listed above, its successors in interest and MERS Inc. do not fall within any of the classifications of holders in due course on the subject loan.

m. The parties listed above, its successors in interest and MERS Inc. have not suffered any financial loss relating to the loan.

n. The parties listed above, its successors in interest and MERS Inc. have never been the real party in interest as a lender or financial institution underwriting a loan while funding same with respect to the subject loan;

o. The parties listed above, its successors in interest and MERS Inc. suffered no monetary loss through non-performance of the loan;

p. The parties listed above, its successors in interest and MERS Inc. have received fees and profits relating to the loan;

q. The existence and identity of the real parties in interest was withheld from me in the closing and servicing of the loan.

r. This loan does not fall in the category of loans intended to be covered by Arizona law providing for non-judicial remedies. Without giving notice to all potentially interested stakeholders using service of process, a non-judicial foreclosure of a securitized loan does not dispose of the matter. Since there is no procedure for service of process without a lawsuit, the only procedure available is judicial.

s. I have no knowledge, but have demanded information from the loan servicers and its agent and done due diligence to determine whether the note, security interest, or obligation has been extinguished or paid in whole or in part by co-obligors, insurers and/or federal bailout. The "election" of non-judicial process shifts the burden to the borrowers in the loans to allege facts that are solely within the knowledge of the Defendant's and its successors in interest which were intentionally withheld by the Defendant and its successors in interest.

t. In the securitization of the loan, the rights of various named Trustees have been superseded by succeeding trustees ending with the Trustee for the holders of mortgage backed securities, alleged to be Deutsche Bank National Trust Company in the recorded documents in the present case, whose powers are limited to ONLY what the certificate holders authorize. Accordingly, the only potential party to foreclosure wherein the Defendants allege financial injury and therefore a right to collect the obligation, enforce the note or enforce the security instrument is either a party who has actually lost money or stands to lose money, or an authorized representative who can show such authority and is answerable to the claims, affirmative defenses and counterclaims of the borrowers for such causes of action or defenses as might be applicable.

You are hereby demanded to cancel, within 10 days, any "Legal Action" which has been allegedly recorded per the loan for the home located as stated above.

You are participating in a process that is legally insufficient and VOID on its face! The Arizona Supreme Court (and others) has ruled that lenders must strictly comply with Deed of Trust and Promissory Notes statutes. Further the court has ruled that any Trustee's Sale which is held without complying with the notice requirements of statutes would be VOID. You are required to put in the Legal Action or Notice of Default as per the Deed of Trust that I have the right to cure the default and a Notice that I may file a law suit against the lender. You have done neither of these. Therefore, your Legal Action has been filed problematically. I demand a copy of the Pooling and Servicing Agreement (PSA), and a copy of the agreement between the Servicer and New Trustee. These agreements must show the responsibility and liability of recording documents that may be fraudulent. My research shows this might be the case.

As an attachment to the previous notice sent, other information has been discovered about the transfer of my loan and note. The Lender and the others listed above have no right to my note because of the improper transfer, endorsement and assignment of the note. The actual holder of the note improperly assigned the note, with no endorsement. Only the holder of the note can properly endorse and transfer the note when it is sold or assigned. As to be held in Discovery, produce the original note and a copy of the note to me for verification of these findings within 60 days at the place of your choosing in my city.

**I will need only 48 hours notice for my experts to review the fingerprint, handwriting analysis and this Electronic Information Code at the bottom of the Note showing the Transfer, endorsements and Chain of Custody upon Transfer. This Code must be on the Note for verification and registration, along with any and all Allonges.**

I am in receipt of your letter and voicemail regarding your request for items to qualify for a loan modification. I have not received any response regarding the Letter that I sent certified mail in