Ivaylo Tsvetanov Dodev,

c/o 6312 South 161st Way
Gilbert, Arizona
(480) 457-8888 Phone
(480) 457-8887 Facsimile
dodev@hotmail.com

Pro Se

**FILE ON DEMAND
FOR THE RECORD**



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivaylo Tsvetanov Dodev,<br><br>**Plaintiff,**<br><br>vs.<br><br>**RECONTRUST COMPANY, N.A., ET AL**<br><br>**Defendants.** | Case No.  CV-13-02155-PHX-GMS<br><br>**CWALT ALTERNATIVE LOAN TRUST 2007-OA7 POOLING AND SERVICING AGREEMENT OFFER INTO EVIDENCE WITH PLAINTIFF'S BRIEF**<br><br>Hon. G Murray Snow |

**Hon. G Murray Snow,** Plaintiff, Ivaylo Tsvetanov Dodev, *pro se*, ("Plaintiff"), **respectfully request leave to file an oversized brief in this case**. As declared in Plaintiff's First Amended Complaint, ("FAC"), the issues in this Verified Action-at-Law are complex, and although Plaintiff's desire is to submit as little evidence as possible in order to avoid costly litigation, Defendants, through counsel, remain steady on their course of <u>Fraud, Tax Evasion and Perjury</u> and through this Brief ("Brief"), Offered Into Evidence, along with a Certified copy of the Pooling and Servicing Agreement of CWALT ALT 2007-OA7 ("PSA"),  Plaintiff will further

unveil the intricate elements of crime Defendants have clad themselves with, essential for just adjudication in this Action.

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| GENERAL OVERVIEW OF SECURED TRANSACTIONS AND ANALYZING PLAINTIFF ASSIGNMENT TO CWALT ALTERNATIVE LOAN TRUST 2007-OA7 | | 1 |
| I. | SEPARATION OF THE INTANGIBLE OBLIGATION FROM EVIDENCE OF OBLIGATION | 2 |
| II | TRANSFER OF A NOTE | 3 |
| III. | TRANSFER OF A MORTGAGE | 5 |
| IV. | SEPARATION OF TANGIBLE INSTRUMENTS | 5 |
| V. | THE MORTGAGE AS A CONTRACT | 7 |
| VI. | MBS TRUSTS ARE GOVERNED BY TRUST DOCUMENTS | 8 |
| VII. | SECURITIZATION OF PLAINTIFF'S MORTGAGE LOAN INTO CWALT ALT 2007-OA7 | 9 |
| VIII. | AS MULTIPLE CLASSES OF THE CWALT ALT 2007-OA7 OWN THE PLAINTIFF OBLIGATION, MULTIPLE CLASSES OF THE CWALT ALT 2007-OA7 ARE REQUIRED TO HAVE OWNERSHIP OF THE PLAINTIFF NOTE AND MORTGAGE. | 11 |

ii

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

IX.   AS IT CURRENTLY STANDS, MULTIPLE CLASSES OF THE      13
      CWALT ALT 2007-OA7 CANNOT CLAIM OWNERSHIP OF
      EITHER THE PLAINTIFF NOTE OR THE PLAINTIFF MORTGAGE

X.    THE DOCUMENT PURPORTING TO BE AN "ASSIGNMENT"       20
      DATED AUGUST 24TH, 2011 IS INVALID AS AN ASSIGNMENT
      OF MORTGAGE

XI.   THE BANK OF NEW YORK MELLON HAS NO CLAIM TO         26
      OWNERSHIP OF THE PLAINTIFF NOTE

XII.  THE TERMS OF THE PLAINTIFF MORTGAGE HAVE BEEN       37
      VIOLATED AND THE PLAINTIFF MORTGAGE IS
      UNENFORCEABLE

XIII. OWNERSHIP OF THE PLAINTIFF OBLIGATION CANNOT        29
      BE REJOINED TO OWNERSHIP OF THE PLAINTIFF NOTE
      OR THE PLAINTIFF MORTGAGE

XIV.  WITH OWNERSHIP OF THE PLAINTIFF OBLIGATION          30
      STRIPPED AWAY AND NO WAY TO ENFORCE THE
      CONDITIONS UNDER THE PLAINTIFF MORTGAGE, THE
      PLAINTIFF LOAN IS A NULLITY

CONCLUSION                                                33

**TABLE OF AUTHORITIES**

**Cases**

*Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 125, 130 Cal. Rptr. 3d 815 (2d
Dist. 2011) .......................................................................................................... 14

*Commercial Money Ctr., Inc.*, 350 B.R. 465, 473-79 (B.A.P. 9th Cir. 2006) ................ 3

*Hyde v. Mangan*, 88 Cal. 319, 327, 26 P. 180 (1891) ........................................ 8

*Johnson v. Razey*, 181 Cal. 342, 344, 184 P. 657 (1919) ................................... 8

*Kelley v. Upshaw*, 39 Cal. 2d 179, 192, 246 P.2d 23 (1952) ............................. 8

*Polhemus v. Trainer*, 30 Cal. 685, 688, 1866 WL 831 (1866) ........................... 8

*Smith v. J.R. Newberry Co.*, 21 Cal. App. 432, 131 P.1055 (2d Dist. 1913) ............ 7

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

1

**Statutes/Codes**

2

15 USC 41 §1641(g) ............................................................. 13

3

15 USC 96 §7003 ................................................................. 17

4

18 USC 47 §1021 ................................................................. 12

5

26 USC §860F(A) ................................................................ 25

6

26 USC §860G-(A)10 ........................................................... 25

7

UCC Article 3 ............................................................... 3, 5, 26

8

UCC Article 7 ..................................................................... 26

9

UCC Article 9 .................................................................... 2, 5

10

**Other Authorities**

11

Prospectus Supplement p.S-38 ............................................... 23

12

PSA Exhibit F-1 .................................................................. 32

13

PSA Section 1.01 ................................................................. 10

14

PSA Section 2.01 ................................................................. 26

15

PSA Section 2.02 ................................................................. 31

16

PSA Section 2.05 ................................................................. 34

17

Uniform Covenants of Deed Article 20 ................................... 20

18

**Regulations**

19

26 CFR §860 ...................................................................... 29

20

26 CFR §860D-1c(2) ............................................................ 25

21

22

23

24

25

26

27

28

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

## INTRODUCTION

Plaintiff's Brief will analyze, through lawful methods of dissent, the contradictions between the PSA and the purported CORPORATION ASSIGNMENT OF THE DEED OF THE TRUST ARIZONA, ("Assignment"), Doc. 42-22, and the conflicting MOTIONS TO DISMISS, Doc. 40 and 42, submitted by the Attorneys for the Defendants, ("Counsel"). For the purpose of this Brief, Plaintiff will assume that the DEED OF TRUST, Exhibit "I" under Doc.1-2, and the ADJUSTABLE RATE NOTE ("THE NOTE"), Exhibit "K" under Doc.1-2, are still tangible and pertain to his land even though his signature has been rescind and the validity of these two documents has been revoked, Exhibit "L" AND "J" under Doc.1-3, due to fraud. Further. Plaintiff believes and alleges in his complaint, Doc. 18, that Deed of Trust and the Note are not legal, binding contracts and are not properly indorsed, are executed without consideration, and that no money were ever given to him. Plaintiff has never acquiesced to being borrower and never accepted any offer to modify debt from the defendants, and each of them [debt collectors], as he **believes and alleges that they are not a party related to those documents, or, respectfully, party to foreclose, and they have committed fraud, tax evasion and perjury according to the PSA and the purported Assignment.**

## GENERAL OVERVIEW OF SECURED TRANSACTIONS AND ANALYZING PLAINTIFF ASSIGNMENT TO CWALT ALTERNATIVE LOAN TRUST 2007-OA7

1. Ownership of the intangible payment stream collected from a Mortgage Loan can be bought, sold and transferred. This transfer of ownership is evidenced through

1

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

the sale of a certificate funded by payment stream(s) received from payments made upon **what will be defined within this Brief as the "Obligation".** Ownership of the Obligation via buying and selling the certificates (intangible payment stream) is allowable under the governance of UCC Article 9, as a Transferable Record. Transferred ownership can be seen though the financial record of the distributed payment stream. Transfer of ownership through certificates is an actual transfer of a partial ownership of a beneficial interest in the intangible payment stream of the Obligation.

