Ivaylo Tsvetanov Dodev,

c/o  6312 South 161st Way
    Gilbert, Arizona
    (480) 457-8888 Phone
    (480) 457-8887 Facsimile
    dodev@hotmail.com

Pro Se

**FILE ON DEMAND**
**FOR THE RECORD**



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Ivaylo Tsvetanov Dodev,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**RECONTRUST COMPANY, N.A., ET AL**<br><br>**Defendants.** | Case No.  CV-13-02155-PHX-GMS<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**Time: _____**<br><br>**Hon. G Murray Snow** |

Here comes Plaintiff, Ivaylo Tsvetanov Dodev, *pro se*, ("Plaintiff"), consumer, as defined in 15 U.S.C § 1692a(3): *"'consumer' means any __natural person__ obligated or allegedly obligated to pay any debt"*, with his response in opposition to CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6), Doc. 40, ("Motion to Demurrer"), submitted for the defendants Select Portfolio Servicing, Inc., Timothy O'Brien, The Bank of New York Mellon FKA The Bank of New York as Trustee for

1

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-OA7, Mortgage Pass-Through Certificates, Series 2007-OA7, Gerald Hassell, Karla Richards, Dani Todd and KaJay Williams, ("Defendants"), by counsel and **pseudo counsel** Kim R. Lepore, Esq. and Bradford E. Klein, Esq., ("Esquire"). In yet another poorly executed attempt to support their arguments, Esquire ignored the legal standard governing demurrers, quoting  selectively from the FIRST AMENDED COMPLAINT, Doc.18, ("Complaint"), and disregarding inconvenient facts while admitting into evidence civil and criminal violations defendants have committed in their coordinated attempt to steal Plaintiff's house by fraud. Despite Esquire's attempts to sway the court through their own interpretation of the law and to rely on irrelevant to this VERIFIED ACTION-AT-LAW [Common Law] court cases—while opportunely overlooking the Facts, the Law and the Evidences under which this Action is filed—their **Demurrer is without merit and should be rejected in its entirety**.

## **LEGAL ARGUMENT**

Judicial prudency favors resolving cases on their merits, based on admissible facts submitted into evidence, governed by the law and the venue of the Action, rather through technical challenges to the pleadings. When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader. See City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993). The complaint is deemed to include any

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

written instrument attached to it as an exhibit or any statement or documents incorporated in it by reference. *Cortec Indus., Inc. v. Sum Holdings L.P.,* 949 F.2d 42, 47 (2d Cir.1991).   The Court also ought to consider matters of which judicial notice is given. *Leonard T. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir.1999). The general rule in appraising the sufficiency of a complaint for failure to state a claim is that a complaint should not be dismissed *"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."* *Conley V. Gibson* (1957), 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2LEd 2d 80; *Seymour V. Union News Company,* 7 Cir., 1954, 217 F.2d 168;

It is *"only the extraordinary case in which dismissal is proper"* for failure to state a claim. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981). A court may dismiss a complaint as a matter of law only if the complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984). When ruling on a motion to demurrer, the court must assume that the complaint's factual allegations are true and should construe all inferences from them in the non-moving party's favor. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002); *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990).

As to evaluation on such a motion concerning Fraud claims governed by Fed. R. Civ. P. 9(b), the inquiry is not whether the allegations contain an evidentiary level of fine detail, but simply whether they *"provide notice of the 'precise misconduct' with which defendants are charged,"* so Defendants can respond meaningfully to the

3

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

complaint, *"and to prevent false or unsubstantiated charges." Serville Indust. Machinery V. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984). Thus Plaintiff need not to *"plead the 'date, place or time' of the fraud"* in order to satisfy Rule 9(b).

Although conclusory allegations are insufficient to defeat a Fed. R. Civ. P. 12(b)(6) motion, the federal rules only require that the Plaintiff put the Defendants on notice as to what the legal claim is and the grounds upon which the claim rests. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1155 (9th Cir. 1989).

Plaintiff's complaint NOT ONLY contains cognizable legal theories and sufficient facts to support cognizable legal claims, but also comprises sufficient evidences in the form of Affidavits, Revocations, Offers and Acquiesces to substantiate Summary Judgment at any given point. Thus, Esquire's motion to demurrer should be denied.

