Ivaylo Tsvetanov Dodev,

c/o 6312 South 161st Way
    Gilbert, Arizona
    (480) 457-8888 Phone
    (480) 457-8887 Facsimile
    dodev@hotmail.com

Pro Se

**FILE ON DEMAND**
**FOR THE RECORD**

\_X\_ FILED     \_\_ LODGED
\_\_ RECEIVED    \_\_ COPY

JAN 0 8 2014

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivaylo Tsvetanov Dodev, <br><br> **Plaintiff,** <br><br> vs. <br><br> **RECONTRUST COMPANY, N.A., ET AL** <br><br> **Defendants.** | Case No.  CV-13-02155-PHX-GMS <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS RECONTRUST, N.A., BANK OF AMERICA, N.A. AND BRIAN T. MOYNIHAN'S MOTION TO DISMISS COMPLAINT** <br> Time: 2:21 PM <br><br> **Hon. G Murray Snow** |

Here comes Plaintiff, Ivaylo Tsvetanov Dodev, *pro se*, ("Plaintiff"), consumer, as defined in 15 U.S.C § 1692a(3): "'consumer' means any <u>natural person</u> obligated or allegedly obligated to pay any debt", with his response in opposition to DEFENDANTS RECONTRUST, N.A., BANK OF AMERICA, N.A. AND BRIAN T. MOYNIHAN'S MOTION TO DISMISS COMPLAINT, Doc. 42, ("Motion to Demurrer"), submitted for the defendants ReconTrust Co., N.A. ("ReconTrust"), Bank of America, N.A. ("BOA"), and Brian T. Moynihan ("Moynihan"), by their counsel Eric M. Moores, Sean K. McElenney, and Coree E. Neumeyer ("Counsel").

1

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

Counsel argues that Plaintiff failed to state a claim and lacks personal jurisdiction over Moynihan, despite that the Fist Amended Complaint ("Complaint") and the Exhibits capably established jurisdiction over the Defendants and adequately states claims. In Court of Record the accuser has jurisdiction to accuse and the defendant to defend. Further, Counsel's Exhibits, unofficial copies from the internet, are inadmissible as evidence in this VRIFIED ACTION-AT-LAW and their **Demurrer is without merit and should be rejected in its entirety**

## LEGAL ARGUMENT

Judicial prudency favors resolving cases on their merits, based on admissible facts submitted into evidence, governed by the law and the venue of the action, rather than through technical challenges to the pleadings. When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader. See *City of Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 493 (1986); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993). The complaint is deemed to include any written instrument attached to it as an exhibit or any statement or documents incorporated in it by reference. *Cortec Indus., Inc. v. Sum Holdings L.P.*, 949 F.2d 42, 47 (2d Cir.1991).    The Court also ought to consider matters of which judicial notice is given. *Leonard T. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir.1999). The general rule in appraising the sufficiency of a complaint for failure to state a claim is that a complaint should not be dismissed *"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which*

2

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

*would entitle him to relief.*" *Conley V. Gibson* (1957), 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2LEd 2d 80; *Seymour V. Union News Company,* 7 Cir., 1954, 217 F.2d 168;

It is *"only the extraordinary case in which dismissal is proper"* for failure to state a claim. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981). A court may dismiss a complaint as a matter of law only if the complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984). When ruling on a motion to demurrer, the court must assume that the complaint's factual allegations are true and should construe all inferences from them in the non-moving party's favor. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002); *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990).

As to evaluation on such a motion concerning Fraud claims governed by Fed. R. Civ. P. 9(b), the inquiry is not whether the allegations contain an evidentiary level of fine detail, but simply whether they *"provide notice of the 'precise misconduct' with which defendants are charged,"* so Defendants can respond meaningfully to the complaint, *"and to prevent false or unsubstantiated charges."* *Serville Indust. Machinery V. Southmost Machinery,* 742 F.2d 786, 791 (3d Cir. 1984). Thus Plaintiff need not to *"plead the 'date, place or time' of the fraud"* in order to satisfy Rule 9(b). Although conclusory allegations are insufficient to defeat a Fed. R. Civ. P. 12(b)(6) motion, the federal rules only require that the Plaintiff put the Defendants on notice as to what the legal claim is and the grounds upon which the claim rests. *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1155 (9th Cir. 1989).

