# EXHIBIT A



Eric M. Moores
Direct: 602/364-7493
Fax: 602/716-8493
moorese@bryancave.com

November 27, 2013

**BY E-MAIL TRANSMISSION
AND FIRST CLASS MAIL**

Ivaylo Tsvetanov Dodev
6312 South 161st Way
Gilbert, Arizona 85298

Re:  *Dodev v. ReconTrust Co., et al.*, U.S. District Court for the District of Arizona, Case No. 2:13-cv-02155-GMS

Dear Ivaylo:

As you are aware, Bryan Cave LLP represents ReconTrust Co. N.A. ("ReconTrust"), Bank of America, N.A. ("BANA"), and Bryan T. Moynihan (collectively, "Defendants"). We have reviewed the Verified Action-at-Law to Quiet Title and Damages Under FDCPA and Breach of Contract and RICO ("Complaint") and have concluded that each of the claims alleged therein are subject to dismissal for failure to state a claim. Pursuant to the Court's October 23, 2013 Order, this letter serves as our effort to meet and confer prior to filing a motion to dismiss.

### INDIVIDUAL DEFENDANTS BRIAN T. MOYNIHAN & JAMES F. TAYLOR

First, the Complaint names Bryan T. Moynihan ("Moynihan") and James F. Taylor ("Taylor") as individual defendants. But the Court has no personal jurisdiction over either individual. Neither resides in Arizona, nor do they have sufficient minimum contacts that would allow the Court to have personal jurisdiction over them. Moynihan resides and works in North Carolina, while Taylor resides and works in Texas. Neither Moynihan nor Taylor were served within Arizona, which means the Court cannot exercise personal jurisdiction over either individual.

A plaintiff must establish either general or specific jurisdiction over each individual Defendant within the limits of the Due Process Clause of the Fourteenth Amendment. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1165, 1168–69 (9th Cir. 2006). Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945). "Where a defendant has 'substantial' or 'continuous and systematic' contacts with the forum state, there is a sufficient relationship between the defendant and the state to support 'general personal jurisdiction' even if the cause of action is unrelated to the defendant's forum activities." *Peterson v. Kennedy*, 771 F.2d 1244, 1261 (9th Cir. 1985). Where such "substantial" or "continuous and systematic" contacts are lacking, a court may exercise "specific"

Bryan Cave LLP
One Renaissance Square
Two North Central Avenue
Suite 2200
Phoenix, AZ 85004-4406
Tel (602) 364-7000
Fax (602) 364-7070
www.bryancave.com

Bryan Cave Offices
Atlanta
Charlotte
Chicago
Dallas
Hamburg
Hong Kong
Irvine
Jefferson City
Kansas City
London
Los Angeles
New York
Paris
Phoenix
San Francisco
Shanghai
Singapore
St. Louis
Washington, DC

Bryan Cave International Trade
A TRADE CONSULTING SUBSIDIARY
OF NON-LAWYER PROFESSIONALS

www.bryancavetrade.com
Bangkok
Beijing
Jakarta
Kuala Lumpur
Manila
Shanghai
Singapore
Tokyo

Ivaylo Tsvetanov Dodev  Bryan Cave LLP
November 27, 2013
Page 2

personal jurisdiction depending upon "the nature and quality of the defendant's contacts in relation to the cause of action." *Data Disc. Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). But the Complaint does not allege Moynihan or Taylor have any contacts with Arizona, let alone contacts sufficient to establish an Arizona court's jurisdiction over them.

Further, you have not alleged that either Moynihan nor Taylor were personally involved with your mortgage in any way. While Moynihan is the Chief Executive Officer of BANA, there does not appear to be any support for an allegation that he personally took any action with regard to your loan or that he had any personal interaction with you. Similarly, while Taylor was the President of ReconTrust—a position he no longer holds—you have also not alleged that he was personally involved with your mortgage in any way, and, thus, he could not have committed any wrongdoing for which you would have a claim against him personally. Moynihan and Taylor were merely employees of BANA and ReconTrust, respectively, and did not act in any way that would give rise to a cause of action. Additionally, they are not subject to personal jurisdiction in Arizona. For these reasons, we request that you dismiss your claims against these individuals immediately.

