# EXHIBIT "H"

MARICOPA COUNTY RECORDER
HELEN PURCELL
20110706279 08/24/2011 02:15
ELECTRONIC RECORDING

110407742nt-2-3-1--
sarabiam

RECORDING REQUESTED BY:
RECONTRUST COMPANY
**AND WHEN RECORDED MAIL DOCUMENT AND TAX STATEMENTS TO:**
Bank of America, N.A.
400 National way
SIMI VALLEY, CA 93065

**TS No. 11-0075989**
**TITLE ORDER#: 110407742AZGTI**

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST ARIZONA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFERS TO:

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA7, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA7**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 12/12/2006, EXECUTED BY: IVAYLO T. DODEV, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY,TRUSTOR: TO NONE, TRUSTEE AND RECORDED AS INSTRUMENT NO. 20061646998 ON 12/18/2006, IN BOOK N/A, PAGE N/A, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF MARICOPA COUNTY, IN THE STATE OF ARIZONA.

**SEE ATTACHED LEGAL DESCRIPTION**

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: 8/23/11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

State of: Texas )
County of: Tarrant )

BY: Carmelia Boone 8/23/11
Carmelia Boone, Assistant Secretary

On 8-23-11 before me Kanetta Denise Edwards, personally appeared Carmelia Boone Assistant Secretary, know to me (or proved to me on the oath of ________ or through TXDL ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Witness my hand and official seal.

KANETTA DENISE EDWARDS
Notary Public
State of Texas
My Comm. Expires 4-19-2014

[signature]
Notary Public's Signature

TS# 11-0075989
LEGAL DESCRIPTION

A PORTION OF LAND IN THE SOUTHWEST QUARTER OF SECTION 22, TOWNSHIP 2 SOUTH, RANGE 6 EAST, GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, DESCRIBED AS FOLLOWS;

COMMENCING AT THE SOUTHWEST CORNER OF SECTION 22;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 1284.85 FEET;

THENCE NORTH 00 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 415.04 FEET;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 193.02 FEET TO THE POINT OF BEGINNING;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 367.57 FEET;

THENCE NORTH 00 DEGREES 03 MINUTES 42 SECONDS EAST, A DISTANCE OF 9.56 FEET;

THENCE NORTH 18 DEGREES 49 MINUTES 40 SECONDS EAST, A DISTANCE OF 266.94 FEET;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 279.44 FEET;

THENCE SOUTH 00 DEGREES 25 MINUTES 50 SECONDS EAST, A DISTANCE OF 262.23 FEET TO THE POINT OF BEGINNING.

20110706279
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL

The foregoing instrument is an **electronically prepared** full, true and correct copy of the original record in this office.
Attest: 05/06/2013 11:31:53 AM

By [signature] Recorder

To Verify this purchase visit
http://recorder.maricopa.gov/cert.aspx?id=103169

**EXHIBIT "I"**

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20100605004 07/15/2010 04:10
ELECTRONIC RECORDING

100411447NT-1-3-1--
Esquivela

RECORDING REQUESTED BY:
RECONTRUST COMPANY
**AND WHEN RECORDED MAIL DOCUMENT**
**AND TAX STATEMENTS TO:**
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

**TS No. 10-0079283**
**TITLE ORDER#: 100411447AZGTI**

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# CORPORATION ASSIGNMENT OF DEED OF TRUST ARIZONA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFERS TO:

**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 06/28/2007, EXECUTED BY: MARK SIMONSON, AND BIADA MIYAMURA-SIMONSON, HUSBAND AND WIFE,TRUSTOR: TO FIDELITY NATIONAL TITLE INSURANCE COMPANY, TRUSTEE AND RECORDED AS INSTRUMENT NO. 20070775873 ON 07/06/2007, IN BOOK N/A, PAGE N/A, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF MARICOPA COUNTY, IN THE STATE OF ARIZONA.

**LOT 8, SANTO TOMAS SCOTTSDALE I, A SUBDIVISION RECORDED IN BOOK 191 OF MAPS, PAGE 7, RECORDS OF MARICOPA COUNTY, ARIZONA**

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: 7/14/2010

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

State of: Texas )
County of: Tarrant )

BY: [signature]
Carmelia Boone, Assistant Secretary

On 7/14/2010 before me Tanesa Sharron Frazier, personally appeared Carmelia Boone Assistant Secretary, know to me (or proved to me on the oath of ______ or through TXDL) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

[signature]
Notary Public's Signature

TANESA SHARRON FRAZIER
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
09-23-2011

MARICOPA COUNTY RECORDER
HELEN PURCELL
20110706279 08/24/2011 02:1
ELECTRONIC RECORDING

110407742nt-2-3-1--
sarabiam

RECORDING REQUESTED BY:
RECONTRUST COMPANY
**AND WHEN RECORDED MAIL DOCUMENT AND TAX STATEMENTS TO:**
Bank of America, N.A.
400 National way
SIMI VALLEY, CA 93065

**TS No. 11-0075989**
**TITLE ORDER#: 110407742AZGTI**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# CORPORATION ASSIGNMENT OF DEED OF TRUST ARIZONA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFERS TO:

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA7, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA7**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 12/12/2006, EXECUTED BY: IVAYLO T. DODEV, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY,TRUSTOR: TO NONE, TRUSTEE AND RECORDED AS INSTRUMENT NO. 20061646998 ON 12/18/2006, IN BOOK N/A PAGE N/A OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF MARICOPA COUNTY, IN THE STATE OF ARIZONA.

**SEE ATTACHED LEGAL DESCRIPTION**

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: 8/23/11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

State of: Texas
County of: Tarrant )

BY: Carmelia Boone 8/23/11
Carmelia Boone, Assistant Secretary

On 8-23-11 before me Kanetta Denise Edwards, personally appeared Carmelia Boone Assistant Secretary, know to me (or proved to me on the oath of ______ or through TXDL ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

KANETTA DENISE EDWARDS
Notary Public
State of Texas
My Comm. Expires 4-19-2014

Notary Public's Signature



20100605004
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL

The foregoing instrument is an **electronically prepared** full, true and correct copy of the original record in this office.
Attest: 01/05/2014 02:00:02 PM

By [signature] Recorder

To Verify this purchase visit
http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=116379

**EXHIBIT "J"**

SEE "PREPAYMENT PENALTY ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

LOAN NO.: [redacted]0433

MIN: 100039268311804332
MERS Phone: 1-888-679-6377

# ADJUSTABLE RATE NOTE
## (MTA - Twelve Month Average Index - Payment Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.

DECEMBER 12, 2006 [Date] MESA [City] [State]

This is a True and Certified Copy of the Original

23410 SOUTH 161ST WAY, GILBERT, AZ [Property Address]

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 681,750.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed ONE HUNDRED FIFTEEN AND 000/1000THS ( 115.000 %) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.750 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the 1st day of FEBRUARY, 2007, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 400/1000THS percentage point(s) ( 3.400 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than 9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

Initials: [signature]

3. **PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the 1st day of each month beginning on FEBRUARY, 2007. I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 01, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at First Magnus Financial Corporation, An Arizona Corporation 603 North Wilmot Road, Tucson, AZ 85711 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 2,435.51 unless adjusted under Section 3(F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of FEBRUARY, 2008, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN AND 000/1000THS percent (115.000 %) of the Principal amount I originally borrowed. My unpaid principal could exceed that Maximum Limit due to

Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

**(i) Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

**(ii) Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

**(iii) 15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**4. NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN ( 15 ) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option

shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law. Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

NAYLO T DODEV (Seal) -Borrower | (Seal) -Borrower

(Seal) -Borrower | (Seal) -Borrower

(Seal) -Borrower | (Seal) -Borrower

(Seal) -Borrower | (Seal) -Borrower

DATE: DECEMBER 12, 2006
BORROWER: IVAYLO T DODEV

LOAN #: [redacted]0433
PROPERTY ADDRESS: 23410 SOUTH 161ST WAY, GILBERT, AZ 85297

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated DECEMBER 12, 2006 , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

## BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

If within the first TWELVE months after the execution of this Note, I make prepayment(s), the total of which exceeds 136,360.00 amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of 6 MONTHS advance interest on the amount by which the total of my prepayment(s) during the 12-month period exceeds 20.000 % of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment. I will pay this Prepayment Penalty regardless of whether I sell the Property or refinance the loan with the same Lender or Note Holder.

## NOTICE TO THE BORROWER

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

All other terms and conditions of the above referenced Note remain in full force and effect.

[signature] Dec 13 2006

IVAYLO T DODEV Borrower Date

_______________ Borrower _______________ Date

_______________ Borrower _______________ Date

_______________ Borrower _______________ Date

**EXHIBIT "K"**

**Bank of America**
**Home Loans**

P. O. Box 941633
Simi Valley, CA 93094-1633

Doc ID: BANACOM1

0248841 01 AV 0.337 **AUTO 5 0 4412 85298-845512 -C01-P49109-I

IVAYLO T DODEV
6312 S 161ST WAY
GILBERT AZ 85298-8455

**Account No.:** 147338494

**IMPORTANT MESSAGE ABOUT YOUR LOAN**

We want to let you know that effective July 1, 2011, the servicing of home loans by our subsidiary–BAC Home Loans Servicing, LP, will transfer to our parent company–Bank of America, N.A. Based upon our records as of April 24, 2011, your home loan account noted above is affected by this servicing transfer.

**WHAT THIS MEANS FOR YOU**

- If you pay by check on or after July 1, 2011, please make checks payable to "Bank of America, N.A."
- Effective July 1, 2011, your monthly statements will show "Bank of America, N.A." as your loan servicer.
- We will notify property insurance carriers of this servicing transfer; however, we recommend you review the next policy renewal notice you receive after July 1, 2011, to verify that the "Mortgagee" for your policy has been updated to reflect "Bank of America, N.A." If your policy has not been updated, please contact your insurance carrier to ensure the update is made.
- Your account number will remain the same.
- The terms and conditions for your loan will not change.
- If you make automated/ACH payments or you make payments through Bank of America's or another financial institution's online banking service, continue to make payments as you do today. No actions are required on your part to accommodate this transfer.
- The customer service toll-free numbers, fax numbers and mailing addresses will remain the same.
- Online Banking access to your account will remain the same.
- Your privacy elections will not change.

**For customers discussing, applying for, or involved in any Loan Modification, Repayment Plan, Short Sale, Deed in Lieu of Foreclosure, or Foreclosure**

This servicing transfer will not impact any current discussions, applications, approved arrangements or proceedings in these areas. However, if you are currently in a repayment plan, trial modification or permanent modification, check payments made on or after July 1, 2011, should be payable to "Bank of America, N.A."

PLEASE SEE REVERSE SIDE

Bank of America, N.A. Member FDIC. Bank of America, N.A. is an Equal Housing Lender.
©2011 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan and the right to collect payments in connection with your loan will be/was transferred from BAC Home Loans Servicing, LP to Bank of America, N.A., effective July 1, 2011.

The transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan. Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing. However, in this case, all necessary information is combined in this one notice.

YOUR SERVICER PRIOR TO JULY 1, 2011:
Your servicer prior to July 1, 2011: BAC Home Loans Servicing, LP. If you have any questions relating to the transfer of servicing from this servicer, please call Bank of America Customer Service toll-free at 1.877.488.7812 between 8 a.m. and 9 p.m. Eastern, Monday through Friday. Your call may be monitored or recorded to ensure quality service.

YOUR SERVICER ON AND AFTER JULY 1, 2011:
Your new servicer on and after July 1, 2011: Bank of America, N.A. The business address for Bank of America, N.A. for purposes of your mortgage loan is: 450 American Street, Simi Valley, CA 93065-6285. Below is the information on how to contact and make payments to Bank of America, N.A.

Toll-free Number
The toll-free telephone number of Bank of America, N.A. is 1.877.488.7812. If you have any questions relating to the transfer of servicing to your new servicer, please call Bank of America Customer Service at 1.877.488.7812 between 8 a.m. and 9 p.m. Eastern, Monday through Friday. Please have your account number ready whenever you call. Your call may be monitored or recorded to ensure quality service.

Address for Correspondence (other than payments)
The address to send written correspondence to Bank of America, N.A. (other than payments) is:

Bank of America, N.A.
Customer Service Correspondence
CA6-919-01-41
P.O. Box 5170
Simi Valley, CA 93062-5170

Please include your loan number on all written correspondence you send to Bank of America, N.A.

Address for Mailed Payments
This transfer does not change the mailing address to send your payments. Please continue to send your payments to Bank of America, N.A. at the mailing address indicated on your monthly statements and/or coupons. Please write your loan number on all checks, cashier checks and other payments sent to Bank of America, N.A.

INFORMATION CONCERNING YOUR PAYMENTS AND OPTIONAL INSURANCE:
The date that BAC Home Loans Servicing, LP no longer accepts payments from you is June 30, 2011. The date that Bank of America, N.A. begins accepting payments from you is July 1, 2011. Send all payments due on or after that date to Bank of America, N.A.

Optional insurance, such as life and disability insurance coverage, will continue without interruption. If, for some reason, your current coverage cannot be continued by Bank of America, N.A., you will be given separate notice and offered other alternatives without interruption in your coverage.

ADDITIONAL RIGHTS UNDER THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)
We want to make you aware of certain rights you have under RESPA. A summary is provided on the back of this notice.

SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION

Bank of America, N.A. Member FDIC. Bank of America, N.A. is an Equal Housing Lender.
©2011 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.

**EXHIBIT "L"**

Home Loans

P. O. Box 941633
Simi Valley, CA 93094-1633

Doc ID: BANACOM3B

0049099 01 AT 0.362 **AUTO 5 0 4446 85298-845512 -C01-P49148-I

IVAYLO T DODEV
6312 S 161ST WAY
GILBERT AZ 85298-8455

**Account No.:** 147338494

**IMPORTANT MESSAGE ABOUT YOUR LOAN**

Effective July 1, 2011, the servicing of home loans by our subsidiary–BAC Home Loans Servicing, LP, transfers to its parent company–Bank of America, N.A. Based upon our records as of July 7 , 2011, the home loan account noted above is affected by this servicing transfer. The information contained in this communication does not change or affect any other communications you may have received or will receive regarding this servicing transfer.

**IMPORTANT ADDITIONAL INFORMATION**

Under the federal Fair Debt Collections Practices Act and certain state laws, Bank of America, N.A. is considered a debt collector. As a result, we are sending you the enclosed Fair Debt Collection Practices Act Notice containing important information about your loan and your rights under applicable federal and state law.

If an attorney represents you in connection with your Bank of America home loan, please provide your attorney a copy of this letter and the enclosed legal notice.

**THANK YOU**

We appreciate the opportunity to serve your home loan needs. If you have any questions or need assistance regarding this servicing transfer, please call us at 1.877.488.7812 between 8 a.m. and 9 p.m. Eastern, Monday through Friday.

Please Note: This letter is being sent to the address and borrower(s) listed above. If there are other borrowers on this account who receive mail at a different address than above, please share this information with them.

***Bank of America, N.A. is required by law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose. Notwithstanding the foregoing, if you are currently in a bankruptcy proceeding or have received a discharge of the debt referenced above, this notice is for informational purposes only and is not an attempt to collect a debt. If you are represented by an attorney, please provide this notice to your attorney.***

Bank of America, N.A. Member FDIC. Bank of America, N.A. is an Equal Housing Lender.
©2011 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.

