Ivaylo Tsvetanov Dodev,

c/o 6312 South 161st Way
Gilbert, Arizona
(480) 457-8888 Phone
(480) 457-8887 Facsimile
dodev@hotmail.com

*Pro Se*

**FILE ON DEMAND FOR THE RECORD**

✓ FILED ___ LODGED
___ RECEIVED ___ COPY
DEC 29 2014
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ P DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Ivaylo Tsvetanov Dodev,** | **Case No. CV-13-02155-PHX-DLR** |
| **Plaintiff,** | |
| **v.** | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS SELECT PORTFOLIO SERVICING AND THE BANK OF NEW YORK MELLON, AS TRUSTEE'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| **RECONTRUST COMPANY, N.A., ET AL** | |
| **Defendants.** | **(Hon. Douglas L. Rayes)** |

Here comes Claimant, Ivaylo Tsvetanov Dodev, *pro se*, ("Plaintiff"), with his response in opposition to the above captioned motion (Doc. 103), (the "Motion"), submitted for the above captioned defendants, (the "Defendants"), signed by counsel Kim R. Lepore, ("Counsel").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Counsel's Motion is a typical boilerplate compilation of failed Arizona cases not pertaining to Plaintiff's *factual* Second Amended Complaint, Doc. 96, ("SAC"),

misleading and tailored to portray the borrower as a freeloader who "wants his million dollar house free and clear of a mortgage loan." (Doc. 103, at 2.) Plaintiff never borrowed one million dollars and his house is worth $263,000 according to his tax and insurance record, which he pays, (Exhibit "C" and "D" in Doc. 96-1.) Although he has a secured interest in his estate, (Exhibit "B" in Doc. 96-1), for over one million dollars, this does not warrant a million dollar value or a million dollar *misrepresented* loan. The Motion starts "Plaintiff…filed this lawsuit two weeks before the foreclosure sale to stop the sale of his house." Plaintiff respectfully asks this court to take notice that he has spent over 5 years of mediation with purported creditors and servicers of the alleged loan, as the SAC and Exhibits recount, before filling this verified action.

Counsel has already established a perjury record under this action (see Doc. 52), and unremittingly continues to waste court time by filing fraudulent documents of conferral while the court has been informed through declaration (Doc. 26), and in court session held 12/5/2014, that no good faith efforts has been made to *meet and confer*. Counsel has strayed from amicable judicial conduct and was inaccessible even after Plaintiff addressed Counsel with two certified letters, followed up by two voice mails upon Judge Rayes' ordered Rule 26(f) meeting (Doc. 81.) Maliciously misrepresenting the facts in her pleadings, Counsel commits fraud on the court[1]. In the Motion, Counsel primarily relies on that Plaintiff's bankruptcy discharge does not extinguish the security interest created under the Deed of Trust ("DOT") (Doc. 103, at

[1] Fraud on the court occurs when intentional misstatements regarding material issues are made in a court proceeding and harm the integrity of the judicial process. Dixon v. Comm'r of Internal Revenue, 316 F.3d 1041, 1046 (9th Cir. 2003).

5) and that Plaintiff has no standing to challenge a [valid] assignment of interest between third parties (Doc. 103, at 7), ignoring the fact that the SAC exclusively states (Doc. 96, at ¶2) that bankruptcy discharge does not construed a cause of action, while misrepresenting that the only third parties under the DOT are the Defendants (not the Plaintiff, who is the issuer [without his consent] of any purported security.)

The Motion attempts to sway the court through meritless conclusory analysis, gravitating over certain portions of the SAC while leaving most unrebutted. It is well established that "[c]ourts must consider the complaint in its entirety[1], as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) [.]" Dunn v. Castro, 621 F.3d 1196, 1205 n.6 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)); Magulta v. Samples, 375 F.3d 1269, 1274-75 (11th Cir. 2004).[2]

Plaintiff respectfully asks the court to reject the Motion in its entirety as meritless misrepresentation of the SAC.

