Ivaylo Tsvetanov Dodev,

c/o 6312 South 161st Way
Gilbert, Arizona
(480) 457-8888 Phone
(480) 457-8887 Facsimile
dodev@hotmail.com

*Pro Se*

**FILE ON DEMAND
FOR THE RECORD**

FILED _____ LODGED
_____ RECEIVED _____ COPY

JAN 0 9 2015

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivaylo Tsvetanov Dodev,<br><br>Plaintiff,<br><br>v.<br><br>RECONTRUST COMPANY, N.A., ET AL<br><br>Defendants. | Case No. CV-13-02155-PHX-DLR<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS RECONTRUST COMPANY, N.A. AND BANK OF AMERICA, N.A.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>*(Contemporaneously filed with Notice of Withdrawal of Certain Causes of Action)*<br><br>**(Hon. Douglas L. Rayes)** |

Here comes Claimant, Ivaylo Tsvetanov Dodev, *pro se*, ("Plaintiff"), with his response in opposition to the above captioned motion (Doc. 107), (the "Motion"), submitted for the above captioned defendants, (the "Defendants"), signed by counsel Eric M. Moores, Sean K. McElenney and Coree E. Neumeyer, ("Counsel").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Counsel's motion is yet another misinterpretation of Plaintiff's claims and factual allegations, leaving unrebutted most of the Second Amended Complaint

("SAC"). For example, Counsel took about half of page 8 and the other half of 15 to argue a nonexistent claim: "the SAC alleges improper efforts to enforce the lien after conclusion of Dodev's bankruptcy proceeding" (Doc. 107 at 8); "To the extent Dodev may rely on the bankruptcy proceeding to support this claim, it still fails" (Doc. 107 at 15) - disregarding the *fact* that the SAC exclusively states (Doc. 96, at ¶2) that bankruptcy discharge does not constitute a cause of action and is not used to support a (non-existent) claim that the lien was discharged along with the obligation.

Counsel's Motion is comprised of: misquoted excerpts of SAC, "The SAC also suggests that a defendant is required to produce the original note to prove "standing" to foreclose. [SAC, ¶ 44]" (Doc. 107 at 6), "Dodev argues that a valid contract was not created when he obtained the Loan because he did not receive <u>cash</u>" (Doc. 107 at 10, ln 24), and; blatant lies beleaguered to mislead[1] this court that *ReconTrust is in the Trusteeship business* (Doc. 107 at 7, ln 19-20), "*ReconTrust is the current trustee under the Deed of Trust*" (Doc. 107 at 15), although the company is no longer an existent entity (see point A in this document).

While gravitates around the misleading notion that the Uniform Commercial Code ("UCC") is not relevant while foreclosing on mortgages, Defendants ignore the facts that the UCC governs ownership of enforceability rights under the Deed of Trust ("DOT"). Moreover, throughout the SAC the UCC has been used as mirror of Arizona Revised Statutes ("ARS") (SAC ¶¶43, 44; ¶57; ¶133; ¶¶135,136; ¶149; ¶212).

---

[1] Fraud on the court occurs when intentional misstatements regarding material issues are made in a court proceeding and harm the integrity of the judicial process. <u>Dixon v. Comm'r of Internal Revenue</u>, 316 F.3d 1041, 1046 (9th Cir. 2003).

Counsel bedevils Plaintiff as using "outdated legal concepts" (Doc. 107 at 4, ln 11), while not providing particular case laws used, or a place where their expiration date could be found.  Defendants' Motion failed to rebut: that Defendants are debt collectors under the FDCPA (SAC ¶78-88); the violations committed under the Act (SAC ¶85); the failure of ReconTrust to act under Arizona law (SAC ¶75), and; their violation of trust law (SAC ¶71). The Motion is a twist of nonexistent clams, such as "BANA does not have current interest in the loan" (Doc. 107 at 5, 10, 12, 14, 15), in a poorly executed attempt to derail this court from justice, and should be denied in its entirety as meritless misrepresentation of the SAC. It is well established that "[c]ourts must consider the complaint in its entirety[1], as well as other sources courts ordinarily examined when ruling on Rule 12(b)(6) [.]" Dunn v. Castro, 621 F.3d 1196, 1205 n.6[2].

Further, Plaintiff has pled that Defendants are time-barred by statute of limitation (SAC ¶200). Under ARS §47-3118 and §12-548 an action for debt "shall be commenced and prosecuted within six years after the cause of action accrues" and ARS §33-816 makes clear that this statute applies to deeds of trust, in that Trustee Sale shall be commenced within the "period prescribed by law for the commencement of an action on the contract secured by the trust." In re Weaver, BAP No. AZ-05-1052-BMoS (B.A.P. 9th Cir. Mar. 17, 2006). Appellant's default and acceleration of debt occurred in August, 2008 and thus the statute of limitation expired August, 2013. Plaintiff contends that the original Sale was not commenced by a valid Trustee or

---

[1] 5 Wright & Miller, Federal Practice and Procedure § 1286 (3d ed. 2004); 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)

[2] (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)); Magulta v. Samples, 375 F.3d 1269, 1274-75 (11th Cir. 2004)

1   Beneficiary. Seeing as such, any further attempt by another party to commence Sale is

2   time-barred. <u>Deutsche Bank Trust Company Americas v. Beauvais,</u> No. 3D14-575 (Fla.

3
4   Dist. Ct. App. Dec. 17, 2014).

5   **II.    LEGAL ARGUMENT**

6           Judicial prudency favors resolving cases on their merits, based on admissible

7
8   facts submitted into evidence, governed by the law and the venue of the Action, rather

9   than through technical challenges to the pleadings. When deciding a 12(b)(6) motion,

10  the Court must accept as true all well-pleaded factual allegations of the complaint and

11
12  draw all inferences in favor of the pleader. See <u>City of Los Angeles v. Preferred</u>

13  <u>Communications, Inc.,</u> 476 U.S. 488, 493 (1986); <u>Mills v. Polar Molecular Corp.,</u> 12

14  F.3d 1170, 1174 (2d Cir.1993). The complaint is deemed to include any written

15
16  instrument attached to it as an <u>exhibit</u> or any statement or <u>documents incorporated in it</u>

17  <u>by reference.</u> <u>Cortec Indus., Inc. v. Sum Holdings L.P.,</u> 949 F.2d 42, 47 (2d Cir.1991).

18  The Court also ought to consider matters of which <u>judicial notice is given</u>. <u>Leonard T. v.</u>

19  <u>Israel Discount Bank of New York</u>, 199 F.3d 99, 107 (2d Cir.1999). The general rule in

20
21  appraising the sufficiency of a complaint for failure to state a claim is that a complaint

22  should not be dismissed "[u]nless it appears beyond doubt that the plaintiff can prove

23  no set of facts in support of his claim which would entitle him to relief." <u>Conley v.</u>

24  <u>Gibson</u> (1957), 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2LEd 2d 80; <u>Seymour v. Union</u>

25  <u>News Company</u>, 7 Cir., 1954, 217 F.2d 168;

26
27          It is "only the extraordinary case in which dismissal is proper" for failure to

28  state a claim. <u>United States v. City of Redwood City</u>, 640 F.2d 963, 966 (9th Cir.

