1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                         FOR THE DISTRICT OF ARIZONA

8

9    Ivaylo Tsvetanov Dodev,                    No. CV-13-02155-PHX-DLR

10                    Plaintiff,                 **ORDER**

11   v.

12   ReconTrust Company NA, et al.,

13                    Defendants.

14

15          Before the Court are the motions to dismiss Plaintiff Ivaylo Dodev's ("Dodev")

16   Second Amended Complaint filed on behalf of Defendants Select Portfolio Servicing,

17   Inc. ("SPS"), the Bank of New York Mellon fka the Bank of New York as Trustee for the

18   Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-OA7, Mortgage Pass-

19   Through Certificates, Series 2007-OA7 ("BNY"), ReconTrust Company, N.A.

20   ("Recon"), and Bank of America, N.A. ("BANA").[1]  (Docs. 103, 104, 107.)  The Court

21   has considered the motions, Dodev's responses, (Docs. 113, 117), and Defendants'

22   replies, (Docs. 115, 119).  For the following reasons, the Court grants the motions.

23                                **BACKGROUND**

24          As the Court understands them, Dodev's claims fall into two categories:  (1) those

25   challenging Defendants' authority to conduct a non-judicial foreclosure sale and (2) those

26

27   ───────────────

28   [1] The Second Amended Complaint names Real Time Resolutions, Inc. ("Real
     Time") as a defendant.  By stipulation of the parties, however, the Court dismissed the
     claims against Real Time with prejudice.  (Docs. 111, 112.)

1    related to alleged attempts by certain defendants to collect on a debt discharged through

2    Chapter 7 bankruptcy.

3    **I. Allegations Related to Non-Judicial Foreclosure Authority[2]**

4    In December 2006, Dodev borrowed $681,750.00 (the "Loan") from non-party

5    First Magnus Financial Corporation ("First Magnus"), which was secured by a Deed of

6    Trust ("DOT") recorded against real property in Gilbert, Arizona (the "Property").  (Doc.

7    96 at ¶ 21, Ex. E; Doc. 104 at Ex. 1; Doc. 107 at Ex. A.)  The DOT named Mortgage

8    Electronic Registration Systems, Inc. ("MERS")[3] as the nominal beneficiary acting on

9    behalf of First Magnus and its successors and assigns.  (*Id.*)  The DOT did not name a

10   Trustee.  (*Id.*)

11   In August 2011, MERS recorded an assignment that conveyed all beneficial

12   interest in the DOT to BNY.  (Doc. 96 at ¶ 27; Doc. 104 at Ex. 2; Doc. 107 at Ex. B.)

13   The assignment was signed by Carmelia Boone, acting as Assistant Secretary for MERS.

14   (*Id.*)  That same day, BNY recorded a substitution of trustee appointing ReconTrust as

15   the successor trustee.  (Doc. 96 at ¶ 33; Doc. 104 at Ex. 3; Doc. 107 at Ex. C.)  At some

16   point, Dodev defaulted on the Loan.  On August 2, 2013, Recon recorded a notice of

17   trustee's sale, setting a sale date of November 8, 2013.  (Doc. 104 at Ex. 4; Doc. 107 at

18   Ex. D.)  As a result of this litigation, the sale has not occurred.

19   Dodev alleges that the DOT was conveyed to a mortgage-backed securities trust

---

20
21       [2] On a motion to dismiss, the well-pled factual allegations in the complaint are
taken as true.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Accordingly, for
22   purposes of this order, the relevant factual background is taken from the complaint, as
well as any documents properly subject to judicial notice.  All parties have attached
23   certain county land records to their filings.  The Court may take judicial notice of public
records without converting a motion to dismiss into one for summary judgment.  *Lee v.*
24   *City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).  The Court takes judicial notice of the
appended county land records because their contents are alleged in the complaint and
25   because the documents are a matter of public record.

