NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____
-Witness

_____
-Witness

_____/s/ Ivaylo T Dodev_____(Seal)
IVAYLO T DODEV    -Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

VMP-6A(AZ) (0205)                   Page 14 of 15                   Form 3003  1/01  (rev. 6/02)

STATE OF ARIZONA       ,      Maricopa      County ss:

The foregoing instrument was acknowledged before me this 13th December 2006 by IVAYLO T DODEV



FAITH E. VILLA
Notary Public - Arizona
Maricopa County
Expires 12/31/09

My Commission Expires: 12/31/09

_____
Notary Public

VMP-6A(AZ) (0206)                    Page 15 of 15                    Form 3003  1/01  (rev. 6/02)

Initials: [signature]

## EXHIBIT A

A PORTION OF LAND IN THE SOUTHWEST QUARTER OF SECTION 22, TOWNSHIP 2 SOUTH, RANGE 6 EAST; GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, DESCRIBED AS FOLLOWS; .

COMMENCING AT THE SOUTHWEST CORNER OF SECTION 22;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 1284.85 FEET;

THENCE NORTH 00 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 415.04 FEET;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 193.02 FEET TO THE POINT OF BEGINNING;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 367.57 FEET;

THENCE NORTH 00 DEGREES 03 MINUTES 42 SECONDS EAST, A DISTANCE OF 9.56 FEET;

THENCE NORTH 18 DEGREES 49 MINUTES 40 SECONDS EAST, A DISTANCE OF 266.94 FEET;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 279.44 FEET;

THENCE SOUTH 00 DEGREES 25 MINUTES 50 SECONDS EAST, A DISTANCE OF 262.23 FEET TO THE POINT OF BEGINNING.

ALTA Commitment – Exhibit A

# EXHIBIT "E"

## CORPORATE RESOLUTION

Be it Resolved that all officers of **Countrywide Home Loans and CTC Real Estate Services**, a member of Mortgage Electronic Registration Systems, Inc. (MERS) are hereby appointed as assistant secretaries and vice presidents of MERS, and, as such, are authorized to:

(1) release the lien of any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(2) assign the lien of any mortgage loan naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage loan is registered on the MERS System, is shown to be registered to the Member;

(3) execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS System that is shown to be registered to the Member, including but not limited to (a) substitution of trustee on Deeds of Trust, (b) Trustee's Deeds upon sale on behalf of MERS, (c) Affidavits of Non-military Status, (d) Affidavits of Judgment, (e) Affidavits of Debt, (f) quitclaim deeds, (g) Affidavits regarding lost promissory notes, and (h) endorsements of promissory notes to VA or HUD on behalf of MERS as a required part of the claims process;

(4) take any and all actions and execute all documents necessary to protect the interest of the Member, the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a loan registered on the MERS System that is shown to be registered to the Member, including but not limited to: (a) executing Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and applicable local bankruptcy rules, (b) entering a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor, or any adjournment thereof, and vote on behalf of the Member, the beneficial owner of such mortgage loan, or MERS, on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute, and return a ballot accepting or rejecting a plan, and (g) execute reaffirmation agreements;

(5) take any and all actions and execute all documents necessary to refinance, amend or modify any mortgage loan registered on the MERS System that is shown to be registered to the Member.

(6) endorse checks made payable to Mortgage Electronic Registration Systems, Inc. to the Member that are received by the Member for payment on any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(7) take any such actions and execute such documents as may be necessary to fulfill the Member's servicing obligations to the beneficial owner of such mortgage loan (including mortgage loans that are removed from the MERS System as a result of the transfer thereof to a non-member of MERS).

I, <u>William C. Hultman</u>, being the <u>Corporate Secretary</u> of Mortgage Electronic Registration Systems, Inc., hereby certify that the foregoing is a true copy of a Resolution duly adopted by the Board of Directors of said corporation effective as of the 10th day of December, 2001, which is in full force and effect on this date and does not conflict with the Certificate of Incorporation or By-Laws of said corporation.

Secretary  WILLIAM C. HULTMAN

# Exhibit B

1  Jeremy T. Bergstrom, Esq.
   Arizona Bar No. 19399
2  MILES, BAUER, BERGSTROM & WINTERS, LLP
   2200 Paseo Verde Pkwy., Suite 250
3  Henderson, NV  89052
   (702) 369-5960 / FAX (702) 369-4955
4  File No. 09-90232

5  Attorneys for Secured Creditor,
   COUNTRYWIDE HOME LOANS SERVICING, L.P.
6

7              UNITED STATES BANKRUPTCY COURT
                 FOR THE DISTRICT OF ARIZONA
8

   In re:                                    Chapter 7
9
   IVAYLO TSVETANOV DODEV AND                Case No.: 2:09-BK-00043-CGC
10 NIKOLINA MARKUZOV DODEV AKA
   NIKOLINA TODOROVA MARKUZOV
11 DODEV,
              Debtor(s).
12
   COUNTRYWIDE HOME LOANS
13 SERVICING, L.P.,
              Movant,
14
                    vs.
15
   IVAYLO TSVETANOV DODEV AND
16 NIKOLINA MARKUZOV DODEV AKA
   NIKOLINA TODOROVA MARKUZOV
17 DODEV, Debtor; ROBERT A. MACKENZIE,
   Trustee,
18            Respondents.