## I. SEPARATION OF THE INTANGIBLE OBLIGATION FROM EVIDENCE OF OBLIGATION

2. The initial and subsequent certificate transactions involving the divided intangible payment stream of the Obligation does not transfer rights to the ownership of the Note and the Mortgage to the owners of the intangible payment stream. Transfer of ownership of and rights to enforce the Note and the Mortgage would require that partial interest in the tangible instruments which secure the Obligation (Note and the Mortgage) be transferred/assigned to all and each of the potential multiple owners of the certificates compliant with the local laws of jurisdiction. That described transfer would be impossible. To create the appearance that the transfer of the Obligation, the partial interest derived from the tangible instruments, has been accomplished, the transfer is made to a common Trustee.  Any owner of the Obligation as a transferable record of the payment stream could be in jeopardy of

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

**stripping the Obligation away from the Note, and simply obtaining possession of the Note less rights, unless ownership of the Note and Mortgage is also obtained.**

3. In the Commercial Money Ctr., Inc. bankruptcy, the Ninth Circuit Appellate Court had no difficulty concluding that ownership of income streams can be stripped from the records that evidence them.

> From Commercial Money Ctr., Inc., 350 B.R. 465, 473-79 (B.A.P. 9th Cir. 2006), rev'g, 56 U.C.C. Rep. Serv. (West) 54 (Bankr. S.D. Cal. Jan. 27, 2005).
> *"This language on its face defines chattel paper to mean the records that "evidence" certain things, including monetary obligations. Payment streams stripped from the underlying leases are not records that evidence monetary obligations -- they are monetary obligations. Therefore, we agree with NetBank that the payment streams are not chattel paper."*

4. Of the three transferable linked parts of every Mortgage Loan, the Obligation, the Note and the Mortgage, <u>two of those transferable parts are tangible instruments, the Note and the Mortgage</u>. The Note is a negotiable instrument that evidences the Obligation. The Mortgage, seen as a Lien, is a contract listing alternatives for collecting payment due under the Obligation evidenced by the Note. The validity of the third part, the Intangible Obligation, it entirely dependent upon the Note properly secured by a Deed of Trust.

## II. TRANSFER OF A NOTE

5. Each Note associated with a Mortgage Loan is created as a negotiable instrument to allow for future sale. When a Note is treated as a negotiable instrument, falling under the governance of UCC Article 3, ownership of the Note shall be transferred by means of special indorsement or by indorsing in blank to create a

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

bearer Note. The UCC allows any party to complete an incomplete special indorsement, making that party entitled to enforcement rights upon that negotiable instrument. However, <u>possession of the Note must not be confused with ownership of the Note</u>, where a possessor may not be more than a custodian or agent of an owner. (Indorsement being the legal transfer of ownership of a security note based on a signature. Not to be confused with endorsement, which is the signature itself.)

Additionally, a valid subsequent owner, while negotiating ownership of a Note, must exercise care so as to avoid loss of Secured Party status in the negotiation of a Note. (Secured Party status is of serious concern for the Bankruptcy Courts). An alleged subsequent owner of the Note failing to permanently perfect (filing of record as required by law) ownership of the Mortgage (Security) associated with a Note into their name, while negotiating Ownership of a Note and rights to the security securing it, <u>would render a Secured Note being an Unsecured Note</u>. Ownership of Unsecured Note, no longer secured by ownership of a Lien, separates the Obligation from the Conditions to enforce the Power of Sale. Where an alleged subsequent owner of a negotiable instrument lacks indorsement for owner/holder status, the UCC allows for such party to obtain indorsements to allow the subsequent party to be entitled to enforcement rights upon the negotiable instrument. However, the UCC has no retroactive means to re-establish an unsecured negotiable instrument back into a secured negotiable Instrument. Secured status and Unsecured status is dependent upon the securing of the Security being in compliance with local laws of jurisdiction.

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

## III. TRANSFER OF A MORTGAGE

6. A Note transferred in interstate commerce is a negotiable instrument and therefore falls under the governance of UCC Article 3. Any party who possesses a valid ownership interest in a Note can only transfer that interest by way of negotiation through indorsement. While an ownership interest in the payment stream, being a transferable record, can be transferred under governance of UCC Article 9, house ownership rights are concerned and perfection of transfer of the Mortgage securing the Note falls within governance of Local Laws and Jurisdiciton. The Mortgage itself notes that Federal Statutes and/or Local Laws of Jurisdiction are governing, so UCC Article 9 does not govern the transfer of the Mortgage. Subsequently, any party who possesses a valid beneficial interest in a Mortgage can only transfer that interest by way of properly recorded assignment of that interest. Transfer of beneficial interest (purchase of a Note) in a Mortgage, without properly recorded assignment of said Mortgage, would place anyone doing so in jeopardy of violating Federal Statutes and/or Local Laws of the applicable Jurisdiction and potentially the common law Statutes of Fraud.

## IV. SEPARATION OF TANGIBLE INSTRUMENTS

7. A properly recorded assignment of the Mortgage memorializes the Note's negotiation, but does not cause the Note's transfer. For a Note to change ownership and remain secured through the Mortgage each and every transfer of the Note, by indorsement or negotiation, must be performed with a parallel assignment of the Mortgage, properly filed in the local County Record. If a Note is indorsed and

5

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

negotiated to one party while the Mortgage is assigned to another party, a separation between the Ownership of the Note evidencing the Obligation and the Ownership of the Mortgage, which secure the Obligation occurs, rendering the Note an Unsecured Instrument.

8. For a Party with ownership of a Note to be a Holder in Due Course with the rights and power of foreclosure, the "Power of Sale", the Note must remain secured to the Mortgage. When a separation of Ownership of the Obligation and the Ownership of Conditions, rights to the Notes, which secure the Obligation occurs by failing to follow mandated law, the Intangible is no longer secured by a Secured Note and the Mortgage Loan (Security securing) is no longer secured by Lien. <u>When the Mortgage Loan is no longer secured by Lien, there can be no Holder in Due Course of a Secured Note. Such Holder of the Note has lost the right to seek alternate payment through the use of a now invalid security instrument. Therefore, any Party seeking to bring a claim, against land title in a foreclosure, as Holder in Due Course of a Secured Mortgage Loan, must demonstrate an unbroken chain of properly recorded assignments of the Mortgage and a parallel unbroken chain of completed Note indorsements.</u> Making a claim of beneficial interest in a Mortgage Loan without an unbroken chain of properly recorded assignments of the Mortgage and a parallel unbroken chain of completed Note indorsements would place anyone doing so in jeopardy of violating Federal Statutes and/or Local Laws of Jurisdiction (as explained in statement 6). Where such alternate collection method has been dissolved by failure to follow law, the owner of the Note does (did) have equitable remedy by seeking

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

recovery of the debt by filing suit in a jurisdictional court of equity. The paradox, is, where such a holder has pledged a Mortgage Loan (Secured Package) as collateral, knowing that such was not a Secured Package, would present such a pledgor with **unclean hands**.