## JURISDICTION AND VENUE

The Complaint is filed under RICO, 15 U.S.C. § 1962, et. al., 28 U.S.C. § 1331, 1367 and 1391(b)(2), (c) and (d), 18 U.S.C. § 1341, 31 U.S.C. § 3729(a), and ARS § 12-1101, A.R.S. § 33-420(a), A.R.S. § 33-420(c), and the Bill of Rights of the Constitution for the United States of America, in particular Amendment I, V, VII and XIV. Alleging violations under A.R.S. § 12-1101 and 1103(b) 33-420 et. al., 44-1521 thru 44-1534 47-121(B)(21)(a), 47-3301 thru 47-3306, et al. The unconstitutional foreclosure sale has been timely and duly challenged under F.C.R.A § 623(a)(8)(D), 16 C.F.R § 660.4 and Arizona Administrative Code R20-4-1521and A.R.S § 33-811(C), p.4 of FAC, and **Plaintiff's right of Trial by Jury has been invoked**. As a

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

**natural [born] man**, 15 U.S.C § 1692a(3), **Plaintiff is entitled to all organic laws protected by the constitution for the United States of America and a common law trial by the jury.** On dry land, any action must be adjudicated under common law pursuant to the Seventh Amendment. See: *443 Cans of Frozen Egg Product v. United States of America*; 226 US 172 (1912). It is settled as a matter of law that when the rules of common law are not repugnant to organic or state law, the court cannot *".....adopt a rule other than that established by the common law."* *Lux v. Haggin*, 69 Cal 255, at 261.

   *"On **every question of construction** [28 U.S.C. § 1331] let us carry ourselves back to the time **when the Constitution was adopted**, recollect the spirit manifested in the debates,* [intent of the original law makers] *and instead of trying to determine what **meaning** can be squeezed out of the text, or invented against it, conform to the **probable one** in which it was passed."* Thomas Jefferson.

## WAIVABLE DEFENSES

   Under Fed. R. Civ. P. 12(g)(2) Defendants are limited to one preliminary motion to dismiss Plaintiff's Complaint under Rule 12(b), the enforcement provision is found in Rule 12(h). A party waives any defense listed in Rule 12(b)(2)-(5) by omitting it from the motion in the circumstances described in Rule 12(g)(2) or failing to either make it by motion under this rule or include it in a responsive pleading or an amendment allowed by Rule 15(a)(1) as a matter of course. Esquire, failed to challenge: lack of personal jurisdiction [Fed. R. Civ. P. 12(b)(2)], improper venue [Fed. R. Civ. P. 12(b)(3)], insufficient process [Fed. R. Civ. P. 12(b)(4)], and

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

insufficient service of process [Fed. R. Civ. P. 12(b)(5)], therefore those defenses are waived and cannot be challenged ever again in this ACTION. Thus, **Defendants through their attorneys, Esquire, accepted the jurisdiction, the venue of this Court of Record** [Common Law] Action and the fact that all of them are duly served, regardless of the fact that Timothy O'Brien was avoiding service and Plaintiff, as a result, has not submitted Affidavit of Service on the record on his behalf.

## COURT OF RECORD

This court of record is convened in this matter pursuant to Article Three of our Constitution for the united States of America, as a Judicial court of Law in our Judicial Branch of government, while in session under the rules of the Common Law as guaranteed by the Seventh Amendment and the Northwest Ordinance of 1787, in Article Two. See: *Callan v. Wilson*, 127 US 540 (1888) for authority that Article Three of the United States Constitution provides for and mandates common law jurisdiction and venue. See: **COURT OF RECORD MEMORANDUM filed as a Judicial Cognizance**, EXHIBIT "A", attached hereto and incorporated herein.

## PRIVATE PATENTED LAND

After long study and examination of his Warranty Deed, Exhibit "E", under Exhibits to Complaint, and the line within clearly stating: "SUBJECT to patents," Plaintiff believes and therefore alleges that he is a SUCCESSOR in chain of title of the patent issued by the United States of America, Exhibit "E", under Exhibits to Complaint, and upon further studies he alleges that such patents are not open to collateral attack. *Thomas v. Union Pacific Railroad Company*, 139 F.Supp. 588, 596

6

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

(1956). See also: *State v. Crawford*, 475 P.2d 515 (Ariz. App. 1970) *"A patent is prima facie valid, and if its validity can be attacked at all, the burden of proof is upon the defendant"*; *State v. Crawford*, 441 P.2d 586, 590 (Ariz. App. 1968) *"A patent to land is the highest evidence of title and may not be collaterally attacked"*; *Dredge v. Husite Company*, 369 P.2d 676,682 (1962) *"A patent is the act of legally instituted tribunal, done within its jurisdiction, and passes the title. Such a patent is a final judgment as well as a conveyance and is conclusive upon a collateral attack"*. Absent some facial invalidity, the patents are presumed valid. *Murray v. State*, 596 P.2d 805, 816 (1979). The government retains no power to nullify a patent except through a direct court proceeding. *United States v. Reimann*, 504 F.2d 135 (1974); See also: *Green v. Barker*, 66 N.W. 1032, 1034 (1896)

Through these cases, it can be shown that the patent, which passes the title from the United States of America to the private land owner, and was created to keep the speculators from the land [mortgagees], is only assailable in a direct proceeding for fraud—collateral attack—or mistake – direct attack. **In no other situation is it allowable for the courts, to simply eliminate the patent, the highest ownersip of title in fee-simple.** It has been previously ruled that deeds are mere color of title; the actual title to land is secured with an irrefutable instrument, such as a land patent, and when that land is subsequently conveyed to another owner by a deed, the deed only colors the title to show the new owner while true title remains within and under the patent.