3
**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

Plaintiff's complaint NOT ONLY contains cognizable legal theories and sufficient facts to support cognizable legal claims, but also comprises sufficient evidences in the form of Affidavits, Revocations, Offers and Acquiesces to substantiate Summary Judgment at any given point. Thus, <u>Counsel's motion to demurrer should be denied in its entirety.</u>

## <u>JURISDICTION AND VENUE</u>

The Complaint is filed under RICO, 15 U.S.C. § 1962, et. al., 28 U.S.C. § 1331, 1367 and 1391(b)(2), (c) and (d), 18 U.S.C. § 1341, 31 U.S.C. § 3729(a), and  ARS § 12-1101, A.R.S. § 33-420(a), A.R.S. § 33-420(c), and the Bill of Rights of the Constitution for the United States of America, in particular Amendment I, V, VII and XIV. Alleging violations under A.R.S. § 12-1101 and 1103(b) 33-420 et. al., 44-1521 thru 44-1534 47-121(B)(21)(a), 47-3301 thru 47-3306, et al. The unconstitutional foreclosure sale has been timely and duly challenged under F.C.R.A § 623(a)(8)(D), 16 C.F.R § 660.4 and Arizona Administrative Code R20-4-1521and A.R.S § 33-811(C), p.4 of Complaint, and **Plaintiff's right of Trial by Jury has been invoked**. As a **<u>natural [born] man</u>**, 15 U.S.C § 1692a(3), **<u>Plaintiff is entitled to all organic laws protected by the constitution for the United States of America and a common law trial by the jury.</u>** On dry land, any action must be adjudicated under common law pursuant to the Seventh Amendment. See: *443 Cans of Frozen Egg Product v. United States of America*; 226 US 172 (1912). It is settled as a matter of law that when the rules of common law are not repugnant to organic or state law, the

court cannot *".....adopt a rule other than that established by the common law."* Lux v. Haggin, 69 Cal 255, at 261.

*"On every question of construction* [28 U.S.C. § 1331] *let us carry ourselves back to the time when the Constitution was adopted, recollect the spirit manifested in the debates,* [intent of the original law makers] *and instead of trying to determine what meaning can be squeezed out of the text, or invented against it, conform to the probable one in which it was passed."* Thomas Jefferson.

## WAIVABLE DEFENSES

Under Fed. R. Civ. P. 12(g)(2) Defendants are limited to one preliminary motion to dismiss Plaintiff's Complaint under Rule 12(b), the enforcement provision is found in Rule 12(h). A party waives any defense listed in Rule 12(b)(2)-(5) by omitting it from the motion in the circumstances described in Rule 12(g)(2) or failing to either make it by motion under this rule or include it in a responsive pleading or an amendment allowed by Rule 15(a)(1) as a matter of course. Council, failed to challenge: lack of personal jurisdiction [Fed. R. Civ. P. 12(b)(2)], for defendants other than Moynihan, improper venue [Fed. R. Civ. P. 12(b)(3)], insufficient process [Fed. R. Civ. P. 12(b)(4)], and insufficient service of process [Fed. R. Civ. P. 12(b)(5)], therefore those defenses are waived and cannot be challenged ever again in this ACTION. Thus, **Defendants. Through Counsel, accepted the jurisdiction, other than Moynihan, the venue of this Court of Record** [Common Law] Action and the fact that all of them are duly served.

## COURT OF RECORD

5

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

This court of record is convened in this matter pursuant to Article Three of our Constitution for the united States of America, as a Judicial court of Law in our Judicial Branch of government, while in session under the rules of the Common Law as guaranteed by the Seventh Amendment and the Northwest Ordinance of 1787, in Article Two. See: *Callan v. Wilson,* 127 US 540 (1888) for authority that Article Three of the United States Constitution provides for and mandates common law jurisdiction and venue. See: **Court of Record Memorandum, filed hereto and incorporated herein, as a Judicial Cognizance**, under EXHIBIT "A".