<u>BANA HAS NO AUTHORITY TO MODIFY LOAN OR CANCEL TRUSTEE'S SALE</u>

Next, to the extent that you are seeking to modify your loan or to prevent a trustee's sale by bringing this suit, your claims are not properly directed at BANA. BANA is not the noteholder, nor is it a beneficiary of the trust deed. In addition, BANA no longer services your loan. Any request for relief related to the loan or the trustee's sale must be directed towards Select Portfolio Servicing, Inc. ("SPS"), who is the current loan servicer. Thus, we request that you dismiss your claims against BANA if they are asserted solely for the purpose of obtaining a loan modification or to prevent a trustee's sale.

<u>FDCPA</u>

We believe the FDCPA claims are also deficient as alleged. "[T]he FDCPA applies only to a debt collector who engages in practices prohibited by the Act in an attempt to collect a consumer debt." *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009). "Mortgagees and their beneficiaries, including mortgage servicing companies, are not debt collectors subject to the FDCPA." *Id.*, 618 F. Supp. 2d at 1182; *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("[T]he activity of foreclosing on [real] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA"); *Perry v. Stewart Title*, 756 F.2d 1197, 1208 (5th Cir. 1985) (holding FDCPA inapplicable because assignee of loan was not "debt collector"). Accordingly, BANA is not a "debt collector" within the meaning of the statute. We request that you amend the Complaint to remove the FDCPA claim against BANA.

<u>QUIET TITLE</u>

To quiet title, a plaintiff must allege, in a verified complaint, that he possesses title to the subject property, that a defendant claims an interest adverse to his interest, and that it would be inequitable to let the defendant's interest stand. A.R.S. § 12-1102; *Lavidas v. Smith*, 195 Ariz. 250, 256, 987 P.2d 212,

Ivaylo Tsvetanov Dodev  Bryan Cave LLP
November 27, 2013
Page 3

218 (Ct. App. 1999). Further, "in an action to quiet title, the party invoking the court's jurisdiction is required to do equity and, if it appears there is an unsatisfied balance due a defendant-mortgagee, or his assignee, the court will not quiet the title until and unless he pays off such mortgage lien." *Farrell v. West*, 114 P.2d 910, 911 (Ariz. 1941).

As previously mentioned, BANA is not the noteholder, trust deed beneficiary, or loan servicer. Accordingly, it is not asserting any interest in the Property and there is no basis upon which you may seek to quiet title against BANA. For these reasons, we request that you dismiss the quiet title claim as against BANA.

Recontrust is the current trustee under the deed of trust. Although the loan may have been discharged through the bankruptcy proceedings, the trust deed beneficiary is still entitled to foreclose on its security interest under the law. The discharge does not prevent creditors from post-discharge enforcement of a valid lien that existed at the time of the bankruptcy filing. *See Long v. Bullard*, 117 U.S. 617 (1886); 11 U.S.C. § 522(c)(2). Accordingly, Bank of New York Mellon, the current beneficiary of the trust deed, and Recontrust, as successor trustee of the trust deed, may proceed to enforce the lien to the extent permitted under relevant state law. For these reasons, Recontrust is legally entitled to notice a trustee's sale on the property and we request that you dismiss your quiet title claim as to Recontrust.

In relation to your quiet title claim, the Complaint also alleges "Defendants" are not the "holder" of the Note and, therefore, have no right to enforce it. This theory—often referred to as the "show me the note" theory—has been rejected in Arizona. *Hogan v. Washington Mutual Bank, N.A.*, 227 Ariz. 561, 277 P.3d 781, 782, 783 (2012) ("Arizona's non-judicial foreclosure statutes do not require the beneficiary to prove its authority or 'show the note' before the trustee may commence a non-judicial foreclosure"). Additionally, Arizona's trust deed statutes do not require compliance with the UCC before a trustee commences a nonjudicial foreclosure. *Id.*

Further, the Complaint alleges Defendants do not have standing to hold a trustee's sale. An entity seeking to foreclose through a non-judicial trustee's sale does not need to prove it has standing or that it is a "holder in due course," as it has *not* filed a complaint for foreclosure. A trustee has "standing" to hold a sale by virtue of its status as trustee. A.R.S. § 33-807(A). The U.C.C. is irrelevant under these circumstances. We request that you amend the Complaint to remove the allegations concerning the "standing" and "holder-in-due-course" issues.