Fair Debt Collections Practices Act and State Law Notice

The servicing of your home loan was transferred to Bank of America, N.A., effective July 1, 2011. Bank of America, N.A. is required by law to advise you of the following:

(1.) Under the federal Fair Debt Collections Practices Act and certain state laws, Bank of America, N.A. is considered a debt collector. Bank of America, N.A. must provide certain information to you in order to make sure you are informed when a communication is related to a debt. The purpose of this letter is therefore to provide you with information required by law, including the amount of the debt.

(2.) Debt Validation Notice:

a) The amount of the debt: As of July 7 , 2011, you owe $818,403.24. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. We have also identified certain servicing-related fees that, while not yet found to be due, and therefore not charged to your loan or owed by you as of the date of this letter, are subject to review and may be determined to be due at a later date. The types of items subject to review include such services as property inspections, title reports, property preservation services, broker price opinions, appraisals, legal services, court costs, foreclosure trustee services, and others which may or may not have been performed in connection with your loan. To the extent we determine that any additional fees are due, we will send you another letter and you will have an opportunity to ask questions or dispute the additional fees. If we find no additional fees are due, we will still send you a letter telling you that as well. Therefore, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you or your agent before accepting the payment for collection. For further information, write to the address provided below or call 1.877.488.7812 between 8 a.m. and 9 p.m. Eastern, Monday through Friday.

b) The name of the creditor to whom the debt is owed: BANK OF NY (CWALT 2007-OA7) *Please note that unless Bank of America, N.A. is listed in 2(b) as the creditor of your loan, Bank of America, N.A. does not own your loan and only services your loan on behalf of your creditor, subject to the requirements and guidelines of your creditor.*

c) Unless you, within thirty (30) days after receipt of this letter, dispute the validity of the debt or any portion of the debt, Bank of America, N.A. will assume the debt to be valid.

d) If you notify Bank of America, N.A. in writing, at the address provided below within the thirty (30) day period, that the debt, or any portion thereof, is disputed, Bank of America, N.A. will obtain verification of the debt and mail it to you.

e) Upon your written request within the thirty (30) day period, Bank of America, N.A. will provide you with the name and address of the original creditor if it is different from the current creditor.

Bank of America, N.A.<br>
Customer Service, CA6-919-01-41<br>
Attention: DVN<br>
P.O. Box 1140<br>
Simi Valley, CA 93062-1140

If you have any questions regarding this notification, please call Bank of America, N.A. Customer Service at 1.877.488.7812 between 8 a.m. and 9 p.m. Eastern, Monday through Friday.

SEE REVERSE SIDE

Bank of America, N.A. Member FDIC. Bank of America, N.A. is an Equal Housing Lender.
©2011 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.

**EXHIBIT "M"**

**WHEN RECORDED, MAIL TO:**

SENT VIA CERTIFIED MAIL 23083250000030152349

IVAYLO DODEV
6312 S. 161st Way
GILBERT, AZ 85298

AUGUST 30, 2011

**BANK OF AMERICA, N.A.**
400 National Way
Simi Valley, CA 93065

**Bank of New York Mellon, N.A.**
101 Barclay St. 4W
New York, NY 10286

**RECONTRUST COMPANY, N.A.**
2380 Performance Dr. TX2-985-07-03
Richardson, TX 75082

**MERS**
1818 Library Street, suite 300
Reston, VA 20190

**FIRST MAGNUS FINANCIAL CORPORATION**
603 N. Wilmot Rd
Tucson, AZ 85711

**BANK OF NEW YORK**
400 National Way
Simi Valley, CA 93065

RE: Account No.: LOAN # 6531180433 and 147338494
IVAYLO DODEV, 6312 S. 161st Way, Gilbert, AZ 85298

ATTN: LEGAL

**NOTICE OF COMPLAINT**

To: BANK OF AMERICA, N.A., NO TRUSTEE ON DEED OF TRUST, FIRST MAGNUS FINANCIAL CORPORATION, MERS, BANK OF NEW YORK, RECONTRUST COMPANY, N.A. and others:

Today, August 30, 2011, I am filing a complaint with you, the Comptroller of the Currency and the Arizona Attorney General and the Arizona Department of Financial Institutions, the Arizona Secretary of State, the Maricopa County Attorney and Recorder among other investigative institutions. You denied my previous Complaints and ignored my demands. The Attorney General of Arizona has already responded with an investigation to similar complaints filed by others, and filed a Complaint against Bank of America based on fraud. My case is similar to the numerous cases which led to this ruling against Bank of America. Further, the Supreme Court of Massachusetts ruled against US Bank National Association for fraudulent assignments. Their complaint largely identifies the complaints I have with you. Again, I submit these demands and statements for your review and action.

There are many issues that I have discovered which I feel are illegal and/or incorrect, but I will only discuss a few. A few of my concerns in reference to my promissory note are:

a) Unless an asset is transferred into a lifetime trust, the asset does not become trust property. Was there a legal transfer into this trust that claims to be the beneficiary of my note?
b) The assignment of a mortgage without transfer of the underlying promissory note is a nullity. I understand that the Deed of Trust and promissory note were separated at the inception of the loan.

ANY ATTEMPT TO FILE A COPY OF THE NOTE AS THE ORIGINAL NOTE SHALL BE CONSIDERED A CRIMINAL ACT, PURSUANT TO ARS. 39-161.

DO NOT ATTEMPT to reestablish the note as this would be a fraud upon the court pursuant to Arizona law. Pursuant to Arizona Rules of Civil Procedure Rule 17 and Federal rules of Civil procedure rule 17.

The NOTE was purposely destroyed and was not lost and as such any claim that said note was lost would be perjury.

This and/or any communication may be recorded and used as evidence in any court in accordance with Rule 902.

There is substantially more that is available to cite so I will stop here. I believe the point about lack of standing has been made. Again, if I am wrong please feel free to show it by providing verifiable Proof Of Claim. [*BLACK'S LAW DICTIONARY: VERIFICATION. Confirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition.*]

There is a purported contract under which BANK OF AMERICA, N.A. claims I must perform. There are serious discrepancies that have been uncovered in the preliminary audit of the transaction. BANK OF AMERICA, N.A. as the purported agent and un-named parties [John Does 1 to 1000] have a clearly defined duty under the law of contracts to provide each and every one of the five essential components that are required to establish a lawful contract. With at least three of the essential components missing from the contract under discussion, BANK OF AMERICA, N.A. cannot enforce or collect on this unconscionable contract… check any edition of Black's Law Dictionary under "contract". Under the definition of Fraud in the factum: "misrepresentation as to the nature of a writing (contract) that a person signs with neither knowledge nor reasonable opportunity to obtain knowledge of its character or essential terms". The presence of any type of fraud in a contract "vitiates" the contract: cancels it from its inception and there is no statute of limitations on discovering fraud. I invoke my right to equal protection under the law and to "seek a remedy for the breach of those duties" (Contract as defined in Black's Law Dictionary 6th Edition).

Proof of Claim delivered, 09/16/2011 to BofA

→ Proof of Claim is hereby **demanded** in order to validate BANK OF AMERICA, N.A.' standing as Real Party In Interest and/or Holder In Due Course of the Note and Mortgage, proving lawful authority to have commenced the foreclosure action on my home, and BANK OF AMERICA, N.A.' authority as agent, or any other party that may choose to reveal its identity, to act in its behalf in demanding and collecting payments from me. I herewith [again] demand that BANK OF AMERICA, N.A. produce for my inspection **all original documents** that I was entitled to at the closing of the refinance transaction on my home, to also include the 1003 application, the final HUD-1 Settlement, the Deed of Trust, all disclosures, the appraisal, the Note, the allonge to the Note, and the agency agreement between BANK OF AMERICA, N.A., and any other party that may choose to come forth. If any document cannot be produced, state the reason why it cannot be produced. These documents are needed to perform a full forensic fingerprint and signature analysis. I further **demand** the following documents if they are available: (If they are not available please state why they are not available)

1) The 2046 balance sheet as it relates to the original "loan" which is a mandatory filing pursuant to Title 12 U.S.C. 248 & 347

2) The 1099 OID (Original Issued Document)
3) The S3 A registration statement
4) The 424 B-5 prospectus
5) The RC S & RC B call schedules.
6) The FAS 125, 133, 140, 5, and 95. [FASB (Financial Accounting Standards BANK OF AMERICA, N.A. rd) part of GAAP (Generally Accepted Accounting Standards)] These documents will be needed as part of my forensic analysis on this loan in its entirety.

In the event a valid Proof of Claim in the form of what is asked for above cannot be produced within 10 days, BANK OF AMERICA, N.A. agrees that a Deed of Release and full Reconveyance to me is to be issued and filed in the office of the County Recorder. Failing the voluntary production of that above mentioned documentation or the issue of Deed of Release and Full Reconveyance shall be interpreted as an invitation to exercise my right to remedy through more formal proceedings where BANK OF AMERICA, N.A. and other parties named will be compelled to respond at a much greater monetary outlay, when an action for injunctive relief and quiet title, which is now being composed, is filed in the appropriate court. I would rather we settle this matter administratively, but if forced I will deliver-serve a filed copy of the Complaint, the action, memorandums of law, interrogatories, and request for admissions and Temporary Restraining Order. It is your choice, voluntary now or compelled explanation later.

While this letter is written in part for purposes of settlement and compromise, it is already a demand letter which can and will be used as necessary. It is therefore not a confidential communication protected under the rules of settlement disclosures and correspondence.

You have previously been presented with proper notices of deceptive lending practices in the closing on the above-referenced loans and lack of standing to prosecute a foreclosure. Within said notices was contained equitable resolution to this matter to be a set-off to the entire account. That is, settle with me by declaring the account paid as agreed and issuing a Deed of Full Reconveyance. This will avoid the time, expense, and damage awards should I decide to seek all remedy that I am entitled to through more formal proceedings.

Notwithstanding the above, BANK OF AMERICA, N.A. cannot state affirmatively that the borrower is or is not in default, the lender is in default of its obligations under applicable Federal and State laws, the lender at the closing, the servicing agent, and the named Beneficiary on the Deed of Trust are not the real parties in interest (i.e., they lack standing to proceed to judicial or non-judicial sale), the trustee and lender lack authority to proceed but have intentionally and problematically filed papers and posted notices as though the authority was present. See: A.R.S. § 39-161. Presentment of false instrument for filing; classification [a class 6 felony]

I HEREWITH DEMAND THE NAMES AND CONTACT INFORMATION ALONG WITH A DESCRIPTION OF THE SECURITY SOLD, THE ASSIGNMENT MADE, AGREEMENTS SIGNED, BETWEEN ALL OF THE MORTGAGE BROKERS, REAL ESTATE BROKERS, DEVELOPERS, APPRAISERS, MORTGAGE AGGREGATORS, INVESTMENT BANKERS, RETAIL OR OTHER SELLER OF SECURITIES AND THE INVESTORS WHO PURCHASE MORTGAGED THE SECURITIES.

Based upon information received from the experts in this case and based upon my own factual and legal investigation there appear to be claims in addition to the claims stated in prior correspondence, which claims based upon the following summary, are in most cases not

other professionals to forestall the loss, for which services demand is herewith made under the terms of the mortgage and all applicable Federal (TILA, RESPA, RICO) and State Law..

YOUR CONDUCT, IF YOU PROCEED, CONSTITUTES CRIMINAL THEFT AND CIVIL THEFT OF THE REAL PROPERTY SUBJECT TO THE MORTGAGE, NOTE AND PROCEEDINGS YOU HAVE POSTED AND FILED. Accordingly your position, in the absence of any authority to do so under law is invalid and illegal. DEMAND IS HEREWITH MADE THAT ALL EFFORTS AT FORECLOSURE, SALE, OR EVICTION BE STOPPED IMMEDIATELY.

Any further attempts at collection will result in further action taken by me for all remedies available in law and equity in both administrative proceedings, and judicial forums possessing competent jurisdiction, which will seek damages for unfair trade practices, treble damages under applicable law for RICO, FTC, consequential damages and refunds, attorney fees, court costs, and all other available remedies in law or equity. Stop any and all negative reporting to the credit bureaus.

It is an established fact that the problems such as the Assignment of Deed of Trust was not filed by BANK OF AMERICA, N.A./FIRST MAGNUS FINANCIAL CORPORATION. Stop all legal and/or foreclosure proceedings now. I presume that any forthcoming legal action will be postponed pending the amicable resolution of this loan. Please ONLY contact me via mail at the above address. Do not contact me telephonically.
Thank you very much for your time and assistance.

Sincerely,

IVAYLO DODEV
Loan Account No.: # LOAN # 6531180433 and 147338494

**CC: Attorney General of Arizona**
**Securities and Exchange Commission**
**Arizona Bar Association**
**Arizona Department of Financial Institutions**
**County Recorder**
**Federal Deposit Insurance Corporation**
**Comptroller of the Currency**
**Arizona Secretary of State**
**Federal Reserve**
**County Attorney**

UNITED STATES POSTAL SERVICE

SIGNATURE CONFIRMATION NUMBER:
2308 3250 0000 3015 2349

Postage and Signature Confirmation fees must be paid before mailing:

93065

POSTAL CUSTOMER:
Keep this receipt. For Inquiries:
Access internet web site at www.usps.com®
or call 1-800-222-1811

USPS
AUG 30
HIGLEY AZ 85236

Priority Mail® Service
First-Class Mail® parcel
Package Services parcel

Date: 09/16/2011

IVAYLO DODEV:

The following is in response to your 09/16/2011 request for delivery information on your Signature Confirmation(TM) item number 2308 3250 0000 3015 2349. The delivery record shows that this item was delivered on 09/01/2011 at 08:47 AM in SIMI VALLEY, CA 93065 to N HERNANDEZ. The scanned image of the recipient information is provided below.

Signature of Recipient: NELSON A. HERNANDEZ

Address of Recipient: 400 Countrywide

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

# EXHIBIT "N"

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-984-04-07
Richardson, TX 75082

MARICOPA COUNTY RECORDER
HELEN PURCELL
20130250732 03/19/2013 04:16
ELECTRONIC RECORDING

110407742CL01-2-1-1--
hoyp

WHEN RECORDED MAIL TO:
Owner of Record
23410 SOUTH 161ST WAY
GILBERT, AZ 85297
TS No. 11-0075989
Title Order No. 110407742AZGTI
APN No. 304-77-004W4

# CANCELLATION OF NOTICE OF SALE ARIZONA

The undersigned trustee hereby cancels the Notice of Sale Recorded on 08/24/2011, as Instrument Number 20110706281, on trust property legally described as:

SEE ATTACHED EXHIBIT 'A' - LEGAL DESCRIPTION

which Notice of Sale refers to a trust deed executed by IVAYLO Z. DOCHEV, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY, as trustor, in which MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., is named as beneficiary, and NONE, is named as trustee, and Recorded on 12/18/2006, as Instrument [illegible] Book N/A, Page N/A, of official records of Maricopa County, Arizona.