## II. LEGAL ARGUMENT

Judicial prudency favors resolving cases on their merits, based on admissible facts submitted into evidence, governed by the law and the venue of the Action, rather than through technical challenges to the pleadings. When deciding a 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader. See City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mills v. Polar Molecular Corp., 12

[1] 5 Wright & Miller, Federal Practice and Procedure § 1286 (3d ed. 2004); 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)

[2] (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)); Magulta v. Samples, 375 F.3d 1269, 1274-75 (11th Cir. 2004)

F.3d 1170, 1174 (2d Cir.1993). The complaint is deemed to include any written instrument attached to it as an exhibit or any statement or documents incorporated in it by reference. Cortec Indus., Inc. v. Sum Holdings L.P., 949 F.2d 42, 47 (2d Cir.1991). The Court also ought to consider matters of which judicial notice is given. Leonard T. v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir.1999). The general rule in appraising the sufficiency of a complaint for failure to state a claim is that a complaint should not be dismissed "[u]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson (1957), 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2LEd 2d 80; Seymour v. Union News Company, 7 Cir., 1954, 217 F.2d 168;

It is "only the extraordinary case in which dismissal is proper" for failure to state a claim. United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). A court may dismiss a complaint as a matter of law only if the complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). When ruling on a motion to dismiss, the court must assume that the complaint's factual allegations are true and should construe all inferences from them in the non-moving party's favor. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

## III. OBJECTION TO DEFENDANTS JUDICIAL NOTICE

Even though judicial notice is procedurally correct as to the existence of public documents, it does not warrant its contents, SAC at ¶29. Plaintiff specifically disputes

the contents of the documents contained in Defendants' Request for Judicial Notice. Even though the Court may "take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss," the Court may only take judicial notice of their existence, not as to their contents. "Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." Joslin v. HA.S. Ins. Brokerage, 184 Cal. App. 3d 369, 374 (1986). While it is true that the acts of the county recorder may be subject to judicial notice, Defendants' compilation of such acts [documents] and the fact that none of the Defendants are mentioned in the DOT or the Adjustable Rate Note (the "Note") signed by Plaintiff precludes them from asserting judicial notice as a non-related third party. Said Defendants may appear on some of the subject documents only after the fraudulently signed and recorded assignment, as factually plead under (SAC, ¶31-34).

Without any sort of foundation as to the personal knowledge of the person making the statements contained in the documents, these are just records of acts from which nothing may be properly deduced.

> ***[T]he taking of judicial notice of the official acts of a governmental entity does not in and of itself require acceptance of the truth of factual matters which might be deduced there from,*** *since in many instances what is being noticed, and thereby established, is no more than the existence of such acts and not, without supporting evidence, what might factually be associated with or flow there from." (citations omitted).*

Mangini v. R. J Reynolds Tobacco Co., 7 Cal. 4th 1057, 1062 (1994) (emphasis added). While courts can take judicial notice of public records, they do not take notice

of the truth of matters stated therein. Love v. Wolf, 226 Cal. App. 2d 378, 403 (1964). In addition, "when judicial notice is taken of a document ... the truthfulness and proper interpretation of the document are disputable." Stor Media, Inc. v. Superior Court, 2017 Cal Ath 449, 457, fh. 9 (1999).

Further, in Poseidon Development, Inc. v. Woodland Lane Estates, LLC, 152 Cal. App. 4th 1106 (2007), the court considered the scope of judicial review of a recorded document:

> *[T]he fact [that] a court may take judicial notice of a recorded deed or similar document, does not mean it may take judicial notice of factual matters stated therein. For example, the First Substitution recites that Shanley 'is the present holder of beneficiary interest under said Deed of Trust.' By taking judicial notice of the First Substitution, the court does not take judicial notice of this fact because it is hearsay and it cannot be considered not reasonably subject to dispute. Id. at 1117 (citations omitted).*