1981). A court may dismiss a complaint as a matter of law only if the complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984). When ruling on a motion to dismiss, the court must assume that the complaint's factual allegations are true and should construe all inferences from them in the non-moving party's favor. <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002); <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990).

## III.    OBJECTION TO DEFENDANTS EXHIBITS TO MOTION

Plaintiff has incorporated "FRE 801, 802, 1001 and 1002" (SAC ¶213) and has informed this court before that Defendants are filling unofficial copies as evidence under this verified action (Doc. 56 at 2, ln 6). Counsel, once again, defiant to court procedure, have attached unofficial (stamped on their faces) pages as evidence. Even though attaching *official* copies of documents from the public record is procedurally correct it does not warrant its contents, SAC at ¶29. Plaintiff specifically disputes the validity of the contents of the *unofficial* documents contained in Defendants' Exhibits, as the Court may only take judicial notice of their existence, not as to their contents. "Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." <u>Joslin v. HA.S. Ins. Brokerage</u>, 184 Cal. App. 3d 369, 374 (1986). The fact that none of Defendants are mentioned in the DOT or the Adjustable Rate Note (the "Note") signed by Plaintiff precludes them from asserting them as non-related third parties, lacking material fact knowledge. Said Defendants may appear on some of the subject documents, but only

after the fraudulently signed and recorded assignment, as factually plead under (SAC, ¶31-34).

While courts can take judicial notice of public records, they do not take notice of the truth of matters stated therein. Love v. Wolf, 226 Cal. App. 2d 378, 403 (1964). In addition, "when judicial notice is taken of a document ... the truthfulness and proper interpretation of the document are disputable." Stor Media, Inc. v. Superior Court, 2017 Cal Ath 449, 457, fh. 9 (1999). Further, in Poseidon Development, Inc. v. Woodland Lane Estates, LLC, 152 Cal. App. 4th 1106 (2007), the court considered the scope of judicial review of a recorded document:

> [T]he fact [that] a court may take judicial notice of a recorded deed or similar document, does not mean it may take judicial notice of factual matters stated therein. For example, the First Substitution recites that Shanley 'is the present holder of beneficiary interest under said Deed of Trust.' By taking judicial notice of the First Substitution, the court does not take judicial notice of this fact because it is hearsay and it cannot be considered not reasonably subject to dispute. Id. at 1117 (citations omitted).

Therefore, the truthfulness of the contents of the recorded documents still remains subject to dispute. See StorMedia, supra 20 Cal.4th at 457, fn. 9. In the instant case, Defendants rely on several exhibits attached to their Motion to support factual contentions which they seek to inject into their pleadings as facts. For instance, Defendants rely on Exhibit A-D (Doc. 107-1) to support their position that Plaintiff took a loan and is now if default and somehow Defendants have an enforcement right over a security that they are not a part of. However, Plaintiff specifically disputes the validity and veracity of the Exhibits, especially pertaining to

Substitution of Trustee and Assignment of Interest to fictitious REMIC Trust, (SAC ¶36, 42, 44, 46-59). Plaintiff also posits that this is the precise type of hearsay that cannot be considered in the context of the Motion, as he has established an unrebutted record, Exhibits under SAC, that Defendants: are no party having enforcement rights under the DOT; have defaulted an Plaintiff's Offers to Pay, and; are barred by the statutes of limitation under Arizona Law (SAC ¶200).

Further Plaintiff respectfully asks this Court to take Judicial Notice of Doc 92 (Notice of Service of Discovery) and Exhibit "A", attached hereto and incorporated herein - ONE page Discovery Request served on Defendants through Counsel on 09/27/2014, as Ordered (Doc. 81), via USPS Certified mail # 70141820000019339011. The Discovery Request seeking to identify secured parties, under the purported security, and balance due remains unanswered to this day.

## IV.   CONTRA-ARGUMENTS

### A. Plaintiff has Sufficiently Plead Standing Action

Plaintiff is aware that BANA does not currently claim to hold any beneficial interest in his DOT and brings this Cause against Defendants to contest the validity of ReconTrust as trustee. Counsel shows lack of material-fact knowledge and claims that ReconTrust is still operational (Doc 107 at 7) despite the fact that the company has been *closed* for business, as shown through Texas tax and entity records, Exhibit "B" and "C" respectively, and California entity records, Exhibit "D", filed hereto and incorporated herein. In one of his final phone calls with the company, Plaintiff was

advised to cease communication because ReconTrust was *closing operations and is no longer his Trustee*, see Exhibit "E" for transcript of the phone call.

Plaintiff's is further aware that Arizona is a non-judicial foreclosure state and that Defendants are not required to show the Note before Trustee Sale. He does not use UCC to argue on the contrary but to show its relevance when ascertaining whether a party is a person entitled to enforce the note ("PETE") and thus applies in cases of non-judicial foreclosure. Hogan v. Wash. Mutual Bank, N.A., which Counsel relies on, decided that a deed of trust may only be enforced by, or on behalf of, a party entitled to enforce the obligation that a mortgage secures, Id. at 786 (SAC ¶67). Plaintiff is not merely claiming that Bank of New York Mellon ("BNYM") or SPS has to SHOW that they are holders of the Note but contesting that they ARE holders and otherwise lack authority to enforce the Note. The *Hogan* court suggests that validity of a foreclosure where the beneficiary does not possess the authority to enforce the note can be challenged, Id. at 783 ¶7-8. Transfer of PETE status is governed by the UCC (ARS Title 74) In re Connelly, 487 B.R. 230 (Bankr. D. Ariz. 2013), making it relevant here where plaintiff is arguing that the foreclosing Defendants were never transferred any beneficial interest or right to enforce pursuant to the UCC (ARS) and do not physically possess the Note (SAC ¶44, 45, 48, 50, 52).

Counsel is correct in that "a trustee has standing to hold a non-judicial trustee's sale by virtue of its status as a trustee" (Doc 107 at 5). The UCC becomes relevant when we take into consideration that: 1) only a valid beneficiary can appoint a trustee; 2) UCC Article 3 (ARS Title 47) governs the transfer of enforcement rights in regards

1  to a Note and only an entity which has properly been transferred the Note can be a
2  beneficiary under the DOT, and; 3) a trustee that has been appointed by an entity
3
4  which does has not been transferred the Note pursuant to UCC (and thus not a valid
5  beneficiary) is not a valid trustee with power to conduct Trustee Sale.

6       Counsel also alleges that Plaintiff cannot challenge the Assignment of the Deed
7
8  because he is unaffected by the transaction as a third party. Plaintiff is one of the three
9  "major parties in the [securitization] transaction" (Originator, Investor and Barrower)
10 – Asset Securitization, Comptroller Handbook, 1997[1]. Counsel fails to recognize that
11
12 Plaintiff is not simply challenging the validity for alleged signature fraud (SAC ¶31,
13 32) but on the basis that BNYM is not the current lawful beneficiary if the underlying
14 Note was not also transferred. Courts have oft cited that assignment of a mortgage or
15
16 trust deed without an assignment of the underlying Note is a nullity In re Veal, 450
17 B.R. 897 (B.A.P. 9th Cir. 2011), and further that a "third party may only challenge an
18 assignment if that challenge would render the assignment absolutely invalid,
19 ineffective, or void" Conlin v. Mortgage Electronic Registration Systems, Inc. (6th
20
21 Cir. 2013) 714 F.3d 355, 361, such by alleging the party was not also transferred the
22 Note[2].