26       [3] "MERS is a private corporation that administers a national electronic registry to
track the transfer of ownership interests and servicing rights in mortgage loans.  Members
27   assign their interests to MERS, and MERS becomes the mortgagee of record.  When one
member transfers an interest to another member, MERS privately tracks the assignment
28   but remains the mortgagee of record, thereby allowing members to sell their interests
without having to record the transactions in the public record."  *Sitton v. Deutsche Bank*
*Nat'l Trust. Co.*, 223 Ariz. 215, 216 n.1, ¶ 3, 311 P.3d 237, 238 n.1 (Ct. App. 2013).

1   (the "Trust") sometime in 2007, but that the conveyance failed to comply with certain

2   securities formalities. (Doc. 96 at ¶¶ 25–28.) Specifically, Dodev alleges that the Trust's

3   Pooling and Servicing Agreement ("PSA") cited a closing date of March 30, 2007, or 90

4   days thereafter, and that all notes and deeds of trust that were to become part of the Trust

5   had to be delivered by that closing date. (*Id.* at ¶ 26.) As the Court understands, Dodev

6   contends that the Trust, for which BNY acts as Trustee, never legally acquired the DOT

7   because the assignment from MERS to BNY was recorded after the Trust's closing date.

8   (*Id.* at ¶¶ 27, 129.) Additionally, Dodev alleges that the signature of Carmelia Boone was

9   forged because other documents purportedly signed by her contain a noticeably different

10  signature. (*Id.* at ¶ 31, Ex. I.)

11   **II. Allegations Related to Collection Efforts on Discharged Debt**

12   In 2009, Dodev's personal liability on the Loan was discharged through Chapter 7

13  bankruptcy. (*Id.* at ¶ 24.) In February 2011, Dodev received a letter stating that,

14  effective July 1, 2011, servicing for the Loan would be transferred from BAC Home

15  Loans Servicing, LP ("BACHLS") to BANA.[4] (*Id.* at ¶ 80, Ex. K.) That same day,

16  Dodev received a letter from BANA identifying itself as a debt collector under the Fair

17  Debt Collections Practices Act ("FDCPA"). (*Id.* at ¶ 81, Ex. L.) Dodev alleges that

18  BANA solicited repayment and harassed him for several years after his bankruptcy

19  discharge. (*Id.* at ¶¶ 82, 86.) For example, Dodev alleges that, on July 28, 2011, BANA

20  sent him a letter notifying him of past due amounts and stating that any amount due must

21  be remitted immediately. (*Id.* at ¶ 85, Ex. P.) Dodev further alleges that BANA sold the

22  discharged debt to SPS in October 2012. (*Id.* at ¶ 87.) He alleges that, upon acquiring

23  the discharged debt, SPS first tried to modify the loan terms to make repayment more

24  affordable, but continued collection efforts after modification attempts failed. (*Id.* at

25  ¶ 88.)

26

27  _____

28     [4] BACHLS is a BANA subsidiary. (Doc. 96 at Ex. K.) The Second Amended
Complaint does not indicate when BACHLS started servicing the Loan.

### III.  Procedural History

Dodev filed his original complaint on October 23, 2013.  (Doc. 1.)  He later filed an amended complaint.  (Doc. 18.)  On December 2, 2013, Dodev moved for a temporary restraining order and preliminary injunction enjoining Defendants from selling the Property at a non-judicial foreclosure sale.  (Doc. 25.)  The Court denied Dodev's motion after finding that he had failed to show a likelihood of success on the merits.  (Doc. 55.)  Specifically, the Court found that Dodev's complaint was largely premised on "his misconception that the discharge of his personal debts through Chapter 7 proceedings extinguished the security interest in the real property created through the Deed of Trust," that his challenge to the Trustee's authority "appears to be the 'show me the note' theory that has long been repudiated by both this Court and the Arizona Supreme Court," and that, as pled, "none of the parties are debt collectors attempting to collect consumer debt, to which the FDCPA applies."  (*Id.*)

In April 2014, after the parties filed and briefed motions to dismiss, the Court received notice that Dodev filed a Chapter 11 Bankruptcy petition.   (Doc. 71.)  Consequently, the Court stayed the matter.  (Doc. 72.)  On August 27, 2014, the Court lifted the stay and reinstated the motions to dismiss.  (Docs. 80, 85.)  On October 7, 2014, the Court granted the motions to dismiss after finding that Dodev's amended complaint failed to satisfy the minimum pleading standards of Federal Rules of Civil Procedure 8, 9, and 10.  (Doc. 93.)   On October 23, 2014, Dodev filed his Second Amended Complaint, (Doc. 96), which all Defendants have moved to dismiss pursuant to Rule 12(b)(6).