19
            **SUPPLEMENTAL DECLARATION OF MARITA GRAULICH**
20
        I, MARITA GRAULICH, declare and state as follows:
21
        As to the following facts, I know them to be true of my own personal knowledge, and if
22
   called upon to testify in this action, I could and would testify competently thereto.
23
        I am an employee of COUNTRYWIDE HOME LOANS SERVICING, L.P., hereinafter
24
   "Secured Creditor", and am the person most familiar with the subject first Trust Deed loan in

                                            1

1 | favor of and/or serviced by Secured Creditor herein and the ongoing Bankruptcy litigation
2 | herein. COUNTRYWIDE HOME LOANS SERVICING, L.P. is the successor in interest to
3 | MERS, INC. AS NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, the
4 | original beneficiary under the subject Trust Deed herein.

5 | The subject real property secured said first Trust Deed loan is generally described as
6 | 23410 South 161st Way, Gilbert, AZ 85297, ("Property" herein) and legally described as
7 | follows:

8 | SEE EXHIBIT "A"

9 | This Secured Creditor is the beneficiary and/or servicer of a Promissory Note dated
10 | December 12, 2006, in the principal amount of $681,750.00, which is secured by the above-
11 | referenced Deed of Trust.

12 | On or about January 5, 2009, Debtor commenced the current Chapter 7 Bankruptcy
13 | proceeding in this Court.

14 | ///
15 | ///
16 | ///
17 | ///
18 | ///
19 | ///
20 | ///
21 | ///
22 | ///
23 | ///
24 | ///

2

1  Payments have not been applied to the Debtor's loan for all post-petition payments due
2  and owing. With respect to Secured Creditor's Trust Deed, the following is due and owing:

3  <u>Unpaid Principal Balance</u>                                                    =   $721,199.48

4  <u>Total Arrearages</u>

5  2 monthly payments at $2,933.62 each                                 =   $5,867.24
   (November 1, 2008 through December 1, 2008)

6  1 monthly payment at $2,913.62                                          =   $2,913.62
7  (January 1, 2009)

8  Late Charges                                                                           =   $130.91

9  Escrow Shortage                                                                    =   $337.69

10 Bankruptcy Attorney's Fees and Costs                              =   $550.00

11 Filing Fee                                                                                =   $150.00

   **TOTAL DELINQUENCIES**                                              =   **$9,949.46**
12
   **TOTAL Unpaid Principal plus Delinquencies**               =   **$731,148.94**
13

14 Furthermore, a monthly payment becomes due on February 1, 2009, and same becomes due on
15 the first (1st) day of every month thereafter, and a late charge becomes due on any payment not
16 paid within fifteen (15) days from the date the monthly payment is due.

17  The unpaid principal balance plus delinquencies set forth hereinabove does not include
18 accrued interest. The actual payoff amount will be higher than the amount set forth hereinabove
19 and will be disclosed by supplemental declaration.

20 ///
21 ///
22 ///
23 ///
24 ///

3

1   In the event Secured Creditor obtains title to the Property at its foreclosure sale, Secured
2   Creditor will incur substantial fees and costs in reselling the Property. Based on past experience
3   of the Secured Creditor, the additional cost is a minimum of eight to ten percent. This cost is
4   primarily commission fees on resale, and title and closing costs. Further, it is typical to incur
5   further expense for putting the Property in marketable condition.
6   Secured Creditor has elected to initiate foreclosure proceedings on the subject property
7   with respect to the subject Trust Deed. However, Secured Creditor is precluded from proceeding
8   to publish the necessary notices and commencing said foreclosure action during the pendency of
9   this Bankruptcy.
10  I declare under penalty of perjury under the laws of the United States and the State of
11  Texas that the foregoing is true and correct.
12  Executed this __15__ day of __Jan__, 2009, at Richardson, Texas.

_____
MARITA GRAULICH

SUBSCRIBED AND SWORN to before me
This __15__ day of __Jan__, 2009.

_____
NOTARY PUBLIC

09-90232/azsupdec.dot/slw

MELINDA A. BELL
My Commission Expires
October 29, 2012

4

# Exhibit A

## EXHIBIT A

A PORTION OF LAND IN THE SOUTHWEST QUARTER OF SECTION 22, TOWNSHIP 2 SOUTH, RANGE 6 EAST; GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, DESCRIBED AS FOLLOWS;

COMMENCING AT THE SOUTHWEST CORNER OF SECTION 22;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 1284.85 FEET;

THENCE NORTH 00 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 415.04 FEET;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 193.02 FEET TO THE POINT OF BEGINNING;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 367.57 FEET;

THENCE NORTH 00 DEGREES 03 MINUTES 42 SECONDS EAST, A DISTANCE OF 9.56 FEET;

THENCE NORTH 18 DEGREES 49 MINUTES 40 SECONDS EAST, A DISTANCE OF 266.94 FEET;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 279.44 FEET;

THENCE SOUTH 00 DEGREES 25 MINUTES 50 SECONDS EAST, A DISTANCE OF 262.23 FEET TO THE POINT OF BEGINNING.

ALTA Commitment – Exhibit A