## V. THE MORTGAGE AS A CONTRACT

9. The Mortgage is a [presumable] contract between the borrower (Payor) and the parties spelled out on the face of the document. A separation between Ownership of the Note and the Ownership of the Mortgage would be a violation of the terms [COVENANTS] of that contract. Under long existing contract law, if the terms of a contract are violated, affecting the conditions under which the Payor is obligated, without the properly evidenced consent of the Payor, that contract is void and cannot be returned to without the consent of the Payor.

10. It has been a long held concept within some United States Courts, and in particular Arizona, that ownership of the Note and ownership of the Mortgage can be separated, however, <u>if ownership is separated, the Mortgage, because it can have no separate existence, cannot survive and becomes a nullity.</u>

Generally, a transfer by a mortgagee under a deed absolute of his or her interest in the mortgage carries the debt with it. However, where there is no intent to pass the debt, a mortgagee intending to pass the security interest only passes no interest to the grantee. *Smith v. J.R. Newberry Co.*, 21 Cal. App. 432, 131 P.1055 (2d Dist. 1913). <u>**A purported assignment of the security (deed of trust or mortgage) is void and ineffective unless accompanied by an assignment of the note, and the purported**</u>

**assignment or delivery of possession of the mortgage or deed of trust without a transfer of the obligation secured is both completely ineffective and a legal nullity, or else operates to extinguish the security interest, rendering the note unsecured**. *Kelley v. Upshaw*, 39 Cal. 2d 179, 192, 246 P.2d23 (1952) (mortgage); *Hyde v. Mangan*, 88 Cal. 319, 327, 26 P. 180 (1891); *Polhemus v. Trainer*, 30 Cal. 685, 688, 1866 WL 831 (1866). See *Johnson v. Razey*, 181 Cal. 342, 344, 184 P. 657 (1919); *Restatement (Third) of Property (Mortgages)*, § 5:4 cmt.e (1997) states: *"In general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation."* Accordingly, [w]hen a note is split from a deed of trust, *"the note becomes as a practical matter unsecured."* A Mortgage can only enforce its conditions over the debt through the Note's evidence of the Obligation and ownership of possession of the note does not include rights to the specific attached obligation, a Mortgage cannot survive as an enforceable contract.

## VI. MBS TRUSTS ARE GOVERNED BY TRUST DOCUMENTS

11. Once a Mortgage Loan is sold into a Mortgage-Backed Security (MBS) Trust, it is governed by a PSA filed with the Securities and Exchange Commission (SEC) (Certified copy of PSA relevant to case attached herein). When Plaintiff's Mortgage Loan was sold into MBS Trust, all the well-established Real Estate and Contract Law explained above still applied. For a MBS Trust to be Holder in Due Course of a Secured Mortgage Loan, properly recorded assignments of the Mortgage, as well as completed parallel indorsements of the Note to match, are required not only

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

by well-established Real Estate and Contract Law, but also by the terms of the PSA and/or REMIC Master Trust Agreement which governs the MBS Trust in question.

## VII. SECURITIZATION OF PLAINTIFF'S MORTGAGE LOAN INTO CWALT ALT 2007-OA7

12. In this VERIFIED ACTION-AT-LAW, it is impossible to ascertain to who owns what, as the income stream from the Plaintiff Obligation is no longer owned in a unified manner, as evident by the Prospectus when discussing the Classes within the Trust Pool. Each Class of the CWALT ALT 2007-OA7 owns a different partial interest in the Plaintiff Obligation (if assumed the Plaintiff's Obligation was ever transferred). Even though a Trust may show a Class within that Trust as being paid, this is a predetermined action by the Trust; it does not mean that the Plaintiff's Obligation has been paid or not paid. It is impossible to make that determination as the Plaintiff's Obligation no longer exists in its original form. Subsequently, the ownership of partial interest in the Plaintiff Obligation can no longer be determined, nor can it be determined what or which partial interest in Plaintiff Obligation has been paid nor what percentage of that partial interest in the Plaintiff Obligation has been satisfied/settled, because once transferred into the Trust, it became permanent stock (fixture) and it is owned entirely by the Investors [stock holders], who bought share from that particular pool. Even though there is some division of performance of the loan from class to class, if ownership of the Plaintiff Obligation exists in any class as the Transferable Record of the ownership, the Plaintiff Obligation exists in total within the Trust.

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

13. Securitization is the process of aggregating the Obligations from a large number of mortgage loans, into what is called a mortgage pool (liquefying) and then selling "shares" (called certificates) of ownership of partial interest of the Obligations to investors. The income stream from the Obligation that the Plaintiff mortgage payments produce flows through fractionalized payments into many different classes to many different investors, of the CWALT ALT 2007-OA7, depending on which certificates of which class were purchased by which investor.

14. The ownership of the Plainitff Obligation has been conveyed as a Transferable Record to multiple classes of the CWALT ALT 2007-OA7. For ownership of the Plaintiff Obligation not to have been stripped away from the ownership of the Plaitiff Note by that conveyance, ownership of the Plaintiff Note must have also been transferred to multiple classes of the CWALT ALT 2007-OA7.

15. Even though the Plaintiff Obligation is supposedly owned by multiple classes of the CWALT ALT 2007-OA7, it can only be determined valid if the original Plaintiff Note had been physically (hand) delivered to multiple classes of the CWALT ALT 2007-OA7 by checking with the custodian of documents. **Until then, there is no evidence multiple classes of the CWALT ALT 2007-OA7 possessed or owned in any manner the Plainitff Note or mortgage before the closing date of the 30th of March, 2007, as required by its own agreements, Defining Terms Section 1.01 p. 12 of PSA.**

16. The ownership of the Plaintiff Obligation has been conveyed as a Transferable Record to multiple classes of the CWALT ALT 2007-OA7. For the

10

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

conditions of Plaintiff Mortgage over the Plaintiff Obligation not to have been stripped away by that conveyance, ownership of the Plaintiff Mortgage must have also been transferred to multiple classes of the CWALT ALT 2007-OA7.

17. The beneficial interest (ownership) of the Plaintiff Mortgage has been recorded in the Official records of Maricopa County Recorder's Office as being in the name of First Magnus Financial, Corp., on 12th day of December, 2006. However, it is clear that First Magnus Financial, Corp. as recorded as the original lender on the Plaintiff Mortgage sold all ownership interest, in the Plaintiff Obligation to multiple classes of the CWALT ALT 2007-OA7. Ownership of the Plaintiff Obligation, or rights to the payment stream, but not the mortgage security, is held in multiple classes of the CWALT ALT 2007-OA7, and the payments under the Plaintiff Obligation are disbursed to the investors of CWALT ALT 2007-OA7 who hold certificates to the investment classes into which payments under the Plaintiff Obligation are scheduled to flow. Therefore, the transfer of beneficial interest in the Plaintiff Mortgage by First Magnus Financial, Corp. might have been accomplished, but that beneficial interest is no longer attached to ownership of the Plaintiff Obligation as there is no evidence that the note was indorsed to the multiple classes or any possessors other than First Magnus Financial, Corp., or that the Mortgage was transferred and assigned to any new holder of the Obligation with it.