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

1    One question that may arise is what do the courts mean by a collateral attack

2  and what can be done by courts of equity if a collateral attack is presented? Perhaps,

3  the easiest means of defining a collateral attack is to show the converse corollary, or a

4  direct attack on a patent; a direct attack upon a land patent is an action for fraud or

5  mistake brought by the government or a party acting in its place. Therefore, a

6  collateral attack, by definition, is any attack upon a patent that is not covered under

7  the direct attack list. Perhaps **the most prevalent collateral attack in property law**

8  **today is a mortgage or deed of trust <u>foreclosure through color of title</u>**, the mere

9  appearance of a legally enforceable right of possession or ownership, which the courts

10  of Arizona advertently or inadvertently have upheld on many occasions. In these

11  instances, it is wrongly determined that the mortgagee or another transferee in his

12  place purchases the complete title and interest in the land. Such a determination

13  displaces the patentee's ownership of the title without the court ever ruling that the

14  patent was acquired through fraud or mistake [direct attack]. **<u>This is unlawful</u> against**

15  **public policy, legislative intent, and the overwhelming majority of case law**.

16  Therefore, it is now prudent for this court to determine the patent's role in the

17  American property laws and to see what powers the courts of equity have in

18  protecting Plaintiff's rights against the challengers [defendants] of his patented land.

19    The attitude of the Court is to promote simplicity and certainty in title

20  transactions, thereby it should **adhere to what is in the chain of title** and not what is

21  outside. *Sabo v. Horvath*, 559 P.2d 1038, 1044 (1976).  Although, in equity courts,

22  title under a patent [from the government] is subject to control, in order to protect the

8

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

rights of parties acting in a fiduciary capacity, *Sanford v. Sanford*, 139 U.S. 290 (1891), it cannot and does not include the invalidation of the patent. ***"The land patent is the highest evidence of title and is immune from collateral attack."*** - as stated in *Raestle v. Whitson*, 582 P.2d 170, 172 (1978).

Fee simple estates may be either legal or equitable. In each situation it is the largest estate in the land that the law will recognize. *Hughes v. Miller's Mutual Fire Insurance Co.*, 246 S.W. 23 (1922), and patents hold fee simple ownership of land in absolute. Fee simple absolute can be split, however, by the true owner in fee simple of the patented land into lesser estates, which add up to fee simple absolute, if he so choses. In the case of a mortgage, the purported absolute is split into a living and future interest estate, where the mortgagor has fee simple in the living estate and the mortgagee has a purported future interest estate, which it will theoretically acquire in fee simple in the case of a default. If a mortgagee, upon the creation of a mortgage or deed of trust, steps into the shoes of the grantor, upon a conditional fee simple, does it then mean the mortgagee has acquired one of the two halves of a fee simple, when cases have shown that fee simple is only evidenced by a patent, as it is in this Action? In fact, a mortgage is a color of title and the mortgagee can never possess fee simple in any form; courts have held in many states that a mortgage is only a lien. *United States v. Certain Interests in Property in Champaign County, State of Illinois*, 165 F.Supp.474, 480 (1958), (the mortgagee has only a lien and not a vested interest in the leasehold); See also: *Federal Farm Mortgage Corp. v. Ganswer*, 146 Neb. 635, 20 N.W. 2d 689 (1945), (Even after a condition is broken or there is a default on a

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

mortgage, a mortgagee only has an equitable lien which can be enforced in proper proceedings); *South Omaha Bank v. Levy,* 95 N.W.603 (1902) *"Strict foreclosure will not lie when mortgagor holds the legal title"; First National Bank v. Sergeant,* 65 Neb. 394, 91 N.W. 595 (1902) *"Mortgagee cannot demand more than is legally due"; Morrill. v. Skinner,* 57 Neb. 164, 77 N.W. 375 (1898) *"Mortgage conveys no estate but merely creates a lien"; Barber v. Crowell,* 55 Neb. 571, 75 N.W. 1109 (1898) *"Mortgage is mere security in form of conditional conveyance", Sneer v. Hadduck,* 31 Freeman (Ill.) 439, 443 (1863) *"Assignments or conveyances of mortgages do not convey the fee simple, rather they hold only security interests".*

Courts of equity have determined that the fee simple title is not really conveyed, either in its equitable or legal state. See supra Barber, at 1110. A fee simple estate still exists even though the property is mortgaged or encumbered, *Hughes v. Miller's Mutual Fire Insurance* ~ 246 S.W. 23, 24 (1922), and is held within the original land patent. In fact, **a creditor asserting a lien (mortgage) must introduce evidence or proof that will clearly demonstrate the basis of his lien,** *United States v. United States Chain Company,* 212 F.Supp. 171 (N.D. M. 1962).