## CONTRA-ARGUMENTS

### I. COURT HAS PERSONAL JURISDICTION OVER MOYNIHAN AND COMPLAINT BRINGS ACTIONABLE CLAIMS AGAINST WRONGDOING BY DEFENDANT

**Counsel Point A:** The Complaint was filed, under an Article III Court of Record Venue, functioning under common law, which has unlimited, including personal, jurisdiction over the Defendants. Further, this Federal District Court has personal jurisdiction over Moynihan because allegations brought against him in the Complaint show that there was sufficient and sustained personal contact between Plaintiff and Moynihan, through correspondence over the course of 5 years, which gave rise to some causes of actions, to bring about specific jurisdiction over Defendant.

A court can have specific jurisdiction over a non-resident defendant as long as the claims arise out of the defendant's contacts with the forum state. The "sufficient minimum contact" required to establish jurisdiction needs only be "casual" if the

6

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

claim is related to the contact (specific jurisdiction), or "systematic and continuous" to allow for claim both related to contact and unrelated (general jurisdiction). *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945).

As stated in the Complaint, and shown in its incorporated Exhibits, Plaintiff had sustained contact with Moynihan through correspondence sent to his corporate office through certified mail, including Proofs of Claim, Offers to Pay, Rescissions Letters, and Complaints. Moynihan established contact with Plaintiff through multiple responses from his corporate office by his legal representatives who were acting directly on his behalf. Some of the causes of actions alleged in Plaintiff's suit arise directly from these contacts and Moynihan's inability to sufficiently respond to plaintiff's allegations; for example, Moynihan acquiesced through tacit procuration to charges of fraud, contractual violations, grand theft and deception - thus incriminating himself.

In addition, FRCP 4(k) allows for full constitutional reach of federal courts' territorial authority to exercise personal jurisdiction over defendants, once summons are served, if the claim arises under federal law. Arizona Rules of Civil Procedure Rule 4.2(a) also allows personal jurisdiction to the maximum extent permitted by the Constitution of this state and the Constitution of the United States. As this VERIFIED ACTION-AT-LAW is filed under a FEDERAL venue with claims under FEDERAL law brought against Defendants, this Arizona District Court, a Court of Record, has personal jurisdiction over Moynihan. It would not be unreasonable or a constitutional violation of Due Process for the court to exercise jurisdiction over

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

Moynihan; requiring the defendant to defend in the forum state would "not offend traditional notions of fair play and substantial justice" because federal venues, especially when taken into consideration that federal laws applicable in all states are of relevance here, are construed in way that provides a neutral forum for outsiders to expect a hearing that is not tainted with localized biases.

Since "each federal court exercises 'the judicial power of the United States,'" the Fifth Circuit concluded that *"due process requires only that a defendant in a federal [question] suit have minimum contacts with the United States." Federal Trade Commission v. Jim Walter Corp.,* 651 F.2d 251 (5th Cir. Unit A July 1981). Plaintiff believes that as a resident in the United States, Moynihan satisfies the requirement. Furthermore, when claims are made in federal court for violations under securities laws, personal jurisdiction is automatically attained. For list of security violations, fraud and tax evasion please refer to Doc. 53.

## II. ACTIONABLE CLAIMS IN PLAINTIFF'S COMPLAINT AROSE OUT OF CONDUCT OF DEFENDANTS AS DEBT COLLECTORS UNDER FDCPA

**Counsel Point B:** Counsel exhibits deficiency and lack of material fact knowledge in their discussion of Defendants' status of debt collectors and general provisions of the FDCPA. Counsel is correct that in normal circumstances mortgagees and their beneficiaries are not debt collectors. However, under FDCPA, a mortgagee or servicer is considered a debt collector if the loan was in default or the debt was discharge at the time that the servicing rights were acquired, as was the case with BOA. BOA was not only acting as a debt collector at the time that it was