## BIFURCATION THEORY

The Complaint raises a bifurcation argument, which refers to the theory that because the note and deed are not held by the same party and were not transferred concurrently, the security interest has been invalidated. This is a common argument in these types of cases, but the District of Arizona has repeatedly rejected similar "bifurcation" arguments. *See Buchna v. Bank of America, N.A.*, No. 2:10-cv-00418-MHM, at *7 (D. Ariz. Oct. 25, 2010); *Ciardi v. Lending Co., Inc.*, No. CV 10-0275-PHX-JAT, at *3 (D. Ariz. May 24, 2010). Further, even if the Note and Deed of Trust have been separated, such bifurcation "only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of

Ivaylo Tsvetanov Dodev  
November 27, 2013  
Page 4

**Bryan Cave LLP**

the deeds, are not agents of the lenders." *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1043 (9th Cir. 2011). Here, the Deed of Trust expressly states that MERS is acting "as a nominee for Lender and Lender's successors and assigns" and, in that capacity, may "take any action required of Lender." The Complaint fails to present any evidence refuting this agency relationship. We request that you amend the Complaint to remove this bifurcation argument.

FRAUD

The Complaint contains sweeping allegations of fraud against "Defendants" alleging, primarily, that they are not the holders of the Note and that you would not have entered into the loan if you had been aware you would not receive actual money. As an initial matter, the fraud allegations concerning the loan are time-barred. The Arizona legislature has established a three-year statute of limitations for fraud claims, and you signed the loan documents on December 12, 2006. *See* A.R.S. § 12-543(3). The Complaint was not filed until October 23, 2013—nearly four years after the statute of limitations barred the claim.

Further, to state a claim for fraud, a plaintiff must plead factual matters demonstrating "that the defendant made a false, material representation that he knew was false or was ignorant of its truth, with the intention that the hearer of the representation act on it in a manner reasonably contemplated, that the hearer was ignorant of the representation's falsity, rightfully relied on the truth of the representation, and sustained consequent and proximate damage." *Haisch v. Allstate Inc. Co.*, 197 Ariz. 606, 610, 5 P.3d 940, 944 (Ct. App. 2000). Fed. R. Civ. P. 9(b) requires allegations of fraudulent representations be pled with particularity. *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

The Complaint does not identify any specific false statements by any defendant, nor does it explain how any factual statements made by any defendant were false, why you relied on those statements, why that reliance was reasonable, or how the reliance damaged you. Thus, the fraud allegations fall far short of the pleading requirements of Rule 9(b). Moreover, they do not set out, defendant by defendant, what each is alleged to have done to commit a fraud. "Group" allegations are not appropriate in a federal pleading. *See, e.g., Riehle v. Bank of America, N.A.*, 2013 U.S. Dist. LEXIS 55788, at *6 (D. Ariz. Apr. 18, 2013) (plaintiff's "group pleading" violated Rule 8(a) because it "fails to give fair notice of the claims"). If you are not willing to dismiss this claim, then we request that you amend the Complaint to include greater specificity as to the particular allegations against each defendant.

Further, the Complaint alleges you were misled into believing you would receive money in return for signing the note and deed of trust, a claim known as the "vapor money" theory. "Proponents of this theory argue that banks do not lend actual money, only credit, so no loan occurs. If no loan occurred and no consideration was given, then banks have no right to foreclose." *De Leon v. ReconTrust Company*, 3:10-cv-08132-JAT, 2010 WL 4739954, at *2 (D. Ariz. Nov. 16, 2010). The District of Arizona has repeatedly rejected the vapor money theory. *See, e.g., id.; Vollmer v. Present*, No. CV 10-

Ivaylo Tsvetanov Dodev  Bryan Cave LLP
November 27, 2013
Page 5

1182-PHX-MHM, 2011 WL 11415, at *6 (D. Ariz. Jan. 4, 2011); *Owens v. ReconTrust Co., N.A.*, No. CV 10–2696–PHX–JAT, 2011 WL 3684473, at *4 (D. Ariz. Aug. 23, 2011); *Nichols v. Bosco*, No. CV 10-1872-PHX-FJM, 2010 WL 3909205 at * 3 (D. Ariz. Oct. 1, 2010). To the extent your fraud claims rely on this theory, we request that you dismiss this claim.