MARICOPA COUNTY ARIZONA

DATED: March 15, 2013

RECONTRUST COMPANY, N.A.,
Successor Trustee

[signature] 3-18-13
Tonya Malugen AVP

State of: Texas )
County of: Tarrant )

On 3-18-2013 before me Elsie Kroussakis, personally appeared Tonya Malugen AVP Recontrust Company, N.A., know to me (or proved to me on the oath of ____ or through ____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

[signature]
Notary Public's Signature

ELSIE KROUSSAKIS
Notary Public, State of Texas
My Commission Expires
October 14, 2015

AZCNCLNOS_2012.10.0_12/2012

http://recorder.maricopa.gov/cert.aspx?id=106461 [20130250732] 3 Pages

ORDER NO: 110407742

EXHIBIT A

REF. NO. 11-0075999

A PORTION OF LAND IN THE SOUTHWEST QUARTER OF SECTION 22, TOWNSHIP 2 SOUTH, RANGE 6 EAST, GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, DESCRIBED AS FOLLOWS;

COMMENCING AT THE SOUTHWEST CORNER OF SECTION 22;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 1284.85 FEET;

THENCE NORTH 00 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 415.04 FEET;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 193.02 FEET TO THE POINT OF BEGINNING;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 367.57 FEET;

THENCE NORTH 00 DEGREES 03 MINUTES 42 SECONDS EAST, A DISTANCE OF 9.56 FEET;

THENCE NORTH 18 DEGREES 49 MINUTES 40 SECONDS EAST, A DISTANCE OF 266.94 FEET;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 279.44 FEET;

THENCE SOUTH 00 DEGREES 26 MINUTES 50 SECONDS EAST, A DISTANCE OF 262.23 FEET TO THE POINT OF BEGINNING.

http://recorder.maricopa.gov/cert.aspx?id=106461 [20130250732] 3 Pages

20130250732
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL

The foregoing instrument is an **electronically prepared** full, true and correct copy of the original record in this office.

Attest: 07/08/2013 01:59:46 PM

By  Recorder

To Verify this purchase visit
http://recorder.maricopa.gov/cert.aspx?id=106461

http://recorder.maricopa.gov/cert.aspx?id=106461 [20130250732] 3 Pages

**EXHIBIT "O"**

00000685

ARIZONA BANK OF AMERICA SETTLEMENT
A.B. DATA, LTD. AS SETTLEMENT ADMINISTRATOR FOR THE ATTORNEY GENERAL OF THE STATE OF ARIZONA
PO BOX 170500
MILWAUKEE, WI 53217-8091

18574083-0

October 02, 2013

Baylake Bank
79-210/759

CHECK NUMBER:
DATE: 10/02/2013
CHECK AMOUNT: $1,250.00
CLAIM NUMBER: 18574083-0

IVAYLO DODEV
6312 S 161ST WAY
GILBERT AZ 85298-8455

Dear Consumer:

On February 9, 2012, a joint state-federal settlement was reached between Arizona and 48 other states, the federal government, and the nation's five largest residential mortgage loan servicers. On the same date, the Arizona Attorney General announced the settlement of a separate lawsuit against Bank of America. A portion of the funds obtained by Arizona was allocated to help Arizona consumers who filed mortgage servicing related complaints that contributed to the successful resolution of the lawsuit against Bank of America. Your restitution amount is based upon information you provided when you returned the claim form in this matter and other records regarding your consumer complaint. You may obtain additional information regarding the mortgage settlements at https://www.azag.gov/foreclosure/.

This check is valid for ninety days from the issue date and should be cashed on or before December 31, 2013. You may contact the Settlement Administrator with any questions by phone at 800-331-8642 or by writing to Arizona Bank of America Settlement, c/o A.B. Data, Ltd., PO Box 170500, Milwaukee, WI 53217-8091.

**CASH PROMPTLY – VOID IF NOT CASHED BY DECEMBER 31, 2013**

Arizona Bank of America Settlement
A.B. Data, Settlement Administrator
PO Box 170500
Milwaukee, WI 53217-8091

Baylake Bank
Sturgeon Bay, WI
79-210/759

DATE 10/02/2013

PAY TO THE ORDER OF IVAYLO DODEV

$ 1,250.00

One Thousand Two Hundred Fifty and 00/100 Dollars

VOID IF NOT CASHED BY DECEMBER 31, 2013
Please be advised that the Settlement Administrator will not be liable for any financial institution fees resulting from improper endorsement of this check.
Security features included; details on back.

AUTHORIZED SIGNATURE

Security Features Included. Details on Back.

00000588

ARIZONA BANK OF AMERICA SETTLEMENT
A.B. DATA, LTD. AS SETTLEMENT ADMINISTRATOR FOR THE
ATTORNEY GENERAL OF THE STATE OF ARIZONA
PO BOX 170500
MILWAUKEE, WI 53217-8091

18574083-0

DECEMBER 20, 2013

Baylake Bank
79-210/759

CHECK NUMBER: 53798167
DATE: 12/20/2013
CHECK AMOUNT: $1,250.00
CLAIM NUMBER: 18574083-0

IVAYLO DODEV
6312 S 161ST WAY
GILBERT AZ 85298-8455

Dear Consumer:

We are pleased to provide the enclosed check as part of the final distribution of restitution from the Bank of America settlement. This final payment is based upon information you provided when you returned the claim form in this matter earlier this year and other records regarding the consumer complaint you filed with the Arizona Attorney General's Office.

Please note that this check is valid for ninety days from the issue date and should be cashed on or before March 20, 2014. You may contact the Settlement Administrator with any questions by phone at 800-331-8642 or by writing to Arizona Bank of America Settlement, c/o A.B. Data, Ltd., PO Box 170500, Milwaukee, WI 53217-8091.

**CASH PROMPTLY – VOID IF NOT CASHED BY MARCH 20, 2014**

**THIS CHECK IS PRINTED WITH THE VERBIAGE "SECURITY DOCUMENT" IN FLUORESCENT INK - DO NOT ACCEPT UNLESS THE WORDS ARE PRESENT**

Arizona Bank of America Settlement
A.B. Data, Ltd. as Settlement Administrator for the
Attorney General of the State of Arizona
PO Box 170500
Milwaukee, WI 53217-8091

Baylake Bank
Sturgeon Bay, WI
79-210/759

DATE 12/20/2013

PAY TO THE ORDER OF IVAYLO DODEV $ 1,250.00

One Thousand Two Hundred Fifty and 00/100 Dollars

**VOID IF NOT CASHED BY MARCH 20, 2014**
Please be advised that the Settlement Administrator will not be liable for any financial institution fees resulting from improper endorsement of this check.
Security features included. Details on back.

AUTHORIZED SIGNATURE



**EXHIBIT "P"**

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

Statement date **07/28/2011**
**Account Number 147338494**
Property address
23410 South 161st Way

0035473 01 AT 0.362 **AUTO T3 2 1988 85298-8455
PO A4 AG 0101-----0--2-2- C0000031 IN 1 P35508

IVAYLO T DODEV
6312 S 161st Way
Gilbert AZ 85298-8455

**Pay Option Notice:** Because your loan is not current, we have not calculated your Payment Options this month. For information on how to pay more than the minimum payment, please call us at 1.800.669.0102.

**FOR CUSTOMER SERVICE: 1.866.653.6183**

## Your Monthly Home Loan Statement

**Snapshot of your Home Loan as of July 28, 2011**

| | |
|---|---|
| Type of Loan | 30 Yr Conv Jumbo PayOption ARM |
| Current Principal Balance | $721,199.48 |
| Original Loan Amount | $681,750.00 |
| Maximum Limit (see explanation at bottom of page) | 115.00% |
| Margin | 3.400% |
| Interest Rate this Month | 3.625% |
| Remaining Term | 28 Years, 3 Months |

**Payment Due Date: Aug 1, 2011**
**Late Payment Charge:** $130.91 if payment is not received by **Aug 16, 2011**

## Additional Account Information

| | |
|---|---|
| Past Due Amount | $7,554.87 |
| Fees Due | $255.00 |

## Your Payment Options this Month

The amounts listed below are total payments, including amounts collected for escrow items such as taxes and insurance premiums.

| Payment Options | Total Payment | Deferred Interest | Principal/ Interest Owed | Outstanding Late Charges** | Escrow | Optional Products*** |
|---|---|---|---|---|---|---|
| **Option 3** Minimum Payment | **$3,924.20** | | $3,252.54 | 1,096.38 | $271.66 | |

Please note Amounts above are estimates and may change based on payments made. For information on how to pay more than the minimum payment, please call us at 1.800.669.0102.
*Negative amounts ((-) minus sign) shown in the deferred interest column are added to the principal balance. This results from making a Minimum Payment that is less than the interest due.
**Outstanding late charges up to $400.00 are reflected in the payment option amount.

**As of the date of this notice, our records reflect that your loan is past due for multiple payments.** We are researching whether any of these payments have been made. Please be advised that any payments that are due, which are not under research, must be remitted immediately. Upon completion of our research, we will make any appropriate corrections to your account and notify you of any balances due.

Note to Delaware Residents: Delaware residents who are struggling with their mortgage payments will find information on state-supported assistance by visiting www.deforeclosurehelp.org.

Thank you for your prompt attention.

LOAN SERVICING
Loan Counselor

**Maximum Limit** - Per your loan documents, the Maximum Limit is the maximum amount your loan can grow to before you are required to make the Full Payment. If you reach the Maximum Limit, your Minimum Payment will increase to the amount sufficient to repay your unpaid principal balance in full on the Maturity Date in substantially equal payments at the then current interest rate

**OPTION 1**
**Amortized Payment (principal and interest) - based on your remaining term**

The amount necessary to pay the loan off (principal and interest) at the maturity d... in substantially equal payments (unless your loan has a balloon payment due on the maturity date). Under the terms of your Note, this payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term of your loan.

**Because your loan is not current, we have not calculated your Payment Options this month. For information on how to pay more than the minimum payment, please call us at 1.800.669.5224.**

**OPTION 2**
**15-Year Amortized Payment (principal and interest)**

The amount necessary to pay the loan off (principal and interest) within a 15-year term from the first payment due date, in substantially equal payments (unless your loan has a balloon payment due on the maturity date). Under the terms of your Note, this payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term of your loan.

**Because your loan is not current, we have not calculated your Payment Options this month. For information on how to pay more than the minimum payment, please call us at 1.800.669.5224.**

**OPTION 3**
**Minimum Payment**

Important: If this amount is less than the Interest Only, paying this will not be enough to pay all of the interest due, will not reduce your principal, and the unpaid interest will be added to your principal. This is called "negative amortization", meaning the amount you owe increases. You will be charged interest on the entire principal. Negative Amortization will reduce the equity you have in your home. Negative Amortization should be managed carefully, so that you are not surprised by significant increases in future Minimum Payments.

Account number **147338494** **(7)**
Ivaylo T Dodev
23410 South 161st Way
Gilbert, AZ 85297

Payment due **Aug 1, 2011** ***$3,924.20**
After **Aug 16, 2011** late payment **$4,055.11**
*Payment amount includes late charges. See Your home loan activity this month for breakdown

1988

Bank of America, N.A.
PO BOX 515503
LOS ANGELES, CA 90051-6803

Additional Principal

Additional Escrow

Check total

1473384947000003924200004055 11

⑆586990058⑆ 147338494⑈

**OPTION 4**
**Interest-Only Payment**

You pay only the interest charged on your loan for the previous month. By making an Interest Only Payment, you will avoid negative amortization, but no portion of the payment will be applied to reduce the principal balance of your loan.

**Because your loan is not current, we have not calculated your Payment Options this month. For information on how to pay more than the minimum payment, please call us at 1.800.669.5224.**

# EXHIBIT "Q"

June 2, 2013

IVAYLO DODEV
6312 S 161ST WAY
GILBERT, AZ 85298

RE: Creditor Account #0014052088

This letter is lawful notification to SELECT PORTFOLIO SERVING, INC., (DEBT COLLECTOR), as the first step of due process of law pursuant to **Sec. 806 of Fair Debt Collection Practices Act, the Bill of Rights** and the **Federal Constitution**, in particular Amendments 1, 4, 5, 7, and 14. Please take Notice that Ivayo Dodev **requires** **BONA FIDE PROOF (in good faith and without deceit) that your claim is lawful and valid.**

Please take lawful notice that in order to effect this *BONA FIDE PROOF*, **Error! Reference source not found.**,via any legally authorized representative, is lawfully required and hereby demanded to respond point by point in Truth, Fact, and Evidence to each and every item set forth in this correspondence before Ivaylo Dodev or his Authorized Representative can make an offer to settle DEBT COLLECTOR alleged claim in this matter.

Please provide the following:

1. A copy of the contract that binds myself, Ivaylo Dodev, and DEBT COLLECTOR
2. PROOF OF CLAIM via certified, notarized, specific, and relevant documents that DEBT COLLECTOR:
    a. Has any contract or agreement which lawfully compels Ivaylo Dodev to accept and/or respond to any communications from DEBT COLLECTOR
    b. Is a lawful and valid party of interest in this matter pursuant to Federal Debt Collection Act, Civil Rules of Procedure in the State of Arizona (See also Federal Rules of Civil Procedure 17(a)).
    c. Is not an unrelated third party
    d. Is not an unrelated third party debt collector
    e. Did not purchase this alleged debt for an agreed upon cost from an alleged other COMPANY, CORPORATION, or Party
    f. Is not acting on its own behalf and/or interests in this instant matter.

Please have your legally authorized representative respond via signed affidavit, under pain and penalty of perjury, and enclose copies of all relevant documents that demonstrate BONA FIDE PROOF OF YOUR CLAIM within 30 (thirty) days of receipt of this letter, via certified mail. TIME IS OF THE ESSENCE.

Your failure to respond in truth, fact, and evidence, to each of the above items, point by point as stipulated, is SELECT PORTFOLIO SERVING, INC.'S, (DEBT COLLECTOR), admission to the fact DEBT COLLECTOR has no valid claim in this instant matter and DEBT COLLECTOR, and its agents or principals, are attempting to take my property through theft by deception or larceny by trickery; both of which are felonies. Your silence is your tacit admission to the fact that you have no valid claim in this instant matter.

All Rights Reserved,

Ivaylo Dodev

August 6, 2013

USPS certified mail # 2 5110 1100 0003 1100 1077

IVAYLO DODEV
6312 S 161ST WAY
GILBERT, AZ 85298

RE: Creditor Account #0014052088

**On July 2, 2013, I directed a letter to you demanding that you specifically provide lawful bona fide proof of your alleged claim in this instant matter and to present this proof by lawfully designated means. (See attached letter).**

**This letter is lawful notification, NOTICE TO SUE, to SELECT PORTFOLIO SERVING, INC., (DEBT COLLECTOR). Please be advised you have failed to respond properly to the letter you received on July 2, 2013 by USPS, certified mail # 9114901075742388810503**

SELECT PORTFOLIO SERVICING, INC. has NOT proven the following as requested on July 2, 2013

1. A copy of the contract that binds myself, Ivaylo Dodev, and DEBT COLLECTOR
2. PROOF OF CLAIM via certified, notarized, specific, and relevant documents that DEBT COLLECTOR:
    a. Has any contract or agreement which lawfully compels Ivaylo Dodev to accept and/or respond to any communications from DEBT COLLECTOR
    b. Is a lawful and valid party of interest in this matter pursuant to Federal Debt Collection Act, Civil Rules of Procedure in the State of Arizona (See also Federal Rules of Civil Procedure 17(a))
    c. Is not an unrelated third party
    d. Is not an unrelated third party debt collector
    e. Did not purchase this alleged debt for an agreed upon cost from an alleged other COMPANY, CORPORATION, or Party
    f. Is not acting on its own behalf and/or interests in this instant matter.