Therefore, the truthfulness of the contents of the recorded documents still remains subject to dispute. See StorMedia, supra 20 Cal.4th at 457, fn. 9. In the instant case, Defendants rely on several exhibits attached to their Request for Judicial Notice ("RJN"), filed concurrently with their Motion, to support factual contentions which they seek to inject into their pleadings as facts. For instance, Defendants rely on Exhibit 1-4 (Doc. 133, p 3-4, Statements of Facts) to support their position that Plaintiff took a loan and is now if default and somehow Defendant have an enforcement right over a security that they are not a part of. However, Plaintiff specifically disputes the validity and veracity of the RJN, especially pertaining to Substitution of Trustee, Notice of Default, Assignment of Interest to fictitious REMIC

Trust, (SAC ¶36, 42, 44, 46-59). Plaintiff also posits that this is the precise type of hearsay that cannot be considered in the context of the Motion, as he has established unrebutted record, Exhibits under SAC, that Defendants: are no party having enforcement rights under the DOT; have defaulted an Plaintiff's Offers to Pay, and; are barred by the statutes of limitation under Arizona Law (SAC ¶200) (argument left unrebutted by Counsel). Any other interpretation of the RJN requires this Court to convert Defendants' 12(b)(6) Motion into one for Summary Judgment, pursuant to Rule 12, which requires providing Plaintiff the opportunity to conduct discovery and present material evidence.

Further Plaintiff respectfully asks this Court to take judicial notice of Doc 92 (Notice of Service of Discovery) and Exhibit "A", attached hereto and incorporated herein - ONE page Discovery Request served on Defendants through Counsel on 09/27/2014, as Ordered (Doc. 81), via USPS Certified mail # 70141820000019339028. The simple one page Discovery Request, attempting to identify any secured parties and if there is any unpaid balance due under the purported security, as attached under the RJN documents, remains unanswered to this day.

## IV. CONTRA-ARGUMENTS

### A. Plaintiff has Sufficiently Plead Standing Action

This section highlights a distortion of Plaintiff's complaint or complete misunderstanding on Counsel's behalf pertaining to his bankruptcy filing and UCC arguments that permeates Counsel's Motion. Counsel presents an explanation of why bankruptcy discharge does not extinguish the lien although Plaintiff has never pled on

the contrary. The reference to his SAC "(Doc. 96 at ¶128.)" in Doc 103 at 5, which Counsel presents as backing does not deal with security interest but tax evasion. Plaintiff introduced his bankruptcy into the SAC as a chronological event in the chain of title to establish that the debt was in default when it was transferred from Countrywide to BANA, and then from BANA to SPS for servicing, rendering SPS a debt collector with the means of the FDCPA (SAC ¶78, 79, 80, 87). Plaintiff does not allege that the *bankruptcy* extinguishes the security interest (lien) under the Deed, but that the security interest was rendered null and void through Defendants' infringements on the terms of the PSA and violations of UCC.

Further, Counsel alleges that Plaintiff signed a DOT, creating the security interest in his house, which was ultimately assigned to The Bank of New York Mellon ("BNYM") Trust (Doc 103 at 5). Plaintiff signed a DOT with First Magnus Financial Corp., not with any of the named Defendants in this Action and his signature was revoked for fraud and lack of consideration, (Exhibit "X", under Exhibits to SAC). The purported Assignment of beneficial interest to BNYM has been duly challenged.

Counsel also misconstrues Plaintiff's use of the UCC to be an attempt to make Defendant's show the note before they non-judicially foreclose. Plaintiff's use of the UCC is to show its relevance when ascertaining whether a party is a person entitled to enforce the note and thus applies in cases of non-judicial foreclosure. Hogan v. Wash. Mutual Bank, N.A., which Counsel relies on, decided that a beneficiary must first possess the right to enforce the loan note before it can foreclose (SAC ¶67). Plaintiff is not merely claiming that Defendants have to SHOW that they are holders of the

Note but contesting that they ARE holders. Hogan, however, as the court noted, did not "allege that WaMu and Deutsche Bank are not the holders of the notes in question or that they otherwise lack authority to enforce the notes," as Plaintiff is alleging in regards to Defendants here; the court here suggests that validity of a foreclosure where the beneficiary does not possess the authority to enforce the note can be challenged. Both transfer of holder-in-due course ("HDC") status and right to enforce the obligation are governed by the UCC, making it relevant here where plaintiff is arguing that Defendants were either never transferred any beneficial interest or right to enforce pursuant to the UCC and ARS or do not physically possess the note (SAC ¶44, 45, 48, 50, 52).