23       Under Federal Rules of Evidence and Arizona "statutes, such as those
24
25 governing the authenticity of indorsements on commercial paper, the presumption of
26 authenticity is rebuttable, and the burden of proof shifts to the documents' proponent
27
   [1] See p 4, http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/assetsec.pdf
28 [2] See also, Slorp v. Lerner, Sampson & Rothfuss, No. 13-3402 (6th Cir. Sept. 29, 2014)
   (Where Plaintiff had standing to challenge Assignment when he contended the party did not
   also have the Note, which would render the Assignment void, not voidable).

when the opposing party challenges their authenticity" In re Connelly, 487 B.R. 230 at 244 (Bankr. D. Ariz. 2013). Plaintiff has presented evidence of another Assignment executed by Carmelia Boone with divergent signature (SAC ¶31, 32) and thus authenticity of his Assignment can be called into question.

Under ARS 33-807(A) and DOT, only a valid beneficiary can take non-judicial action to foreclose on a property. Thus, if the Assignment is not valid and lawfully executed, and void as a result of improper transfer of the underlying security instruments or no transfer of the Note at all, as Plaintiff has pled, then the Assignment damages Plaintiff by allowing Defendants to attempt to unlawfully commence Trustee Sale. Plaintiff further stands on his pleadings with case laws[1] regarding MERS (SAC ¶53-59) and contends that MERS did not have beneficial interest in the note to (purportedly) assign to BNY Mellon and seeing as such, the Assignment alone does not serve as admissible evidence that BNYM was ever transferred the note.

**B. Plaintiff has Sufficiently Plead Tort and Deceptive Consumer Practices with Respect to Foreclosure**

Plaintiff presents an application of his arguments in the first Cause of Action to violations specific to the Trustee Sale (SAC ¶74); this cause of action is to be construed as an unlawful attempted foreclosure claim[2]. These include that: (1) an Assignment of the Deed without the debt transfers no rights upon the Assignee Hill v.

---

[1] In re Weisband, 427 B.R. 13, at 20 (Bankr. D. Ariz. 2010), Bain v. Metropolitan Mortg. Group, Inc., 285 P.3d 34, 175 Wash. 2d 83, 175 Wash. 83 (2012).

[2] See White v. Aurora Loan Services, LLC, No. CV-14-1021-PHX-JAT (D. Ariz. Oct. 8, 2014)."In Steinberger, the Court held that a borrower in default may bring a claim if the borrower possesses a good faith basis to dispute the authority of an entity to conduct a trustee's sale 318 P.3d at 429-30, ¶41"

Favour, 84 P.2d 575, 578–79 (Ariz. 1938), (2) only a beneficiary which poses the right to enforce the note can appoint a trustee, DOT ¶24, and instruct a trustee to conduct a Trustee Sale, and only after a default has occurred ARS 33-807, and (3) Defendants are misrepresenting themselves and their capacity, in violation of FDCPA §807(2) & (3), with respect to non-judicial Trustee Sale, in violation of FDCPA §808(6) and ARS §33-420, and unlawfully attempting dispossession of private property. Further, recordation of an Assignment without proper transfer of underlying beneficial interest and subsequent Substitutions of Trustee ("SOT") and Notice of Trustee ("NTS") sale are in violations of ARS §33-420(A) (SAC ¶30). In Re MERS, 754 F.3d 772 (9th Cir. 2014) finds that "an action to clear title of a false or fraudulent document that asserts an interest in real property may be joined with an action for damages under § 33-420(A)," thus making Plaintiff's quite title claim viable.

This Cause also brings up claims against ReconTrust, which Counsel has left unrebutted. Namely: 1) that Recontrust furnished Plaintiff with an NTS more than a month after it was recorded, versus 5 days as required by ARS §33-809(C) (SAC ¶72); 2) that ReconTrust did not record a Notice of Cancellation of Trustee Sale and resignation as Trustee per Arizona law, ARS §33-813(F) and §33-818 (SAC ¶75).

### C. Plaintiff has Sufficiently Plead FDCPA Violations

Counsel is correct that in normal circumstances mortgagees and their servicers are not debt collectors under the FDCPA, but this is only "so long as the debts were not in default when taken for servicing" De Dios v. International Realty & Investments, 641 F.3d 1071, 1075 n.3 (9th Cir. 2011). Plaintiff respectfully asks this

1   court to take Judicial Notice of the decision of Hon. Diane Humetewa, 10/28/2014, in

2   this District Court, 2:14-CV-00615-DJH, Doc. 62, in which the court noted that "the

3

4   definition of debt collector pursuant to §1692a(6)(F)(iii) includes any non-originating

5   debt holder that their <u>acquired a debt in default or has treated the debt as if it were in</u>

6   <u>default at the time of acquisition.</u>" Plaintiff has laid out in the SAC the legal argument

7

8   and evidence as to why BANA is a debt collector within the scope of the FDCPA

9   after acquiring defaulted debt, with Exhibits in which BANA notifies Plaintiff in its

10  correspondence it is a debt collector, (SAC ¶78-81) and some of the offenses, which

11

12  Counsel has not refuted, that it committed under the act (SAC ¶82-87).

13       Plaintiff has also pled that ReconTrust is not exempt under the Act and that the

14  Trustee Sale is an attempt to collect a debt (SAC ¶94-101). Various circuit and district

15  courts within the 9th circuit have held that enforcing a security interest can be an act of

16

17  debt collection under the FDCPA, and that trustees can function as debt collectors

18  when conducting a Trustee Sale. <u>Kaltenbach v. Richards</u>, 464 F.3d 524 (5th Cir. 2006),

19  <u>Wilson v. Draper & Goldberg</u>, PLLC, 443 F.3d 373 (4th Cir. 2006), <u>PIZAN v. HSBC</u>

20  <u>BANK, USA, NA</u>, No. C11-26Z (W.D. Wash. June 23, 2011), <u>Vargas v. HSBC</u>

21

22  <u>BANK USA, NA</u>, No. 11-cv-2729 BEN (RBB) (S.D. Cal. Sept. 10, 2012).

23       Plaintiff has alleged that the debt was acquired and ReconTrust substituted as

24  trustee after default, and further that ReconTrust satisfies the definition in FDCPA §

25

26  803a(6) (SAC ¶95). In fact, in the first NTS that ReconTrust filed, Instrument

27  #20110706281 in Maricopa County Recorder, it gave notice reading "this firm is

28  attempting to collect a debt" and that the debt could be disputed within 30 days of

receipt (FDPCA notice). After a Notice of Cancellation of Sale was recorded, Instrument #20130250732 in Maricopa County Recorder, and BANA sold off the debt to SPS for servicing, a new NTS, Instrument #20130250732 in Maricopa County Recorder, was recorded by ReconTrust under the same Trustee Sale number but without the disclosure; yet another violation of FDCPA § 807(7) & (8).