### LEGAL STANDARD

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec.*

1   *Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  To avoid dismissal, the complaint must

2   plead sufficient facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp.*

3   *v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a

4   'probability requirement,' but it asks for more than a sheer possibility that a defendant

5   has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

6                                            **DISCUSSION**

7           Dodev raises eleven claims in his Second Amended Complaint, which spans sixty-

8   five pages, not counting nearly 600 pages of exhibits, and is far from short, plain,

9   concise, and direct.  It is light on facts, heavy on legal conclusions, and reads more like a

10  memorandum of law than a complaint.  The Second Amended Complaint included claims

11  for usury and violations of the Truth in Lending Act ("TILA") (Counts VII and VIII), but

12  Dodev withdrew those counts voluntarily.  (Doc. 116.)  Furthermore, although the

13  Second Amended Complaint includes a claim under the Fair Credit Reporting Act

14  ("FCRA"), the only FCRA allegation is against Real Time, which has been dismissed

15  from this action.  (Doc. 96 at ¶ 111–12, Ex. U; Doc. 112.)  Accordingly, no FCRA claim

16  remains.

17  **I.  "Standing to Enforce Security" (Count I)**

18          Dodev's first cause of action is styled as one for "standing," and is asserted against

19  all defendants.  (Doc. 96 at 12.)  Although not entirely clear, Dodev seems to argue that

20  no defendant has authority to conduct a non-judicial foreclosure sale on the Property.

21          To the extent this claim is being asserted against BANA, it is dismissed with

22  prejudice because BANA admittedly does not claim to have a current interest in the Loan

23  or the DOT.  (Doc. 107 at 4.)  As pled, BANA formerly serviced the Loan, but has no

24  current interest in or connection to the Loan or DOT.  Nor did BANA order or record the

25  notice of trustee's sale.  Rather, the notice was recorded by Defendant Recon as Trustee

26  on behalf of Defendant BNY, the DOT beneficiary.  (*See* Doc 107 at Ex. D.)

27          As to Defendants SPS, Recon, and BNY, Dodev fails to allege any legal basis for

28  preventing a trustee's sale from going forward.  He relies heavily on the Uniform

1    Commercial Code ("UCC") to no avail because the UCC does not apply to deeds of trust.

2    *Hogan v. Washington Mut. Bank, N.A.*, 230 Ariz. 584, 586 ¶ 9, 277 P.3d 781, 783 (2012).

3    Similarly, his "holder of the note" argument is a version of the "show me the note" theory

4    that has been soundly rejected by this district and the Arizona Supreme Court. *See id.* at

5    585 ¶ 1, 277 P.3d at 782 ("Arizona's non-judicial foreclosure statutes do not require the

6    beneficiary to prove its authority or 'show the note' before the trustee may commence a

7    non-judicial foreclosure.").

8          Additionally, Dodev seems to challenge the assignment of the DOT from MERS

9    to BNY on two bases. First, Dodev argues that MERS' involvement impermissibly split

10   the Note from the DOT, nullifying the security interest. The Ninth Circuit, however, has

11   rejected this theory. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034,

12   1044 (9th Cir. 2011) ("[T]he notes and deeds are not irreparably split: the split only

13   renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the

14   deeds, are not agents of the lenders."). Second, Dodev argues that the assignment from

15   MERS to BNY was invalid because the signature of Carmelia Boone was forged.

16   Assuming, as the Court must at this stage, that Carmelia Boone's signature was a forgery,

17   Dodev has nonetheless failed to state a claim upon which relief can be granted because

18   this defect is not material to his obligations under the DOT. *See Sitton v. Deutsche Bank*

19   *Nat'l Trust Co.*, 233 Ariz. 215, 221 ¶ 32, 311 P.3d 237, 243 (Ct. App. 2013) (explaining