**VIII. AS MULTIPLE CLASSES OF THE CWALT ALT 2007-OA7 OWN THE PLAINTIFF OBLIGATION, MULTIPLE CLASSES OF THE CWALT ALT 2007-OA7 ARE REQUIRED TO HAVE OWNERSHIP OF THE PLAINTIFF NOTE AND MORTGAGE.**

18. By multiple classes of the CWALT ALT 2007-OA7 purchasing the Plaintiff Obligation and doing with it whatever was done, multiple classes of the CWALT ALT 2007-OA7 were exercising rights of ownership over the Plaintiff Mortgage Loan and payment stream. By exercising rights of ownership over the Plaintiff Mortgage Loan, multiple classes of the CWALT ALT 2007-OA7 made claims of ownership of all three parts of the Plaintiff Mortgage Loan.

19. The Plaintiff Obligation only exists through the tangible instruments creating it, the Plaintiff Note and the Plaintiff Mortgage. The sale of the ownership of the Plaintiff Obligation to multiple classes of the CWALT ALT 2007-OA7, without striping away the ownership of the Plaintiff Obligation from the ownership of the Plaintiff Note, could only be accomplished with the accompanying negotiations of the Plaintiff Note and the accompanying assignments of the Plaintiff Mortgage to multiple classes of the CWALT ALT 2007-OA7.

20. Multiple classes of the CWALT ALT 2007-OA7 have made claims of ownership of the Plaintiff Obligation, and exercise those claims. In order to exercise claims of ownership of the Plaintiff Obligation, however, assignments of the Plaintiff Mortgage should have been accomplished.

21. The assignment of the Plaintiff Mortgage is a conveyance of an instrument concerning Lien, which must be recorded to be acted upon. United States Code considers that anyone certifying that a real estate instrument has been assigned when in fact it has not, **is guilty of a felonious criminal act**.

*Title 18 USC Chapter 47 § 1021*

12

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

*Whoever, being an officer or other person authorized by any law of the United States to record a conveyance of real property or any other instrument which by such law may be recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than five years, or both.*

## IX. AS IT CURRENTLY STANDS, MULTIPLE CLASSES OF THE CWALT ALT 2007-OA7 CANNOT CLAIM OWNERSHIP OF EITHER THE PLAINTIFF NOTE OR THE PLAINTIFF MORTGAGE

22. Multiple classes of the CWALT ALT 2007-OA7 own the Plaintiff Obligation. However the transfers of ownership of either of the two tangible parts of the security instrument that evidence the Plaintiff Obligation from First Magnus Financial, Corp. to multiple classes of the CWALT ALT 2007-OA7 are not memorialized in the Maricopa County Recorder's Office in a manner which observes United States Code.

23. Under the Consumer Credit Protection Act Title 15 USC Chapter 41 § 1641(g) any transfer of the Plaintiff Mortgage to multiple classes of the CWALT ALT 2007-OA7 would be in violation of Federal Statute, if those transfers had not been recorded through the Maricopa County Recorder's Office within 30 days, along with notification of Plaintiff that the transfers had occurred. As there are no recorded assignments of the Plaintiff Mortgage from First Magnus Financial, Corp. to multiple classes of the CWALT ALT 2007-OA7, within 30 days of the of the 30th of March, 2007, closing date of the CWALT ALT 2007-OA7, either there has been a violation of Federal Law or multiple classes of the CWALT ALT 2007-OA7, who are the presumed owners of the Plaintiff Obligation, are not the owners of the either the Plaintiff Note or the Plaintiff Mortgage. The assignment of mortgage to the CWALT

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

ALT 2007-OA7 was not made at all according to a Maricopa County real property records search.

> *Title 15 USC Chapter 41 § 1641(g)*
> *g) **Notice of new creditor***
> *(1) **In general***
> *In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—*
> *(A) the identity, address, telephone number of the new creditor;*
> *(B) the date of transfer;*
> *(C) how to reach an agent or party having authority to act on behalf of the new creditor;*
> *(D) the location of the place where transfer of ownership of the debt is recorded; and*
> *(E) any other relevant information regarding the new creditor.*

24. The Plaintiff Mortgage must have been duly assigned, with proper recordation, to multiple classes of the CWALT ALT 2007-OA7 for multiple classes of the CWALT ALT 2007-OA7 to be entitled to enforce and have the rights to the Plaintiff Mortgage.

25. As explained previously in ¶7 thru ¶12, assignments of the Plaintiff Mortgage must be accompanied by parallel indorsements of the Plaintiff Note for the Plaintiff Mortgage Loan to remain secured by the Plaintiff Lien. Because indorsements are very often undated and because a foreclosing party must prove that it had standing at the inception of a case, *Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 125, 130 Cal. Rptr. 3d 815 (2d Dist. 2011), the assignment will be

determinative of, or at least evidence that would support or contradict a foreclosing party's claim of standing.

26. Importantly, mere presentment of the [copy] Plaintiff Note (even if shown to be the original) by simple possession is not in itself proof of an equitable transfer of the Plaintiff Note; for that to be the case, the Note must also be indorsed to show that the party in possession is a Holder in Due Course. This demonstration of possession may or may not be sufficient to enforce the Plaintiff Note, but carries no indicia of ownership or intent to transfer. The UCC consecrated a preference in commercial transactions for simple possession of endorsed instruments over proof of actual ownership, an exception in the law that was intended to foster free trade of commercial paper.

27. The concept that a Note holder, even one who is not legitimate, may nevertheless bring an action on the Plaintiff Note is entrenched in commercial law and commonly summarized by the axiom "even a thief may enforce a note." However, the taking of the Plaintiff House by foreclosure is an equitable remedy and equity does not allow a "thief" to use a stolen Plaintiff Note to foreclose through the Plaintiff Mortgage lien or Deed of Trust.

28. For all three parts of the Plaintiff Loan as a whole to have been transferred into the CWALT ALT 2007-OA7, there is a chain of entities through which the Plaintiff Mortgage must be assigned and the Plaintiff Note indorsed. This chain of transfer, as required in the CWALT ALT 2007-OA7 PSA, Article II, Section 2.01, is to have begun with a recorded assignment of the Plaintiff Mortgage and an

15

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

indorsement of the Plaintiff Note from the "Lender" to the Sponsor. Once the Sponsor had taken complete ownership, then a recorded assignment of the Plaintiff Mortgage and an indorsement of the Plaintiff Note from the Sponsor, Countrywide Home Loans, Inc., to the Depositor, CWALT, Inc., were to have occurred. After the Depositor, CWALT, Inc., had taken complete ownership, a recorded assignment of the Plaintiff Mortgage and an indorsement of the Plaintiff Note from the Depositor CWALT, Inc., to the Trustee, The Bank of New York, was next to have occurred. Finally, once the Trustee, The Bank of New York, had taken complete ownership, a recorded assignment of the Plaintiff Mortgage and an indorsement of the Plaintiff Note from the Trustee, The Bank of New York, to the CWALT, Inc. Alternative Loan Trust, Mortgage Pass-Through Certificates, Series 2007-OA7 (herein also known as **CWALT ALT 2007-OA7**) was to have occurred.