This patent was issued by the government of the United States of America and signed by the President in order prevented every problem that might advent under color of title, marketable title, and mortgages. Therefore, it is this Court's duty to determine the validity of Plaintiff's patent and to restore his Allodial title in fee-simple.

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

A patent regularly issued by the government is the best and only evidence of a perfect title. The actual patent should be secured to place at rest any question as to validity of entries (possession under a claim and color of title), *Young v. Miller*, 125 So.2d 257, 258 (1960). A patent to be the original grantee or his legal representatives embrace the representatives by contract as well as by law, *Reichert v.Jerome H. Sheip, Inc.,* 131 So. 229, 222 Ala. 133 (1930). A patent has a double operation: in the first place, it is documentary evidence having the dignity of a record of the evidence of the title or such equities respecting the claim as to justify its recognition and later confirmation, and in the second place, it is a deed of the United States of America, or a title deed. As a deed, its operation is that of a quitclaim or rather of a conveyance of such interest as the United States of America possess in the land, such interest in the land passing to the people, 63 Am. Jur. 2d Section 97, P. 566. See also: the United States Supreme Court, in *Summa Corporation v. California ex rel.*, establishing that patent, through possession, or through the term "his heirs and assigns forever", or "successors," or through the necessary passage of title at the death of a joint tenant or tenant in common, is still the **operable title and is required to secure the peaceful control of the land by its owners.**

The patent has an intent to create autonomous private freeholders in the land, protected from the speculators [any lending institution], and a public policy to maintain a simplistic, stable and permanent system of land records. Land patents were designed to effectively insure that this intent and policy were retained.

11
**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

More than 200 years of high court case law clearly indicates that the above-mentioned quit-claim transfer was FOREVER, and a possible reservation of ANY stated rights, title, interest, use, or control, that MAY have been mentioned on the actual United States Land Patent, was for the United States [government] exclusively, and historically they NEVER mentioned any reservation of rights for any state, county, city, or creditors.

United States Land Patented private land was and still is FOREVER protected by a specific United States Land Patent that is STILL under the constitutionally valid protections and powers of the original Supremacy Clause of the 1787 A.D. Constitution for the United States of America, at Article VI paragraph 2, to wit:

**"This** [federal] **Constitution, and the** [constitutionally valid] **Laws of the United States which shall be made in Pursuance thereof;** [i.e. the United States Land Patent Laws] **and all Treaties** [i.e. the 1848 A.D. International Treaty of Guadalupe Hidalgo, and its Protocol of Queretaro] **made, or which shall be made, under the authority of the United States, shall be the Supreme Law of the Land** [with its related Common-Law]**; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."** (Emphasis added)

Plaintiff believes and therefore alleges that absolutely no Allodial Land Ownership, right, title, interest, estate, use, or control was EVER reserved or transferred, to ANY state or local government, or to its legislative, executive, OR for judicial, OR non-judicial foreclosure or eviction proceedings, as absolutely no

12

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

such Allodial Land Ownership, right, title, interest, estate, use, or control was EVER knowingly, willingly, intentionally, and contractually reserved or transferred within any lender documents to ANY lender, loan servicer, or trustee, during the life of any purported [new money creation] loan [as elaborated and incorporated in his FAC].

In their Motion to Demurrer, Esquire failed to recognize Plaintiff's Allodial land ownership, established through succession rights under the patent, as stated and incorporated in his FAC, and exhibited therein.

## CONTRA-ARGUMENTS

Plaintiff believes and therefore alleges that his Complaint and the fact that he is the rightful Successor of title to his Allodial land, and the fact that Defendants, each and every one, defaulted on his Good Faith Offers to pay, under the American law of Presentment—argument left unrebutted by Esquire—presents preponderance of evidences, sufficient to move the Court to Summary Judgment. However, analyzing the previous and the ongoing violations Esquire are committing on the record, such as **fraudulent statements, perjury, incriminating their clients further than Plaintiff alleged** (see Motion to Sanction Counsel, Doc. 52), and **impersonating Counsel**, Plaintiff will analyze and rebut their Arguments.

Esquire's **Points "A" and "B"** under ARGUMENT are contradictory to each other: "A's" main argument is *"Courts should dismiss any claim 'that fails to plead sufficiently all required elements of cause of action'"*, p. 3, and point "B's" main argument that *"A claim must be supported by 'a short and plain statement ' with enough heft to 'show that the pleader is entitled to relief'"*, p4. The two contradict

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

each other and overlook section X of Plaintiff's complaint regarding pro se litigants. Further, not only does Plaintiff list specific cause of action, he has ample confirmation in the EXHIBITS TO COMPLAINT, as true fact and evidence, all of which Esquire has failed to rebut, to demonstrate how the defendants are tied to his actionable claims.