8
**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

servicing Plaintiff's mortgage, attempting to obtain a discharged debt in violation of FDCPA, as plaintiff alleged in his complaint, but **ADMITTED in correspondence that they were a DEBT COLLECTOR, in direct contradiction to Counsel's assertions, on the record and under penalty of perjury,** that they were not. **Counsel's loose cannon argument fails flat and its face and is without merit as it exuberates their LACK OF MATERIAL FACT KNOWLEDGE about the CLAIMS Plaintiff has made in his Complaint and the CLIENTS [DEFENDANTS] they have legal duty to represent.**

On February 8th, 2011, Plaintiff received a letter from BOA stating that effective July 1st, 2011, the servicing of the loan would be transferred from BAC Home Loan Servicing, LP, to Bank of America, N.A. (a date after Plaintiff's bankruptcy discharge and in effect a transfer of debt in default, rendering BOA a debt collector), EXHIBIT "B," attached hereto and incorporated herein. On the same day Plaintiff received another letter giving additional information that "under the Fair Debt Collections Practices Act and certain state laws, Bank of America, N.A. is considered a debt collector. As a result, we are sending you the enclosed [FDCPA] Notice," EXHIBIT "C," attached hereto and incorporated herein. Plaintiff is in possession of many Monthly Statements, Payment Adjustment Notices and Loan Modifications mailers, sent after July 1st, 2011, where BOA does not identify the debt as discharged or itself as a debt collector, in violation of FDCPA. See EXHIBIT "D" from July 28th, 2011, attached hereto and incorporated here in, where BOA sent a Loan Statement demanding that any payments that are due "must be remitted

9

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

immediately" and failing to state they are a debt collector. BOA was harassing Plaintiff for over one year with dunning letters and phone calls, attempting to unlawfully extort payments and presenting an undue burden to plaintiff through malicious efforts to intimidate by instructing Defendant ReconTrust to file a Notice of Trustee Sale August 24th, 2011.

The aforementioned exhibits, attached hereto, defeat Counsel's second misconception that Plaintiff somehow believes that since his debt was discharged in Bankruptcy Proceeding he is entitled to a free and clear house. Plaintiff's discussion of the bankruptcy was used in support of showing Defendants' debt collector status and he filed a Federal Action Suit, under 15 U.S.C 1962, *et seq*, for damages, inflicted on him by the Defendants in violation of State and Federal Laws: attempting to collect discharged debt, violating 11 USCA § 524(a)(2), Matter of Edgeworth, M.D. (5th Cir. 1993) 993 F.2d 51, 53; see also In re McGhan (9th Cir. 2002) 288 F.3d 1172, 1175 and *Walls v. Wells Fargo Bank, N.A.* (9th Cir. 2002) 276 F.3d 502, 507; assigning discharged debt for servicing; continuous harassment on Plaintiff after defaulting on Proof of Claim, 15 USC § 1692g 809(b); Default on his Good Faith Offer to Pay the Entire Amount Due and trying to foreclose on Private Land, 15 USC § 1692e 807(5), protected by the United States Patent. In his Complaint Plaintiff further alleged that there is no holder of the Security, created through FRAUD—by securitizing his signature without money of exchange and meaningful consideration—and that the purported Assignment is FRAUD on its face, executed years after the cut-off date, leading to array of security violations and tax evasions,

10

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

both of which are felonies. <u>Please refer to the PSA Brief, Doc. 53 and 53.1 for thorough analyses of Defendant's FRAUD, based on true facts and evidences according to law</u> not on loose cannon assertions and interpretations as in Counsel's Motion to Demurrer.

In regards to ReconTrust, the term "debt collector" also includes security enforcers when they threaten non-judicial action to dispossess property without a right or intention to take that property, 15 USC §1692a(6) and 15 USC §1692f(6). Plaintiff has alleged multiple times that neither BOA nor ReconTrust have or at any time had any "right to possession of the property claimed as collateral through an enforceable security interest," or an enforceable security instrument for that matter, in and of themselves or through any beneficiary they may claim to represent. Not only were there elements of contractual fraud associated with the early transfers of Plaintiff's Note and Deed, as Plaintiff has shown in Doc. 53, BOA was never in lawful possession of either Plaintiff's Note or Trust Deed [Mortgage], and thus had no rights to or enforcements rights under Plaintiff's [subsequently invalid] Obligation.