### HEALTH CLAIMS

The Complaint also alleges that Defendants caused you to suffer a variety of emotional injuries. The first issue is that the Complaint does not specify the precise cause of action or legal theory that entitles you to the damages alleged. Thus, it fails to meet the requirements of Fed. R. Civ. P. 8(a).

We are assuming that this claim is for intentional infliction of emotional distress. Such a claim requires proof that a defendant's conduct: (i) was "extreme and outrageous," (ii) was "intend[ed] to cause emotional distress or recklessly disregard the near certainty that such distress will result from [the] conduct," and (iii) resulted in "severe emotional distress." *Citizen Publishing Co. v. Miller*, 210 Ariz. 513, 516, 115 P.3d 107, 110 (2005) (*en banc*). Among other things, a plaintiff asserting this theory must show the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Craig v. M&O Agencies Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007).

The Complaint does not contain any facts supporting an allegation that any defendant was motivated by any intent to inflict emotional distress. We request that you dismiss this claim or, in the alternative, amend the Complaint to include specific facts regarding each separate defendant supporting a theory it intended to cause you emotional harm.

### MAIL FRAUD

The claim that you are entitled to damages as a result of "Defendants'" alleged mail fraud is also legally flawed. Federal mail fraud statutes do not grant individual plaintiffs a private cause of action to sue. *See, e.g., Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 526 (11th Cir. 2000). Thus, we request that you dismiss this claim from the Complaint.

### RICO CLAIM

The Complaint's claim that "Defendants" violated the RICO statute are equally deficient. The Complaint states in conclusory fashion that "multiple parties in multiple states" acted in concert to drive up property value appraisals and create "the false appearance of trends that did not in actuality exist. . . ." [Complaint at 21] This is insufficient to allege a viable RICO claim. In a RICO fraud action, "[t]o avoid dismissal for inadequacy under [Fed. R. Civ. P.] 9(b), [the] complaint would need to 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004). "Rule 9(b) does not allow a complaint merely to lump multiple defendants together but require[s] plaintiffs to differentiate their allegations and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th

Ivaylo Tsvetanov Dodev                                                         **Bryan Cave LLP**
November 27, 2013
Page 6

Cir. 2007) (quotations omitted). Additionally, the Complaint does not identify which section of the RICO statute Defendants allegedly violated. Similarly, the Complaint contains no specific allegations related to money laundering. If you are unable to plead allegations in an amended complaint that establish all of the elements of a RICO claim, we request that you dismiss the claim.

CONCLUSION

For the reasons stated above, the Complaint fails to state any claim upon which relief may be granted and we request that you dismiss BANA, ReconTrust, Brian T. Moynihan, and James F. Taylor from this case by Monday, December 2, 2013, and notify us of your intent to do so no later than Friday, November 29, 2013.

In the event that you are unwilling to dismiss these defendants, we request that you notify us no later than Friday, November 29, 2013, as to whether you intend to file an amended complaint and on what basis you believe your claims are not subject to dismissal for failure to state a claim. If we do not hear from you by November 29, 2013, we will proceed to file a motion to dismiss.

The above dates are based on the current complaint response deadline, which is December 2, 2013. In your November 26, 2013 e-mail, you indicated you were not willing to provide an additional extension unless there was good cause for one. If you find you need additional time to respond to this letter, we are willing to push the above deadlines back provided, however, that you also agree to extend the Complaint response deadline to December 13, 2013. Please let me know by November 29, 2013 whether you would like additional time to respond to this letter, and whether you are willing to extend the Complaint response deadline to December 13, 2013.

Sincerely,

Eric M. Moores

EMM:mav

751299