Therefore, you have acquiesced and agreed that you have no legal and lawful authority to contact me regarding this private and personal matter. If you continue in your fraudulent efforts to collect a debt that is not owed to you, I will take all steps to insure that my rights are not further violated, including a timely lawsuit against you if you continue with this course of action.

Do not attempt to contact me via phone as I cannot validate or verify the person on the phone so I will only respond to written correspondence addressed to: Ivaylo Dodev, 6312 South 161st Way, Gilbert, Arizona. If you disagree with anything in this letter, then rebut that with which you disagree, in writing, with particularity, to me, within 10 days of this letter's date, and support your disagreement with evidence, fact and valid Law. Your failure to respond, as stipulated, is your agreement with and admission to the fact that everything in this letter is true, correct, legal, lawful, and is your irrevocable agreement attesting to this, fully binding upon you, in any court in America, without your protest or objection or that of those who represent you.

All Rights Reserved,

[signature]

Ivaylo Dodev

STATE OF ARIZONA )
) SS
COUNTY OF MARICOPA )

Subscribed and sworn to (or affirmed) before me on this 6th day of August __, 2013 by Ivaylo Dodev, proved to me on the basis of satisfactory evidence to be the man who appeared before me.

Executed by my own free will

[signature] ____________ (Seal)

Notary Public

Lizette Cornejo
Notary Public
Maricopa County, Arizona
My Comm. Expires 09-30-15



Date: August 12, 2013

Ivaylo Dodev:

The following is in response to your August 12, 2013 request for delivery information on your Signature Confirmation™ item number 23110770000057409879. The delivery record shows that this item was delivered on August 8, 2013 at 10:06 am in SALT LAKE CITY, UT 84115 to W DANIELS. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

3815 S. West Temple

Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,
United States Postal Service



**EXHIBIT "R"**

Ivaylo Tsvetanov Dodev,

c/o 6312 South 161st Way
Gilbert, Arizona
(480) 457-8888 Phone
(480) 457-8887 Facsimile
dodev@hotmail.com

Pro Se

**FILE ON DEMAND FOR THE RECORD**

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Ivaylo Tsvetanov Dodev,**<br>**Plaintiff,**<br>**vs.**<br>**RECONTRUST COMPANY, N.A., ET AL**<br>**Defendants.** | **Case No. CV-13-02155-DLR**<br><br>**CWALT ALTERNATIVE LOAN TRUST 2007-OA7 POOLING AND SERVICING AGREEMENT OFFER INTO EVIDENCE WITH PLAINTIFF'S BRIEF**<br><br>**(DOC. 53 as previously filed)** |

**Hon. G Murray Snow,** Plaintiff, Ivaylo Tsvetanov Dodev, *pro se*, ("Plaintiff"), **respectfully request leave to file an oversized brief in this case.** As declared in Plaintiff's First Amended Complaint, ("FAC"), the issues in this Verified Action-at-Law are complex, and although Plaintiff's desire is to submit as little evidence as possible in order to avoid costly litigation, Defendants, through counsel, remain steady on their course of Fraud, Tax Evasion and Perjury and through this Brief ("Brief"), Offered Into Evidence, along with a Certified copy of the Pooling and Servicing Agreement of CWALT ALT 2007-OA7 ("PSA"), Plaintiff will further

unveil the intricate elements of crime Defendants have clad themselves with, essential for just adjudication in this Action.

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| GENERAL OVERVIEW OF SECURED TRANSACTIONS AND ANALYZING PLAINTIFF ASSIGNMENT TO CWALT ALTERNATIVE LOAN TRUST 2007-OA7 | | 1 |
| I. | SEPARATION OF THE INTANGIBLE OBLIGATION FROM EVIDENCE OF OBLIGATION | 2 |
| II | TRANSFER OF A NOTE | 3 |
| III. | TRANSFER OF A MORTGAGE | 5 |
| IV. | SEPARATION OF TANGIBLE INSTRUMENTS | 5 |
| V. | THE MORTGAGE AS A CONTRACT | 7 |
| VI. | MBS TRUSTS ARE GOVERNED BY TRUST DOCUMENTS | 8 |
| VII. | SECURITIZATION OF PLAINTIFF'S MORTGAGE LOAN INTO CWALT ALT 2007-OA7 | 9 |
| VIII. | AS MULTIPLE CLASSES OF THE CWALT ALT 2007-OA7 OWN THE PLAINTIFF OBLIGATION, MULTIPLE CLASSES OF THE CWALT ALT 2007-OA7 ARE REQUIRED TO HAVE OWNERSHIP OF THE PLAINTIFF NOTE AND MORTGAGE. | 11 |

IX. AS IT CURRENTLY STANDS, MULTIPLE CLASSES OF THE CWALT ALT 2007-OA7 CANNOT CLAIM OWNERSHIP OF EITHER THE PLAINTIFF NOTE OR THE PLAINTIFF MORTGAGE 13

X. THE DOCUMENT PURPORTING TO BE AN "ASSIGNMENT" DATED AUGUST 24TH, 2011 IS INVALID AS AN ASSIGNMENT OF MORTGAGE 20

XI. THE BANK OF NEW YORK MELLON HAS NO CLAIM TO OWNERSHIP OF THE PLAINTIFF NOTE 26

XII. THE TERMS OF THE PLAINTIFF MORTGAGE HAVE BEEN VIOLATED AND THE PLAINTIFF MORTGAGE IS UNENFORCEABLE 37

XIII. OWNERSHIP OF THE PLAINTIFF OBLIGATION CANNOT BE REJOINED TO OWNERSHIP OF THE PLAINTIFF NOTE OR THE PLAINTIFF MORTGAGE 29

XIV. WITH OWNERSHIP OF THE PLAINTIFF OBLIGATION STRIPPED AWAY AND NO WAY TO ENFORCE THE CONDITIONS UNDER THE PLAINTIFF MORTGAGE, THE PLAINTIFF LOAN IS A NULLITY 30

CONCLUSION 33

## TABLE OF AUTHORITIES

**Cases**

*Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 125, 130 Cal. Rptr. 3d 815 (2d Dist. 2011) ........ 14

*Commercial Money Ctr., Inc.*, 350 B.R. 465, 473-79 (B.A.P. 9th Cir. 2006) ........ 3

*Hyde v. Mangan*, 88 Cal. 319, 327, 26 P. 180 (1891) ........ 8

*Johnson v. Razey*, 181 Cal. 342, 344, 184 P. 657 (1919) ........ 8

*Kelley v. Upshaw*, 39 Cal. 2d 179, 192, 246 P.2d23 (1952) ........ 8

*Polhemus v. Trainer*, 30 Cal. 685, 688, 1866 WL 831 (1866) ........ 8

*Smith v. J.R. Newberry Co.*, 21 Cal. App. 432, 131 P.1055 (2d Dist. 1913) ........ 7

**Statutes/Codes**

15 USC 41 §1641(g)........................................13

15 USC 96 §7003........................................17

18 USC 47 §1021........................................12

26 USC §860F(A)........................................25

26 USC §860G-(A)10........................................25

UCC Article 3........................................3, 5, 26

UCC Article 7........................................26

UCC Article 9........................................2, 5

**Other Authorities**

Prospectus Supplement p.S-38........................................23

PSA Exhibit F-1........................................32

PSA Section 1.01........................................10

PSA Section 2.01........................................26

PSA Section 2.02........................................31

PSA Section 2.05........................................34

Uniform Covenants of Deed Article 20........................................20

**Regulations**

26 CFR §860........................................29

26 CFR §860D-1c(2)........................................25

## INTRODUCTION

Plaintiff's Brief will analyze, through lawful methods of dissent, the contradictions between the PSA and the purported CORPORATION ASSIGNMENT OF THE DEED OF THE TRUST ARIZONA, ("Assignment"), Doc. 42-22, and the conflicting MOTIONS TO DISMISS, Doc. 40 and 42, submitted by the Attorneys for the Defendants, ("Counsel"). For the purpose of this Brief, Plaintiff will assume that the DEED OF TRUST, Exhibit "I" under Doc.1-2, and the ADJUSTABLE RATE NOTE ("THE NOTE"), Exhibit "K" under Doc.1-2, are still tangible and pertain to his land even though his signature has been rescind and the validity of these two documents has been revoked, Exhibit "L" AND "J" under Doc.1-3, due to fraud. Further. Plaintiff believes and alleges in his complaint, Doc. 18, that Deed of Trust and the Note are not legal, binding contracts and are not properly indorsed, are executed without consideration, and that no money were ever given to him. Plaintiff has never acquiesced to being borrower and never accepted any offer to modify debt from the defendants, and each of them [debt collectors], as he **believes and alleges that they are not a party related to those documents, or, respectfully, party to foreclose, and they have committed fraud, tax evasion and perjury according to the PSA and the purported Assignment.**

## GENERAL OVERVIEW OF SECURED TRANSACTIONS AND ANALYZING PLAINTIFF ASSIGNMENT TO CWALT ALTERNATIVE LOAN TRUST 2007-OA7

1. Ownership of the intangible payment stream collected from a Mortgage Loan can be bought, sold and transferred. This transfer of ownership is evidenced through

the sale of a certificate funded by payment stream(s) received from payments made upon **what will be defined within this Brief as the "Obligation".** Ownership of the Obligation via buying and selling the certificates (intangible payment stream) is allowable under the governance of UCC Article 9, as a Transferable Record. Transferred ownership can be seen though the financial record of the distributed payment stream. Transfer of ownership through certificates is an actual transfer of a partial ownership of a beneficial interest in the intangible payment stream of the Obligation.

## I. SEPARATION OF THE INTANGIBLE OBLIGATION FROM EVIDENCE OF OBLIGATION

2. The initial and subsequent certificate transactions involving the divided intangible payment stream of the Obligation does not transfer rights to the ownership of the Note and the Mortgage to the owners of the intangible payment stream. Transfer of ownership of and rights to enforce the Note and the Mortgage would require that partial interest in the tangible instruments which secure the Obligation (Note and the Mortgage) be transferred/assigned to all and each of the potential multiple owners of the certificates compliant with the local laws of jurisdiction. That described transfer would be impossible. To create the appearance that the transfer of the Obligation, the partial interest derived from the tangible instruments, has been accomplished, the transfer is made to a common Trustee. Any owner of the Obligation as a transferable record of the payment stream could be in jeopardy of

**<u>stripping the Obligation away from the Note, and simply obtaining possession of the Note less rights, unless ownership of the Note and Mortgage is also obtained.</u>**

3. In the Commercial Money Ctr., Inc. bankruptcy, the Ninth Circuit Appellate Court had no difficulty concluding that ownership of income streams can be stripped from the records that evidence them.

> From Commercial Money Ctr., Inc., 350 B.R. 465, 473-79 (B.A.P. 9th Cir. 2006), rev'g, 56 U.C.C. Rep. Serv. (West) 54 (Bankr. S.D. Cal. Jan. 27, 2005).
> *"This language on its face defines chattel paper to mean the records that "evidence" certain things, including monetary obligations. Payment streams stripped from the underlying leases are not records that evidence monetary obligations -- they are monetary obligations. Therefore, we agree with NetBank that the payment streams are not chattel paper."*

4. Of the three transferable linked parts of every Mortgage Loan, the Obligation, the Note and the Mortgage, <u>two of those transferable parts are tangible instruments, the Note and the Mortgage</u>. The Note is a negotiable instrument that evidences the Obligation. The Mortgage, seen as a Lien, is a contract listing alternatives for collecting payment due under the Obligation evidenced by the Note. The validity of the third part, the Intangible Obligation, it entirely dependent upon the Note properly secured by a Deed of Trust.

**II. TRANSFER OF A NOTE**

5. Each Note associated with a Mortgage Loan is created as a negotiable instrument to allow for future sale. When a Note is treated as a negotiable instrument, falling under the governance of UCC Article 3, ownership of the Note shall be transferred by means of special indorsement or by indorsing in blank to create a

bearer Note. The UCC allows any party to complete an incomplete special indorsement, making that party entitled to enforcement rights upon that negotiable instrument. However, possession of the Note must not be confused with ownership of the Note, where a possessor may not be more than a custodian or agent of an owner. (Indorsement being the legal transfer of ownership of a security note based on a signature. Not to be confused with endorsement, which is the signature itself.)

Additionally, a valid subsequent owner, while negotiating ownership of a Note, must exercise care so as to avoid loss of Secured Party status in the negotiation of a Note. (Secured Party status is of serious concern for the Bankruptcy Courts). An alleged subsequent owner of the Note failing to permanently perfect (filing of record as required by law) ownership of the Mortgage (Security) associated with a Note into their name, while negotiating Ownership of a Note and rights to the security securing it, would render a Secured Note being an Unsecured Note. Ownership of Unsecured Note, no longer secured by ownership of a Lien, separates the Obligation from the Conditions to enforce the Power of Sale. Where an alleged subsequent owner of a negotiable instrument lacks indorsement for owner/holder status, the UCC allows for such party to obtain indorsements to allow the subsequent party to be entitled to enforcement rights upon the negotiable instrument. However, the UCC has no retroactive means to re-establish an unsecured negotiable instrument back into a secured negotiable Instrument. Secured status and Unsecured status is dependent upon the securing of the Security being in compliance with local laws of jurisdiction.

## III. TRANSFER OF A MORTGAGE

6. A Note transferred in interstate commerce is a negotiable instrument and therefore falls under the governance of UCC Article 3. Any party who possesses a valid ownership interest in a Note can only transfer that interest by way of negotiation through indorsement. While an ownership interest in the payment stream, being a transferable record, can be transferred under governance of UCC Article 9, house ownership rights are concerned and perfection of transfer of the Mortgage securing the Note falls within governance of Local Laws and Jurisdiciton. The Mortgage itself notes that Federal Statutes and/or Local Laws of Jurisdiction are governing, so UCC Article 9 does not govern the transfer of the Mortgage. Subsequently, any party who possesses a valid beneficial interest in a Mortgage can only transfer that interest by way of properly recorded assignment of that interest. Transfer of beneficial interest (purchase of a Note) in a Mortgage, without properly recorded assignment of said Mortgage, would place anyone doing so in jeopardy of violating Federal Statutes and/or Local Laws of the applicable Jurisdiction and potentially the common law Statutes of Fraud.

## IV. SEPARATION OF TANGIBLE INSTRUMENTS

7. A properly recorded assignment of the Mortgage memorializes the Note's negotiation, but does not cause the Note's transfer. For a Note to change ownership and remain secured through the Mortgage each and every transfer of the Note, by indorsement or negotiation, must be performed with a parallel assignment of the Mortgage, properly filed in the local County Record. If a Note is indorsed and

negotiated to one party while the Mortgage is assigned to another party, a separation between the Ownership of the Note evidencing the Obligation and the Ownership of the Mortgage, which secure the Obligation occurs, rendering the Note an Unsecured Instrument.