Counsel also alleges that Plaintiff cannot challenge the Assignment of the Deed because he is unaffected by the transaction as a third party. Counsel fails to recognize that Plaintiff is not simply challenging the validity for alleged signature fraud (SAC ¶31, 32) but on the basis that BNYM is not the current lawful beneficiary if the underlying Note was not also transferred lawfully. Courts have oft cited that assignment of a mortgage or trust deed without an assignment of the underlying debt is a nullity In re Veal, 450 B.R. 897 (B.A.P. 9th Cir. 2011), and further that a "third party may only challenge an assignment if that challenge would render the assignment absolutely invalid, ineffective, or void" Conlin v. Mortgage Electronic Registration Systems, Inc. (6th Cir. 2013) 714 F.3d 355, 361, such by alleging the party was not also transferred the Note. See also, Slorp v. Lerner, Sampson & Rothfuss, No. 13-3402 (6th Cir. Sept. 29, 2014) (Where Plaintiff had standing to challenge Assignment

when he contended the party did not also have the Note, which would render the Assignment void, not voidable).

Under ARS 33-807(A) and DOT, only a valid beneficiary can take non-judicial action to foreclose on a property. Thus, if the Assignment is not valid and lawfully executed, and void as a result of improper transfer of the underlying security instruments or no transfer of the Note at all, as Plaintiff has pled, then the Assignment damages Plaintiff by allowing Defendants to attempt to unlawfully commence trustee sale although they do not have a claim to beneficial interest. Further, recordation of an Assignment without proper transfer of underlying beneficial interest and subsequent Substitutions of Trustee ("SOT") and Notice of Trustee ("NTS") sale are in violations of ARS §33-420(A) (SAC ¶30). In Re MERS, 754 F.3d 772 (9th Cir. 2014) finds that "an action to clear title of a false or fraudulent document that asserts an interest in real property may be joined with an action for damages under § 33-420(A)."

**B. Plaintiff has Sufficiently Plead Tort and Deceptive Consumer Practices with Respect to Foreclosure**

Plaintiff presents an application of his arguments in the first Cause of Action to violations specific to the Trustee Sale (SAC ¶74); this cause of action is to be construed as an unlawful attempted foreclosure claim[1]. These include that: (1) an Assignment of the Deed without the debt transfers no rights upon the Assignee Hill v. Favour, 84 P.2d 575, 578–79 (Ariz. 1938), (2) only a beneficiary which poses the

[1] See White v. Aurora Loan Services, LLC, No. CV-14-1021-PHX-JAT (D. Ariz. Oct. 8, 2014)."In Steinberger, the Court held that a borrower in default may bring a claim if the borrower possesses a good faith basis to dispute the authority of an entity to conduct a trustee's sale 318 P.3d at 429-30, ¶41"

right to enforce the note can appoint a trustee, DOT ¶24, and instruct a trustee to conduct a Trustee Sale, and only after a default has occurred ARS 33-807, and (3) Defendants are misrepresenting themselves and their capacity, in violation of FDCPA §807(2) & (3), with respect to non-judicial Trustee Sale, in violation of FDCPA §808(6) and ARS §33-420, and unlawfully attempting dispossession of property. Plaintiff stands on his pleadings, regarding MERS (SAC ¶53-59) and contends that MERS did not have beneficial interest in the note to assign to BNY Mellon.