### D. Plaintiff has Sufficiently Plead Security Violations

In Glaski v. Bank of America, 218 Cal. App. 4th 1079, 160 Cal. Rptr. 3d 449 (Ct. App. 2013), the court found that "transfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement."[1] As Glaski showed, an attempted assignment is void, not voidable, without timely transfer of the underlying Note, which Plaintiff contends is the case here seeing as the only Assignment is executed after cut-off date (SAC ¶116-119). Because Defendants are attempting to foreclose in the name of a Trust, violations of the PSA are not immaterial and would cause Plaintiff to suffer damages. If Plaintiff's mortgage was not properly transferred into the Trust pursuant to New York Trust Law and the terms of the PSA (SAC ¶114-120, 129-131 and Doc. 53), then ReconTrust, under the auspices of BANA and now SPS, has been trying to conduct a Trustee Sale under color of title for a Trust which does not have a valid interest in Plaintiff's DOT. Being that the Assignment was signed and recorded after the cut-off date serve as counterevidence.

---

[1] See also, In Re Salividar, No. 11-10689 (Bankr. S.D. Tex. June 5, 2013) and Aurora Loan Servs. LLC. v. Scheller, 2014 N.Y. Slip Op 31416 (Sup. Ct. 2014).

### E. Plaintiff has Sufficiently Plead Anticipatory Repudiation

Plaintiff brings BANA under the Tender Rule because he offered tender of payment to any <u>potential</u> PETE under UCC §3-306 and ARS §47-3606. A records search in the MERS database of the MIN # listed on Plaintiff's DOT and Note show BANA as current servicer, Exhibit "F", attached hereto and incorporated herein, as does a correspondence from BNYM's Property Inquiries Department (Exhibit "W" under the SAC). Plaintiff respectfully asks this court to take Judicial Notice: 1) of his Initial Disclosures, Exhibit "G", attached hereto and incorporated herein, disclosing the names of his business partners who <u>offered to pay the entire amount due</u> on his mortgage so that he would go back to managing Pro Shade International, LLC, and; 2) <u>Steinberger v. McVey ex rel</u>., Appl. WL333575, p. 13, 2014 as Plaintiff was never unwilling to pay what was due under the Note but nonetheless remained reluctant to pay to <u>purported securityholders</u> with unauthenticated accounting (SAC ¶130-132).

### F. Plaintiff has Sufficiently Plead Ultra Vires-Contractual Fraud

Defendants failed to recognize the merits of Plaintiff claim construing: 1) *lack of consideration* in the inception of the purported contract, and; 2) *table-funded-loan* (SAC ¶148-152), while derailing this court with unrelated quotation of cases, interpolating a concept of "vapor money" – a concept Plaintiff never plead.

### G. Plaintiff has Sufficiently Plead RICO

As to evaluation of motions concerning Fraud claims governed by Fed. R. Civ. P. 9(b), the inquiry is not whether the allegations contain an evidentiary level of *fine* detail, but simply whether they "provide notice of the 'precise misconduct' with

which defendants are charged," so Defendants can respond meaningfully to the complaint, "and to prevent false or unsubstantiated charges." <u>Serville Indust. Machinery v. Southmost Machinery</u>, 742 F.2d 786, 791 (3d Cir. 1984). Thus Plaintiff need not to "plead the 'date, place or time' of the fraud" in order to satisfy Rule 9(b). See, e.g., <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir.1999).

The heightened pleading standard, as argued by Defendants (Doc. 107 at 14), for fraud claims is relaxed where factual information is peculiarly within defendant's knowledge or control <u>E & E Co., Ltd. v. Kam Hing Enterprises, Inc.</u>, 429 F.App'x 632, 633 (9th Cir. 2011) (citing <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989)). As a result, any analysis of the SAC under Rule 9(b) would be subject to the relaxed standard that is applied to claims where evidence "lies within [Defendants'] exclusive possession" and specific citation to each instance of fraudulent conduct would not be required until this court compels Defendants to discovery[1].

In addition, Plaintiff has identified with sufficient particularity the who, the what and the how, the when, and the where of Defendants' violative conduct. The "who" and the "what" is specified as the SAC identifies each Defendant and explains their collective coercive roles in the alleged attempt to steal Plaintiff's house. The "how" and the "where" is identified by false and misleading communication and recordation of false notices in Maricopa County Recorder's Office (Instrument # 20130709557) in violation of ARS (SAC ¶¶14, 26-34). The facts plead in the SAC are

---

[1] <u>United States ex rel. Lee v. SmithKline Beecham, Inc.</u>, 245 F.3d 1048, 1052 (9th Cir. 2001).

1  sufficient to survive the Motion and put Defendants on notice of the representations at

2  issue in this case.

### H. Plaintiff has Sufficiently Plead Quite Title Claim

Defendants' quite title arguments are simply a space fillers not related to Plaintiff's verified complaint, asserting fallacy such as: "Dodev has not pled that he has paid off the loan" (Doc. 107 at 15, ln 11); "Dodev may not rely on the bankruptcy proceeding to support this claim" (Id, ln 18)—amongst other never asserted allegations—culminating in; "Dodev has not satisfied the unpaid balance remaining on his loan" (Id, at 16, ln 6).

While indulging in their fantasy, Defendants fail to provide an authenticated accounting showing default on the purported security (SAC ¶¶130, 131), balance due (Id, ¶132), to whom is the balance due and so on (see initial discovery request, Exhibit "A" attached hereto). Further, Defendants did not rebut or provided any law that will counterbalance the lawfully executed *tender* under ARS § 47-3603 (Id, ¶135-142), rendering the alleged loan paid [set off].

### I. Plaintiff has Sufficiently Plead Declaratory and Injunctive Relief

Counsel ignores SAC ¶31 and Exhibit "I" of SAC in which Plaintiff presents evidence of a signature from Carmelia Boone, acting under the same capacity for MERS, which is distinct from the signature on Plaintiff's Assignment, as evidence of signature fraud in execution of the Assignment. This calls into question whether Carmelia Boone in fact signed as a material fact witness or if this is just an example of robo-signing. Misrepresentation in the Assignment is material to Plaintiff, as pled

under Point A, because it has allowed ReconTrust to attempt foreclosure in the name of BNYM, which was purportedly assigned the beneficial interest. Defendants argue that "MERS assigned the DOT to BONY [BNYM]" (Doc. 107 at 14, ln 22), a questionable assignment as challenged under the SAC, ¶27-36, and void (Id ¶53-59).

The fraudulent contact of BANA and ReconTrust has been inferred with unequivocal arguments throughout the SAC and Plaintiff respectfully ask this court to compel Defendants to discovery where they will be granted an opportunity to prove that the alleged DOT and the Note are transferred to the purported REMIC Trust or to order the said documents to be expunged from the office of the County Recorder. Plaintiff respectfully asks this court to take Judicial Notice of Exhibit "W" under Doc. 96-1, where the Trust acknowledges that they "does not physically own the loan or the property" – axiomatic by the PSA as plead by Plaintiff in Doc. 53, attached as judicial cognizance to his SAC. If the purported Trust does not own the loan and ReconTrust has been closed, does that leave SPS as Mortgagee, Trustee and Servicer at the same time (judge, jury and an executioner?) Is in that an example of a mere debt collector, acting under the color of law? An answer Plaintiff sought for 5 years before filing this verified complaint.