20   that defects in recorded assignments could be material to an assignee who received its

21   interest before the recorded assignments, but could not be material to the borrower

22   because the defects had no effect on the borrower's rights or obligations.).[5]

23         Finally, Dodev argues that BNY acquired no interest in the Property because

24

25        [5] Nor has Dodev alleged that the person who actually signed the assignment
     lacked authority from MERS. Moreover, assuming that the signatory lacked authority,
26   the fact that MERS nonetheless went forward with the assignment demonstrates that it
     ratified the action. *See Brown v. Bank of America, N.A.*, No. 2:11-cv-00543-RCJ-PAL,
27   2011 WL 2633150, at *1 (D. Nev. July 5, 2011) ("Plaintiff argues that the employees
     who signed various documents might not have had authority to do so on behalf of their
28   companies, but the fact that Defendants desire to proceed with foreclosure is proof of
     ratification of these employees' actions.")

MERS recorded the assignment after the closing date of the Trust.  This argument fails for three reasons.  First, although a failure to comply with requisite trust formalities might have tax and other legal implications for the Trust, Dodev has cited no authority showing that it has any impact on the validity of an assignment, nor has the Court found any.  Second, there is no requirement in Arizona that assignments be recorded.  *See In Re Vasquez*, 228 Ariz. 357, 359 ¶¶ 3–7, 266 P.3d 1053, 1055 (2011).  Thus, the recording date of the assignment does not necessarily reflect the date the interest was transferred.  Third, by its own terms, the PSA—which Dodev attaches to his complaint—exempts loans held by MERS from the requirement that assignments be delivered prior to the closing date.  (Doc. 96 at Ex. G, ¶ (c)(iii).)

Accordingly, Dodev's Second Amended Complaint fails to state any legal basis for preventing a non-judicial foreclosure sale.  Moreover, because his claim is based on legal theories that are not viable, further amendment would be futile.  Count I is dismissed with prejudice.

**II.  "Tort and Deceptive Consumer Practices" (Count II)**

Dodev styles his second cause of action as one for "Tort and Deceptive Consumer Practices with Respect to Foreclosure."  (Doc. 96 at 19.)  He fails, however, to identify any tort or the elements of any claim.  It is unclear what Dodev is attempting to allege in this count.  Rather than state a separate claim, Dodev rehashes his Count I "standing" allegations and arguments.  This claim fails to satisfy Rule 8's minimal pleading standards, and to the extent it is a reformulation of the Count I allegations, it fails to state a claim because the legal theories upon which Dodev relies are not viable.  Accordingly, Count II is dismissed with prejudice.

**III.  FDCPA (Count III)**

Dodev's third cause of action is for violations of the FDCPA, and is asserted against all defendants.  (Doc. 96 at 23.)  The FDCPA prohibits debt collectors from engaging in certain unfair, abusive, and misleading debt collection practices.  *See De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1073 (9th Cir. 2011).  Among these

prohibited practices is misrepresenting the "character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). A "debt collector" for purposes of the FDCPA:

> means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The FDCPA does not apply to creditors and their fiduciaries, and exempts from the definition of debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii); *De Dios*, 641 F.3d at 1074; *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009). Furthermore, "mortgagees and their beneficiaries, including mortgage servicing companies, are not debt collectors subject to the FDCPA." *Mansour*, 618 F. Supp. 2d at 1182 (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *see also De Dios*, 641 F.3d at 1075 n.3 ("debt collector does not include those 'mortgage service companies and others who service outstanding debts or others, so long as the debts were not in default when taken for servicing'" (quoting S. Rep. No. 95-382 (1977))).

Dodev's only allegations against BNY and Recon are premised on the same "standing to enforce" and "holder of the note" arguments as Count I, which the Court has already determined are not viable. Accordingly, Dodev has not pled any facts supporting a FDCPA claim against BNY and Recon.