29. Moreover, these assignments were to all be recorded in the Official records of Maricopa County Recorder's Office as per the PSA for the **CWALT ALT 2007-OA7**. To explain further with a simple example, Party A must contract and assign to Party B, and Party B must contract and assign to Party C, and Party C must contract and assign to Party D and so on. Therefore, a contract and an assignment from Party A to Party D is not allowable. Of course, all of these dealings must be recorded within the Official records of Maricopa County Registry which date stamps each recording so as to prevent any backdating.

30. As explained previously, any electronic transfers of the Plaintiff Mortgage that may have been executed without recording within the Official records of

Maricopa County Registry are void under Uniform Electronic Transactions Act (UETA) USC § 15-96-1-7003.

> *USC § 15-96-1-7003*
> *(a) Excepted requirements*
> *The provisions of section 7001 of this title shall not apply to a contract or other record to the extent it is governed by—*
> *(3) the Uniform Commercial Code, as in effect in any State, other than sections 1-107 and 1-206 and Articles 2 and 2A*

31. The Plaintiff Note specifically states that it is secured by a Mortgage, dated the same day, and the Plaintiff Mortgage refers to the Plaintiff Note, and incorporates the Plaintiff Note into its terms and conditions.

32. The written agreement that created the **CWALT ALT 2007-OA7** is a PSA, dated March 1, 2007, and is a matter of public record, available on the website of the Securities Exchange Commission, attached and incorporated herein. The CWALT ALT 2007-OA7 is also described in a "Prospectus Supplement," also available on the SEC website. The CWALT ALT 2007-OA7 by its terms set a "CLOSING DATE" of on or about March 30, 2007. The Plaintiff Note in this case did not become CWALT ALT 2007-OA7 property in compliance with the requirement set forth in the PSA, seeing as the only recorded assignment to was to Bank of New York as Trustee was executed in 2011. The CWALT ALT 2007-OA7 agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the CWALT ALT 2007-OA7 and PSA are governed under the laws of New York.

33. The PSA is the document that governs this trust. The CWALT ALT 2007-OA7 operates in the state of New York, and New York law requires strict compliance

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

and adherence to the CWALT ALT 2007-OA7 documents. Any action by the CWALT ALT 2007-OA7 in contravention to the CWALT ALT 2007-OA7 PSA is **void under New York Trust Law**.

> *CWALT ALT 2007-OA7 PSA substantially states:*
> **This Agreement shall be construed in accordance with the laws of the State of New York,** *and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws (without regard to principles of conflicts of law other than Section 5-1401 of the New York General Obligations Law which shall govern). With respect to any claim arising out of this Agreement, each party irrevocably submits to the exclusive jurisdiction of the courts of the State of New York and the United States District Court located in the Borough of Manhattan in The City of New York, and each party irrevocably waives any objection which it may have at any time to the laying of venue of any suit, action or proceeding arising out of or relating hereto brought in any such courts, irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in any inconvenient forum and further irrevocably waives the right to object, with respect to such claim, suit, action or proceeding brought in any such court, that such court does not have jurisdiction over such party, provided that service of process has been made by any lawful means.(emphasis added)*
> **New York Trust Law Chapter 17- B ¶ 7-2.4 Act of trustee in contravention of trust. If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, _is void_.**

34. Ownership or possession by the First Magnus Financial, Corp., or its agents, of a Note evidencing an Obligation sold to **CWALT ALT 2007-OA7** is a violation of the PSA. Additionally, if the Plaintiff Mortgage was transferred to the **CWALT ALT 2007-OA7** as required by the PSA, then there is no way that First Magnus Financial, Corp. or its Agents can claim any beneficial interest in the Plaintiff Mortgage to assign.

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

35. According to the PSA for the CWALT ALT 2007-OA7, the transfer and sale of all Beneficial Interest of the Plaintiff Mortgage to CWALT ALT 2007-OA7 should have been done on or before the closing date of the CWALT ALT 2007-OA7 which was March 30, 2007. These requirements from the PSA also mean the CWALT ALT 2007-OA7 is unable to have any other assets put into the CWALT ALT 2007-OA7 after the closing date, without breaking the law.

36. Seeing as the only recorded assignment or transfer of the Mortgage was in 2011, assigning Beneficial Interest of Plaintiff Mortgage from Bank of America to The Bank of New York as Trustee for the Certificateholders of CWALT ALT 2007-OA7, though multiple Classes claimed ownership of the Obligation, as evidenced through the Transferable Record of the Payment Stream, when Plaintiff Mortgage was purportedly transferred into CWALT ALT 2007-OA7 around the closing date of March 30th, 2007, it seems to be the case that Bank of America did not legally hold rights to Beneficial Interest in the mortgage between the closing date and the 2011 assignment to The Bank of New York, or that it held Beneficial Interest in violation of the PSA, and the subsequent 2011 assignment is null and void and unlawfully executed.

37. The PSA for the CWALT ALT 2007-OA7 holds any conveyance of instrument into the CWALT ALT 2007-OA7 subject to the specific procedures explained above and in further paragraphs.

Therefore, the conveyance of the Plaintiff Note and Mortgage into the CWALT ALT 2007-OA7 cannot be true unless compliance with the PSA specific procedures

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

of conveyance is also proved to be true. The conveyance of the Plaintiff Note and Mortgage into the CWALT ALT 2007-OA7 lacks proof of execution of these specific procedures. Thus, as proof of PSA compliant conveyance of the Plaintiff Note and Mortgage into the CWALT ALT 2007-OA7 is lacking, and cannot now be made to [wholly] exist, CWALT ALT 2007-OA7 cannot claim to have taken the Plaintiff Note and Mortgage as a secured instrument into its collateral pool.

38. The Plaintiff Mortgage contains notice to the Borrowers that the Plaintiff Note or a partial interest in the Plaintiff Note may be sold.

The Plaintiff Mortgage documents substantially state in ¶20 of the Uniform Covenants:

> *The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law...."*

However, a sale of a "partial interest" in the Plainitff Note strips ownership of the Plaintiff Obligation from ownership of the Plaintiff Note, leaving the Plaintiff Note without an obligation to evidence and the Plaintiff Mortgage without an obligation to hold conditions over.

## X. THE DOCUMENT PURPORTING TO BE AN "ASSIGNMENT" DATED AUGUST 24TH, 2011 IS INVALID AS AN ASSIGNMENT OF MORTGAGE

*Black's Law Dictionary defines the term valid as "having legal strength or force, executed with proper formalities, incapable of being rightfully overthrown or sent aside... Founded on trust of fact; capable of being*

*justified; supported, or defended; not weak or defective... of binding force; legally sufficient or efficacious; authorized by law... as distinguished from that which exists or took place in fact or appearance, but has not the requisites to enable it to be recognized and enforced by law."*
*(See Black's Law Dictionary, Sixth Edition, 1990, page 1550)*

39. **The document purporting to be an "Assignment of Mortgage", <u>Assignment, recorded in Maricopa County Recorder's Office is Void and Fraud on its face</u>. The assignor MERS, an electronic registrar, cannot receive and therefore cannot assign value, and the Mortgage and Note, and any Beneficial Interest, were not transferred to Bank of New York Mellon as a trustee of the Certificateholders for the CWALT ALT 2007-OA7 according to the terms of the CWALT ALT 2007-OA7 PSA.**

40. First and most importantly, the original lender, First Magnus Financial, Corp. through Countrywide Home Loans, Inc., [Bank of America N.A.], gave up all ownership of the Plaintiff Obligation on or before August 23, 2011, presumably by the closing date of the PSA, to multiple classes of the CWALT ALT 2007-OA7. Assuming for a moment that there was an actual transfer and the Assignment was not FRAUD, which immediately makes Defendants, Bank of America, N.A., Brayan Moynihan, BNY Mellon and Gerald Hassell liable under the laws of New York and the CWALT ALT 2007-OA7 PSA, once First Magnus Financial, Corp., through fictitious [unrecorded in the chain of title] agents/assignees had given up the ownership of the Plaintiff Obligation, said Obligation was stripped away from the ownership of the Plaintiff Note and the ownership of the Plaintiff Mortgage. First Magnus Financial, Corp., through fictitious assignees, could transfer beneficial

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

interest in the Plaintiff Note or Mortgage; however, that beneficial interest would not include ownership of the Plaintiff Obligation.