   **Under point, "C"** Esquire states that Plaintiff fails to assert any allegations against "Does" Karla Richards, Dani Todd and KaJay Williams. The reason those defendants are listed as unknown type of entities is because Plaintiff cannot ascertain whether they are signing with their legal names or are using aliases – a well-established practice among debt collectors. Aforementioned Does replied to some of the letters addressed to the CEO of Select Portfolio Servicing, Inc. ("SPS"), attached hereto and incorporated herein, under EXHIBIT "B", alleging that SPS are not party of interest to bring foreclose action against Plaintiff's house and that Timothy O'Brien has conspired [as a CEO of SPS] along with the rest of the Defendants to steal Plaintiff's house through theft by deceptions or larceny by trickery, incriminating Defendants SPS and O'Brien. Esquire have failed to understand acquiescence, among other things, [see Court of Record Memorandum attached hereto] and did not refer to or rebut the EXHIBITS TO COMPLAINT and specifically EXHIBIT "L", which deals with Defendants' acknowledgment to crime with particularities.

   Further, under this point, Esquire is **<u>impersonating counsel</u>** in violation of Fed. R. of Civ. Pro. **Rule 5(a)(1)(E)** and Loc. R. of Civ. Pro. **83.3(a)**, see Doc. 52, pleading on behalf of defaulted party Gerald Hassell, in default during the time their

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

motion was filed, Doc. 30, which has become a habitual disregard of law and process since they have filed a notice of appearance ONLY for SPS and Timothy O'Brien, Doc. 32.

Point **"D"** is nothing but distortion of Plaintiff's complaint or complete misunderstanding on Esquire's behalf pertaining to his bankruptcy filing. Plaintiff introduced his bankruptcy into the Complaint in order to establish three factual allegations: 1). The debt was discharged/paid or Defendants have taken the tax write-off, therefore there is no damaged party entitled to relief; 2). Defendants, Bank of America, N.A. and Brian Moynihan had continued to attempt to coerce and extort payments from Plaintiff in violation of 15 USC 1692g, FDCPA §809(a)and(b), before THEY ADMITTED, on the face of their letters, that they are debt collectors; and 3). Same Defendants (2) have sold discharged debt to a third party debt collector, SPS.

Further, Esquire alleges that Plaintiff signed a Deed of Trust, creating the security interest in his house, which was ultimately assigned to The Bank of New York Mellon,  ("BNYM"), Trust, p. 6. Plaintiff signed a Deed of Trust with First Magnus Financial Corp., not with any of the named Defendants in this Action and his signature was revoked for fraud and lack of consideration, EXHIBIT "L", under EXHIBITS TO COMPLAINT. There is no legal recording or transfer of beneficial interest in Plaintiff's purported obligation, or security interest, to any of the Defendants in this Action but the CORPORATION ASSIGNMENT, EXHIBIT "C", attached hereto and incorporated herein, maliciously executed **5 YEARS AFTER THE CUT-OFF DATE**,  in total, complete and absolute violation of  the New York

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

Trust Laws governing the Pooling and Servicing Agreements ("PSA"), and it is nothing short of fraud that further incriminates the Defendants, Bank of America, N.A., BNYM, Brian Moynihan, and Gerald Hassell. Plaintiff does not allege that the *bankruptcy* extinguishes the security interest under the Deed, but that the security interest was rendered null and void through Defendants' infringements on the terms of the PSA and violations of UCC, which made the Note an unsecured instrument and destroyed any security interest Defendants may claim to hold. For a detailed analysis of the fraud and tax evasion committed by the defendants please read in its entirety CWALT ALT-2007-OA7 BRIEF, Doc. 53 and 53-1.

Plaintiff has listed the debt secured by the Deed of Trust as a secured claim in his Bankruptcy but remains an owner in Fee-Simple (stated in the bankruptcy) and reserved his right of constitutionally challenging the purported creditor under 11. U.S.C. § 522(f), Doc. 41, p. 74. Unable to show any secured interest in Plaintiff's house, Bank of America, N.A., purported servicer at the time, canceled the pending foreclosure action, EXHIBIT "A" under EXHIBITS TO COMPLAINT and issued the first settlement check to Plaintiff.

**Under Point "E",** Esquire incriminates the Defendants by alleging that they broke the law by acting as servicers on debt acquired while in default, in violation of 15 USC 1692 *et seq*, without having material fact knowledge that SPS says on the face of their letters THIS IS NOT ATTEMPT TO COLLECT DEBT [WE ARE DEBT COLLECTORS]. EXHIBIT "D", attached hereto and incorporated herein. Furthermore, SPS acquired purported servicing rights through Bank of America, N.A., which has already admitted that it