Plaintiff has alleged in Complaint and Judicial Cognizance that The Bank of New York Mellon ("BNYM"), the current purported "beneficiary," was not party to a lawful assignment, which Counsel claims was executed in August 2011, granting it any beneficial interest or enforcement rights of Plaintiff's Obligation [if one exists still]. Because ReconTrust is acting as Trustee for BNYM, which Plaintiff alleges was never actually assigned or transferred any security interest in his land, especially

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

in any manner pursuant to state, federal, contractual, or securities law, in this "nonjudicial action to affect dispossession or disablement of property", it is functioning as a debt collector under 15 USC §1692a(6) and committing unfair practices under 15 USC §1692f(6). Further ReconTrust and BNYM are liable under A.R.S. §33-420 for the recordation of false and misleading documents in which they claim an interest in, or a lien or encumbrance against, Plaintiff's home when they are not the beneficial title holders.

Counsel further contends that a foreclosure is not a debt collection act within the scope of the FDCPA. On the contrary, *Wilson v Draper & Goldberg, PLLC*, 443 F3d 373 (4th Cir. 2006), among others (See also *Shapiro*, 823 P.2d at 124 and *Glazer v Chase Home Fin LLC*, 704 F.3d 453 (6thCir. 2013)), has ruled that it is; "a 'debt' remains a 'debt' even after foreclosure proceedings commenced," and that if mortgage foreclosures were not "debt collection" under the FDCPA then it: "would create an enormous loophole in the [FDCPA] immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." Id at 376. Also, in regards to ReconTrust's fiduciary status, "a trustee's actions to foreclose on a property pursuant to a Deed of Trust are not 'incidental' to its fiduciary obligations. Rather, they are central to it. Thus, to the extent Defendants use the foreclosure process to collect…alleged debt they cannot benefit from the exemption contained in [15 USC] §1692a(6)(F)(i)" Id at 377. FTC Staff Commentary on the FDCPA has also held that a trustee appointed solely to conduct a foreclosure sale does not fall under this

12

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

exemption; immediately after ReconTrust was supposedly appointed Trustee, as Counsel claims is its current legal status under the Deed, a Notice of Trustee sale was issued on the same day, suggesting that ReconTrust was appointed solely for this purpose. Thus, ReconTrust is not exempt from under FDCPA from being defined as a debt collector.

### III. PLAINTIFF CAN RIGHTFULLY ASSERT A CLAIM TO QUITE TITLE

**Counsel Point C**: Plaintiff believes and therefore alleges that his Complaint and the fact that he is the rightful Successor of title to his Allodial land, and the fact that Defendants, each and every one, defaulted on his Good Faith Offers to pay, under the American law of Presentment—argument left unrebutted by Counsel—presents preponderance of evidences, sufficient to move the Court to Summary Judgment.

As stated before, the demurrer demonstrates a distortion of Plaintiff's complaint by Counsel in regards to his bankruptcy filing by claiming that he alleges that a debt does not exist. Plaintiff introduced his bankruptcy into the Complaint in order to establish three factual allegations: 1). The debt was discharged/paid or Defendants have taken the tax write-off, therefore <u>there is no damaged party entitled to relief</u>; 2). Defendants, BOA and Moynihan had continued to attempt to coerce and extort payments from him in violation of 15 USC 1692g, FDCPA §809(a)and(b), before **<u>THEY ADMITTED, on the face of their letters, that they are debt collectors</u>**; and 3). Same Defendants (2) have sold discharged debt to a third party debt collector, Select Portfolio Servicing, Inc. ("SPS"). Counsel is correct, however, in that Plaintiff does not in fact believe that a valid, lawful debt exists. This is due to

13

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

fraudulent and unlawful action by Defendants, in violation of contractual terms, UCC, and the provisions of the Pooling and Servicing Agreement under which Plaintiff's Note and Mortgage are allegedly held.