8. For a Party with ownership of a Note to be a Holder in Due Course with the rights and power of foreclosure, the "Power of Sale", the Note must remain secured to the Mortgage. When a separation of Ownership of the Obligation and the Ownership of Conditions, rights to the Notes, which secure the Obligation occurs by failing to follow mandated law, the Intangible is no longer secured by a Secured Note and the Mortgage Loan (Security securing) is no longer secured by Lien. <u>When the Mortgage Loan is no longer secured by Lien, there can be no Holder in Due Course of a Secured Note</u>. <u>Such Holder of the Note has lost the right to seek alternate payment through the use of a now invalid security instrument</u>. <u>Therefore, any Party seeking to bring a claim, against land title in a foreclosure, as Holder in Due Course of a Secured Mortgage Loan, must demonstrate an unbroken chain of properly recorded assignments of the Mortgage and a parallel unbroken chain of completed Note indorsements.</u> Making a claim of beneficial interest in a Mortgage Loan without an unbroken chain of properly recorded assignments of the Mortgage and a parallel unbroken chain of completed Note indorsements would place anyone doing so in jeopardy of violating Federal Statutes and/or Local Laws of Jurisdiction (as explained in statement 6). Where such alternate collection method has been dissolved by failure to follow law, the owner of the Note does (did) have equitable remedy by seeking

recovery of the debt by filing suit in a jurisdictional court of equity. The paradox, is, where such a holder has pledged a Mortgage Loan (Secured Package) as collateral, knowing that such was not a Secured Package, would present such a pledgor with **unclean hands**.

## V. THE MORTGAGE AS A CONTRACT

9. The Mortgage is a [presumable] contract between the borrower (Payor) and the parties spelled out on the face of the document. A separation between Ownership of the Note and the Ownership of the Mortgage would be a violation of the terms [COVENANTS] of that contract. Under long existing contract law, if the terms of a contract are violated, affecting the conditions under which the Payor is obligated, without the properly evidenced consent of the Payor, that contract is void and cannot be returned to without the consent of the Payor.

10. It has been a long held concept within some United States Courts, and in particular Arizona, that ownership of the Note and ownership of the Mortgage can be separated, however, if ownership is separated, the Mortgage, because it can have no separate existence, cannot survive and becomes a nullity.

Generally, a transfer by a mortgagee under a deed absolute of his or her interest in the mortgage carries the debt with it. However, where there is no intent to pass the debt, a mortgagee intending to pass the security interest only passes no interest to the grantee. *Smith v. J.R. Newberry Co.*, 21 Cal. App. 432, 131 P.1055 (2d Dist. 1913). **A purported assignment of the security (deed of trust or mortgage) is void and ineffective unless accompanied by an assignment of the note, and the purported**

**assignment or delivery of possession of the mortgage or deed of trust without a transfer of the obligation secured is both completely ineffective and a legal nullity, or else operates to extinguish the security interest, rendering the note unsecured**. *Kelley v. Upshaw*, 39 Cal. 2d 179, 192, 246 P.2d23 (1952) (mortgage); *Hyde v. Mangan*, 88 Cal. 319, 327, 26 P. 180 (1891); *Polhemus v. Trainer*, 30 Cal. 685, 688, 1866 WL 831 (1866). See *Johnson v. Razey*, 181 Cal. 342, 344, 184 P. 657 (1919); *Restatement (Third) of Property* (*Mortgages*), § 5:4 cmt.e (1997) states: *"In general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation."* Accordingly, [w]hen a note is split from a deed of trust, *"the note becomes as a practical matter unsecured."* A Mortgage can only enforce its conditions over the debt through the Note's evidence of the Obligation and ownership of possession of the note does not include rights to the specific attached obligation, a Mortgage cannot survive as an enforceable contract.

## VI. MBS TRUSTS ARE GOVERNED BY TRUST DOCUMENTS

11. Once a Mortgage Loan is sold into a Mortgage-Backed Security (MBS) Trust, it is governed by a PSA filed with the Securities and Exchange Commission (SEC) (Certified copy of PSA relevant to case attached herein). When Plaintiff's Mortgage Loan was sold into MBS Trust, all the well-established Real Estate and Contract Law explained above still applied. For a MBS Trust to be Holder in Due Course of a Secured Mortgage Loan, properly recorded assignments of the Mortgage, as well as completed parallel indorsements of the Note to match, are required not only

by well-established Real Estate and Contract Law, but also by the terms of the PSA and/or REMIC Master Trust Agreement which governs the MBS Trust in question.

**VII. SECURITIZATION OF PLAINTIFF'S MORTGAGE LOAN INTO CWALT ALT 2007-OA7**

12. In this VERIFIED ACTION-AT-LAW, it is impossible to ascertain to who owns what, as the income stream from the Plaintiff Obligation is no longer owned in a unified manner, as evident by the Prospectus when discussing the Classes within the Trust Pool. Each Class of the CWALT ALT 2007-OA7 owns a different partial interest in the Plaintiff Obligation (if assumed the Plaintiff's Obligation was ever transferred). Even though a Trust may show a Class within that Trust as being paid, this is a predetermined action by the Trust; it does not mean that the Plaintiff's Obligation has been paid or not paid. It is impossible to make that determination as the Plaintiff's Obligation no longer exists in its original form. Subsequently, the ownership of partial interest in the Plaintiff Obligation can no longer be determined, nor can it be determined what or which partial interest in Plaintiff Obligation has been paid nor what percentage of that partial interest in the Plaintiff Obligation has been satisfied/settled, because once transferred into the Trust, it became permanent stock (fixture) and it is owned entirely by the Investors [stock holders], who bought share from that particular pool. Even though there is some division of performance of the loan from class to class, if ownership of the Plaintiff Obligation exists in any class as the Transferable Record of the ownership, the Plaintiff Obligation exists in total within the Trust.

13. Securitization is the process of aggregating the Obligations from a large number of mortgage loans, into what is called a mortgage pool (liquefying) and then selling "shares" (called certificates) of ownership of partial interest of the Obligations to investors. The income stream from the Obligation that the Plaintiff mortgage payments produce flows through fractionalized payments into many different classes to many different investors, of the CWALT ALT 2007-OA7, depending on which certificates of which class were purchased by which investor.

14. The ownership of the Plainitff Obligation has been conveyed as a Transferable Record to multiple classes of the CWALT ALT 2007-OA7. For ownership of the Plaintiff Obligation not to have been stripped away from the ownership of the Plaitiff Note by that conveyance, ownership of the Plaintiff Note must have also been transferred to multiple classes of the CWALT ALT 2007-OA7.

15. Even though the Plaintiff Obligation is supposedly owned by multiple classes of the CWALT ALT 2007-OA7, it can only be determined valid if the original Plaintiff Note had been physically (hand) delivered to multiple classes of the CWALT ALT 2007-OA7 by checking with the custodian of documents. **Until then, there is no evidence multiple classes of the CWALT ALT 2007-OA7 possessed or owned in any manner the Plainitff Note or mortgage before the closing date of the 30th of March, 2007, as required by its own agreements, Defining Terms Section 1.01 p. 12 of PSA.**

16. The ownership of the Plaintiff Obligation has been conveyed as a Transferable Record to multiple classes of the CWALT ALT 2007-OA7. For the

conditions of Plaintiff Mortgage over the Plaintiff Obligation not to have been stripped away by that conveyance, ownership of the Plaintiff Mortgage must have also been transferred to multiple classes of the CWALT ALT 2007-OA7.

17. The beneficial interest (ownership) of the Plaintiff Mortgage has been recorded in the Official records of Maricopa County Recorder's Office as being in the name of First Magnus Financial, Corp., on 12th day of December, 2006. However, it is clear that First Magnus Financial, Corp. as recorded as the original lender on the Plaintiff Mortgage sold all ownership interest, in the Plaintiff Obligation to multiple classes of the CWALT ALT 2007-OA7. Ownership of the Plaintiff Obligation, or rights to the payment stream, but not the mortgage security, is held in multiple classes of the CWALT ALT 2007-OA7, and the payments under the Plaintiff Obligation are disbursed to the investors of CWALT ALT 2007-OA7 who hold certificates to the investment classes into which payments under the Plaintiff Obligation are scheduled to flow. Therefore, the transfer of beneficial interest in the Plaintiff Mortgage by First Magnus Financial, Corp. might have been accomplished, but that beneficial interest is no longer attached to ownership of the Plaintiff Obligation as there is no evidence that the note was indorsed to the multiple classes or any possessors other than First Magnus Financial, Corp., or that the Mortgage was transferred and assigned to any new holder of the Obligation with it.

## VIII. AS MULTIPLE CLASSES OF THE CWALT ALT 2007-OA7 OWN THE PLAINTIFF OBLIGATION, MULTIPLE CLASSES OF THE CWALT ALT 2007-OA7 ARE REQUIRED TO HAVE OWNERSHIP OF THE PLAINTIFF NOTE AND MORTGAGE.

18. By multiple classes of the CWALT ALT 2007-OA7 purchasing the Plaintiff Obligation and doing with it whatever was done, multiple classes of the CWALT ALT 2007-OA7 were exercising rights of ownership over the Plaintiff Mortgage Loan and payment stream. By exercising rights of ownership over the Plaintiff Mortgage Loan, multiple classes of the CWALT ALT 2007-OA7 made claims of ownership of all three parts of the Plaintiff Mortgage Loan.

19. The Plaintiff Obligation only exists through the tangible instruments creating it, the Plaintiff Note and the Plaintiff Mortgage. The sale of the ownership of the Plaintiff Obligation to multiple classes of the CWALT ALT 2007-OA7, without striping away the ownership of the Plaintiff Obligation from the ownership of the Plaintiff Note, could only be accomplished with the accompanying negotiations of the Plaintiff Note and the accompanying assignments of the Plaintiff Mortgage to multiple classes of the CWALT ALT 2007-OA7.

20. Multiple classes of the CWALT ALT 2007-OA7 have made claims of ownership of the Plaintiff Obligation, and exercise those claims. In order to exercise claims of ownership of the Plaintiff Obligation, however, assignments of the Plaintiff Mortgage should have been accomplished.

21. The assignment of the Plaintiff Mortgage is a conveyance of an instrument concerning Lien, which must be recorded to be acted upon. United States Code considers that anyone certifying that a real estate instrument has been assigned when in fact it has not, **is guilty of a felonious criminal act**.

*Title 18 USC Chapter 47 § 1021*

> *Whoever, being an officer or other person authorized by any law of the United States to record a conveyance of real property or any other instrument which by such law may be recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than five years, or both.*

## IX. AS IT CURRENTLY STANDS, MULTIPLE CLASSES OF THE CWALT ALT 2007-OA7 CANNOT CLAIM OWNERSHIP OF EITHER THE PLAINTIFF NOTE OR THE PLAINTIFF MORTGAGE

22. Multiple classes of the CWALT ALT 2007-OA7 own the Plaintiff Obligation. However the transfers of ownership of either of the two tangible parts of the security instrument that evidence the Plaintiff Obligation from First Magnus Financial, Corp. to multiple classes of the CWALT ALT 2007-OA7 are not memorialized in the Maricopa County Recorder's Office in a manner which observes United States Code.

23. Under the Consumer Credit Protection Act Title 15 USC Chapter 41 § 1641(g) any transfer of the Plaintiff Mortgage to multiple classes of the CWALT ALT 2007-OA7 would be in violation of Federal Statute, if those transfers had not been recorded through the Maricopa County Recorder's Office within 30 days, along with notification of Plaintiff that the transfers had occurred. As there are no recorded assignments of the Plaintiff Mortgage from First Magnus Financial, Corp. to multiple classes of the CWALT ALT 2007-OA7, within 30 days of the of the 30th of March, 2007, closing date of the CWALT ALT 2007-OA7, either there has been a violation of Federal Law or multiple classes of the CWALT ALT 2007-OA7, who are the presumed owners of the Plaintiff Obligation, are not the owners of the either the Plaintiff Note or the Plaintiff Mortgage. The assignment of mortgage to the CWALT

ALT 2007-OA7 was not made at all according to a Maricopa County real property records search.

*Title 15 USC Chapter 41 § 1641(g)*
*g)* ***Notice of new creditor***
*(1)* ***In general***
*In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—*
*(A) the identity, address, telephone number of the new creditor;*
*(B) the date of transfer;*
*(C) how to reach an agent or party having authority to act on behalf of the new creditor;*
*(D) the location of the place where transfer of ownership of the debt is recorded; and*
*(E) any other relevant information regarding the new creditor.*

24. The Plaintiff Mortgage must have been duly assigned, with proper recordation, to multiple classes of the CWALT ALT 2007-OA7 for multiple classes of the CWALT ALT 2007-OA7 to be entitled to enforce and have the rights tothe Plaintiff Mortgage.

25. As explained previously in ¶7 thru ¶12, assignments of the Plaintiff Mortgage must be accompanied by parallel indorsements of the Plaintiff Note for the Plaintiff Mortgage Loan to remain secured by the Plaintiff Lien. Because indorsements are very often undated and because a foreclosing party must prove that it had standing at the inception of a case, *Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 125, 130 Cal. Rptr. 3d 815 (2d Dist. 2011), the assignment will be

determinative of, or at least evidence that would support or contradict a foreclosing party's claim of standing.

26. Importantly, mere presentment of the [copy] Plaintiff Note (even if shown to be the original) by simple possession is not in itself proof of an equitable transfer of the Plaintiff Note; for that to be the case, the Note must also be indorsed to show that the party in possession is a Holder in Due Course. This demonstration of possession may or may not be sufficient to enforce the Plaintiff Note, but carries no indicia of ownership or intent to transfer. The UCC consecrated a preference in commercial transactions for simple possession of endorsed instruments over proof of actual ownership, an exception in the law that was intended to foster free trade of commercial paper.

27. The concept that a Note holder, even one who is not legitimate, may nevertheless bring an action on the Plaintiff Note is entrenched in commercial law and commonly summarized by the axiom "even a thief may enforce a note." However, the taking of the Plaintiff House by foreclosure is an equitable remedy and equity does not allow a "thief" to use a stolen Plaintiff Note to foreclose through the Plaintiff Mortgage lien or Deed of Trust.

28. For all three parts of the Plaintiff Loan as a whole to have been transferred into the CWALT ALT 2007-OA7, there is a chain of entities through which the Plaintiff Mortgage must be assigned and the Plaintiff Note indorsed. This chain of transfer, as required in the CWALT ALT 2007-OA7 PSA, Article II, Section 2.01, is to have begun with a recorded assignment of the Plaintiff Mortgage and an

indorsement of the Plaintiff Note from the "Lender" to the Sponsor. Once the Sponsor had taken complete ownership, then a recorded assignment of the Plaintiff Mortgage and an indorsement of the Plaintiff Note from the Sponsor, Countrywide Home Loans, Inc., to the Depositor, CWALT, Inc., were to have occurred. After the Depositor, CWALT, Inc., had taken complete ownership, a recorded assignment of the Plaintiff Mortgage and an indorsement of the Plaintiff Note from the Depositor CWALT, Inc., to the Trustee, The Bank of New York, was next to have occurred. Finally, once the Trustee, The Bank of New York, had taken complete ownership, a recorded assignment of the Plaintiff Mortgage and an indorsement of the Plaintiff Note from the Trustee, The Bank of New York, to the CWALT, Inc. Alternative Loan Trust, Mortgage Pass-Through Certificates, Series 2007-OA7 (herein also known as **CWALT ALT 2007-OA7**) was to have occurred.