**C. Plaintiff has Sufficiently Plead FDCPA and FCRA Violations**

Counsel incriminates the Defendants by alleging that they broke the law by acting as servicers on debt acquired while in default, in violation of 15 USC 1692 *et seq*. Plaintiff has already laid out in the SAC the legal argument as to why Defendants are debt collectors within the scope of the FDCPA after acquiring defaulted debt (SAC ¶79, 80, 87)[1]. Plaintiff respectfully asks this court to take judicial notice of the decision of Hon. Diane Humetewa, 10/28/2014, in this District Court, 2:14-CV-00615-DJH, Doc. 62, in which the court noted that "the definition of debt collector pursuant to §1692a(6)(F)(iii) includes any non-originating debt holder that their <u>acquired a debt in default or has treated the debt as if it were in default at the time of acquisition.</u>" The subject debt was treated as in default even before it was acquired by SPS, seeing as the previous servicer (debt collector) BANA had

[1] <u>De Dios v. International Realty & Investments</u>, 641 F.3d 1071, 1075 n.3 (9th Cir. 2011) "debt collector does not include those 'mortgage service companies…so long as the debts were not in default when taken for servicing'"

attempted to conduct a trustee sale in 2011, and thus, it would be impossible to for Defendants to claim exemption under FDCPA §803(6)(F).

Defendant SPS defaulted on Plaintiff's Proofs of Claim ("POC") under FDCPA §809 and Arizona Administrative Code R20-4-1514 (SAC ¶89, 90), a claim that Counsel has not rebutted. The POCs were not unsolicited with the only unsolicited actions coming from SPS, which failed to prove relation to Plaintiff's mortgage, but presented lawfully and in good faith. Counsel further argued that foreclosing on a security interest is not debt collection activity under the FDCPA in contrast to Plaintiff's explanation of the Legislators' intent of 15 U.S.C. in his Complaint, and rulings in other cases (SAC ¶97). Plaintiff believes and has alleged in SAC that communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest.

**D. Plaintiff has Sufficiently Plead Security Violations**

In Glaski v. Bank of America, 218 Cal. App. 4th 1079, 160 Cal. Rptr. 3d 449 (Ct. App. 2013), the court found that "transfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement."[1] As Glaski showed, an attempted assignment is void, not voidable, without timely transfer of the underlying Note, which Plaintiff contends is the case here seeing as the only Assignment is executed after cut-off date (SAC ¶116-119). Because Defendants are attempting to

[1] See also, In Re Salividar, No. 11-10689 (Bankr. S.D. Tex. June 5, 2013) and Aurora Loan Servs, LLC. v. Scheller, 2014 N.Y. Slip Op 31416 (Sup. Ct. 2014).

foreclose in the name of a trust, violations of the PSA are not immaterial; if Plaintiff's mortgage is not legally a part of the trust then NTS and SOT were unlawfully filed.

Plaintiff brings REMIC violations (SAC ¶121-28) not to sue Defendants for tax code violations, as Counsel contends, but to highlight the importance of proper transfer for the Trust. Further, Counsel has not contested SAC ¶130, 131 related to non-performing assets and Article 9 default. Plaintiff brings up discrepancies between the loan number on his DOT and loan number that Defendants claim to service to show that the Defendants have not established relation between the serviced loan number and his DOT (as has been addressed under Proofs of Claim to SPS).

**E. Plaintiff has Sufficiently Plead Anticipatory Repudiation and Quiet Title**

Defendants have left the well-executed Anticipatory Repudiation Claim (Tender Rule under ARS) fully unrebutted and have blanketed it with Plaintiff's Quiet Title action. Quoting Frazer v. Millennium Bank, N.A. Case No. 2:10- 01509-JWS-PHX (D. Ariz. Oct. 27, 2010). (Doc. 103 at 12) ("Until Ms. Frazer pays off the loan, the trustee or the successor trustee as named by the beneficiary, holds title in trust. 'Thus quiet title is not a remedy available to the trustor until the debt is paid or tendered.'"). The key words are "paid or tendered[1]" as Plaintiff alleges (SAC ¶140).

Avoiding the factual allegations that tender rule was duly and lawfully executed by Plaintiff (SAC ¶136-138), Counsel drifts into arguments that presentment of the Note is not "required under the terms of DOT" (Doc. 103, at 13, ln 20). However the

[1] The term "tender" as used in the books, denotes a legal offer, one which one party is under obligation to make and the other bound to accept. See Duluth v. Knowlton, 42 Minn. 229; Patnote vs. Sanders, 41 Vt. 66.