## V.    CONCLUSION

Counsel has accepted representation for Defendants and allegedly does not know that their client, ReconTrust, has closed operation or summarily misrepresents the facts to this court, bedeviling Plaintiff as a free-loader (occupying his 'estate' rent-free for several years) (Doc. 107 at 4, ln 15). A simple public search would show that

1    Plaintiff owns or co-own several companies in the state of Arizona and his passion to

2
     find the right party entitled to receive a payment under the Note has availed to
3

4    millions of dollars of lost revenue and grave deterioration of his health (see Plaintiff

5    Initial Disclosures, Exhibit "G"). Under a fear that he would physically perish before

6    seeing the end of his quest and with the financial support of his partner he even

7
8    offered a full payment and his offer was rejected.

9            Plaintiff alleges that all factual information needed to assure speedy trial is

10   peculiarly within defendant's knowledge and control and respectfully requests this

11
     Court to compel Defendants to discovery, overrule and dismiss the Motion with
12

13   prejudice.

14                        Respectfully submitted on this 9th day of January, 2015.

15

16

17                        _____
                          **Ivaylo Tsvetanov Dodev**, Plaintiff in *Pro Se*
18                        **6312 South 161st Way, Gilbert, Arizona**
                          **(480) 457-8888 Phone**
19

20

21

22

23

24

25

26

27

28

1
2
## OBJECTION TO COUNSEL'S CERTIFICATE OF CONFERRAL

3
4
Counsel filed a Certificate of Conferral, alleging that he "sent Plaintiff a meet and confer letter ... but received no response." Defendants' letter, received by

5
6
Plaintiff on November 14, 2014, <u>four days after their response to his SAC was due</u>

7
(before their motion for first extension of time, Doc. 98, was granted) is hardly a

8
timely good faith attempt to *meet and confer* but rather delay tactic used several

9
10
times under this action. It has been over a year since Plaintiff filed this Verified-

11
Action-at-Law against said Defendants and Plaintiff hereby declares that he has not

12
received a single phone call to discuss the merit of his complaint and only the

13
aforementioned, untimely, letter that is a rough draft on their Motion to Dismiss.

14
15
Further, Plaintiff declares that no other party, joint under this action, has made

16
any attempt to meet and confer besides counsel for defendant Real Time Resolutions,

17
Inc. ("RTR"). Upon series of conferral meetings, scrutinizing the merits of the SAC,

18
19
and upon an execution of a settlement agreement, RTR has released its security

20
interest in its Deed of Trust recorded at Maricopa County Recorder's Number

21
20070033621 and has been dismissed from this action with prejudice (Doc. 112).

22
I declare under penalty of perjury that the foregoing is true and correct,

23
24
25
26
**Ivaylo Tsvetanov Dodev, Plaintiff**

27
28

## CERTIFICATE OF SERVICE

**ORIGINAL** and **ONE COPY** is hand delivered to The United States District Court for the District of Arizona this 9th day of January, 2015. The undersigned, Ivaylo Tsvetanov Dodev, certifies that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:, RECONTRUST, NA, BANK OF AMERICA, NA, SELECT PORTFOLIO SERVING, NA, and THE BANK OF NEW YORK MELLON.

**FURTHER,** a copy of the telephone transcript along with the original audio file has been sent to the chamber of the Hon. Douglas L. Rayes and the attorney of record for all defendants via USPS First Class Mail, this 9th day of January, 2015.

**Ivaylo Tsvetanov Dodev, Plaintiff**
**6312 South 161st Way, Gilbert, Arizona**
**(480) 457-8888 Phone**

**Ivaylo Tsvetanov Dodev,**

**v.**

**RECONTRUST COMPANY, N.A., ET AL**

**Case No. CV-13-02155-PHX-DLR**

# EXHIBIT INDEX TO

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS RECONTRUST
COMPANY, N.A. AND BANK OF AMERICA, N.A.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT
TO FED. R. CIV. P. 12(b)(6)**

| EXHIBITS | DESCRIPTION |
|---|---|
| A | Preliminary Discovery |
| B | Texas Tax Record showing ReconTrust not operational |
| C | Texas Entity Record showing ReconTrust not operational |
| D | California Entity Record showing ReconTrust not operational |
| E | Phone Transcript between Plaintiff and ReconTrust confirming that ReconTrust are not his Trustee and are not in the Trusteeship business anymore |
| F | MERS website shows BANA as a Plaintiff Trustee |
| G | Plaintiff's Initial Disclosures |

# Exhibit "A"

INITIAL DISCOVERY REQUEST

1.  Provide the name of the defendant(s) you are legally representing. (Pseudo representation will be challenged.)
2.  Name the party, if any, who has given lawful money, as defined under the Coinage Act of 1792, to Plaintiff.
3.  Name the party, if any, who has given money (legal tender-medium of exchange), as defined under Uniform Commercial Code, ("UCC") and Arizona Revised Statutes, to Plaintiff.
4.  Name the party who is possession of lawfully executed contract with Plaintiff and will depose a lawful claim under this verified action of law.
5.  Name the party, if any, who has physical possession of the Adjustable Rate Note and the Deed of Trust.
6.  Name the party that is a holder in due course (as defined under UCC § 3-302) of the Adjustable Rate Note and the Deed of Trust.
7.  State the physical location of the original Adjustable Rate Note and Deed of Trust.
8.  Have the Adjustable Rate Note and the Deed of Trust been transferred to a Mortgage Trust (securitized)?
9.  Name the Mortgage Trust.
10. When, if ever, were the Adjustable Rate Note and the Deed of Trust transferred to the Mortgage Trust?
11. Did the Mortgage Trust give value for the Adjustable Rate Note and the Deed of Trust?
12. Provide admissible evidence of the value given.
13. Were the Adjustable Rate Note and the Deed of Trust delivered to the Mortgage Trust?
14. Provide admissible evidence of delivery of the Adjustable Rate Note and the Deed of Trust.
15. Were the Adjustable Rate Note and the Deed of Trust delivered while in default (dishonor)?
16. Did the Mortgage Trust receive the Adjustable Rate Note and the Deed of Trust without knowledge of borrower defenses?
17. Provide Assignment and Assumption Agreements of the transfer.
18. Provide evidence of default of the security – if the Adjustable Rate Note and the Deed of Trust are securitized.
19. Is any money due on the Adjustable Rate Note and the Deed of Trust?
20. To whom is the money due?
21. Name the party that will receive the money if Plaintiff's house is sold in an auction.
22. Name all insurance companies and the amount they paid on Plaintiff's Adjustable Rate Note and the Deed of Trust.

# Exhibit "B"



# Franchise Tax Account Status

### As of: 12/30/2014 06:51:48 PM

**This Page is Not Sufficient for Filings with the Secretary of State**

| RECONTRUST COMPANY | |
|---|---|
| Texas Taxpayer Number | 12606144488 |
| Mailing Address | PO BOX 4281<br>WOODLAND HLS, CA 91365-4281 |
| Right to Transact Business in Texas | FRANCHISE TAX ENDED |
| State of Formation | |
| Effective SOS Registration Date | Not Registered |
| Texas SOS File Number | Not Registered |
| Registered Agent Name | Not on file |
| Registered Office Street Address | |

Exhibit "C"

## TEXAS SECRETARY of STATE
## NANDITA BERRY

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Brief-ees | Logout

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 800782004 | **Entity Type:** | **Application for Name Reservation** |
| **Original Date of Filing:** | March 5, 2007 | **Entity Status:** | **Expired (Name Reservation)** |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | |
| **Duration:** | Non-Perpetual | **Expiration Period:** | |

**Name:** ReconTrust Company
**Address:** [ADDRESS NOT PROVIDED]

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|
| **Name** | | **Address** | | | **Inactive Date** |
| [No Name Provided] | | [ADDRESS NOT PROVIDED] | | | |

[ Order ]  [ Return to Search ]

Instructions:
● To place an order for additional information about a filing press the 'Order' button.