As to BANA and SPS, the crux of Dodev's FDCPA claim appears to be that his current and former loan servicers continued collection efforts after his personal liability on the Loan was discharged through Chapter 7 bankruptcy. Dodev alleges that BANA acquired servicing rights after the debt was discharged through bankruptcy. He also alleges that BANA identified itself as a debt collector under the FDCPA. Dodev alleges that, after his debt was discharged, BANA sent him a letter notifying him of past due amounts and explaining that any amount due must be remitted immediately. Furthermore

1   Dodev alleges that BANA sold the discharged debt to SPS in October 2012, and that SPS
2   tried to modify the loan terms to make repayment more affordable, but continued
3   collection efforts after modification attempts failed.

4        It is unclear from the complaint whether Dodev is alleging that BANA and SPS
5   attempted to collect on the *in personam* debt, which was discharged, or merely sent
6   communications attempting to resolve the *in rem* claim against the Property, which was
7   created by the DOT.  Regardless, however, Dodev's FDCPA claim cannot survive.

8        If Dodev is alleging that BANA and SPS attempted to collect on the *in personam*
9   debt, his FDCPA claim is precluded by the Bankruptcy Code.  Pursuant to 11 U.S.C.
10  § 524(a)(2), a bankruptcy discharge "operates as an injunction against the
11  commencement or continuation of an action, the employment of process, or an act, to
12  collect, recover or offset against any such debt as a personal liability of the debtor . . . ."
13  The Ninth Circuit has held that FDCPA claims based on alleged violations of § 524 are
14  precluded by the Bankruptcy Code, which "provides its own remedy for violating § 524,
15  civil contempt under [11 U.S.C.] § 105."  *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502,
16  510 (9th Cir. 2002); *see also Henry v. Saxon Mortg., Inc.*, No. CV-10-2551-PHX-JAT,
17  2011 WL 5331679, at *2 (D. Ariz. Nov. 7, 2011) (finding plaintiff's FDCPA claims were
18  precluded by Bankruptcy Code because they involved bankruptcy-laden determinations).

19       If, however, Dodev is alleging that BANA and SPS attempted to enforce,
20  compromise, or settle the security interest in the Property created by the DOT, and that
21  such collection was wrongful because his personal liability was discharged, his claim
22  fails because liens on real property pass through bankruptcy unaffected.  *Dewsnup v.*
23  *Timm*, 502 U.S. 410, 417–18 (1992).  "[A] bankruptcy discharge extinguishes only one
24  mode of enforcing a claim—an *in personam* action—while leaving intact another—an *in*
25  *rem action*."  *Johnson v. Home State Bank*, 501 U.S. 78, 79 (1991).  Accordingly,
26  Dodev's FDCPA claim is dismissed with prejudice.

27  **IV.  Securities Violations (Count IV)**

28       Dodev styles his fourth cause of action as one for "Security Violation."  (Doc. 96

at 31.)  It is unclear what type of action Dodev is attempting to bring.  He recites no elements of a cause of action, nor does he allege facts supporting a prima facie case of anything.  Thus, Count IV fails to comply with Rule 8's minimum pleading standards.

If Dodev is attempting to sue BNY for allegedly violating its own PSA, he lacks standing to enforce the PSA's terms.  *See Robinson v. BAC Home Loans Servicing, LP*, No. CV11-1920-PHX-JAT, 2012 WL 1520125, at *4 (D. Ariz. May 1, 2012) ("Plaintiffs are not parties to the Pooling and Servicing Agreement, nor are they third party beneficiaries of that Agreement.  They therefore cannot bring a claim based on the Pooling and Servicing Agreement.").  Moreover, Dodev cannot sue Defendants for alleged tax code violations based on their failure to comply with requisite REMIC trust formalities.  Finally, to the extent Dodev is citing to alleged PSA violations as evidence that BNY lacks an interest in the Property, he merely is rehashing his Count I "standing" allegations.  Accordingly, Count IV is dismissed with prejudice.