41. The consequences of the ownership of the Plaintiff Obligation being stripped away from the beneficial interests of the Plaintiff Note and Mortgage means the Plaintiff Note is without an Obligation to evidence and the Plaintiff Mortgage is without an Obligation to enforce conditions against.

42. First Magnus Financial, Corp., through fictitious [phantom] assignee can assign beneficial interest in the Plaintiff Mortgage, albeit with no ownership of the Plaintiff Obligation, to whomever they please. In order for this document purporting to be an "Assignment of Mortgage" to be valid as an actual assignment, however, it would have to determine if a transfer could be made to the assignee. Plaintiff will explain how transfer to the assignee named could not have been accomplished by this document purporting to be an Assignment of Mortgage.

43. The assignee named by the document purporting to be an "Assignment of Mortgage" is The Bank of New York Mellon as Trustee for the CWALT ALT 2007-OA7. In order to exist, the CWALT ALT 2007-OA7 agreed to operate under the CWALT ALT 2007-OA7 PSA and all applicable Law.

As previously explained in ¶29, in order to for the Plaintiff Mortgage Loan to be transferred to the CWALT ALT 2007-OA7 a chain of negotiations needed to occur. A direct transfer from the original lender to the Bank of New York Mellon violates the terms and conditions under the CWALT ALT 2007-OA7 PSA, under

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

New York Trust Law governing the CWALT ALT 2007-OA7, and is **NULL AND VOID**.

44. Further this document purporting to be an "Assignment of Mortgage", the Assignment, did not timely and properly transfer the Plaintiff Note and Mortgage to the CWALT ALT 2007-OA7, where is has been shown to be a performing asset.

From page S-38 the Prospectus Supplement for the **CWALT ALT 2007-OA7**, dated November 14th, 2006:

> "Pursuant to the pooling and servicing agreement, on the closing date, the depositor will sell, transfer, assign, set over and otherwise convey without recourse to the trustee in trust for the benefit of the certificateholders all right, title and interest of the depositor in and to each Mortgage Loan and all right, title and interest in and to all other assets included in Alternative Loan Trust 2007-OA7, including all principal and interest received on or with respect to the Closing Date Mortgage Loans....
>
> In connection with the transfer and assignment of a Mortgage Loan, the depositor will deliver or cause to be delivered to the trustee, or a custodian for the trustee, the mortgage file, which contains among other things,
> - the original mortgage note (and any modification or amendment to it) endorsed in blank without recourse...,
> - the original instrument creating a first lien on the related mortgaged property with evidence of recording indicated thereon or a copy of such instrument,
> - an assignment in recordable form of the mortgage or a copy of such assignment,
> - the original or a copy of the title policy with respect to the related mortgaged property, and
> - if applicable, all recorded intervening assignments of the mortgage or copies thereof and any riders or modifications to the mortgage note and mortgage or copies thereof (except for any documents not returned from the public recording office, which will be delivered to the trustee as soon as the same is available to the depositor).
>
> ... Assignments of the Mortgage Loans to the trustee (or its nominee) will be recorded in the appropriate public office for real property records"

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

45. The closing date for the CWALT ALT 2007-OA7 was March 30, 2007. What this means is that the CWALT ALT 2007-OA7 is unable to have any other assets put into the CWALT ALT 2007-OA7 after that closing date.

46. In view of the foregoing, **all assignments executed after the CWALT ALT 2007-OA7 closing date are void** for the reason that all assignments into the Trust after March 30, 2007 violate the express terms of the CWALT ALT 2007-OA7 PSA. All assignments of Mortgages/Deeds of Trust, and or indorsements of notes, executed after the CWALT ALT 2007-OA7 closing date are **NULL AND VOID**.

47. The Prospectus Supplement for the CWALT ALT 2007-OA7 provides that any attempted or purported transfer in violation of these transfer restrictions will be null and void and will vest no rights in any purported transferee. Any transferor or agent to whom the Trustee provides information as to any applicable tax imposed on such transferor or agent may be required to bear the cost of computing or providing such information.

48. There are enormous tax consequences, if the document purporting to be an Assignment filed in the Official Records of Maricopa County would be authentic, in that this trust has elected to be a Real Estate Mortgage Conduit Trust (REMIC). According to the Prospectus, under the heading "Federal Income Tax Consequences," multiple classes of the CWALT ALT 2007-OA7, that the Plaintiff Obligation is owned by, elected to be treated as a REMIC, which provides for pass-through tax treatment of the income generated by the Trust assets.

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

49. Internal Revenue Code Section 860 regulates the activities and requirements of a REMIC Trust like CWALT ALT 2007-OA7:

> *According to 26 CFR§ 1.860D-1c(2)*
> **Identification of assets.** *The formation of the REMIC does not occur until (i) The sponsor identifies the assets of the REMIC, such as through execution an indenture with respect to the asset; and (ii) The REMIC issues the regular and residual interests in the REMIC.*

50. In other words, the REMIC is not officially formed until Countrywide Home Loans, Inc., the seller/sponsor of the CWALT ALT 2007-OA7, identifies and transfers all the specific assets (the specific loans) of the REMIC.

51. The PSA for the CWALT ALT 2007-OA7 specifically identifies a closing date which is the last day that an asset (loan) can be "identified for inclusion" in the Trust/REMIC. The closing date also serves as the Startup Day for the REMIC. According to Internal Revenue code Section 860, all of a REMIC's loans must be acquired on the startup day of the REMIC or within three months thereafter. If assets are transferred after the closing date there are consequences of a 100 percent tax on net income from prohibited transactions pursuant to 26 USC §860F(A), and specifically 26 USC §860G-(A)10:

> **(d) Tax on contributions after startup date (1) In general**, except as provided in paragraph (2), if any amount is contributed to a REMIC after the startup day, there is hereby imposed a tax for the taxable year of the REMIC in which the contribution is received equal to 100 percent of the amount of such contribution.

52. Thus, if the 2011 Assignment is deemed to be a valid transfer of the Beneficial Interest to The Bank of New York, and a valid Assignment of Plaintiff

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

Mortgage, The Bank of New York and the holders of interest in the **CWALT ALT 2007-OA7 REMIC are liable under United States Code for execution of a prohibited transaction, are in violation of Tax Codes that subject said transaction to 100 percent taxation, and consequently can be charged for <u>tax evasion</u>.**

## XI. THE BANK OF NEW YORK MELLON HAS NO CLAIM TO OWNERSHIP OF THE PLAINTIFF NOTE

53. The Plaintiff Note should have been indorsed according to the CWALT ALT 2007-OA7 PSA (Section 2.01(a)-(c)(i), pg 46-48) by the original lender, and conveyed along with transfer and assignment of the Mortgage to the Trustee for the Certificateholders. The indorsement should state,

> "'Pay to the order of _____ without recourse,' with all intervening endorsements showing a complete chaing of endorsement from the originator to the Person endorsing the Mortgage Loan (each such endorsement being sufficient to transfer all the right, title, and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note)"

This relates directly to negotiations under UCC Article 3 concerning negotiable instruments and would be considered an indorsement in blank. Although no payee is yet named, clearly original lender releases all interest in the Plaintiff Note.