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

is a debt collector, its debt collector status a result of assignment of servicing rights AFTER the bankruptcy discharge, EXHIBIT "E", attached hereto and incorporated herein. This begs the question that it if one debt collector transfers servicing of discharged debt to another entity how is the new servicer is not also a debt collector? Esquire further argued that foreclosing on a security interest is not debt collection activity under the FDCPA in contrast to Plaintiff's thorough explanation of the Legislators' intent of Title 15 of the U.S.C. in his Complaint. *Wilson v Draper & Goldberg, PLLC*, 443 F3d 373 (4th Cir. 2006), among others, has ruled that it is; "a 'debt' remains a 'debt' even after foreclosure proceedings commenced," and that if mortgage foreclosures were not "debt collection" under the FDCPA then it: "would create an enormous loophole in the [FDCPA] immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." Id at 376. *Cruz v. Int'l Collection Corp.*, 673 F.3d 991 (9th Cir. 2012), *Birster v. American Home Mortg., Servicing, Inc.*, 481 F. App'x 579, 583 n.2 (11th Cir. 2012), *Glazer v. Chase Home Finance LLC, et al.*, 2013 WL 141699 (6th Cir., Jan. 14, 2013).

Plaintiff believes and has alleged in his Complaint that communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest.

**Point "F"** Plaintiff seeks to Quiet his Allodial title because he is the owner of his estate in Fee-simple and has proven on the record, EXHIBIT "B" under EXHIBITS TO COMPLAINT, that he is the only party which has any valid and secured interest in his estate. Defendants, each and every one, have not submitted any document on the docket, admissible under Fed. Rules of Evidence 902, to show that

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

they also hold such interest and one that is stronger than Plaintiff's, being in possession of his estate, relying instead on unofficial copies of the Deed, Assignment, and Note, all of which Plaintiff has disputed and shown have not transferred any secured interest to Defendants.

**Under Point "F" 1**. UCC does apply to Deeds of Trust because the Deed [Security] is created by and contingent on the Note, as explained in CWALT ALT-2007-OA7 BRIEF, Doc. 53, in order to remain valid and enforceable, and mandated by Article 20 of the Covenants to the said Deed. Non-judicial foreclosure has been duly challenged under Jurisdiction and Venues of Plaintiff's Complaint and will violated his constitutional rights, protected by the Bill of Rights.

**Under Point "F" 2**. Esquire further argues that Defendants can foreclose without being a Holder in Due Course, relying on statutory laws; once again being in total and complete misunderstanding of the jurisdiction and venue of Plaintiff's Complaint, oblivious to the fact that he is a Successor of a patent, issued by the United States of America, signed by the President, EXHIBIT "E", under EXHIBITS TO COMPLAINT. Further, not only has Plaintiff disputed that BNYM is an owner of the Note in Due Course, but that Plaintiff's mortgage was ever even lawfully assigned to the Defendant, entitling it to any interest in Plaintiff's property. The Arizona Supreme Court has ruled that an assignment of the deed of trust without the debt transfers no right upon the assignee, *Hill v. Favour*, 84 P.2d 575, 578–79 (Ariz. 1938). In the case that Counsels of all Defendants in this ACTION rely on repeatedly, *Hogan v. Wash. Mutual Bank, N.A.*, 227 P.3d 781(Ariz. 2012), the court may have

18

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

decided that Arizona Statutes do not impose the burden on beneficiaries of demonstrating their rights before a non-judicial foreclosure may proceed, but Plaintiff is not merely claiming that Defendants have to SHOW that they are holders of the Note but contesting that they ARE holders, in both his Complaint, Proof of Claims, and Offers to Pay. Hogan, however, as the court noted, did not "allege that WaMu and Deutsche Bank are not the holders of the notes in question or that they otherwise lack authority to enforce the notes," as Plaintiff is alleging in regards to Defendants here; the court here suggests that validity of a foreclosure where the beneficiary does not possess the authority to enforce the note can be challenged. Therefore, even the Hogan court noted that a beneficiary must first possess the right to enforce the loan note before it can foreclose. Plaintiff stands on his pleadings and the Judicial Notice as laid in his Complaint and all supportive documents filed thereafter, Doc. 53, and the attachments hereto.

Fed. R. Civ. P. 17 is applicable: *"an action must be prosecuted in the name of the real party in interest"*. *"A party must have standing to file suit at its inception and may not remedy this defect by subsequently obtaining standing."* Venture Holdings & Acquisitions Grp.,LLC v. A.I.M. Funding Grp., LLC, 75 So. 3d 773, 776 (Fla. 4th DCA 2011), *Citibank N.A. AS TRUSTEE ON BEHALF OF BEAR STEARNS ALT-A TRUST PASS THROUGH 2007-3* (Hon. Lizbeth González, JSC Supreme Court, Bronx County, NY), *Focht v. WELLS FARGO BANK, NA,* (Fla: Dist. Court of Appeals, 2nd Dist. 2013), *Wright-Patt Credit Union, Inc. v. Byington,* (2013-Ohio-3963), *Bank of NY Mellon Trust Co. v. Shaffer,* (2012-Ohio-3638), <u>*Bank of N.Y. v*</u>