Plaintiff, in his complaint and correspondences to Defendants, has pled affirmative fact showing material falsities in the recorded documents which challenge the beneficiary's identity and authority, and the identity and authority of the trustee. He has challenged that ReconTrust is the current lawful trustee under the Deed, that there was ever a lawfully executed, unfalsified Substitution of Trustee, and that BNYM is the lawful beneficiary, through a proper assignment of the Note and Mortgage, which has a right to "foreclose on its security interest", as Counsel contends it does, and which even possesses a security interest in Plaintiff's mortgage.

## IV. UCC IN RELATION TO OWNERSHIP OF NOTE STANDING TO FORECLOSE

**Counsel Points 4, 5, and 6, under C**: Counsel contends that Plaintiff's UCC arguments in relation to the mortgage are irrelevant because Defendants are not attempting to foreclose upon or enforce the promissory note but fails to recognize that Plaintiff brings up UCC in relation to negotiable instruments to elucidate that violations under the UCC have invalidate the security instrument upon which Defendants ARE trying to foreclose.

**Plaintiff does not allege that the *bankruptcy* extinguishes the security interest under the Trust Deed**, but that the security interest was rendered null and void through Defendants' infringements on the terms of the Pooling and Servicing

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

Agreement ("PSA") of the Trust that Plaintiff's mortgage was securitized into and violations of transfer pursuant to UCC, which made the Note an unsecured instrument and destroyed any security interest Defendants may claim to hold. A detailed analysis and full explanation of how the UCC related to this action, including why the original debt, along with the security instruments that were supposed to evidence it, was invalidated, abrogating any rights that Defendants may think, or have thought, they have to collect on the debt or purported lien specifically, can be found in CWALT ALT-2007-OA7 BRIEF, Doc. 53 and 53-1.

### A. UCC in Relation to Enforcement of the Deed

The transfer of the note is governed by the UCC and whereas, the transfer of the mortgage generally is governed by the state law of conveyance and real property. A.R.S. § 33-817 states that "the transfer of any contract or contracts secured by a trust deed shall operate as a transfer of the security for such contract or contracts," which the Arizona Supreme Court has interpreted to mean that when the Note is transferred the Deed is also transferred as an *"operation of law"* *Vasquez v. Saxon Mortg., Inc.* (In re Vasquez), 228 Ariz. 35, 266 P.3d 1053 (Ariz. 2011).Therefore, though Defendants are claiming to be operating on the Deed and not the Note, the UCC is directly relevant here as it regulates how a Note ownership and right of enforcement of a note and its subsequent security interest is transferred. Even if Arizona Courts, as Counsel says, have found that the security interest is not invalidated if the Note and Deed are not transferred concurrently to the same party [bifurcation], which Plaintiff hold contentions against but will not discuss here, they

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

have also found that <u>the security interest [enforcement of Deed] is only granted to the entity which has ownership of the Note as governed by the UCC.</u> The Note, as a negotiable instrument, can be "negotiated" according to UCC §3-201, or the holder may transfer it by way of an assignment or sale, rather than by negotiation, but its enforceability is determined by Article 3 rules that govern the transfer, UCC §2-203; if these rules are not met, <u>one who is in mere possession of the note may not be entitled to enforce it</u>. Negotiability pursuant to UCC is important because Article 3 creates rights to enforce the Note only if it is negotiable and properly transferred, UCC § 3-203(b), and proper negotiation secures holder in due course status, UCC §3-301. **<u>If the foreclosing party is not holder in due course which has secured ownership of the note and enforcement rights through proper negotiation, indorsement, and/or delivery, than it loses its right to enforce the security interest.</u>**

## B. Lawful Transfer of Right to Enforce the Deed

Pursuant to the PSA of CWALT ALT-2007-OA7, which, if we take into account that BNYM, in claiming beneficiary status to Plaintiff's Deed as "Trustee for the [CWALT ALT-2007-OA7]," Plaintiff's Note and Mortgage should be a part of, than we can track the chain of transfer that these two instruments evidencing Plaintiff's obligation and the security should have underwent. According to the Prospectus of the PSA, the depositor was to purchase the pool of loans from the seller and assign them to the trustee for the benefit of the certificateholders, the trustee than giving them to a custodian to hold so that the investors can be protected