29. Moreover, these assignments were to all be recorded in the Official records of Maricopa County Recorder's Office as per the PSA for the **CWALT ALT 2007-OA7**. To explain further with a simple example, Party A must contract and assign to Party B, and Party B must contract and assign to Party C, and Party C must contract and assign to Party D and so on. Therefore, a contract and an assignment from Party A to Party D is not allowable. Of course, all of these dealings must be recorded within the Official records of Maricopa County Registry which date stamps each recording so as to prevent any backdating.

30. As explained previously, any electronic transfers of the Plaintiff Mortgage that may have been executed without recording within the Official records of

Maricopa County Registry are void under Uniform Electronic Transactions Act (UETA) USC § 15-96-1-7003.

> *USC § 15-96-1-7003*
> *(a) Excepted requirements*
> *The provisions of section 7001 of this title shall not apply to a contract or other record to the extent it is governed by—*
> *(3) the Uniform Commercial Code, as in effect in any State, other than sections 1-107 and 1-206 and Articles 2 and 2A*

31. The Plaintiff Note specifically states that it is secured by a Mortgage, dated the same day, and the Plaintiff Mortgage refers to the Plaintiff Note, and incorporates the Plaintiff Note into its terms and conditions.

32. The written agreement that created the **CWALT ALT 2007-OA7** is a PSA, dated March 1, 2007, and is a matter of public record, available on the website of the Securities Exchange Commission, attached and incorporated herein. The CWALT ALT 2007-OA7 is also described in a "Prospectus Supplement," also available on the SEC website. The CWALT ALT 2007-OA7 by its terms set a "CLOSING DATE" of on or about March 30, 2007. The Plaintiff Note in this case did not become CWALT ALT 2007-OA7 property in compliance with the requirement set forth in the PSA, seeing as the only recorded assignment to was to Bank of New York as Trustee was executed in 2011. The CWALT ALT 2007-OA7 agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the CWALT ALT 2007-OA7 and PSA are governed under the laws of New York.

33. The PSA is the document that governs this trust. The CWALT ALT 2007-OA7 operates in the state of New York, and New York law requires strict compliance

and adherence to the CWALT ALT 2007-OA7 documents. Any action by the CWALT ALT 2007-OA7 in contravention to the CWALT ALT 2007-OA7 PSA is **void under New York Trust Law**.

> *CWALT ALT 2007-OA7 PSA substantially states:*
> ***This Agreement shall be construed in accordance with the laws of the State of NewYork,*** *and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws (without regard to principles of conflicts of law other than Section 5-1401 of the New York General Obligations Law which shall govern). With respect to any claim arising out of this Agreement, each party irrevocably submits to the exclusive jurisdiction of the courts of the State of New York and the United States District Court located in the Borough of Manhattan in The City of New York, and each party irrevocably waives any objection which it may have at any time to the laying of venue of any suit, action or proceeding arising out of or relating hereto brought in any such courts, irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in any inconvenient forum and further irrevocably waives the right to object, with respect to such claim, suit, action or proceeding brought in any such court, that such court does not have jurisdiction over such party, provided that service of process has been made by any lawful means.(emphasis added)*
> ***New York Trust Law Chapter 17- B 7 7-2.4 Act of trustee in contravention of trust. If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.***

34. Ownership or possession by the First Magnus Financial, Corp., or its agents, of a Note evidencing an Obligation sold to **CWALT ALT 2007-OA7** is a violation of the PSA. Additionally, if the Plaintiff Mortgage was transferred to the **CWALT ALT 2007-OA7** as required by the PSA, then there is no way that First Magnus Financial, Corp. or its Agents can claim any beneficial interest in the Plaintiff Mortgage to assign.

35. According to the PSA for the CWALT ALT 2007-OA7, the transfer and sale of all Beneficial Interest of the Plaintiff Mortgage to CWALT ALT 2007-OA7 should have been done on or before the closing date of the CWALT ALT 2007-OA7 which was March 30, 2007. These requirements from the PSA also mean the CWALT ALT 2007-OA7 is unable to have any other assets put into the CWALT ALT 2007-OA7 after the closing date, without breaking the law.

36. Seeing as the only recorded assignment or transfer of the Mortgage was in 2011, assigning Beneficial Interest of Plaintiff Mortgage from Bank of America to The Bank of New York as Trustee for the Certificateholders of CWALT ALT 2007-OA7, though multiple Classes claimed ownership of the Obligation, as evidenced through the Transferable Record of the Payment Stream, when Plaintiff Mortgage was purportedly transferred into CWALT ALT 2007-OA7 around the closing date of March 30th, 2007, it seems to be the case that Bank of America did not legally hold rights to Beneficial Interest in the mortgage between the closing date and the 2011 assignment to The Bank of New York, or that it held Beneficial Interest in violation of the PSA, and the subsequent 2011 assignment is null and void and unlawfully executed.

37. The PSA for the CWALT ALT 2007-OA7 holds any conveyance of instrument into the CWALT ALT 2007-OA7 subject to the specific procedures explained above and in further paragraphs.

Therefore, the conveyance of the Plaintiff Note and Mortgage into the CWALT ALT 2007-OA7 cannot be true unless compliance with the PSA specific procedures

of conveyance is also proved to be true. The conveyance of the Plaintiff Note and Mortgage into the CWALT ALT 2007-OA7 lacks proof of execution of these specific procedures. Thus, as proof of PSA compliant conveyance of the Plaintiff Note and Mortgage into the CWALT ALT 2007-OA7 is lacking, and cannot now be made to [wholly] exist, CWALT ALT 2007-OA7 cannot claim to have taken the Plaintiff Note and Mortgage as a secured instrument into its collateral pool.

38. The Plaintiff Mortgage contains notice to the Borrowers that the Plaintiff Note or a partial interest in the Plaintiff Note may be sold.

The Plaintiff Mortgage documents substantially state in ¶20 of the Uniform Covenants:

> *The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law…."*

However, a sale of a "partial interest" in the Plainitff Note strips ownership of the Plaintiff Obligation from ownership of the Plaintiff Note, leaving the Plaintiff Note without an obligation to evidence and the Plaintiff Mortgage without an obligation to hold conditions over.

## X. THE DOCUMENT PURPORTING TO BE AN "ASSIGNMENT" DATED AUGUST 24TH, 2011 IS INVALID AS AN ASSIGNMENT OF MORTGAGE

> *Black's Law Dictionary defines the term valid as "having legal strength or force, executed with proper formalities, incapable of being rightfully overthrown or sent aside… Founded on trust of fact; capable of being*

> *justified; supported, or defended; not weak or defective... of binding force; legally sufficient or efficacious; authorized by law... as distinguished from that which exists or took place in fact or appearance, but has not the requisites to enable it to be recognized and enforced by law."*
> *(See Black's Law Dictionary, Sixth Edition, 1990, page 1550)*

39. **The document purporting to be an "Assignment of Mortgage", Assignment, recorded in Maricopa County Recorder's Office is Void and Fraud on its face. The assignor MERS, an electronic registrar, cannot receive and therefore cannot assign value, and the Mortgage and Note, and any Beneficial Interest, were not transferred to Bank of New York Mellon as a trustee of the Certificateholders for the CWALT ALT 2007-OA7 according to the terms of the CWALT ALT 2007-OA7 PSA.**

40. First and most importantly, the original lender, First Magnus Financial, Corp. through Countrywide Home Loans, Inc., [Bank of America N.A.], gave up all ownership of the Plaintiff Obligation on or before August 23, 2011, presumably by the closing date of the PSA, to multiple classes of the CWALT ALT 2007-OA7. Assuming for a moment that there was an actual transfer and the Assignment was not FRAUD, which immediately makes Defendants, Bank of America, N.A., Brayan Moynihan, BNY Mellon and Gerald Hassell liable under the laws of New York and the CWALT ALT 2007-OA7 PSA, once First Magnus Financial, Corp., through fictitious [unrecorded in the chain of title] agents/assignees had given up the ownership of the Plaintiff Obligation, said Obligation was stripped away from the ownership of the Plaintiff Note and the ownership of the Plaintiff Mortgage. First Magnus Financial, Corp., through fictitious assignees, could transfer beneficial

interest in the Plaintiff Note or Mortgage; however, that beneficial interest would not include ownership of the Plaintiff Obligation.

41. The consequences of the ownership of the Plaintiff Obligation being stripped away from the beneficial interests of the Plaintiff Note and Mortgage means the Plaintiff Note is without an Obligation to evidence and the Plaintiff Mortgage is without an Obligation to enforce conditions against.

42. First Magnus Financial, Corp., through fictitious [phantom] assignee can assign beneficial interest in the Plaintiff Mortgage, albeit with no ownership of the Plaintiff Obligation, to whomever they please. In order for this document purporting to be an "Assignment of Mortgage" to be valid as an actual assignment, however, it would have to determine if a transfer could be made to the assignee. Plaintiff will explain how transfer to the assignee named could not have been accomplished by this document purporting to be an Assignment of Mortgage.

43. The assignee named by the document purporting to be an "Assignment of Mortgage" is The Bank of New York Mellon as Trustee for the CWALT ALT 2007-OA7. In order to exist, the CWALT ALT 2007-OA7 agreed to operate under the CWALT ALT 2007-OA7 PSA and all applicable Law.

As previously explained in ¶29, in order to for the Plaintiff Mortgage Loan to be transferred to the CWALT ALT 2007-OA7 a chain of negotiations needed to occur. A direct transfer from the original lender to the Bank of New York Mellon violates the terms and conditions under the CWALT ALT 2007-OA7 PSA, under

New York Trust Law governing the CWALT ALT 2007-OA7, and is **NULL AND VOID**.

44. Further this document purporting to be an "Assignment of Mortgage", the Assignment, did not timely and properly transfer the Plaintiff Note and Mortgage to the CWALT ALT 2007-OA7, where is has been shown to be a performing asset.

From page S-38 the Prospectus Supplement for the **CWALT ALT 2007-OA7**, dated November 14th, 2006:

> "Pursuant to the pooling and servicing agreement, on the closing date, the depositor will sell, transfer, assign, set over and otherwise convey without recourse to the trustee in trust for the benefit of the certificateholders all right, title and interest of the depositor in and to each Mortgage Loan and all right, title and interest in and to all other assets included in Alternative Loan Trust 2007-OA7, including all principal and interest received on or with respect to the Closing Date Mortgage Loans....
>
> In connection with the transfer and assignment of a Mortgage Loan, the depositor will deliver or cause to be delivered to the trustee, or a custodian for the trustee, the mortgage file, which contains among other things,
>
> - the original mortgage note (and any modification or amendment to it) endorsed in blank without recourse...,
> - the original instrument creating a first lien on the related mortgaged property with evidence of recording indicated thereon or a copy of such instrument,
> - an assignment in recordable form of the mortgage or a copy of such assignment,
> - the original or a copy of the title policy with respect to the related mortgaged property, and
> - if applicable, all recorded intervening assignments of the mortgage or copies thereof and any riders or modifications to the mortgage note and mortgage or copies thereof (except for any documents not returned from the public recording office, which will be delivered to the trustee as soon as the same is available to the depositor).
>
> ... Assignments of the Mortgage Loans to the trustee (or its nominee) will be recorded in the appropriate public office for real property records"

45. The closing date for the CWALT ALT 2007-OA7 was March 30, 2007. What this means is that the CWALT ALT 2007-OA7 is unable to have any other assets put into the CWALT ALT 2007-OA7 after that closing date.

46. In view of the foregoing, **all assignments executed after the CWALT ALT 2007-OA7 closing date are void** for the reason that all assignments into the Trust after March 30, 2007 violate the express terms of the CWALT ALT 2007-OA7 PSA. All assignments of Mortgages/Deeds of Trust, and or indorsements of notes, executed after the CWALT ALT 2007-OA7 closing date are **NULL AND VOID**.

47. The Prospectus Supplement for the CWALT ALT 2007-OA7 provides that any attempted or purported transfer in violation of these transfer restrictions will be null and void and will vest no rights in any purported transferee. Any transferor or agent to whom the Trustee provides information as to any applicable tax imposed on such transferor or agent may be required to bear the cost of computing or providing such information.

48. There are enormous tax consequences, if the document purporting to be an Assignment filed in the Official Records of Maricopa County would be authentic, in that this trust has elected to be a Real Estate Mortgage Conduit Trust (REMIC). According to the Prospectus, under the heading "Federal Income Tax Consequences," multiple classes of the CWALT ALT 2007-OA7, that the Plaintiff Obligation is owned by, elected to be treated as a REMIC, which provides for pass-through tax treatment of the income generated by the Trust assets.

49. Internal Revenue Code Section 860 regulates the activities and requirements of a REMIC Trust like CWALT ALT 2007-OA7:

*According to 26 CFR§ 1.860D-1c(2)*
***Identification of assets.*** *The formation of the REMIC does not occur until (i) The sponsor identifies the assets of the REMIC, such as through execution an indenture with respect to the asset; and (ii) The REMIC issues the regular and residual interests in the REMIC.*

50. In other words, the REMIC is not officially formed until Countrywide Home Loans, Inc., the seller/sponsor of the CWALT ALT 2007-OA7, identifies and transfers all the specific assets (the specific loans) of the REMIC.

51. The PSA for the CWALT ALT 2007-OA7 specifically identifies a closing date which is the last day that an asset (loan) can be "identified for inclusion" in the Trust/REMIC. The closing date also serves as the Startup Day for the REMIC. According to Internal Revenue code Section 860, all of a REMIC's loans must be acquired on the startup day of the REMIC or within three months thereafter. If assets are transferred after the closing date there are consequences of a 100 percent tax on net income from prohibited transactions pursuant to 26 USC §860F(A), and specifically 26 USC §860G-(A)10:

**(d) Tax on contributions after startup date (1) In general**, except as provided in paragraph (2), if any amount is contributed to a REMIC after the startup day, there is hereby imposed a tax for the taxable year of the REMIC in which the contribution is received equal to 100 percent of the amount of such contribution.

52. Thus, if the 2011 Assignment is deemed to be a valid transfer of the Beneficial Interest to The Bank of New York, and a valid Assignment of Plaintiff

Mortgage, The Bank of New York and the holders of interest in the **CWALT ALT 2007-OA7 REMIC are liable under United States Code for execution of a prohibited transaction, are in violation of Tax Codes that subject said transaction to 100 percent taxation, and consequently can be charged for tax evasion.**

## XI. THE BANK OF NEW YORK MELLON HAS NO CLAIM TO OWNERSHIP OF THE PLAINTIFF NOTE

53. The Plaintiff Note should have been indorsed according to the CWALT ALT 2007-OA7 PSA (Section 2.01(a)-(c)(i), pg 46-48) by the original lender, and conveyed along with transfer and assignment of the Mortgage to the Trustee for the Certificateholders. The indorsement should state,

> "'Pay to the order of ________ without recourse,' with all intervening endorsements showing a complete chaing of endorsement from the originator to the Person endorsing the Mortgage Loan (each such endorsement being sufficient to transfer all the right, title, and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note)"

This relates directly to negotiations under UCC Article 3 concerning negotiable instruments and would be considered an indorsement in blank. Although no payee is yet named, clearly original lender releases all interest in the Plaintiff Note.