DOT and Note are governed under the laws of Arizona and ARS §47-3501(2) (reads), "upon demand of the person to whom presentments made, the person making presentment [SPS] must: (a) Exhibit the instrument…(c) Sign a receipt on the instrument for any payment made or surrender the instrument in full payment is made." (SAC ¶136.) Further Counsel's argument that "Plaintiff fails to allege that he actually gave lawful money to Defendants to pay the balance due in full" (Doc. 103 at 13, ln 16), lacks particularity in defining "lawful money" and therefore falls flat on its face. Plaintiff has attached four Good Faith Offers to Pay ( SAC Exhibit "V") cash (FRN) acceptable under the Uniform Covenants of the DOT "1.(a) cash."

Plaintiff respectfully asks this court to take judicial notice: his Initial Disclosures, Exhibit "B", attached hereto and incorporated herein, disclosing the name of his business partners who offered to pay the entire amount due on his mortgage so that he would go back to managing Pro Shade International, LLC, and; Steinberger v. McVey ex rel., Appl. WL333575, p. 13, 2014 as Plaintiff was never unwilling to pay what was due under the Note nonetheless remained reluctant to pay to purported securityholders with unauthenticated accounting (SAC ¶130-132) after his bankruptcy discharge without evidence of secured interest.

**F. Plaintiff has Sufficiently Plead Ultra Vires-Contractual Fraud**

Defendants left this well-plead action fully unrebutted. Their only arguments are: "Plaintiff has not allege that Defendants were involved in the origination of the loan" (Doc. 103 at 14 ln 3-4) and the statutes of limitation; "the limitations periods for Plaintiff's fraud-related causes of action ran five (5) years ago" (*Id.* ln 12-13).

The two questions before this court are: 1) Can a void *ab initio* contract procure any successive rights (SAC ¶147-152), and 2) if the statutes of limitations are barring Plaintiff from asserting this cause of action; would the statutes of limitation on contact in writing of debt, ARS §12-548, and on security, ARS §47-3118, bar any purported lenders, creditors, mortgagee, certificateholders from bringing any action against Plaintiff estate (SAC ¶200)?

**G. Plaintiff has Sufficiently Plead Usury**

Plaintiff has alleged usury by detailed analyst based on the Federal Reserve Bank of Chicago book, *The Modern Money Mechanism* [among others], (detailing the creation of money at corner banks) and the Supreme Law of the Land (The Constitutions for the united States of America (SAC ¶154-159)). Under Arizona law, A.R.S. § 44-1201(A), interest on a loan is set at ten percent per annum, however under *ultra vires* contract as discussed in "F" above, banks are charging usuries 200% interest (SAC ¶163). Counsel claims that "Plaintiff fails to identify the 'law of equity' to which he refers" (Doc. 103 at G). **Equity** is the set of maxims that "reign over all the law" and "from which flow all civil laws" (Bacon). The Chancery, the office of equity, was the "office that issued the writs that were the foundation of the common law system". (Id.; Spence, supra, at 224). Equity is wholly "unaffected by any state laws" (Pomeroy) and is "everything, even without law" (John Bouvier).

**H. Plaintiff has Sufficiently Plead TILA Violations**

This cause of action was brought forth not for the disclosure requirements *per se* but to establish only one fact: that SPS is not a "covered person" under TILA, thus

is not a holder of legal title to Plaintiff's estate. ("SPS is not the owner of the loan, SPS admits that is not the owner of the loan" (Doc. 103 at 16.)) If SPS is not foreclosing in their own name [as Plaintiff alleges] and the Certificateholders of the REMEC Trust do not hold beneficial interest in the Plaintiff's obligation (SAC ¶175-178,) who is the party having beneficial interest in his loan? An answer Plaintiff has sought for over 5 years, browsing through the obfuscated process of foreclosure, prior to filing this verified action.