**Exhibit "D"**



California Secretary of State Debra Bowen

**Secretary of State**        **Administration   Elections   Business Programs   Political Reform   Archives   Registries**

**Business Entities (BE)**

Online Services
- **E-File Statements of
  Information for
  Corporations**
- **Business Search**
- **Processing Times**
- **Disclosure Search**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information**
(annual/biennial reports)

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- **Business Resources**
- **Tax Information**
- **Starting A Business**

Customer Alerts
- **Business Identity Theft**
- **Misleading Business
  Solicitations**

## Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Friday, December 26, 2014. Please refer to **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| Entity Name: | RECONTRUST COMPANY, INC. |
|---|---|
| Entity Number: | C3518750 |
| Date Filed: | 11/02/2012 |
| Status: | DISSOLVED |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 14111 FREEWAY DR #300 |
| Entity City, State, Zip: | SANTA FE SPRINGS CA 90670 |
| Agent for Service of Process: | MIGUEL ZAPIEN |
| Agent Address: | 14111 FREEWAY DR #300 |
| Agent City, State, Zip: | SANTA FE SPRINGS CA 90670 |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search   New Search   Printer Friendly   Back to Search Results**

**Privacy Statement** | **Free Document Readers**
Copyright © 2014   California Secretary of State

# Exhibit "E"

Ivaylo Tsvetanov Dodev,

c/o 6312 South 161st Way
    Gilbert, Arizona
    (480) 457-8888 Phone
    (480) 457-8887 Facsimile
    dodev@hotmail.com

*Pro Se*

**FILE ON DEMAND**
**FOR THE RECORD**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Ivaylo Tsvetanov Dodev,** | **Case No.  CV-13-02155-PHX-DLR** |
| **Plaintiff,** | **Transcripts of Phone Call Between Plaintiff and Recontrust Company, NA. on 04-17-2014** |
| **v.** | |
| **RECONTRUST COMPANY, N.A., ET AL** | **(Hon. Douglas L. Rayes)** |
| **Defendants.** | |

Call Date: 04-17-2014

    RECONTRUST REPRESENTATIVE (REPRESENTATIVE):

[inaudible]…loan number

    IVAYLO DODEV (PLAINTIFF): Yes, good morning, it is 201175989

    REPRESENTATIVE: Can I have your full name and your relationship to the property please?

    PLAINTIFF: Ivaylo Dodev, I am the owner.

    REPRESENTATITVE: How can I help you sir?

    PLAINTIFF: Well, I see that there is no Notice of Trustee Sale recorded on the, on the house.

1 | Page

1    REPRESENTATITVE: We're no longer handling your loan anymore, sir, you

2    will need to contact your lender.

3
4    PLAINTIFF: Well who is my lender?

5    REPRESENTATITVE: Select Portfolio Servicing

6    PLAINTIFF: And how do you know they are a lender, because they are not a

7
8    party of interest? How do you...where do you have this information from?

9    REPRESENTATITVE: In my systems.

10   PLAINTIFF: Well Select Portfolio does not make loans.

11   REPRESENTATITVE: That's what I have in my system, sir, you will need to

12
13   contact them.

14   PLAINTIFF: Well, I'm contacting you because you are the purported trustee,

15   recorded under the country record.

16
17   REPRESENTATITVE: Sir, we are no longer handling your loan anymore.

18   Everything is closed and cancelled.

19   PLAINTIFF: So if it's closed and cancelled, why it's not recorded? Now I am

20
21   asking for a specific reason before I press actions against you, why it's not recorded?

22   REPRESENTATITVE: Sir, you will need to contact you lender, Recontrust

23   Company is no longer handling any sale information anymore. We are no longer

24   handling foreclosure sales, we are closing down. So we don't handle any loan

25
26   information anymore, you will need to contact your lender.

27   PLAINTIFF: No I heard you very well that you are closing down, and you are

28   doing favor to the society and people of America, the question is...

2 | Page

1  REPRESENTATITVE: [interruption...inaudible question]

2  PLAINTIFF: Yes...yes.

3
4  REPRESENTATIVE: What?

5  PLAINTIFF: Arizona Revised Statutes 33-813 says, under F, (quoting) "if the

6  trust deed is paid in full or if the sale is not is not held, or is not properly postponed,

7
8  pursuant to this chapter, the Trustee shall record cancellation of the Notice of Sale. A

9  cancellation of the Notice of Sale shall be recorded in the office of the county recorder

10  in which the Notice of Sale was recorded." So the question is, did you record a Notice

11  of [Cancellation of] Sale?

12
13  REPRESENTATIVE: Sir there is nothing that I can help you with.

14  PLAINTIFF: Well if you cannot help me, give me your supervisor.

15  REPRESENTATIVE: The supervisor is not available until Monday...We're

16
17  closing down, sir, there's nothing that we can help you with.

18  PLAINTIFF: No, no, I understand that you are closing down and, as I said, you

19  are doing a favor to society, that's very good.

20
21  REPRESENTATIVE: Sir, is there anything else you can assist you with?

22  PLAINTIFF: Yes, why are you violating the law of Arizona and you have not

23  recorded a cancellation notice?

24
25  REPRESENTATIVE: Sir, [inaudible], you will need to contact your lender.

26  PLAINTIFF: Well, you are my purported trustee. You are trying to steal my

27  house, I'm contacting you.

28

3 | Page

REPRESENTATIVE: [inaudible] sir, not anymore. I am letting you know we are not the trustee of your loan anymore.

PLAINTIFF: Well you cannot let me know over the phone, which by the way is recorded for quality assurance, because I want to be able to play it to the judge, when I press charges.

REPRESENTATIVE: Sir, you will need to contact your lender, that's all the information that I can provide you. Anything else?

PLAINTIFF: First, you do not know who the lender is.

REPRESENTATIVE: Select Portfolio Servicing

PLAINTIFF: Well, Select Portfolio Services, they do not make loans. No, do you know what a lender stands for?

REPRESENTATIVE: They're the ones who were foreclosing on your property, sir, you will need to contact them Mr. Dodev.

PLAINTIFF: Well how are they going to foreclose when then recorded Notice of Sale, it states you are trying to foreclose on my house?

REPRESENTATIVE: Sir, I don't know, because…[inaudible, interrupted by Plaintiff]

PLAINTIFF: Well that's the problem, because none of you knows anything

REPRESENTATIVE: You need to contact Select Portfolio Services sir, they're the ones who…[inaudible, interrupted by Plaintiff]

PLAINTIFF: OK, what is the phone number of your attorney that I can speak to and clear that issue

1   REPRESENTATIVE: There is not attorneys in charge here.

2   PLAINTIFF: So there is no attorney, you are not my trustee, you're saying...is

3

4   that correct?