**V.  Anticipatory Repudiation (Count V)**

Dodev's fifth cause of action is against BANA, BNY, and SPS only, and is styled as one for anticipatory repudiation.  (Doc. 96 at 37.)  "An anticipatory repudiation is a breach of contract giving rise to a claim for damages and also excusing the necessity for the non-breaching party to tender performance."  *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 95 ¶ 9, 302 P.3d 617, 620 (2013) (quoting *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 283, 681 P.2d 390, 435 (Ct. App. 1983)).  To recover on a theory of anticipatory repudiation, the non-breaching party must show that he would have been ready and willing to perform the contract if repudiation had not occurred.  *Id.*

The precise factual and legal bases for Dodev's anticipatory repudiation claim are unclear.  As the Court understands, Dodev alleges that, in January, February, and March of 2014, he offered to pay the total amount due to release the security interest on the Property, but no defendant accepted his offer.  (Doc. 96 at ¶¶ 137–38, Ex. V.)  He relies exclusively on the UCC for legal support.  However, the UCC does not apply to liens on real property, such as deeds of trust.  *Hogan,* 230 Ariz. at 586 ¶ 9, 277 P.3d at 783.

1    Additionally, BANA has no current interest in the Loan or the DOT and, therefore, has

2    no right or obligation to accept offers to satisfy the debt secured by the DOT.

3    Accordingly, Count V is dismissed with prejudice because it is based on a misapplication

4    of the UCC to deeds of trust.

5    **VI.  Contractual Fraud (Count VI)**

6            Dodev's sixth cause of action is styled as one for "contractual fraud."  (Doc. 96 at

7    40.)  He seems to allege that the Loan and DOT fail for lack of consideration because the

8    original lender, First Magnus, gave him credit instead of "lawful money such as coins or

9    currency."  (*Id.* at ¶ 149.)  Dodev fails to state a claim for several reasons.  First, Dodev's

10   "vapor money" theory has been soundly rejected by courts in this Circuit.  *See De Leon v.*

11   *Recontrust Co.*, No. CV 10-8132-PCT-JAT, 2010 WL 4739954, at *2 (D. Ariz. Nov. 16,

12   2010) ("Plaintiff's main argument . . . seems to be based on the 'vapor money' theory.

13   Proponents of this theory argue that banks do not lend actual money, only credit, so no

14   loan occurs.  If no loan occurred and no consideration was given, then banks have no

15   right to foreclose . . . or something along those lines.  Courts in this Circuit have rejected

16   the 'show me the loan' and 'vapor money' theories.").   Second, the lender—First

17   Magnus—is not a party to this case.  Finally, to the extent Dodev is attempting to raise a

18   contract claim based on defects in the Loan's origination, such a claim is barred by the

19   statute of limitations.  *See* A.R.S. § 12-548(A) (providing for a six-year limitations period

20   for breach of contract actions).  Accordingly, Count Six is dismissed with prejudice.

21   **VII.  RICO Violations (Count IX)**

22          Dodev styles his ninth cause of action a RICO claim, apparently alleging that

23   Defendants conspired to steal his house from him by recording false documents.  (Doc.

24   96 at 53.)   To state a RICO claim, a plaintiff must allege (1) the existence of an

25   enterprise; (2) a pattern of racketeering that; (3) caused injury to the plaintiff.  18 U.S.C.

26   § 1962; *U.S. v. Turkette*, 452 U.S. 576, 581–82 (1981).   Rule 9(b)'s specificity

27   requirements apply to RICO allegations.  *Schreiber Distrib. Co. v. Serv-Well Furniture*

28   *Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Dodev fails to plead any elements of his

RICO claim with any degree of specificity.  Moreover, his RICO claim is based on the same allegations as his Count I "standing" claim, which the Court has already determined is not viable.  Accordingly, Count IX is dismissed with prejudice.

**VIII.  Quiet Title (Count X)**

Dodev's tenth cause of action is styled as one for quiet title, and is asserted against all Defendants.  (Doc. 96 at 56.)  As alleged, this claim is based entirely on Dodev's "holder of the note" and "standing to foreclose" allegations, which this Court has already found not to be viable.  Moreover, BANA has no present interest in the Loan or the DOT and, therefore, there is no basis for a quiet title action against it.  The claim is, therefore, dismissed.