> *UCC 7-501 Form of negotiation and requirements of due negotiation*
> *(a) The following rules apply to a negotiable tangible document of title:*
> *(1) if the document's original terms run to the order of a named person, **the document is negotiated by the named person's indorsements and delivery.** After the named person's indorsement in blank or to bearer, any person may negotiate the document by delivery alone ;(emphasis added)*

54. In addition, under UCC §3-203(a), a transfer of the Note through which rights can be acquired by a transferee is defined as a delivery from one person to another person.

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

55. First Magnus Financial, Corp., through fictitious [phantom] assignee, transferred its ownership of the Plaintiff Obligation to multiple classes of the CWALT ALT 2007-OA7 and transferred its ownership of the Plaintiff Note. Ownership of the Plaintiff Obligation was transferred to multiple classes of the CWALT ALT 2007-OA7 and ownership of the Plaintiff Note traveled on without it.

56. If one it to accept that The Bank of New York Mellon is acting as Trustee for the Certificateholders of CWALT ALT 2007-OA7, the Note, pursuant to requirements for negotiation under UCC Article 3, should have been indorsed in blank and delivered to The Bank of New York, before or about the closing date as established under the PSA, in order to constitute due negotiation and transfer or ownership. There has been brought forward, as of yet, no evidence that the Note was indorsed, in blank or in any manner, or delivered pursuant to the terms of the PSA.

## XII. THE TERMS OF THE PLAINTIFF MORTGAGE HAVE BEEN VIOLATED AND THE PLAINTIFF MORTGAGE IS UNENFORCEABLE

57. First Magnus Financial, Corp., through fictitious [phantom] assignee, has released all interest in the Plaintiff Note to an as of yet unnamed payee. A Note with an as of yet named payee is not and cannot be treated as a "bearer" instrument as not person will acquire any right to the Note until a payee is named. The Plaintiff Mortgage as a [presumable] contract can only enforce its contractual terms against the obligation evidenced by the Plaintiff Note, which must be properly and fully negotiated and delivered for possessor of the Note to claim ownership and enforcement rights.

58. The Plaintiff Mortgage is governed by Arizona Law. Arizona Law and Federal Law require proper recordation of assignment to transfer ownership of the Plaintiff Mortgage.

59. It has been explained earlier how it is not possible for ownership of the Plaintiff Mortgage to have been assigned to The Bank of New York Mellon as Trustee for the CWALT ALT 2007-OA7.

60. The Assignment of the Plaintiff Mortgage recorded in the Maricopa County Record, with MERS releasing ownership of the Plaintiff Mortgage, intended that transfer to be to The Bank of New York Mellon as Trustee for the CWALT ALT 2007-OA7. However, MERS presumably released, through presumable indorsement, ownership of the Plaintiff Note, evidencing the Obligation, to whoever wishes to fill in the payee line. **The Bank of New York Mellon as Trustee for the CWALT ALT 2007-OA7, NOT AS A HOLDER OF THE CERTIFICATE, which it, according to the PSA, can only become if asked by 51% of the certificate holders, may attempt to claim ownership of the Plaintiff Mortgage but that ownership would have nothing against which to enforce the Plaintiff Mortgage contractual terms. The rights to the Obligation were transferred to multiple classes of CWALT ALT 2007-OA7, so the Note will travel on without rights to the Obligation. The Plaintiff Mortgage is an unenforceable contract, extinguishing the Lien. There is, further, no evidence as of yet that ownership of the Note was negotiated to The Bank of New York.**

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

**61. If The Bank of New York Mellon and Gerald Hassell continue to claim ownership of the certificate, each and every one individually or through Counsel, this court of record should enter such claim as admission into evidence for tax evasion and violation of I.R.S. Rule 860, which would automatically leads to loss of their nonprofit, REMIC, status, along with civil and criminal charges against their Trust.**

62. Ownership of the Plaintiff Mortgage is no longer with First Magnus Financial, Corp., yet no one else has any authority to enforce its terms while the Plaintiff Note is waiting for someone to claim ownership. The Plaintiff Mortgage is an unenforceable contract, no longer being tied to an obligation to enforce its contractual terms over.

63. Under long existing contract law, if the terms of a contract are violated, affecting the conditions under which the Payor is obligated, without the properly evidenced consent of the Payor, that contract is void and cannot be returned to without the consent of the Payor. Even if ownership of the Plaintiff Note and the Plaintiff Mortgage could be rejoined, the Plaintiff Mortgage, as a now unenforceable contract, no longer being tied to an obligation to enforce its contractual terms over, cannot be returned to being an enforceable contract without the party's consent.

### XIII. OWNERSHIP OF THE PLAINTIFF OBLIGATION CANNOT BE REJOINED TO OWNERSHIP OF THE PLAINTIFF NOTE OR THE PLAINTIFF MORTGAGE

64. Multiple classes of the CWALT ALT 2007-OA7 have ownership of the Plaintiff Obligation. Multiple classes of the CWALT ALT 2007-OA7 have yet to all

and each be named as payee on the Plaintiff Note and do not now have ownership of the Plaintiff Note. For multiple classes of the CWALT ALT 2007-OA7 to gain ownership of the Plaintitff Note, multiple classes of the CWALT ALT 2007-OA7 would have to all and each be named payee.

65. CWALT ALT 2007-OA7, its classes, its officers and its agents are prohibited from accepting any assets on behalf of the Trust after March 30, 2007. The CWALT ALT 2007-OA7, its classes, its officers its and agents can longer accept ownership of the Plaintiff Note. Ownership of the Plaintiff Note and ownership of the Plaintiff Obligation will remain separate.

66. Because ownership of the Plaintiff Note was separated from ownership of the Plaintiff Obligation, and will remain separate, the Plaintiff Mortgage is left with no way to enforce its conditions over the obligation which should be evidenced by the Plaintiff Note, making the Plaintiff Mortgage an unenforceable contract.

## XIV. WITH OWNERSHIP OF THE PLAINTIFF OBLIGATION STRIPPED AWAY AND NO WAY TO ENFORCE THE CONDITIONS UNDER THE PLAINTIFF MORTGAGE, THE PLAINTIFF LOAN IS A NULLITY

67. To perfect ownership as a secured party, the transferee to whom the Note is being negotiated, as per UCC Article 3, must file on the record ownership of the Mortgage securing the Note in order to maintain the status of the Note as a secured instrument. An unsecured instrument, not secured by ownership of a Lien, separates the Obligation from the Conditions to enforce Power of Sale, and once an instrument has been unsecured there are no retroactive means to re-secure it.

68. The ownership of Plaintiff Obligation was separated from the ownership of the Plaintiff Note and the ownership of the Plaintiff Mortgage, leaving the Plaintiff Note no Obligation to evidence and Plaintiff Mortgage no Obligation to enforce conditions over.