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

*Silverberg* (2011 NY Slip Op 05002). "*A party who only has the mortgage but no note has not suffered any injury given that bare possession of the mortgage does not endow its possessor with any enforceable right absent possession of the note. See Restatement of the Law 3d, Property, Mortgages, Section 5.4(e), at 385 (1996) ('[I]n general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation.'). In other words, possession of the mortgage is of no import unless there is possession of the note*". *BAC Home Loan Serv. v. McFerren*, (2013-Ohio-3228) Plaintiff is citing few examples among the wave of cases that courts across the country have ruled that in order to foreclose party must have standing [Holder]. Though Arizona is a non-judicial foreclosure state, once a party's standing to foreclose and right to enforce is directly challenged in court, as is the case here where Plaintiff is even challenging that BNYM is in legal possession of the mortgage or the Note, the party must prove that it has a secured interest, Arizona Administrative Code R20-4-1521, A.R.S § 33-811(C), and 15 U.S.C. §1692i(a). Based upon the plain language of the statute, the provision should not bar a challenge to a foreclosure sale on the grounds that the trustee deed could not transfer title to the purchaser or that the beneficiary or trustee had no authority to foreclose because neither of these grounds is listed in that provision.

**Under Point "F"**3. On page 9, Esquire claims "*In signing the Deed of Trust in this case, Plaintiff agreed that Mortgage Electronic Registration Systems, Inc. ("MERS"), named as beneficiary, would act as the 'nominee for Lender and Lender's successors and assigns,'*" a correct statement if money were given to Plaintiff to

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

substantiate a loan and if his signature on the Note was not used to fund the transaction as alleged. Although Plaintiff alleged in his Complaint that this document is void *ab initio* due to lack of consideration and the fact that no money were given to him and there was no exchange of at list one silver dollar do validate the purported contact, and the fact that he has rescinded his signature, he will take this opportunity to further elaborate on MERS' assignment.

Under UNIFORM COVENANTS 20, in the said Deed of Trust, EXHIBIT "I" under EXHIBITS TO COMPLAINT, MERS has the right to sell "*... the Note or partial interest in the Note (together with the Security Instrument (Deed of Trust)] without prior notice to the borrower*". Plaintiff believes and therefore alleges that MERS has separated the Note from the Security [Deed of Trust] in violation of the Uniform Covenants, rendering the said security, allegedly entitling Defendants to foreclose, **VOID**.

"*For there to be a valid assignment, there must be more than just assignment of the deed alone; the note must also be assigned. . . . MERS purportedly assigned both the deed of trust and the promissory note. . . . However, there is no evidence of record that establishes that MERS either held the promissory note or was given the authority . . .to assign the note.*" *Saxon Mortgage Services, Inc. v. Hillery*, 2008 WL 5170180 (N.D.Cal.2008). The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event

21

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust. *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo.App.2009). Through the Assignment, MERS did not transfer any beneficial interest to BNYM because it held no beneficial interest to begin with, among other reasons, Doc 53., and neither did it transfer VALUE, because it held NONE to transfer.

**Under Point "G",** Esquire claim that Defendants' Fraud is Barred by the Statute of Limitation failing short to realize that this is an ongoing action, to this day, by Defendants of conspiracy against private land, protected by United States Patent, falsification of documents and filing on public record, security violations, tax evasion, grand theft, perjury and fraud on the court, explicated through their attempt to bring false allegations and misstatements to sway the court in bad faith, without due diligence done to insure accurate submission of true facts and evidence. Examples of fraud upon the court by Defendants, through Esquire, Doc. 40, include attempting to claim that they are not debt collectors and alleging that a lawful assignment was executed in 2011, which would be a violation of the PSA and federal laws, all under penalty of perjury.

In the United States, when an <u>officer of the court</u> is found to have fraudulently presented facts to court so that the court is impaired in the impartial performance of its legal task, the act, known as "fraud upon the court", is a crime deemed so severe

22

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

and fundamentally opposed to the operation of justice that it is **not subject to any statute of limitation.**

Defendants are committing deliberate deception **[TORT/FRAUD]** in order to secure unfair or unlawful gain in a coordinated attempt to steal Plaintiff's house **[VALUABLE]** through wanton and premeditated scheme, as alleged in Complaint, by filing fraudulent documents in Maricopa County Recorder's Office, committing **felony** and **security violations**, while blatantly ignoring his lawful attempts [Offers to Pay] to settle his private matter by avoiding costly court litigation, and violating the Bankruptcy Protection Law preventing collection on discharged debt and habitually ignoring the 15 U.S.C. *et seq.*

Ariz. Rev. Stat. Ann. §13-107(A) and 1. is clear in that the **falsification of a public record is felony and carries seven (7) years of statute of limitation.** 15 U.S.C. 77x **Securities Act violations carries six (6) years of statute of limitation.** 18 U.S.C. 1014 **Fraud concerning loan** and credit applications generally, 18 U.S.C. 1005 **Fraud concerning bank entries**, reports and transactions, 18 U.S.C. 1344 **Bank Fraud**, and 18 U.S.C. 656 **Theft, embezzlement, or misapplication by bank officer or employee carries 10 (10) years of statute of limitation.**

Defendants, each and every one, have conspired under color of law [18 U.S.C 242 and 241] to steal private land by coordinated, malicious and well thought statutory process, while falsifying documents in an attempt to deprive Plaintiff from his constitutional protection and due process, invoked hereto and incorporated herein.