16

against claims that the notes and mortgages are assets of the original lender; all of these entities were to have handled the Note and Mortgage in some capacity. All of these transfers were to be properly executed and recorded, according to the PSA and state laws, by the closing date of the PSA, with the last transfer being to BNYM as beneficiary; **if they were not as Doc. 53 details, the consequence is that the Trustee under the Deed (ReconTrust) does not possess the authority to foreclose** in the event of a default because the Trustee under the Security Trust (BNYM) does not possess enforcement rights under the security agreement [Deed] or the Note.

Plaintiff's claims relate to false claims of interest, <u>not to "show me the note,"</u> but despite the disparaging label, one thing is clear: parties cannot run rampant making false claims to collect from borrowers when those parties do not own the loan. <u>The purported assignment of Plaintiff's mortgage was executed in 2011, four years after the closing date under the PSA, in violation of it and federal laws.</u> The Beneficiary, now supposedly BNYM, which ReconTrust is attempting to conduct Trustee Sale for, has been unable to show that it has a colorable claim against Plaintiff's home by establishing its status as the holder, as a "person entitled to enforce," or as an entity with any ownership or other interest in the Note. <u>The Arizona Supreme Court has ruled that an assignment of the Deed of Trust without the debt transfers no right upon the assignee,</u> *Hill v. Favour*, 84 P.2d 575, 578–79 (Ariz. 1938). Arizona's nonjudicial foreclosure laws only grant trustee power of sale by virtue of its status as a trustee if the beneficiary has secured interest and rights to enforce it.

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

In the case that Counsels of all Defendants in this ACTION rely on repeatedly, *Hogan v. Wash. Mutual Bank, N.A.*, 227 P.3d 781(Ariz. 2012), the court may have decided that Arizona Statutes do not impose the burden on beneficiaries of demonstrating their rights before a nonjudicial foreclosure may proceed, but Plaintiff is not merely claiming that Defendants have to SHOW that they are holders of the Note but <u>contesting that they ARE holders, in both his Complaint, Proof of Claims, and Offers to Pay</u>. *Hogan*, however, as the court noted, did not *"allege that WaMu and Deutsche Bank are not the holders of the notes in question or that they otherwise lack authority to enforce the notes,"* as Plaintiff is alleging in regards to Defendants here; the court here suggests that validity of a foreclosure where the beneficiary does not possess the authority to enforce the note can be challenged. Therefore, even the <u>Hogan court noted that a beneficiary must first possess the right to enforce the loan note before it can foreclose</u>. While the Court rejected "show me the note," which Plaintiff is not invoking here, it never said that when a Plaintiff pleads evidence showing that a foreclosing party lacks authority to foreclose, that it can never be raised under any legal theory; that would be nonsense and a violation of due process. Further, Plaintiff has challenged that ReconTrust is currently the lawful Trustee under the Deed with rights to take any action in regards to it, as would be granted it with a valid Substitution of Trustee; as Plaintiff has alleged in his complaint, he believes that there may have been fraud associated with the execution, signing, and recordation of the Substitution.

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

In regards to point 6, Plaintiff still maintains that a failure to properly transfer/assign the note and mortgage invalidates the security interest and has challenged the agency relationship which purportedly enables MERS to take actions in relation to the Mortgage. Plaintiff stands on his pleadings and the Judicial Notice as laid in his Complaint and all supportive documents filed thereafter, Doc. 53, and the attachments hereto.

## V. ALLEGATIONS OF FRAUD

**Counsel Point D**: In regards to allegations of fraud associated with the inception of the loan with First Magnus Financial, BOA can be held liable because at the time that it claimed that it had ownership of Plaintiff's Note and enforcement rights under it, it failed to show that it was a holder in due course as defined by UCC. Establishing holder in due course status is important because it creates a shield against certain claims and defenses that the obligor could raise against the original lender, UCC § 3-305(a) and (b), and without it he who claims to hold the note is also transferred all of the liabilities.