> *UCC 7-501 Form of negotiation and requirements of due negotiation*
> *(a) The following rules apply to a negotiable tangible document of title:*
> *(1) if the document's original terms run to the order of a named person, **the document is negotiated by the named person's indorsements and delivery.** After the named person's indorsement in blank or to bearer, any person may negotiate the document by delivery alone ;(emphasis added)*

54. In addition, under UCC §3-203(a), a transfer of the Note through which rights can be acquired by a transferee is defined as a delivery from one person to another person.

55. First Magnus Financial, Corp., through fictitious [phantom] assignee, transferred its ownership of the Plaintiff Obligation to multiple classes of the CWALT ALT 2007-OA7 and transferred its ownership of the Plaintiff Note. Ownership of the Plaintiff Obligation was transferred to multiple classes of the CWALT ALT 2007-OA7 and ownership of the Plaintiff Note traveled on without it.

56. If one it to accept that The Bank of New York Mellon is acting as Trustee for the Certificateholders of CWALT ALT 2007-OA7, the Note, pursuant to requirements for negotiation under UCC Article 3, should have been indorsed in blank and delivered to The Bank of New York, before or about the closing date as established under the PSA, in order to constitute due negotiation and transfer or ownership. There has been brought forward, as of yet, no evidence that the Note was indorsed, in blank or in any manner, or delivered pursuant to the terms of the PSA.

**XII. THE TERMS OF THE PLAINTIFF MORTGAGE HAVE BEEN VIOLATED AND THE PLAINTIFF MORTGAGE IS UNENFORCEABLE**

57. First Magnus Financial, Corp., through fictitious [phantom] assignee, has released all interest in the Plaintiff Note to an as of yet unnamed payee. A Note with an as of yet named payee is not and cannot be treated as a "bearer" instrument as not person will acquire any right to the Note until a payee is named. The Plaintiff Mortgage as a [presumable] contract can only enforce its contractual terms against the obligation evidenced by the Plaintiff Note, which must be properly and fully negotiated and delivered for possessor of the Note to claim ownership and enforcement rights.

58. The Plaintiff Mortgage is governed by Arizona Law. Arizona Law and Federal Law require proper recordation of assignment to transfer ownership of the Plaintiff Mortgage.

59. It has been explained earlier how it is not possible for ownership of the Plaintiff Mortgage to have been assigned to The Bank of New York Mellon as Trustee for the CWALT ALT 2007-OA7.

60. The Assignment of the Plaintiff Mortgage recorded in the Maricopa County Record, with MERS releasing ownership of the Plaintiff Mortgage, intended that transfer to be to The Bank of New York Mellon as Trustee for the CWALT ALT 2007-OA7. However, MERS presumably released, through presumable indorsement, ownership of the Plaintiff Note, evidencing the Obligation, to whoever wishes to fill in the payee line. **The Bank of New York Mellon as Trustee for the CWALT ALT 2007-OA7, NOT AS A HOLDER OF THE CERTIFICATE, which it, according to the PSA, can only become if asked by 51% of the certificate holders, may attempt to claim ownership of the Plaintiff Mortgage but that ownership would have nothing against which to enforce the Plaintiff Mortgage contractual terms. The rights to the Obligation were transferred to multiple classes of CWALT ALT 2007-OA7, so the Note will travel on without rights to the Obligation. The Plaintiff Mortgage is an unenforceable contract, extinguishing the Lien. There is, further, no evidence as of yet that ownership of the Note was negotiated to The Bank of New York.**

**61. If The Bank of New York Mellon and Gerald Hassell continue to claim ownership of the certificate, each and every one individually or through Counsel, this court of record should enter such claim as admission into evidence for tax evasion and violation of I.R.S. Rule 860, which would automatically leads to loss of their nonprofit, REMIC, status, along with civil and criminal charges against their Trust.**

62. Ownership of the Plaintiff Mortgage is no longer with First Magnus Financial, Corp., yet no one else has any authority to enforce its terms while the Plaintiff Note is waiting for someone to claim ownership. The Plaintiff Mortgage is an unenforceable contract, no longer being tied to an obligation to enforce its contractual terms over.

63. Under long existing contract law, if the terms of a contract are violated, affecting the conditions under which the Payor is obligated, without the properly evidenced consent of the Payor, that contract is void and cannot be returned to without the consent of the Payor. Even if ownership of the Plaintiff Note and the Plaintiff Mortgage could be rejoined, the Plaintiff Mortgage, as a now unenforceable contract, no longer being tied to an obligation to enforce its contractual terms over, cannot be returned to being an enforceable contract without the party's consent.

## XIII. OWNERSHIP OF THE PLAINTIFF OBLIGATION CANNOT BE REJOINED TO OWNERSHIP OF THE PLAINTIFF NOTE OR THE PLAINTIFF MORTGAGE

64. Multiple classes of the CWALT ALT 2007-OA7 have ownership of the Plaintiff Obligation. Multiple classes of the CWALT ALT 2007-OA7 have yet to all

and each be named as payee on the Plaintiff Note and do not now have ownership of the Plaintiff Note. For multiple classes of the CWALT ALT 2007-OA7 to gain ownership of the Plaintitff Note, multiple classes of the CWALT ALT 2007-OA7 would have to all and each be named payee.

65. CWALT ALT 2007-OA7, its classes, its officers and its agents are prohibited from accepting any assets on behalf of the Trust after March 30, 2007. The CWALT ALT 2007-OA7, its classes, its officers its and agents can longer accept ownership of the Plaintiff Note. Ownership of the Plaintiff Note and ownership of the Plaintiff Obligation will remain separate.

66. Because ownership of the Plaintiff Note was separated from ownership of the Plaintiff Obligation, and will remain separate, the Plaintiff Mortgage is left with no way to enforce its conditions over the obligation which should be evidenced by the Plaintiff Note, making the Plaintiff Mortgage an unenforceable contract.

**XIV. WITH OWNERSHIP OF THE PLAINTIFF OBLIGATION STRIPPED AWAY AND NO WAY TO ENFORCE THE CONDITIONS UNDER THE PLAINTIFF MORTGAGE, THE PLAINTIFF LOAN IS A NULLITY**

67. To perfect ownership as a secured party, the transferee to whom the Note is being negotiated, as per UCC Article 3, must file on the record ownership of the Mortgage securing the Note in order to maintain the status of the Note as a secured instrument. An unsecured instrument, not secured by ownership of a Lien, separates the Obligation from the Conditions to enforce Power of Sale, and once an instrument has been unsecured there are no retroactive means to re-secure it.

68. The ownership of Plaintiff Obligation was separated from the ownership of the Plaintiff Note and the ownership of the Plaintiff Mortgage, leaving the Plaintiff Note no Obligation to evidence and Plaintiff Mortgage no Obligation to enforce conditions over.

69. The limited beneficial interest of First Magnus Financial, Corp., through fictitious [phantom] assignee, retained in the Plaintiff Mortgage Loan after selling the Plaintiff Obligation to multiple classes of the CWALT ALT 2007-OA7, as per the Assignment, dated August 23, 2011, does not include ownership of the Plaitiff Obligation. The Bank of New York claims to have ownership of Beneficial Interest, as per Assignment in 2011, acting as Trustee for the multiple classes of CWALT ALT 2007-OA7, but the purported transfer and assignment was conducted after the closing date of the Trust, in violation of the terms of the PSA. Therefore, The Bank of New York is either not the owner of the Obligation and Mortgage, or, if it chooses to claim ownership, it is in violation of Federal and State laws, and the terms of the PSA which bind it.

70. Further, by claiming, as Defendants The Bank of New York, Gerald Hassell, and Bank of America have through counsel and pseudo counsel, that the Assignment was executed in 2011, transferring Beneficial Interest to **The Bank of New York, The Bank of New York has committed FRAUD and PERJURY** as these claims are in direct contradiction to claims made in the PSA that it is a party of.

CWALT ALT 2007-OA7 PSA Section 2.02 (pg 53)
Acceptance by Trustee of the Mortgage Loans "(a) The Trustee acknowledges receipt of the documents identified in the Initial Certificate in the form annexed

hereto as Exhibit F-1 and declares that it holds and will hold such documents and other documents delivered to it constituting the Mortgage Files."

In section 2.02(a), The Bank of New York also agreed to deliver and execute on the "Closing date to the Depositor, the Master Servicer and Countrywide...an Initial Certification in the from annexed to this Agreement as Exhibit F-1."

From Exhibit F-1 Initial Certification of Trustee
"In accordance with Section 2.02 of the above-captioned [PSA], the undersigned, as Trustee, hereby certifies that, as to each Initial Mortgage Loan listed in the Mortgage Loan Schedule...it has received: (i)(a) the original Mortgage Note endorsed [in blank]...(ii) a duly executed assignment of the Mortgage"

If The Bank of New York claims, as it does, to be Trustee of CWALT ALT 2007-OA7 and hold there Beneficial Interest in Plaintiff's mortgage, then, by its agreement to the terms of the PSA and subsequent execution of Exhibit F-1, the mortgage, by The Bank of New York's admissions, was actually [purportedly] assigned and transferred, and in its possession along with the indorsed Note, by the 2007 Closing Date. Any claim in contradiction is FRAUD, or The Bank of New York, again, violated the PSA and is liable under New York Law which governed the aforementioned Trust8; a mortgage that was purportedly assigned in 2007 cannot have again been assigned to the same Trustee in 2011.

71. No acceptable assignments of the limited interest in the Plaintiff Mortgage to multiple classes of the CWALT ALT 2007-OA7 has been recorded into the Maricopa County Recorders' Office, nor should there be as such a lawful intangible assignment would fall under the governance of UCC 9. There is no evidence of proper negotiations of the limited beneficial interest in the Plaintiff Note to multiple classes of the CWALT ALT 2007-OA7. <u>With no properly recorded owner of the Plaintiff</u>

Mortgage, which corroborates ownership of the Plaintiff Obligation, there is no one to enforce the conditions that would have been over the Obligation, which would have been evidenced by the Plaintiff Note. The Plaintiff Obligation is no longer secured by the Plaintiff Note.

72. With no specific properly secured owner of the limited beneficial interest of the Plaintiff Note, there is no way to enforce the stripped away Plaintiff Obligation through Plaintiff Note.

## CONCLUSION

**THEREFORE, the Plaintiff is informed and believes and subsequently alleges that Bank of New York Mellon issued an investment bonds on the Mortgage-Backed Securities, duly registered with the Securities and Exchange Commission ("SEC") on a registration statement, incorporated and attached herein, bearing file number 333-131630-96.**

**The Note and the Deed of Trust executed by Plaintiff on the 12the day of December 2006 identifies the beneficiary as FIRST MAGNUS FINANCIAL CORPORATION. Plaintiff is not aware of any legally recorded transfers of Deed of Trust and the Note, and subsequently the Obligation and rights to enforce the Obligation, to this day, which can substantiate unbroken chain of title.**

**Plaintiff further believes, upon presented the aforementioned evidences, that the Note was not duly endorsed, transfered and delivered to the Trust prior**

**to the Closing Date, as set forth in Section 2.05 of the PSA, attached and incorporated herein.**

**Plaintiff is further informed and believes, and therefore alleges, that the Note was never lawfully negotiated and actually transferred or delivered by First Magnus Financial, Corp., Countrywide, Inc., Bank of America, N.A. or any other unknown party to the Depositor and by the Depositor to the Custodian on behalf of the Trustee for the Trust prior to closing date. In addition, there is no indication the Plaintiff's Mortgage was transferred into the trust pursuant to the PSA and article 20 of the UNIFORM COVENANTS of the DEED OF TRUST.**

**Based on information filed on the Public Record, and in particular the Assignment, and the admission by Counsel, Doc. 40 and 42, that the Transfer of the Deed of Trust did not occur by the 30th of March, 2007, or ninety (90) days thereafter, but rather on the 23th of August 2011, long after the Trust had closed, said Assignment was ineffective, as the Trust could not have accepted the Deed of Trust after the Closing Date pursuant to the PSA and requirement of REMIC Trust, thereby rendering the attempted foreclosure of the Subject House, as well as the Notice of Default and Notice of Trustee Sale, FRAUD and Void Ab Initio.**

**Further, if Defendants Bank of America and The Bank of New York continue to claim ownership of Obligation and its Beneficial Interest, they are**

**acting in violation of the PSA and IRS Codes that govern the terms of the REMIC associated, and potentially liable for tax evasion.**

**Plaintiff believes, and upon such contends, that Defendants, and each of them, acted with the intent to defraud him and the public regarding the status of Plaintiff's Note. Defendants, and each of them, also knew that the act of recording the Assignment without having legal ground to do so constitutes fraud that can be, and should be, interpret as Theft by Deception of private land.**

**Defendants falsified documents and signatures, committing perjury, and recorded fraudulent documents in the Public Record, or failing to record documents of transfer as mandated by Federal and State Laws, in willful, wanton, intentional, and with callous and reckless disregard for Plaintiff's right, in blatant attempt to deprive him from his house, committing grant theft.**

Respectfully submitted on this 2nd day of January, 2014.

**Ivaylo Tsvetanov Dodev**, ARR, Pro Se Plaintiff
**6312 South 161st Way, Gilbert, Arizona**
**(480) 457-8888 Phone**

## CERTIFICATE OF SERVICE

**ORIGINAL** and **ONE COPY** hand delivered to The United States District Court for the District of Arizona this 2nd day of January, 2014, at N/A. I certify that the following parties or their counsel (or pseudo counsel) of record are registered as ECF Filers and that they will be served by the CM/ECF system: BANK OF AMERICA, NA, RECONTRUST, NA, BRIAN MOYNIHAN, SELECT PORTFOLIO SERVING, NA, TIMOTHY O'BRIEN, GERALD HASSELL AND BANK OF NEW YORK MELLON.

**Ivaylo Tsvetanov Dodev, Plaintiff**
**6312 South 161st Way, Gilbert, Arizona**
**(480) 457-8888 Phone**

# EXHIBIT "S"

REAL TIME RESOLUTIONS®

September 13, 2013

IVAYLO DODEV
6312 S 161ST WAY
GILBERT, AZ 85298-8455

In Regards to: 23410 SOUTH 161ST WAY
GILBERT AZ 85297

RTR Loan # 0148456005

Our records show that the note associated with the property located at 23410 SOUTH 161ST WAY has been discharged in bankruptcy. Therefore, this letter is not an attempt to collect a debt that you personally owe. However, our records also show that the lien (security interest) associated with the note on the referenced property remains valid and is still of record. We would like to resolve this lien if possible.

We believe this lien can be resolved through a number of options including selling your property and settling the lien. RTR would like to discuss the foregoing lien resolution with you. Therefore, at your earliest opportunity, please call us at our toll free number at 1-877-469-7325. We are open Monday through Friday 8:30 a.m. to 5:30 p.m. Central time.

As previously noted, this is not an attempt to collect. This statement does not represent, and is not intended to be, a demand for payment. We cannot give you legal advice, and you should consult your legal counsel regarding obligations, if any, in connection with the resolution of the above referenced lien. Be advised this letter is provided for informational purposes only and is not an attempt to collect a debt that you owe.

Sincerely,

Real Time Resolutions, Inc.

IMPORTANT NOTICE REQUIRED BY LAW:
Federal law requires us to notify you that (a) Real Time Resolutions, Inc. is considered a debt collector, (b) this is an attempt to collect a debt and (c) any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this letter is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.

1349 Empire Central Dr. Suite 150, Dallas, TX 75247-4029
Main 214-599-6363 • Toll Free 1-877-469-7325 • www.RealTimeResolutions.com
\\servicing\interlinq\rpt\rtr_bk_optionsltr.rpt
Hours of Operation: Mon-Fri 8:30am - 5:30pm Central

**EXHIBIT "T"**

October 1, 2013

USPS Certified Mail # 7013 0600000036094[illegible]

IVAYLO DODEV
6312 S 161ST WAY
GILBERT, AZ 85298

I do not have an acct w/

RE: Creditor Account # 0148456005

This letter is lawful notification to REAL TIME RESOLUTIONS, (DEBT COLLECTOR), as the first step of due process of law pursuant to **Sec. 806 of Fair Debt Collection Practices Act**, the **Bill of Rights** and the **Federal Constitution**, in particular Amendments 1, 4, 5, 7, and 14. Please take Notice that Ivayo Dodev **requires** **BONA FIDE PROOF (in good faith and without deceit) that your claim is lawful and valid.**

Please take lawful notice that in order to effect this *BONA FIDE PROOF*, **Error! Reference source not found.**,via any legally authorized representative, is lawfully required and hereby demanded to respond point by point in Truth, Fact, and Evidence to each and every item set forth in this correspondence before Ivaylo Dodev or his Authorized Representative can make an offer to settle DEBT COLLECTOR alleged claim in this matter.

Please provide the following:

1. A copy of the contract that binds myself, Ivaylo Dodev, and DEBT COLLECTOR
2. PROOF OF CLAIM via certified, notarized, specific, and relevant documents that DEBT COLLECTOR:

    a. Has any contract or agreement which lawfully compels Ivaylo Dodev to accept and/or respond to any communications from DEBT COLLECTOR
    b. Is a lawful and valid party of interest in this matter pursuant to Federal Debt Collection Act, Civil Rules of Procedure in the State of Arizona (See also Federal Rules of Civil Procedure 17(a)).
    c. Is not an unrelated third party
    d. Is not an unrelated third party debt collector
    e. Did not purchase this alleged debt for an agreed upon cost from an alleged other COMPANY, CORPORATION, or Party
    f. Is not acting on its own behalf and/or interests in this instant matter.

Please have your legally authorized representative respond via signed affidavit, under pain and penalty of perjury, and enclose copies of all relevant documents that demonstrate BONA FIDE PROOF OF YOUR CLAIM within 30 (thirty) days of receipt of this letter, via certified mail. TIME IS OF THE ESSENCE.

Your failure to respond in truth, fact, and evidence, to each of the above items, point by point as stipulated, is REAL TIME RESOLUTIONS, (DEBT COLLECTOR), admission to the fact DEBT COLLECTOR has no valid claim in this instant matter and DEBT COLLECTOR, and its agents or principals, are attempting to take my property through theft by deception or larceny by trickery; both of which are felonies. Your silence is your tacit admission to the fact that you have no valid claim in this instant matter.

All Rights Reserved,

[signature]

Ivaylo Dodev

Subject: USPS Shipment Info for 70130600000036094681

From: US_Postal_Service@usps.com (US_Postal_Service@usps.com)

To: dodev7@yahoo.com;

Date: Sunday, October 6, 2013 2:35 PM

This is a post-only message. Please do not respond.

Ivaylo Dodev has requested that you receive the current Track & Confirm information, as shown below.

Current Track & Confirm e-mail information provided by the U.S. Postal Service.

Label Number: 70130600000036094681

Service Type: Certified Mail™

| Shipment Activity | Location | Date & Time |
|---|---|---|
| Delivered | DALLAS, TX 75247 | October 4, 2013 10:57 am |
| Depart USPS Sort Facility | DALLAS, TX 75260 | October 4, 2013 |
| Processed through USPS Sort Facility | DALLAS, TX 75260 | October 4, 2013 4:21 am |
| Processed through USPS Sort Facility | DALLAS, TX 75260 | October 3, 2013 10:28 pm |
| Depart USPS Sort Facility | PHOENIX, AZ 85026 | October 2, 2013 |
| Processed at USPS Origin Sort Facility | PHOENIX, AZ 85026 | October 1, 2013 10:06 pm |
| Dispatched to Sort Facility | HIGLEY, AZ 85236 | October 1, 2013 5:05 pm |
| Acceptance | HIGLEY, AZ 85236 | October 1, 2013 3:23 pm |

USPS has not verified the validity of any email addresses submitted via its online Track & Confirm tool.

For more information, or if you have additional questions on Track & Confirm services and features, please visit the Frequently Asked Questions (FAQs) section of our Track & Confirm site at http://www.usps.com/shipping/trackandconfirm.htm

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com

OFFICIAL USE

DALLAS TX 75247

7013 0600 0000 3609 4681

| | | |
|---|---|---|
| Postage | $ $0.46 | 0381 |
| Certified Fee | $3.10 | 05 |
| Return Receipt Fee (Endorsement Required) | $0.00 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $3.56 | 10/01/2013 |

Sent To

USPS certified mail # 70131710000101375021

October 29, 2013

IVAYLO DODEV
6312 S 161ST WAY
GILBERT, AZ 85298

RE: Creditor Account # 0148456005 Wrong acct.

**On October 1, 2013, I directed a letter to you demanding that you specifically provide lawful bona fide proof of your alleged claim in this instant matter and to present this proof by lawfully designated means. (See attached letter).**

**This letter is a LAWFUL NOTIFICATION, NOTICE TO SUE, to REAL TIME RESOLUTIONS, INC., (DEBT COLLECTOR). Please be advised that you have failed to respond, PROPERLY, to the letter you received on October 4, 2013 by USPS, certified mail # 70130600000036094681. A lawsuit has been filed against BANK OF AMERICA, N.A. Et AL by Ivaylo Dodev as Plaintiff [CV-13-02155-PHX-GMS] for selling alleged debt to 3rd parties, as REAL TIME RESOLUTIONS, INC., Et. Seq. As a Plaintiff, I have reserved my rights to amend my complaint and if you do not respond lawfully to this Proof of Claim, you will be added to the above cited lawsuit OR a separate action-at-law will be filed against you for damages under FDCPA.**

**REAL TIME RESOLUTIONS, INC.** has NOT proven the following as requested on October 1, 2013

1. A copy of the contract that binds myself, Ivaylo Dodev, and DEBT COLLECTOR
2. PROOF OF CLAIM via certified, notarized, specific, and relevant documents that DEBT COLLECTOR:
    a. Has any contract or agreement which lawfully compels Ivaylo Dodev to accept and/or respond to any communications from DEBT COLLECTOR
    b. Is a lawful and valid party of interest in this matter pursuant to Federal Debt Collection Act, Rules of Civil Procedure in the State of Arizona and Federal Rules of Civil Procedure 17(a))
    c. Is not an unrelated third party
    d. Is not an unrelated third party debt collector
    e. Did not purchase this alleged debt for an agreed upon cost from an alleged other COMPANY, CORPORATION, or Party
    f. Is not acting on its own behalf and/or interests in this instant matter.

Therefore, you have acquiesced and agreed that you have no legal and lawful authority to contact me regarding this private and personal matter. If you continue in your fraudulent efforts to collect a debt that is not owed to you, I will take all steps to insure that my rights are not further violated, including a timely lawsuit against you—as aforementioned—if you continue with this course of action.

Do not attempt to contact me via phone as I cannot validate or verify the person on the phone so I will only respond to written correspondence addressed to: Ivaylo Dodev, 6312 South 161st Way, Gilbert, Arizona. If you disagree with anything in this letter, then rebut the part with which you disagree, in writing, with particularity, within 15 days of this letter's date, and support your disagreement with evidence, fact and truth, defined within the Law. **The papers that you have sent to me in a letter dated October 7, 2013 does not give you any legal standing. You can consult with a lawyer and familiarize yourself with the legal action filed against BANK OF AMERICA, N.A. by me [Ivaylo Dodev]. You may be added as a defendant to this legal action if you 1). Do not immediately stop harassing me and trying to represent yourself as a SERVICER on a discharged debt that you are not a party of, 2). In addition, send a signed letter, from an authorized agent of REAL TIME RESOLUTIONS, INC., in the allotted time (15 days) that no such debt is owed to you. Your failure to respond, as stipulated, is your agreement with and admission to the fact that everything in this letter is true, correct, legal, lawful, and is your irrevocable agreement attesting to this, fully binding upon you, in any court in Arizona, without your protest or objection or that of those who represent you.**

All Rights Reserved,

Ivaylo Dodev

STATE OF ARIZONA )
) SS
COUNTY OF MARICOPA )

Subscribed and sworn to (or affirmed) before me on this 29 day of October, 2013 by Ivaylo Dodev, proved to me on the basis of satisfactory evidence to be the man who appeared before me.

Executed by my own free will

Notary Public (Seal)

Nazario Sandoval
Notary Public
PINAL COUNTY, Arizona
My Comm. Expires 05-09-16

Subject: USPS Shipment Info for 70131710000101375021

From: US_Postal_Service@usps.com (US_Postal_Service@usps.com)

To: dodev7@yahoo.com;

Date: Sunday, November 3, 2013 11:28 AM

This is a post-only message. Please do not respond.

Ivaylo Dodev has requested that you receive the current Track & Confirm information, as shown below.

Current Track & Confirm e-mail information provided by the U.S. Postal Service.

Label Number: 70131710000101375021

Service Type: Certified Mail™

| Shipment Activity | Location | Date & Time |
|---|---|---|
| Delivered | DALLAS, TX 75235 | November 1, 2013 10:58 am |
| Sorting Complete | DALLAS, TX 75247 | November 1, 2013 10:23 am |
| Arrival at Unit | DALLAS, TX 75247 | November 1, 2013 5:23 am |
| Depart USPS Sort Facility | DALLAS, TX 75260 | November 1, 2013 |
| Processed through USPS Sort Facility | DALLAS, TX 75260 | November 1, 2013 4:00 am |
| Processed through USPS Sort Facility | DALLAS, TX 75260 | October 31, 2013 11:11 pm |
| Depart USPS Sort Facility | PHOENIX, AZ 85026 | October 30, 2013 |
| Processed at USPS Origin Sort Facility | PHOENIX, AZ 85026 | October 29, 2013 8:57 pm |
| Dispatched to Sort Facility | QUEEN CREEK, AZ 85142 | October 29, 2013 3:32 pm |
| Acceptance | QUEEN CREEK, AZ 85142 | October 29, 2013 2:29 pm |

USPS has not verified the validity of any email addresses submitted via its online Track & Confirm tool.

For more information, or if you have additional questions on Track & Confirm services and features, please visit the Frequently Asked Questions (FAQs) section of our Track & Confirm site at http://www.usps.com/shipping/trackandconfirm.htm

**UNITED STATES POSTAL SERVICE.**

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

DALLAS TX 75249 OFFICIAL USE

7013 1710 0001 0137 5021

| | | | |
|---|---|---|---|
| Postage | $ | $0.46 | 0540 |
| Certified Fee | | $3.10 | 02 |
| Return Receipt Fee (Endorsement Required) | | $3.80 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $7.36 | 10/29/2013 |

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

See Reverse for Instructions

Date: November 8, 2013

Ivaylo Dodev:

The following is in response to your November 5, 2013 request for ... on your Certified Mail™ item number 70131710000101375021. The d... shows that this item was delivered on November 1, 2013 at 10:58 am in DALLAS, TX 75235. The scanned image of the recipient information is provided below.

Signature of Recipient :

Delivery Section

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,
United States Postal Service

**Subject:** USPS Shipment Info for 9114901159815086336659

**From:** US_Postal_Service@usps.com (US_Postal_Service@usps.com)

**To:** dodev7@yahoo.com;

**Date:** Friday, July 11, 2014 1:20 PM

This is a post-only message. Please do not respond.

Ivaylo T Dodev has requested that you receive the current Track & Confirm information, as shown below.

Current Track & Confirm e-mail information provided by the U.S. Postal Service.

Label Number: 9114901159815086336659

Service Type: USPS Tracking™

| Shipment Activity | Location | Date & Time |
|---|---|---|
| Delivered | DALLAS, TX 75247 | July 10, 2014 11:54 am |
| Out for Delivery | DALLAS, TX 75247 | July 10, 2014 10:07 am |
| Sorting Complete | DALLAS, TX 75247 | July 10, 2014 9:57 am |
| Arrival at Post Office | DALLAS, TX 75247 | July 10, 2014 9:01 am |
| Depart USPS Sort Facility | DALLAS, TX 75398 | July 10, 2014 2:33 am |
| Processed through USPS Sort Facility | DALLAS, TX 75398 | July 10, 2014 12:23 am |
| Depart USPS Sort Facility | PHOENIX, AZ 85043 | July 9, 2014 4:17 am |
| Processed through USPS Sort Facility | PHOENIX, AZ 85043 | July 8, 2014 9:32 pm |
| Acceptance | QUEEN CREEK, AZ 85142 | July 8, 2014 9:33 am |

USPS has not verified the validity of any email addresses submitted via its online Track & Confirm tool.

For more information, or if you have additional questions on Track & Confirm services and features, please visit the Frequently Asked Questions (FAQs) section of our Track & Confirm site at http://www.usps.com/shipping/trackandconfirm.htm

# EXHIBIT "U"

**REAL TIME RESOLUTIONS**

**Address:**
1750 REGAL ROW STE N
DALLAS, TX 75235
*No phone number available*

**Account Number:**
14845....

**Address Identification Number:**
0622670546

**Mortgage Identification Number:**
100039230201271778

**Status:** Petition for Chapter 11 Bankruptcy.

**Status Details:** This account is scheduled to continue on record until Nov 2015.

| | | |
|---|---|---|
| **Date Opened:** 01/2007 | **Type:** Home Equity | **Credit Limit/Original Amount:** $124,500 |
| **Reported Since:** 06/2013 | **Terms:** NA | **High Balance:** $120,487 |
| **Date of Status:** 06/2013 | **Monthly Payment:** $0 | **Recent Balance:** $0 as of 05/2014 |
| **Last Reported:** 05/2014 | **Responsibility:** Individual | **Recent Payment:** $0 |

**Your Statement:**

Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).

**Account History:**
Filed Chapter 11 Bankruptcy on June 30, 2013

WRONG DATE

**Balance History - The following data will appear in the following format:**
*account balance / date payment received / scheduled payment amount / actual amount paid*

Apr 2014: $120,486 / no data / $728 / no data
Mar 2014: $120,486 / no data / $728 / no data
Feb 2014: $120,486 / no data / $728 / no data
Jan 2014: $120,486 / no data / $728 / no data
Dec 2013: $120,486 / no data / $728 / no data
Nov 2013: $120,487 / no data / $728 / no data
Oct 2013: $120,487 / no data / $728 / no data
Sep 2013: $120,487 / no data / $728 / no data
Aug 2013: $120,487 / no data / $728 / no data
Jul 2013: $120,487 / no data / $728 / no data
Jun 2013: $120,487 / no data / $728 / no data

collection activities on set off account

Between Jun 2013 and Apr 2014, your credit limit/high balance was $124,500

## Accounts in Good Standing

These items may stay on your credit report for as long as they are open. Once an account is closed or paid off it may continue to appear on your report for up to ten years.