**I. Plaintiff has Sufficiently Plead RICO**

As to evaluation of motions concerning Fraud claims governed by Fed. R. Civ. P. 9(b), the inquiry is not whether the allegations contain an evidentiary level of *fine* detail, but simply whether they "provide notice of the 'precise misconduct' with which defendants are charged," so Defendants can respond meaningfully to the complaint, "and to prevent false or unsubstantiated charges." Serville Indust. Machinery v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984). Thus Plaintiff need not to "plead the 'date, place or time' of the fraud" in order to satisfy Rule 9(b). See, e.g., Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.1999).

Additionally, the heightened pleading standard for fraud claims is relaxed somewhat where factual information is peculiarly within defendant's knowledge or control. E & E Co., Ltd. v. Kam Hing Enterprises, Inc., 429 F.App'x 632, 633 (9th Cir. 2011) (citing Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)). As a result, any analysis of the Complaint in this action under Rule 9(b)

would be subject to the relaxed standard that is applied to claims where evidence "lies within [Defendants'] exclusive possession" and specific citation to each instance of fraudulent conduct would not be required until this court compels Defendants to discovery. Id.; U.S. ex rel. Tamanaha, 2011 WL 3423788 at *2[1].

In addition, Plaintiff has identified with sufficient particularity the who, the what and the how, the when, and the where of Defendants' violative conduct. The "who" and the "what" is specified as the SAC identifies each Defendant and explains their collective coercive roles in the alleged attempt to steal Plaintiff's house. The "how" and the "where" is identified by false and misleading communication and recordation of false notices in Maricopa County Recorder's Office in violation of ARS as plead in the SAC. Once again, Defendants arguments are misleading because they do not acknowledge the fact that SPS, under color of law, is working along BANA and ReconTrust in a coordinated attempt to steal Plaintiff's house, evident by NTS, as recorded in the County Recorder, Instrument # 20130709557, showing ReconTust as purported Trustee and right below reading: "When recorded Mail to: SPS". See Exhibit "C" attached hereto and incorporated herein.

The facts plead in the SAC are sufficient to survive the Motion and put Defendants on notice of the representations at issue in this case[2]. Most of the factual information is peculiarly within Defendant's knowledge or control, therefore Plaintiff respectfully asks this court to compel them to discovery.

---

[1] Citing United States ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001)

[2] United States ex rel. Cafasso, 637 F.3d at 1055

**J. Plaintiff has Sufficiently Plead Declaratory and Injunctive Relief**

The fraudulent contact of BANA and ReconTrust has been inferred with unequivocal arguments throughout the SAC and Plaintiff respectfully ask this court to compel Defendants to discovery where they will be granted an opportunity to prove that the alleged DOT and the Note are transferred to the purported REMIC Trust or to order the said documents to be expunged from the office of the County Recorder. Plaintiff respectfully asks this court to take judicial notice of Exhibit "W" under Doc. 96-1, where the Trust acknowledges that they "does not physically own the loan or the property" – axiomatic by the PSA as plead by Plaintiff in Doc. 53, attached as judicial cognizance to his SAC. If the purported Trust does not own the loan and ReconTrust has been closed by the Federal Government after a hefty settlement with BANA does that leave SPS as Mortgagee, Trustee and Servicer at the same time (judge, jury and an executioner?) Is in that an example of a mere debt collector, acting under the color of law? An answer Plaintiff sought for 5 years before filing this verified complaint.

## V. CONCLUSION

Plaintiff requests this Court to overrule and dismiss the Motion and compel Defendants to discovery for the sake of a speedy and prudent trial.

Respectfully submitted on this 29th day of December, 2014.

**Ivaylo Tsvetanov Dodev**, Plaintiff in *Pro Se*
**6312 South 161st Way, Gilbert, Arizona**
**(480) 457-8888 Phone**

## CERTIFICATE OF SERVICE

**ORIGINAL** and **ONE COPY** hand delivered to The United States District Court for the District of Arizona this 29th day of December, 2014. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:, RECONTRUST, NA, BANK OF AMERICA, NA, SELECT PORTFOLIO SERVING, NA, and THE BANK OF NEW YORK MELLON.

**Ivaylo Tsvetanov Dodev, Plaintiff**
**6312 South 161st Way, Gilbert, Arizona**
**(480) 457-8888 Phone**