5   REPRESENTATIVE: Yeah sir, that is correct?

6   PLAINTIFF: And you were never legally appointed as my trustee, is that

7

8   correct?

9   REPRESENTATIVE: Sorry sir, did you say that you were recording the call?

10   PLAINTIFF: Yes.

11   REPRESENTATIVE: I will have to disconnect the call.

12

13   PLAINTIFF: Well you don't have to disconnect because it's my right to record

14   it.

15   REPRESENTATIVE: No sir, it's not a right to record the call so I will have to

16   disconnect it.

17

18   PLAINTIFF: Well you have to again speak to your attorney and see that

19   Arizona and California, where you are located, is one party consent. So I can record the

20   call.

21

22   REPRESENTATIVE: No sir, I cannot continue with the call anymore. Thanks

23   for calling Recontrust. [hangs up]

24

25

26

27

28

5 | Page

.

**Exhibit "F"**

 **Process Loans, Not Paperwork™**

www.mers-servicerid.org

**1 record matched your search:**

MIN: 1000392-6531180433-2   Note Date: 12/12/2006       MIN Status: Inactive

Servicer:   Bank of America, N.A.                  Phone: (800) 669-6607
                 Simi Valley, CA

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

_____

Return to Search

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

Copyright© 2012 by MERSCORP Holdings, Inc.

Exhibit "G"

U.S. Certified Mail: 7 0141 8200001933 9011

**Ivaylo Dodev**
**6312 South 161st Way**
**Gilbert, AZ 85298**

**September 27th, 2014**

**TO:**
**Kim R. Lepore, Esq.**
**Wright, Finlay & Zak, LLP**
**18444 N. 25th Ave., Suite 420**
**Phoenix, AZ 85020**
**Attorney for Defendants Select Portfolio Servicing, Inc.  Et. Seq.**

**Sean K. McElenney, Coree E. Neumeyer, Eric M. Moores**
**Bryan Cave, LLP**
**Two North Central Avenue, Suite 2200**
**Phoenix, AZ 85004**
**Attorneys for Defendants ReconTrust Company N.A., Bank of America, N.A., and Brian T.**
**Moynihan, Et. Seq.**

> **Re: No. CV-13-02155-PHX-DLR**
> **Defendants: ReconTrust Company, NA., et al.**
> **INITIAL DISCOVERY REQUEST, and**
> **INITIAL DISCLOSURE STATEMENTS**

**To Defendants through Counsel,**

**This letter construes a service of process of initial discovery request under the aforementioned case, which will assist the parties with finalizing and filing a Joint Discovery Plan with the Clerk, under Rule 26(f). It should not be erroneously interpret as a final request for discovery, depositions, interrogatories, production of documents or admissions. Those dates will be scheduled during the 26(f) meeting, which all parties are advised to attend or risk estoppel of their right to participate in formulation of the plan.**

**Mindful of the deadline set by the Court to file the plan, October 14, 2014, and after receiving no response to my initial letter to you, sent September 9, 2014 and delivered September 10, 2014, I am proposing the following order of conferral:**

**All parties should make a good faith effort to speak to each other on October 1, 2014 at 11AM via telephonic conference and if all possible to meet in person [by] October 7, 2014 to finalize the plan.**

This initial discovery letter consists of uniform questions sent to all parties. Parties should reply only to the questions that are relevant to them under penalty of perjury under the laws of the state of Arizona and the united States of America. Motion for leave of court will follow if no good faith effort is made from all parties to answer to the preliminary initial discovery questions.

<u>Please find attached my Initial Discovery Request,</u> and
<u>Initial Disclosure Statements</u>

Sincerely,

Ivaylo Dodev

Ivaylo Tsvetanov Dodev,

c/o 6312 South 161ˢᵗ Way
    Gilbert, Arizona
    (480) 457-8888 Phone
    (480) 457-8887 Facsimile
    dodev@hotmail.com

*Pro Se*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Ivaylo Tsvetanov Dodev,** | **Case No. CV-13-02155-PHX-DLR** |
| **Plaintiff,** | **PLAINTIFF'S RULE 26(A)(1) INITIAL DISCLOSURES** |
| **vs.** | |
| **RECONTRUST COMPANY, N.A., ET AL** | |
| **Defendants.** | **Hon. Douglas L Rayes** |

Pursuant to Federal Rule of Civil Procedure 26(a)(1), I (the "Plaintiff") hereby submit the following initial disclosures:

**I. Witnesses.** The name, address, and telephone number of each individual likely to have discoverable information that may support my claims, and the information they possess (unless they will be used solely for impeachment):

A. Individuals associated with Plaintiff:

1.     Victoria Dodev
       2515 K St NW, Apt. 110
       Washington, DC 20037
       (480) 290-3577 Phone

Plaintiff's daughter, fully briefed on the case and authorized to speak for Plaintiff AND/OR retain counsel in case his health condition rapidly deteriorates – as he currently exhibits such symptoms.

2.      Nina Dodev
        6312 South 161st Way
        Gilbert, Arizona
        (480) 209-7733 Phone
        Plaintiff's wife.

3.      Jonathan Dodev
        6312 South 161st Way
        Gilbert, Arizona
        (480) 290-3788 Phone
        Plaintiff's son.

        B. Individuals having factual knowledge of Plaintiff's businesses, social behavior, family relations, community outreach, loss of affection, health/mental status, alcohol abuse/dependency before and after years 2009 till present time.

1.      Rabbi Mendy Deitsch
        4051 West Harrison St.
        Chandler, Arizona 85226
        (480) 650-8051 Phone

        Information includes: Knowledge of Plaintiff's conduct and behavioral changes before and after 2009 including but not limited to his financial and moral support to the community; annual community activities on his ranch; family counselling, etc.

2.      Antoinette and Ray Engelke
        8331 Sun Country Drive
        Elizabeth, Colorado 80107
        (303) 656-7772 Phone
        (303) 656-7782 Phone

Information includes: Knowledge of Plaintiff's family over 10 years and witnessing of Plaintiff's behavioral changes, marginalizing himself from friends and business clients, alcohol-abuse, etc. As business clients, the Engelke's have personal knowledge of the way Plaintiff has conducted his business prior to 2009.

3.    Marcia and Yehuda Gur-Arie
      4139 West Victoria Lane
      Chandler, Arizona 85226
      (480) 235-0005 Phone
      (612) 986-9550 Phone

Information includes: Knowledge of Plaintiff's family and his conduct and behavioral changes before and after 2009, including but not limited to his support to the community; annual community activities on his ranch; ostracizing himself from the community and most friend; not attending to his business; alcohol abuse, etc.

4.    Ronald Gindick
      24215 South 148th Street
      Chandler, Arizona 85249
      (480) 895-6277

Information includes: Knowledge of Plaintiff's family over 10 years, especially the years prior to 2009 and witnessing of Plaintiff's behavioral changes, marginalizing himself from friends and business clients, showing hostility to friend, etc.

5.    Garret Hancock
      Monument Homes, General Contractor
      2546 East Calle De Flores
      Gilbert, Arizona 85298
      (480) 265-6511 Phone

Information includes: Knowledge of Plaintiff's conduct and behavioral changes before and after 2009 as a business client.

6.    John Lavin
      Unknown address at the moment

        Information includes: As his manager between 2002 and 2004, knowledge of Plaintiff as an employee, having extended knowledge of his level of comprehension and intellectual abilities to assimilate and implement new information, teamwork abilities, and individual qualities, and being able to attest that Plaintiff was employee of the year. Continued knowledge of Plaintiff as entrepreneur until 2009 when he marginalized himself from friends and acquaintances and marginalized.

        C. Individuals having factual knowledge of Plaintiff's business operation prior to 2009, as co-owners of Pro-Shade International, LLC, who offered to furnish Plaintiff with $800,000 to assist him in tendering the funds needed to pay off his obligation on the security [tender rule]. The Good Faith Offers to Pay that Plaintiff sent to purported lenders and creditors, under the tender rule, were to be fulfilled through these funds.

1.    Dr. Efstratios N. Soubassakis, C.E.M.
      Dr. Suhai Qi
      Private, Athens, Hellas

2.    Vassilis Bouyoukos
      Private, Athens, Greece

        D. Individuals, MEDICAL PROFESSIONALS, having factual knowledge of Plaintiff's medical condition: loss of sight; loss of hearing; loss of memory; electrical brain "zaps"; high-blood pressure; sleep apnea; loss of coordination and so on:

1.    Dr. Ahtisham Shakoor, MD
      Interventional Cardiology
      1850 West Frye Road, Suite 101
      Chandler, Arizona 85224
      (480) 535-8314 Phone

      Information includes: Plaintiff's cardiologist from 2009, after being treated in

the ER with heart attack symptoms.

2.    Dr. Maulik B. Shah, MD
      5110 Warner Road, Suite 100
      Phoenix, Arizona 85044
      (480) 753-1459 Phone

      Information includes: Plaintiff's otolaryngologist. Clinically Plaintiff has lost

his left ear hearing.

3.    Dr. Jeffrey Lee Shy MD
      Neurological Physician
      726 N Greenfield Road, Suite 110
      Gilbert, Arizona 85234
      (480) 834-8885 Phone

      Information includes: Plaintiff's is currently part of ongoing medical

evaluations related to stroke, memory loss, loss of coordination, inability to focus and

lack of balance.

4.    Dr. Jeannine Morrone-Strupinsky, Ph.D., ABPP
      Clinical Neuropsychology
      3115 South Price Road
      Chandler, Arizona 85248
      (480) 855-4011

      Information includes: Plaintiff's neuropsychologist. Loss of memory, lack of

concentration, disorientation, lack of balance and so on.

5.    Dr. Florinela Oprescu, M.D.

5|Page of Plaintiff's Initial Disclosures

Gastroenterology
Cigna Healthcare
4001 E Baseline Rd Suite 107
Gilbert, Arizona 85234
(480) 632-4060 Phone

Information includes: Plaintiff's was diagnosed with ulcers during 2009-2010 and is on medication ever since.

6.   Dr. Jigna Patel, M.D.
     Bella Vista Infernal Medicine
      2680 S Val Vista Drive
     Gilbert, Arizona 85295
     (480) 899-0311 Phone

Information includes: Treating Plaintiff for skin rash since 2009.

**II. Documents and things.** Copies, or descriptions by category and location, of all documents, electronically stored information or things I have in my possession or control that I may use to support my claims (unless they will be used solely for impeachment):

A. Copies and Original of all documents used under the pending action, unless already surrendered to the DISTRICT COURT OF ARIZONA as exhibits:

Ivaylo Tsvetanov Dodev – Plaintiff
6312 South 161st Way
Gilbert, Arizona
(480) 457-8888 Phone

Information included: All good faith notices to DEFENDANTS to prove their claims, OFFERS TO PAY, notices to sue, rescission of signature under TILA, TENDER documents (offers, default letters), fraud notices, common law notices, certified letters receipts, process service affidavits, etc. are stored in Plaintiff's house, on the above address.

6|Page of Plaintiff's Initial Disclosures

B. Electronically stored information (media):

Ivaylo Tsvetanov Dodev – Plaintiff
6312 South 161st Way
Gilbert, Arizona
(480) 457-8888 Phone

Information included: All [if any] recorded phone calls with purported lenders or servicers; emails from purported TRUSTS, REMIC'S, SPV'S, Creditors, Servicer and any other data that is used or will be used under this action is stored on Plaintiff's wife's computer, on the above address. All other electronically stored information, relevant to this action of law, is in possession of the DEFENDANTS AND/OR their subsidiaries.

C. Medical information, pertaining to Plaintiff life altering medical physical and mental changes as a result of Defendants conduct:

1.     Ivaylo Tsvetanov Dodev – Plaintiff
6312 South 161st Way
Gilbert, Arizona
(480) 457-8888 Phone

Information included: Diagnosis, imaging, procedures records, ER/office visit, treatment records and so on.

2.     The practices of medical professionals listed above.

Information included: All medical records and information stored, as required by law, kept under the PRIVACY ACT.

**III. Damages computation.** Calculations of any category of damages Plaintiff have suffered, as follows:

7|Page of Plaintiff's Initial Disclosures

A. Actual economic (business) losses:

Plaintiff owns and co-owns multiple companies that have been dormant since his initial dispute with the pretend lender, Bank of America, N.A. in 2008. He was giving work to approximately 100 people domestically and internationally by and through Pro Shade International, LLC, Designed Iron, LLC, Designed Stone, LLC, and Green Home Arizona, LLC. Some of his products are well recognized in North America and around the world; he was featured on CNBC for building the first "green" certified house in Arizona. His projected income, combined, was $1 million monthly before the financial crisis of 2008.

Due to the nature of his businesses and their dependence on the state of the real estate sector, there was a substantial loss of projected income after collapse of the industry. Taking this factor into consideration and seeing as Plaintiff has not been able to continue operations and is not as familiar with the current profitability status of the market, projected income post 2008 can be approximated around $250,000 per month.

As he has not been able to work for about 6 years, his business losses are estimated in the range of $18,000,000.00.

B. Emotional distress, loss of affection, alcohol abuse:

To be accessed during trial by jury of his peers.

Estimated $5-10,000,000.00

C. Acute deterioration of Plaintiff's health

To be accessed during trial by jury of his peers.

Estimated $5-10,000,000.00

C. Statutory and Punitive Damages.

Based on the value of the securities Plaintiff was tricked to sign (create) without full disclosure and consideration. The Court would need to establish if the security is in default or is still being traded. Treble damage, assessed by trial by jury of his peers, based on the final value of said certificate(s). Statutory damages and punitive damages based on Defendants business and personal assets, estimated in trillions of dollars.

Total damages: $50 to $100 million.

**IV. Liability insurance.** Any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment:

Plaintiff, at this time, is not aware of any insurance agreement under which any persons carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in favor of Plaintiff or to indemnify or reimburse Defendants for payments to satisfy the judgment.

Respectfully submitted on this 27th day of September, 2014.

_Ivaylo Dodev_

Ivaylo Tsvetanov Dodev, ARR, *Pro Se* [Plaintiff]
6312 South 161st Way, Gilbert, Arizona
(480) 457-8888 Phone
(480) 457-8887 Fax