However, viewing the Second Amended Complaint as a whole, Dodev might be attempting to pursue a quiet title claim based on his offers to pay the total balance due.  Quiet title relief is not available to a mortgager unless the amount owed is paid or tendered.  *Farrell v. West*, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941); *see also Eason v. Indymac Bank, FSB*, No. CV09-1423-PHX-JAT, 2010 WL 1962309, at *2 (D. Ariz. May 14, 2010).  In this respect, Dodev's quiet title claim might be linked to the factual allegations listed under his anticipatory repudiation claim.  The Court will dismiss Dodev's quiet title claim against BANA with prejudice because BANA claims no current interest in the Property.  The Court will dismiss the claim as it relates to BNY, SPS, and Recon without prejudice because it is possible Dodev can cure the defects by pleading additional, appropriate facts and clarifying the legal basis for this claim.

**IX.  Declaratory and Injunctive Relief (Count XI)**

Dodev's eleventh cause of action is styled as one for "declaratory and injunctive relief."  (Doc. 96 at 58.)  These are remedies, not independent causes of actions, and are therefore dismissed.

**X.  Leave to Amend**

Dodev filed this case nearly eighteen months ago and, despite amending his complaint twice, he has yet to state a plausible entitlement to relief.  Furthermore, the

Second Amended Complaint fails to comply with the Court's prior dismissal order, which instructed that, "[r]ather than reciting a sprawling narrative peppered with archaic legalese, [any amended pleading] should clearly and concisely identify each claim, the particular defendant or defendants against whom the claim is being asserted, and the specific factual bases underlying each claim."  (Doc. 93 at 7.)  For guidance, the Court directed Dodev to the Appendix of Forms in the Federal Rules of Civil Procedure, which provides examples of clear and concise pleading.  (*Id.* at n.2.)  Instead of "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8, the Court received another sprawling complaint that relies on legal conclusions rather than factual allegations, and which, consequently, "fails to perform the essential functions of a complaint."  *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996).

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  The Court concludes that Counts I, II, III, IV, V, VI, IX, and XI cannot be cured by the allegation of other facts because the legal theories upon which Dodev relies are not viable.  Accordingly, those claims are dismissed with prejudice.  Moreover, Count X is dismissed with prejudice as it relates to BANA because BANA has no current interest in the Property or the DOT.

It might be possible, however, for Dodev to plead additional, appropriate facts and to clarify the legal theory underpinning his quiet title claim as it relates to BNY, SPS, and Recon.  Defendants primarily argue that Dodev has not pled that he paid or is willing, ready, and able to tender the balance due on the Loan in order to release the security interest created by the DOT.  The Court will grant Dodev one final opportunity to amend his complaint to cure the defects identified by Defendants and by this order.

The Court emphasizes, however, that leave to amend is limited only to Count X, and only as it relates to BNY, SPS, and Recon.  Furthermore, Dodev may not re-plead his "standing to enforce," "holder of the note," or UCC arguments and allegations, or any

reformulation of them. If Dodev submits a Third Amended Complaint that re-pleads any claim dismissed with prejudice by this order, rehashes his "standing" arguments, or fails to comply with Rule 8, the Court will not wait for a motion to dismiss to be filed, but will instead strike the amended pleading and dismiss this action entirely.

### CONCLUSION

For the foregoing reasons, Counts I, II, III, IV, V, VI, IX, and XI are dismissed with prejudice. Count X is dismissed with prejudice as it relates to BANA, but without prejudice and with leave to amend as it relates to BNY, SPS, and Recon, and as strictly limited by this order.

**IT IS ORDERED** that the motions to dismiss, (Docs. 103, 107) are **GRANTED**.

**IT IS FURTHER ORDERED** that the Second Amended Complaint, (Doc. 96), is **DISMISSED** as explained herein.

**IT IS FURTHER ORDERED** that Plaintiff shall have twenty-one (21) days from the date of this order in which to file an amended complaint, if he so chooses. Should Plaintiff file an amended complaint, it must comply with Federal Rule of Civil Procedure 8 and the limitations imposed by this order.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to terminate this case without further order if Plaintiff fails to file an amended complaint or move for a good-cause extension of time within the timeframe specified herein.

Dated this 13th day of April, 2015.

Douglas L. Rayes
United States District Judge