69. The limited beneficial interest of First Magnus Financial, Corp., through fictitious [phantom] assignee, retained in the Plaintiff Mortgage Loan after selling the Plaintiff Obligation to multiple classes of the CWALT ALT 2007-OA7, as per the Assignment, dated August 23, 2011, does not include ownership of the Plaitiff Obligation. The Bank of New York claims to have ownership of Beneficial Interest, as per Assignment in 2011, acting as Trustee for the multiple classes of CWALT ALT 2007-OA7, but the purported transfer and assignment was conducted after the closing date of the Trust, in violation of the terms of the PSA. Therefore, The Bank of New York is either not the owner of the Obligation and Mortgage, or, if it chooses to claim ownership, it is in violation of Federal and State laws, and the terms of the PSA which bind it.

70. Further, by claiming, as Defendants The Bank of New York, Gerald Hassell, and Bank of America have through counsel and pseudo counsel, that the Assignment was executed in 2011, transferring Beneficial Interest to **The Bank of New York, The Bank of New York has committed FRAUD and PERJURY** as these claims are in direct contradiction to claims made in the PSA that it is a party of.

CWALT ALT 2007-OA7 PSA Section 2.02 (pg 53)
Acceptance by Trustee of the Mortgage Loans "(a) The Trustee acknowledges receipt of the documents identified in the Initial Certificate in the form annexed

31
CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

hereto as Exhibit F-1 and declares that it holds and will hold such documents and other documents delivered to it constituting the Mortgage Files."

In section 2.02(a), The Bank of New York also agreed to deliver and execute on the "Closing date to the Depositor, the Master Servicer and Countrywide...an Initial Certification in the from annexed to this Agreement as Exhibit F-1."

From Exhibit F-1 Initial Certification of Trustee
"In accordance with Section 2.02 of the above-captioned [PSA], the undersigned, as Trustee, hereby certifies that, as to each Initial Mortgage Loan listed in the Mortgage Loan Schedule...it has received: (i)(a) the original Mortgage Note endorsed [in blank]...(ii) a duly executed assignment of the Mortgage"

If The Bank of New York claims, as it does, to be Trustee of CWALT ALT 2007-OA7 and hold there Beneficial Interest in Plaintiff's mortgage, then, by its agreement to the terms of the PSA and subsequent execution of Exhibit F-1, the mortgage, by The Bank of New York's admissions, was actually [purportedly] assigned and transferred, and in its possession along with the indorsed Note, by the 2007 Closing Date. Any claim in contradiction is FRAUD, or The Bank of New York, again, violated the PSA and is liable under New York Law which governed the aforementioned Trust8; a mortgage that was purportedly assigned in 2007 cannot have again been assigned to the same Trustee in 2011.

71. No acceptable assignments of the limited interest in the Plaintiff Mortgage to multiple classes of the CWALT ALT 2007-OA7 has been recorded into the Maricopa County Recorders' Office, nor should there be as such a lawful intangible assignment would fall under the governance of UCC 9. There is no evidence of proper negotiations of the limited beneficial interest in the Plaintiff Note to multiple classes of the CWALT ALT 2007-OA7. With no properly recorded owner of the Plaintiff

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

Mortgage, which corroborates ownership of the Plaintiff Obligation, there is no one to enforce the conditions that would have been over the Obligation, which would have been evidenced by the Plaintiff Note. The Plaintiff Obligation is no longer secured by the Plaintiff Note.

72. With no specific properly secured owner of the limited beneficial interest of the Plaintiff Note, there is no way to enforce the stripped away Plaintiff Obligation through Plaintiff Note.

**CONCLUSION**

**THEREFORE, the Plaintiff is informed and believes and subsequently alleges that Bank of New York Mellon issued an investment bonds on the Mortgage-Backed Securities, duly registered with the Securities and Exchange Commission ("SEC") on a registration statement, incorporated and attached herein, bearing file number 333-131630-96.**

**The Note and the Deed of Trust executed by Plaintiff on the 12the day of December 2006 identifies the beneficiary as FIRST MAGNUS FINANCIAL CORPORATION. Plaintiff is not aware of any legally recorded transfers of Deed of Trust and the Note, and subsequently the Obligation and rights to enforce the Obligation, to this day, which can substantiate unbroken chain of title.**

**Plaintiff further believes, upon presented the aforementioned evidences, that the Note was not duly endorsed, transfered and delivered to the Trust prior**

to the Closing Date, as set forth in Section 2.05 of the PSA, attached and incorporated herein.

Plaintiff is further informed and believes, and therefore alleges, that the Note was never lawfully negotiated and actually transferred or delivered by First Magnus Financial, Corp., Countrywide, Inc., Bank of America, N.A. or any other unknown party to the Depositor and by the Depositor to the Custodian on behalf of the Trustee for the Trust prior to closing date. In addition, there is no indication the Plaintiff's Mortgage was transferred into the trust pursuant to the PSA and article 20 of the UNIFORM COVENANTS of the DEED OF TRUST.

Based on information filed on the Public Record, and in particular the Assignment, and the admission by Counsel, Doc. 40 and 42, that the Transfer of the Deed of Trust did not occur by the 30th of March, 2007, or ninety (90) days thereafter, but rather on the 23th of August 2011, long after the Trust had closed, said Assignment was ineffective, as the Trust could not have accepted the Deed of Trust after the Closing Date pursuant to the PSA and requirement of REMIC Trust, <u>thereby rendering the attempted foreclosure of the Subject House, as well as the Notice of Default and Notice of Trustee Sale, FRAUD and Void Ab Initio.</u>

Further, if Defendants Bank of America and The Bank of New York continue to claim ownership of Obligation and its Beneficial Interest, they are

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

acting in violation of the PSA and IRS Codes that govern the terms of the REMIC associated, and potentially liable for tax evasion.

Plaintiff believes, and upon such contends, that Defendants, and each of them, acted with the intent to defraud him and the public regarding the status of Plaintiff's Note. Defendants, and each of them, also knew that the act of recording the Assignment without having legal ground to do so constitutes fraud that can be, and should be, interpret as Theft by Deception of private land.

Defendants falsified documents and signatures, committing perjury, and recorded fraudulent documents in the Public Record, or failing to record documents of transfer as mandated by Federal and State Laws, in willful, wanton, intentional, and with callous and reckless disregard for Plaintiff's right, in blatant attempt to deprive him from his house, committing grant theft.

Respectfully submitted on this 2nd day of January, 2014.


**Ivaylo Tsvetanov Dodev**, ARR, Pro Se Plaintiff
**6312 South 161st Way, Gilbert, Arizona**
**(480) 457-8888 Phone**

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

**ORIGINAL** and **ONE COPY** hand delivered to The United States District Court for the District of Arizona this 2nd day of January, 2014, at _____. I certify that the following parties or their counsel (or pseudo counsel) of record are registered as ECF Filers and that they will be served by the CM/ECF system: BANK OF AMERICA, NA, RECONTRUST, NA, BRIAN MOYNIHAN, SELECT PORTFOLIO SERVING, NA, TIMOTHY O'BRIEN, GERALD HASSELL AND BANK OF NEW YORK MELLON.

**Ivaylo Tsvetanov Dodev, Plaintiff**
**6312 South 161st Way, Gilbert, Arizona**
**(480) 457-8888 Phone**

36

CWALT ALT 2007-OA7 PSA WITH PLAINTIFF'S BRIEF