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

In his Complaint Plaintiff alleges the forged documents [Robo-Signed] are illegal because fraud cannot be the basis of clear title, as the law is well settled that **Clear Title May Not Derive From a Fraud** (including a bona fide purchases for value) and any subsequent Deed of Trust, Assignment or Trustee Sale is VOID. Plaintiff further explains how the purported Assignment, Substitution of Trustee and Notice of Trustee Sale were executed in the same day and time and Notarized by the same notary, in the a well-known foreclosure shop, ReconTrust, in Texas, with all names of the signers block stamped. The purported Assignment, EXHIBIT "C", is a textbook example of FRAUD: (1). Forged signature of Carmelia Boone as Assistant Secretary of MERS; and (2). It is not signed by a competent "material fact witness," one who can attest under penalty of perjury that has seen and examined the original NOTE and DEED OF TRUST, as required by law, for transferring them to the successor.

Under 1. Plaintiff Brings Into Evidence, attached hereto, EXHIBIT "F", and incorporated herein, an Official Copy from Maricopa County Recorder's Office of Carmelia Boone's signature, Doc. # 20100605004, with no resemblance to Carmelia Boone's, from the same Terrant County and the same MERS title, FORGED signature on his Assignment, Doc. 42-2. The Defendants will have to prove on the record, which one of the two, completely different signatures, is signed by Carmelia Boone.

Under 2. Plaintiff Brings Into Evidence the well-established fact that MERS is an electronic registrar and did not transfer the Note and the Deed of Trust, which renders the Assignment Null and Void and that the signer, Carmelia Boone, is liable

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

under State and Federal Laws for perjury. Further, Plaintiff Brings Into Evidence, his Good Faith Offer to Pay, EXHIBIT "H" under EXHIBITS TO COMPLAINT, where he offered to pay cash, any amount due, for exchange of the original documents in order to avoid further harassment and persecution, as currently undergoing, and the Defendants, each and every one, DEFAULTED, attesting that they are not in possession of those documents.

**Under Point "H",** Plaintiff's stands on the well plead allegations in his Complaint and further attests that his heath continues to deteriorates under the relentless attacks and unlawful foreclosure proceedings of/by the Defendants and the burdensome task of engaging in the constant unveiling of truth, conferring to law, facts and evidence, in order to contest the fraud and misrepresentation Esquire brings to the court. In addition, physical and emotional distress is a cause of action which can be pursued for damages under the FDCPA; Plaintiff has alleged and maintains that Defendants are debt collectors, and the action that they have taken, and continue to take, in their attempts to extort payments and conduct trustee sales have caused excessive physical and emotional burden.

**Under Point "I"** Esquire argues that Plaintiff Lacks Standing to Prosecute For Mail Fraud. Plaintiff has expressed himself clearly in the Complaint that he is simply willing to assist Arizona Attorney General and make his record and complaint to the United States Postal Inspector available for pressing charges against Defendants, not that he himself is prosecuting for mail fraud. Plaintiff stands on his Complaint and all

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

documents submitted in this Verified Action-at-Law in support of the RICO violations.

Under Point "J" Esquire failed to read the EXHIBITS TO COMPLAINT, specifically EXHIBIT "L", where Plaintiff has addressed TILA and RESPA violations.

## CONCLUSION

THEREFORE, for the foregoing reasons, Plaintiff requests this Court to overrule and dismiss the Esquire's Motion to Demurrer.

Respectfully submitted on this 6th day of January, 2014.

Ivaylo Tsvetanov Dodev, ARR, Pro Se Plaintiff
6312 South 161st Way, Gilbert, Arizona
(480) 457-8888 Phone

PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER

1

2

3

**<u>CERTIFICATE OF SERVICE</u>**

4

     **ORIGINAL** and **ONE COPY** hand delivered to The United States District Court for the District of Arizona this 6th day of January, 2014. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system: BANK OF AMERICA, NA, RECONTRUST, NA, BRIAN MOYNIHAN, SELECT PORTFOLIO SERVING, NA, TIMOTHY O'BRIEN, GERALD HASSELL AND THE BANK OF NEW YORK MELLON.

5

6

7

8

9

10

            **Ivaylo Tsvetanov Dodev, Plaintiff**

11

            **6312 South 161st Way, Gilbert, Arizona**

12

            **(480) 457-8888 Phone**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**