Plaintiff's allegations of fraud in this case are within the time limit because 15 U.S.C. 77x Securities Act violations carries six (6) years of statute of limitation. 18 U.S.C. 1014 Loan Fraud, 18 U.S.C. 1005 Bank entries, 18 U.S.C. 1344 and Bank Fraud, and 18 U.S.C. 656 Theft, embezzlement, or misapplication by bank officer or employee carries **10 (10) years of statute of limitation**.

### VI. ANGUISH, HEALTH, REPUTATION

19

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

**Counsel Point E**: Plaintiff's stands on the well plead allegations in his Complaint and further attests that his heath continues to deteriorates under the relentless attacks and unlawful foreclosure proceedings of/by the Defendants and the burdensome task of engaging in the constant unveiling of truth, conferring to law, facts and evidence, in order to contest the fraud and misrepresentation Counsel brings to the court. In addition, this suit is filed in a federal venue and physical and emotional distress is a cause of action which can be pursued for damages under the FDCPA; Plaintiff has alleged and maintains that Defendants are/were debt collectors, and the action that they have taken, and continue to take, in their attempts to extort payments and conduct trustee sales have caused excessive physical and emotional burden.

## VII. MAIL FRAUD

**Counsel Point F:** Counsel argues that Plaintiff Lacks Standing to Prosecute For Mail Fraud. Plaintiff has expressed himself clearly in the Complaint that he is simply willing to assist Arizona Attorney General and make his record and complaint to the United States Postal Inspector available for pressing charges against Defendants, not that he himself is prosecuting for mail fraud. Plaintiff stands on his Complaint and all documents submitted in this Verified Action-at-Law in support of the RICO violations.

## <u>CONCLUSION</u>

The Court would err in accepting Defendant's facts as true on a 12(b)(6) motion instead of reading the Plaintiff's allegations and the plausible inferences

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

therefrom as true, the appropriate legal standard. Plaintiff is not merely, as Counsel alleges, using legal theories such as "show me the note" as a claim to relief based solely upon the defendant's failure to show the note prior to commencing a foreclosure; he has pled affirmative allegations that Defendants, and all of them, do not have an enforceable right in the Note which would permit to exercise a security interest.

The transfers of interest are integral to the beneficiary's claim of authority Only a beneficiary as defined by the statute—to be strictly construed—could validly appoint a trustee, and this could only occur "after a default" in the contract secured. A.R.S. § 33-807; Deed of Trust ¶22 (**only a "Lender" can order the power of sale, and only after a default to the "Lender" occurs**). If these interests are false, as Plaintiff alleges, then Plaintiff has pled facts that contest the beneficiary's identity, authority, and interest, and contest that the sale was noticed by a valid trustee, or that the trustee had an order to exercise the power of sale from a valid beneficiary.

THEREFORE, for the foregoing reasons, Plaintiff requests this Court to overrule and dismiss the Esquire's Motion to Demurrer.

Respectfully submitted on this 8th day of January, 2014.

**Ivaylo Tsvetanov Dodev**, ARR, Pro Se Plaintiff
**6312 South 161st Way, Gilbert, Arizona**
**(480) 457-8888 Phone**

21

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**

1
2

## CERTIFICATE OF SERVICE

3

**ORIGINAL** and **ONE COPY** mailed to The United States District Court for
4
the District of Arizona this 8th day of January, 2014. I certify that the following
parties or their counsel of record, and pseudo counsel, are registered as ECF Filers
5
and that they will be served by the CM/ECF system: BANK OF AMERICA, NA,
RECONTRUST, NA, BRIAN MOYNIHAN, SELECT PORTFOLIO SERVING,
6
NA, TIMOTHY O'BRIEN, GERALD HASSELL AND BANK OF NEW YORK
7
MELLON.

8
9

10
Ivaylo Tsvetanov Dodev, Plaintiff
11
6312 South 161st Way, Gilbert, Arizona
(480) 457-8888 Phone
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEMURRER**