Ivaylo Tsvetanov Dodev,

c/o 6312 South 161st Way
    Gilbert, Arizona
    (480) 457-8888 Phone
    (480) 457-8887 Facsimile
    dodev@hotmail.com

*Pro Se*

**FILE ON DEMAND**
**FOR THE RECORD**

___ FILED ___ LODGED
___ RECEIVED ___ COPY

JUL 01 2015

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Ivaylo Tsvetanov Dodev,** | **Case No.  CV-13-02155-PHX-DLR** |
| **Plaintiff,** | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS RECONTRUST COMPANY, N.A'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| **v.** | |
| **ReconTrust Company, NA, et all.,** | |
| **Defendants.** | **(Hon. Douglas L. Rayes)** |

Here comes Claimant, Ivaylo Tsvetanov Dodev ("Plaintiff"), *pro se*, with his response in opposition to the above captioned motion (Doc. 127), (the "Motion"), submitted for the above captioned defendant (the "Defendant"), signed by counsel Eric M. Moores, ("Counsel").

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant's Motion, consisting primarily of conclusory personal opinions bedeviling Plaintiff, does not provide any rebuttal of the factual allegations comprising the Third Amended Complaint, Doc. 122, ("TAC"). In an attempt to derail this Court through pleadings unrelated to the causes of action, using: (1) affirmative defenses and;

(2) immaterial[1] Arizona law, Counsel failed to draw on a cognizable legal theory that will entitle Defendant to a dismissal from this action.

**(1)** Leaving Plaintiff's <u>tender</u> claim unrebutted, Counsel asserts that "Dodev has not pled that he has <u>paid</u> off the loan" (Motion at 7), disregarding that the core of this Verified Action-at-Law for quiet title gravitates on <u>tender</u>, not on <u>payment</u>. (It is well-settled in Arizona that a party cannot quiet title pursuant to A.R.S. § 12-1101 until the party has <u>paid </u>off the loan, or **<u>tendered</u>** the balance due under the loan. <u>Farrell v. West</u>, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941)).

Plaintiff made a good-faith offer to pay the entire balance due (TAC ¶¶ 35-39); followed by default notice with another offer to pay; followed by an opportunity to cure the default with yet another offer to pay; followed by yet another fourth offer to pay (Doc. 96 at Ex. V)[2], prior to commencing this action. Rejection of an offer to pay by a party entitled to a payment extinguishes the lien and discharges the obligor from the obligation because the law does not require a futile or useless act (TAC ¶¶ 42, 44). <u>See United Cal. Bank v. Prudential Ins. Co., Etc</u>, 681 P. 2d 390 - Ariz: Court of Appeals, 1st Div., Dept. A 1983. Adopted from the region of north.

Bringing 'Payment' as a defense in a 12(b)(6) motion is an affirmative action under the Federal Rules of Civil Procedure ("FRCP"). FRCP 8(b)(1)(A) requires a party responding to a pleading to "state in short and plain terms its defenses to each claim asserted against it." Rule 8(c)(1) states that a defendant "must affirmatively state any

---

[1] "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." <u>Fantasy, Inc. v. Fogerty</u>, 984 F. 2d 1524 - Court of Appeals, 9th Circuit 1993

[2] All documents referenced herein are incorporated hereto.

avoidance or affirmative defense," and provides a list of nineteen affirmative defenses. The defendant[1] bears the burden of proof on an affirmative defense. See Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 492 n.4 (9th Cir. 1988). Each affirmative defense must be supported by factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Such a defense must be proven by a preponderance of credible evidence. (In a civil action, the burden of proof is by the preponderance of the evidence[2], and the defendant has the burden of proving an affirmative defense.) See Weekly, 181 Ariz. at 166 n. 5, 888 P.2d at 1353 n. 5; Pfeil v. Smith, 1995.

Having concluded that Payment is an affirmative defense, similar to the accrual of statutes of limitations, we next turn to how Arizona courts resolve genuine, material factual disputes involving affirmative defenses. In general, such disputes are questions of fact for the jury which cannot be decided through administrative ruling on motion to dismiss. See Walk v. Ring, 202 Ariz. 310, 316, ¶ 23, 44 P.3d 990, 996 (2002) (stating that "determinations of the time when discovery occurs and a cause of action accrues `are usually and necessarily questions of fact for the jury'" (quoting Doe v. Roe, 191 Ariz. 313, 323, ¶ 32, 955 P.2d 951, 961 (1998))); accord Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am., 182 Ariz. 586, 591, 898 P.2d 964, 969 (1995) (holding that the trial court correctly let the jury decide when discovery of a contract injury occurred).

**(2)** During a meet and confer meeting, Counsel was duly informed, by Plaintiff, that Defendant is not in the trusteeship business. While discussing the merits of this

---

[1] Jones v. Taber, 648 F.2d 1201, 1203 (9th Cir. 1981).
[2] Martin v. Weaver, 666 F.2d 1013, 1019 (6th Cir. 1981).

action, Counsel changed his mind from: they are still in business, to; I do not know if they are in business, to; I do not know if they are your trustee. When asked by Plaintiff to comply with this Court's Order (Doc. 123) and disclose Defendant's place of business, phone number, website and under what license they operate as a trustee in Arizona, he was unable or unwilling to answer to any of these requests. Prior to filling his motion, Counsel has not complied with said Court's Order and has not provided Plaintiff with current Corporate Disclosure Statement and Initial Disclosures.

It is a matter of public record that **ReconTrust are not in the trusteeship business anymore** (TAC ¶ 21) (Doc. 117 at Ex. B, C, D). Additionally, Defendant themselves disclosed to Plaintiff that they are not his trustee for the aforementioned reason (Doc. 117 at Ex. E). This Court may take judicial notice of public records. See Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001); Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038(9th Cir. 2010).

Being duly forewarned that Recontrust is not the current trustee under the Deed of Trust ("DOT"), Counsel purposefully misrepresented Defendant by pleading impertinent defense under Arizona Revised Statutes ("ARS") § 33-807(E). By claiming that "Recontrust is simply the trustee and, pursuant to Arizona law, it is entitled to be dismissed from this action" (Motion at 4) while aware that they are not in the business of being trustee, and without providing any evidence to counteract the TAC, Counsel committed fraud on the court. Counsel approached this Court with unclean hands, wantonly colluding with Defendant in a malicious intent to steal real property, while evading his duty to disclose to this Court material information pertaining to this action.

Moreover, Counsel's boilerplate allusions that "Dodev [files] frivolous complaints" (Motion at 2) regurgitated at page 5 and 9 of Motion is direct attack not on Plaintiff but this Court (Doc. 121 at 13) and the Attorney General of Arizona (TAC ¶ 31), ( Doc. 122 at Ex B). Therefore, for the reasons stated herein above, as discussed thoroughly below—clad in relevant Arizona law, case law and material factual evidences—Plaintiff respectfully requests that Defendant's Motion be summarily denied.

## II.    LEGAL ARGUMENT

Judicial prudency favors resolving cases on their merits, based on admissible facts submitted into evidence, governed by the law and the venue of the Action, rather than through technical challenges to the pleadings. When deciding a 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader. See City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir.1993). The complaint is deemed to include any written instrument attached to it as an exhibit or any statement or documents incorporated in it by reference. Cortec Indus., Inc. v. Sum Holdings L.P., 949 F.2d 42, 47 (2d Cir.1991).   The Court also ought to consider matters of which judicial notice is given.  Leonard T. v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir.1999). The general rule in appraising the sufficiency of a complaint for failure to state a claim is that a complaint should not be dismissed "[u]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v.

<u>Gibson</u> (1957), 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2LEd 2d 80; <u>Seymour v. Union News Company</u>, 7 Cir., 1954, 217 F.2d 168;

It is *"only the extraordinary case in which dismissal is proper"* for failure to state a claim. <u>United States v. City of Redwood City</u>, 640 F.2d 963, 966 (9th Cir. 1981). A court may dismiss a complaint as a matter of law only if the complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. <u>Robertson v. Dean Witter Reynolds, Inc.,</u> 749 F.2d 530, 534 (9th Cir. 1984). When ruling on a motion to dismiss, the court must assume that the complaint's factual allegations are true and should construe all inferences from them in the non-moving party's favor. <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002); <u>Balistreri v. Pacifica Police Dept.,</u> 901 F.2d 696, 699 (9th Cir. 1990).

### III.    CONTRA-ARGUMENTS

#### A.    Plaintiff has Sufficiently Plead Tender

In his Motion, Counsel did not provide any statute or case law which contradict the TAC in regards to Plaintiff's executed tender but rather derailed into conclusory statements and <u>affirmative defenses</u>: "Dodev has not plead that has paid off the loan" (Motion at 7, ln 1).  Counsel's attestation to the fact that money did not exchange hands is correct, however Plaintiff has never asserted payment arguments under the TAC as he has <u>tendered</u>, under Arizona Law and the American Law of Presentment (TAC ¶¶ 32-44).

The term "tender" as used in the books, denotes a <u>legal offer</u>, one which one party is under obligation to make and the other bound to accept.  See <u>Duluth v.</u>

Knowlton, 42 Minn. 229; Patnote vs. Sanders, 41 Vt. 66. A tender is an unconditional offer by a debtor or obligor to pay another, in current coin of the realm, a sum not less in amount than that due on a specified debt or obligation. Somerton State Bank v. Maxey, 22 Ariz. 365, 197 P. 892, 14 A.L.R. 1117; Walker v. Houston, 215 Cal. 742, 12 P.2d 952, 87 A.L.R. 937; Equitable Life Assur. Soc. of United States v. Boothe, 160 Or. 679, 86 P.2d 960.

In his motion, Counsel agreed with Plaintiff that the obligation under the lien ought to be tendered prior to quiet title action "Dodev still must satisfy the **tender rule.** Farrell v. West, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941)" (Motion at 8).   Under Farrell, West tendered his obligation with cattle; under his offer(s) to pay, Plaintiff offered to tender by "cash" – a medium of exchange acceptable under the DOT (Doc. 96 at Ex. V). The **tender rule** under the Farrell case is define as an **offer to pay**: "Arizona law does not allow a homeowner to quiet title as to the beneficiary of the deed of trust until the debt on the home is paid or **offered to be paid**." Wolfson v. Bank of America, NA, Ariz: Court of Appeals, 1st Div. 2014 (citing Farrell v. West, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941).

Plaintiff submitted his Good-Faith-Offer(s) to pay the total balance due on his loan to seven or more parties, including Defendant (TAC ¶¶ 36, 37). At the time, Defendant acted as a purported trustee under the DOT (TAC ¶¶ 8, 17). As an independent party [trustee], Defendant had fiduciary duty towards the beneficiary to mediate disputes between lender and borrower, and discretion to collect payments. Counsel assertion that "Dodev's claims do not properly allege that Recontrust breached

its obligation under the deed of trust or Arizona's deed of trust law" (Motion at 5-6) is incorrect as Defendant neither accepted Plaintiff's offer to pay the total balance due nor assisted in arranging a place where borrower and lender can meet to exchange the offered funds (TAC ¶ 39), in addition to violating trust law by not acting as an independent third party to a contract [DOT] (TAC ¶ 21).

In his offers to pay, Plaintiff requested in plain text that the parties name any ESCROW company or a place of business where he can bring the funds in order to complete his obligation under the loan.  None of the recipients of his good-faith offer to pay, including Defendant, accepted the offered funds. Arizona case law unequivocally supports the rule of tender, which excuses the offering party from having to pay actual funds upon rejection of an offer to pay (TAC ¶¶ 43, 44). (A breach of contract giving rise to a claim for damages and also excusing the necessity for the non-breaching party to tender performance.)  Kammert Bros. Enter., Inc. v. Tanque Verde Plaza Co., 428 P. 2d 678 - Ariz: Supreme Court 1967; (Therefore tender of the purchase price by the buyer was excused, since an actual tender is unnecessary where it is clear that the other party will not accept it, rendering the act useless.) Lee v. Nichols, 81 Ariz. 106, 301 P.2d 1022 (1956.) Schmitt v. Sapp, 71 Ariz. 48, 223 P.2d 403 (1950); (It was sufficient that the buyer was ready, willing, and offered to perform.) Lee v. Nichols, supra; (Stated another way, tender is excused where a party indicates it will not be accepted because the law does not require the nonbreaching party to do a futile or useless act) United Cal. Bank v. Prudential Ins. Co., Etc, 681 P. 2d 390 - Ariz: Court of Appeals, 1st Div., Dept. A 1983; (objection to a tender should be made at the time of the tender, and

silence is construed as a waiver of any objection.) <u>Mariposa Dev. Co. v. Stoddard</u>, 147 Ariz. 561, 565, 711 P.2d 1234, 1238 (App.1985).

To further our understanding of tender we must look at the Arizona Revised Statutes ("ARS") and case law as submitted by Plaintiff under his response to co-defendant's Motion to Dismiss, <u>Doc. 136, p. 7-10</u>, incorporated herein by this reference. Moreover, the case laws submitted and incorporated herein and under the TAC affirm that an offer of tender refused or ignored, according to operations of law, puts the nonperforming party in default and gives the performing party the right and remedy to demand a discharge of the debt, and requires the lender to reconvey title due to his default and silence in response to an offer. Additionally, requiring of actual payment in such circumstance is a futile act. "Under these circumstances, requiring Best to actually tender the $75,000.00 payment would, in essence, require Best to perform a futile act, because Cortez has already expressed her intention not to accept the payment." <u>Best v. Cortez</u>, 2013, (citing <u>Nelson v. Cannon</u>, 616 P. 2d 56 - Ariz: Court of Appeals, 1st Div., Dept. A 1980.)

Defendant continues to misguide this Court by deceptively quoting from Doc. 121: "UCC does not apply <u>to liens on real property</u>, such as deeds of trust" [Order, at 5-6] (Motion at 7, ln 10-11). Counsel's Motion falls short again as neither this Court [Doc. 121] nor any other court or statute have supported his fallacy. The order reads (Doc. 121) "the UCC does not apply to <u>deeds of trust,</u>" quoting <u>Hogan v. Washington Mut. Bank, N.A.</u>, 230 Ariz. 584, 586 ¶ 9, 277 P.3d 781, 783 (2012). The Supreme Court of Arizona, which plainly stated that "[t]he trust deed statutes do not require

compliance with the UCC <u>before a trustee commences a non-judicial foreclosure</u>" <u>Id</u>[1], never nullified the compliance with ARS §47 in regard to other remedy, under Arizona law, but specifically addressed non-judicial foreclosure under the deed.

<u>Out of an abundance of caution</u>, Plaintiff gives notice to this Court that ARS §47 is a viable law which can be considered under a DOT and the lien. The Arizona Court of Appeals had confirmed: "Under ARS § 47-3602, 'an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument and to a person entitled to enforce the instrument.'" <u>Steinberger v. McVey,</u> 318 P. 3d 419 - Ariz: Court of Appeals, 1st Div. 2014. (TAC ¶ 59). Offers to pay and tender under ARS § 47 are not meant to operate under the DOT but under the Loan itself. When a valid tender is rejected the Loan is satisfied in full and this subsequently has an effect on the DOT; as an operation of law, the satisfaction of the obligation functions to terminate the lien.

Counsel's bad-faith quotation and misinterpretation of law went up another notch by claiming that Plaintiff "does not allege that sale has been cancelled, nor does he dispute that the sale has been properly postponed pending this litigation" (Motion at 6). <u>This is false,</u> <u>see TAC ¶¶ 51-53</u>. Furthermore, Defendants were not hindered to foreclose under this action, as Plaintiff did not prevail while seeking injunction relief (Doc. 55), fact known to Counsel (Motion at 3); the fact that they did not initiate Trustee Sale ("TS") on the last recorded date or 28-days later, and did not set another TS date is further evidence that the Notice of Trustee Sale ("NTS") was voided, however the record lacks proper cancelation of NTS.

---

[2] The case has been grossly misapplied by counsels under this action.

Counsel was informed, at the meet and confer meeting, that Recontrust is part of the TAC because they boldly elected to violate trust and Arizona Law [ARS] (TAC ¶¶ 21, 53) and because this Court directed Plaintiff "to clarify the legal theory underpinning his quiet title claim as it relates to BNY, SPS, and Recon" (Doc. 121 at 13). Postponement of sale, under Arizona Law, is not defined as fear of a party to commence foreclosure sale because it might be found liable for damages under ARS §33-420(A) (See Stauffer v. U.S. Bank National Ass'n, 308 P.3d 1173, 1175 (Ariz. Ct. App. 2013)), clearly the case under this action, but by a proper notice of postponement.

*The person conducting the sale may postpone or continue the sale from time to time or change the place of the sale to any other location authorized pursuant to this chapter by giving notice of the new date, time and place by public declaration at the time and place last appointed for the sale. Any new sale date shall be a fixed date within ninety calendar days of the date of the declaration. After a sale has been postponed or continued, the trustee, on request, shall make available the date and time of the next scheduled sale and, if the location of the sale has been changed, the new location of the sale **until the sale has been conducted or canceled** and providing this information shall be without obligation or liability for the accuracy or completeness of the information.*

ARS 33-810(B) requires trustee to postponed sale by giving notice of the new date, time and place until the sale has been held or canceled[1]. "Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale." (Covenant 22 under the DOT.) None of the above took place with respect to Defendant's actions, or lack thereof; while the TS had been postponed and rescheduled multiple times in the past [same footnote], with proper notice, that was not the case with the last scheduled sale.

---

[1] See proper cancelation of NTS under ARS at TAC ¶ 18 (Doc. 96 at Ex N).

Response to ReconTrust Motion to Dismiss Plaintiff TAC

Unequivocally, Plaintiff also <u>alleged that the sale has been canceled as a matter</u> <u>of law</u> by virtue of the fact the Recontrust is not in the trustee business (TAC ¶¶ 52, 53) and by Defendant's own admission. (<u>See</u> Doc. 117 at Ex. E.) There is no Arizona Law that permits placing of permanent cloud on a title by recording an indefinite NTS, as Defendant clearly did; contrarily, ARS specifically require the Trustee to postpone sale and "new sale date shall be a fixed date within ninety calendar days of the date of the declaration" 33-810(C), or "if not announced, shall be continued to the same place and at the same time twenty-eight days later" 33-810(B). The record shows neither proper postponement nor recorded cancelation, both required under the Arizona Law and the DOT. Therefore the requirements of ARS § 33-807(E), <u>Puzz v. Chase Home Finance,</u> <u>LLC</u>, 763 F. Supp. 2d 1116, 1125 (D. Ariz. 2011), (Motion at 5) are met as <u>Defendant</u> <u>has violated both their duties under the DOT and ARS, along with applicable trust law</u> (TAC ¶ 21).

### B.   Plaintiff has Sufficiently Plead Arizona Statutes of Limitation

Counsel's Motion, mostly supportive of Plaintiff's claim that the statute of limitation based on written contract (TAC ¶ 47) has elapsed: "has not made a mortgage payment since mid-2008;" "rent-free, for seven years;" "seven years ploy to live in the property for free" (Motion at 4, 5), furnished no defense against the obvious besides another erroneous misquotation of the TAC. In reference to the NOTICE OF ACCELERATION (the "Notice") (TAC at Ex A) "the mortgage **will be accelerated** … and foreclosure proceedings will be initiated at this time" (Motion at 8), Counsel omits […] the date of escalation given; January 16, 2009.

The Notice states in that "if the default is not cured <u>on or before January 16,</u> <u>2009</u>, the mortgage payments **will be** <u>accelerated</u> with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated <u>at that time</u>" and again "failure to bring your loan current or to enter into a written agreement by January 16, 2009...<u>will result</u> in the acceleration of your debt" (TAC Ex A). In the plain language of the Notice, because the default was not cured by the given date, the acceleration took place "at that time".

The Notice follows from Covenant 22 under the DOT in which the Lender is required to give the Borrower notice of default and inform him that if not cured by a certain date it "may result in acceleration". The Notice Plaintiff was furnished with, however, is unambiguous and states that failure to comply "**will** result in acceleration". As such, Plaintiff contends the Court should construe this to mean that the acceleration took place on January 16, 2009.

On 5, 2009, Plaintiff filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court, District of Arizona, followed by his bankruptcy schedules, filed on January 20, 2009, which listed the debt secured by the DOT. (TAC ¶ 24.) On January 23, 2009 Countrywide Home Loans Servicing ("Secured Creditor") filed a Motion for Relief from the Automatic Stay ("Relief Motion"), (Doc 15 under said proceeding), (Exhibit A) and Supplemental Declaration of Marita Graulich, (Doc 16 under said proceeding), (Exhibit B). Plaintiff contends that filing of the Relief Motion and an itemized accounting of unpaid balances with a <u>total amount due</u> in the Declaration commenced the statute of limitation, if it was not yet commenced as of the date on the

Notice. <u>See Plaintiff response to co-defendant's Motion to Dismiss, Doc. 136, p. 10-13,</u> incorporated herein by this reference.

As such, there are two possible dates on which the statute of limitation may have started running, January 16, 2009 as duly noted on the Notice (TAC, Ex A) <u>OR</u> by or on January 23, 2009 when the "secured creditor has elected to initiate foreclosure proceedings" (Doc 15 at 4 and Doc 16 at 4, Under Exhibits A and B), and the six year statute of limitation has now elapsed as a matter of law. <u>See Bamett v. Hitching Post Lodge, Inc.</u>, 101 Ariz. 488, 421 P.2d 507 (1966).

In the aforementioned Motion for Relief from Automatic Stay, the secured creditor gave notice to the court that "[t]here is currently a second Trust Deed" (Doc 15 at 2, Exhibit A). This Court should take notice that said loan is now paid and the deed is reconveyed (TAC ¶¶ 14, 15) and the only other loan through which <u>any</u> creditor might have an interest adverse to Plaintiff's interest in the estate, subject to this quiet title action, is precluded from enforcement by the statute of limitation, as they can no longer appoint a trustee under the DOT, file notice to foreclose or otherwise initiate foreclosure action as they are bared by the six years statute of limitation. <u>See De Anza Land & Leisure Corp. v. Raineri,</u> 137 Ariz. 262, 11 669 P.2d 1339 (App. 1983) (holding that foreclosure is barred by statute of limitation). Accordingly, quieting title in favor of Plaintiff would be equitable and just.

## IV.    CONCLUSION

Plaintiff has elaborated the legal principle under the law of tender on which this quite title action is based and pled material facts showing that there was a tender,

rejection, and discharge of the lien, in addition to providing evidence that acceleration took place in January 2009. The court should take notice that Defendant, while pleading immaterial to this action defenses[1], did not rebut Plaintiff's offers to pay the entire balance due and failed to provide factual evidence that the acceleration did not take place. As such, Plaintiff's TAC is sufficient to survive Defendants' 12(b)(6) motion.

Plaintiff contends that Counsel approached this Court with unclean hands, as shown herein above, and while misquoting this Court and the TAC profusely, his Motion did not bring any factual or supported by Arizona Law defense that can entitle Defendant from dismissal from this action. Being fully briefed that Defendant are not Plaintiff's trustee and that they have clouded the title of the estate, subject of this litigation, Counsel failed his "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" Strickland v. Washington, 466 US 668 - Supreme Court 1984. Notwithstanding the public record and Defendant's own admission of the contrary, he persisted with his unsupported claim that "Recontrust is simply the trustee" (Motion at 4, ln 24).

Moreover, Counsel has not complied with this Court's Order (Doc. 123) and has not served Plaintiff with Defendant's Initial and Corporate Disclosure Statement, and has not responded to Plaintiff's Request for Discovery [Interrogatories, Admissions and Productions of Documents], as served on May 30th 2015 (Doc. 135), violating FRCP Rule 33(b)(2), 32(b)(2)(A), and 36(a)(3). Plaintiff alleges that Counsel's wanton act of withhold material information pertaining to his client from this Court while bringing

---

[1] Affirmative defense requires trial by jury. See Walk v. Ring, 202 Ariz.

impertinent defenses, is contempt with the court. Clearly misleading this Court, striving to gain judicial advantage by falsely representing his client, Counsel's request for attorney fees under ARS § 33-807(E) should be denied as Defendants have violated ARS and are not the trustee under the DOT (TAC ¶¶ 21, 22). See Gullion v. TIFFANY & BOSCO, PA, Dist. Court, D. Arizona 2012 ((Section 33-807(E) does not apply, however, because Tiffany & Bosco is not the trustee of the Deed. The Court will deny Tiffany & Bosco's request for attorneys' fees and costs.)

Under the DOT, the trustee holds legal title until the loan balance is paid [tendered], ARS § 33-801. Seeing as the full balance has been tendered and the statute of limitation has elapsed, Defendant no longer hold legal title or have the legal right to seek remedy of foreclosure and quite title is both equitable and in the interest of judicial efficiency in order to prevent future legal actions against Defendant, as they are an imposter trustee and are not qualified under ARS 33-803(A) for the job.

**WHEREFORE,** Plaintiff respectfully requests that this Court overrule Defendant's Motion and proceed to trial by jury.

Respectfully submitted on this 1st day of July, 2015.

**Ivaylo Tsvetanov Dodev**, Plaintiff in *Pro Se*

Response to ReconTrust Motion to Dismiss Plaintiff TAC

1
2

## **CERTIFICATE OF SERVICE**

3
4
5

**ORIGINAL** and **ONE COPY of the foregoing** are hand-delivered to The United States District Court, for The District of Arizona on this 1st day of July, 2015 by Ivaylo Tsvetanov Dodev.

6
7
8
9

I HEREBY CERTIFY that the following parties through their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system: RECONTRUST, NA, SELECT PORTFOLIO SERVING, NA, AND BANK OF NEW YORK MELLON.

10
11
12
13
14
15

**Ivaylo Tsvetanov Dodev, Plaintiff**
**6312 South 161st Way, Gilbert, Arizona**
**(480) 457-8888 Phone**

16
17
18
19
20
21
22
23
24
25
26
27
28

**17** Response to ReconTrust Motion to Dismiss Plaintiff TAC

# Exhibit A

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS RECONTRUST COMPANY, N.A'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

1 | Jeremy T. Bergstrom, Esq.
Arizona Bar No. 19399
2 | MILES, BAUER, BERGSTROM & WINTERS, LLP
2200 Paseo Verde Pkwy., Suite 250
3 | Henderson, NV 89052
(702) 369-5960 / FAX (702) 369-4955
4 | File No. 09-90232

5 | Attorneys for Secured Creditor,
COUNTRYWIDE HOME LOANS SERVICING, L.P.

6

7 |       UNITED STATES BANKRUPTCY COURT
          FOR THE DISTRICT OF ARIZONA

8

| In re: | Chapter 7 |
| | |
| IVAYLO TSVETANOV DODEV AND NIKOLINA MARKUZOV DODEV AKA NIKOLINA TODOROVA MARKUZOV DODEV, | Case No.: 2:09-BK-00043-CGC |
| Debtor(s). | |
| COUNTRYWIDE HOME LOANS SERVICING, L.P., | |
| Movant, | |
| vs. | |
| IVAYLO TSVETANOV DODEV AND NIKOLINA MARKUZOV DODEV AKA NIKOLINA TODOROVA MARKUZOV DODEV, Debtor; ROBERT A. MACKENZIE, Trustee, | |
| Respondents. | |

19

20 |       **MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

COUNTRYWIDE HOME LOANS SERVICING, L.P., its assignees and/or successor in

interest ("Secured Creditor" herein), moves this Court for an Order terminating the Automatic

Stay so that Secured Creditor (and its Trustee) may commence and continue all acts necessary to

foreclose under the Deed of Trust secured by Debtor's property, generally described as 23410

South 161st Way, Gilbert, AZ 85297 ("Property" herein).

1

1   There is currently a second Trust Deed upon the Property in favor of and/or serviced by
2   COUNTRYWIDE HOME LOANS, securing a Promissory Note in an unknown original amount.
3   The present unpaid principal balance of said Note is $120,486.87 as listed on Schedule D-
4   Creditors Holding Secured Claims of the Debtor's Schedules.  Attached hereto as Exhibit "A" is
5   a copy of Schedule D-Creditors Holding Secured Claims of the Debtor's Schedules.  Secured
6   Creditor will seek leave of Court to specify the amount of delinquency thereon at the time of
7   Hearing.

8   In the event Secured Creditor obtains title to the property at its foreclosure sale, Secured
9   Creditor will incur substantial fees and costs in reselling the Property.  Based on past experience
10  of the Secured Creditor, the additional cost is a minimum of eight to ten percent.  This cost is
11  primarily commission fees on resale, and title and closing costs.  Further, it is typical to incur
12  further expense for putting the property in marketable condition.

13  Secured Creditor alleges the value of the Property to be approximately $350,000.00 based
14  upon Schedule A-Real Property of the Debtor's Schedules.  Attached hereto as Exhibit "B" is a
15  copy of Schedule A-Real Property of the Debtor's Schedules.  Secured Creditor requests that the
16  Court take Judicial Notice, pursuant to Federal Rules of Evidence Rule 201, of the attached
17  Exhibit as to the issue of value of the subject Property.

18  Secured Creditor alleges that there appears to be no equity with respect to the subject
19  Property, that Secured Creditor is not adequately protected, that the Property is not necessary for
20  an effective reorganization, and that cause exists, in that Secured Creditor is not receiving its
21  regular monthly payments, and/or that it would be unfair and inequitable to delay Secured
22  Creditor in the foreclosure of Secured Creditor's interest in the subject Property.  11 U.S.C.
23  Section 362(d).

24

2

1    Secured Creditor is also entitled to attorney's fees and costs under the Note and Deed of

2  Trust securing Secured Creditor's claim, or alternatively under 11 U.S.C. 506(b) and such other

3  relief as the Court deems just and proper.

4

5                    **MEMORANDUM OF POINTS AND AUTHORITIES**

6                              **STATEMENT OF FACTS**

7                                           **I**

8    This Secured Creditor is the servicer and/or beneficiary of a Promissory Note dated

9  December 12, 2006, in the principal amount of $681,750.00, which is secured by the above-

10  referenced Deed of Trust.  The original beneficiary under the subject Trust Deed is MERS, Inc.,

11  its successors and assigns, AS NOMINEE for lender, FIRST MAGNUS FINANCIAL

12  CORPORATION, AN ARIZONA CORPORATION.  True and correct copies of the Note and

13  Deed of Trust are attached hereto as Exhibits "C" and "D."  MERS, INC. is a registry that

14  contains multiple members and that register millions of mortgage backed loans.

15  COUNTRYWIDE HOME LOANS SERVICING, L.P., is a member of MERS, INC.  A true and

16  correct copy of the MERS, INC. confirmation of COUNTRYWIDE HOME LOANS

17  SERVICING, L.P., as a member is attached hereto as Exhibit "E."  Per the MERS guidelines,

18  any member of MERS may transfer either the servicing rights or the beneficial interest on any

19  MERS loan provided the assignment flows from one MERS member to another MERS member.

20  In the case at bar, COUNTRYWIDE HOME LOANS SERVICING, L.P., was assigned the

21  servicing rights of this MERS loan and, as such, has standing to bring the instant motion for stay

22  relief.  Copies of said Note and Deed of Trust are attached hereto as Exhibits "C" and "D" and

23  by this reference incorporated herein.

24

3

1    On or about January 5, 2009, Debtor commenced the current Chapter 7 Bankruptcy

2  proceeding in this Court.

3    The Debtor's total arrearages are broken down on the Supplemental Declaration by the

4  Secured Creditor on file herein.

5    Secured Creditor has elected to initiate foreclosure proceedings on the subject property

6  with respect to the subject Trust Deed.  However, Secured Creditor is precluded from proceeding

7  to publish the necessary notices and commencing said foreclosure action during the pendency of

8  this Bankruptcy.

9

10    **SECURED CREDITOR IS ENTITLED**
      **TO RELIEF FROM THE AUTOMATIC STAY**
11    **UNDER 11 U.S.C. SECTION 362(d)(2)**

12    **II**

13    11 U.S.C. Section 362(d) provides:

14    " (d) On request of a party in interest and after notice and a hearing, the court
      shall grant relief from the stay provided under subsection (a) of this section, such
15    as by terminating, annulling, modifying, or conditioning such stay –

16        (2) with respect to a stay of an act against property under
            subsection (a) of this section, if-

17
            (A) the debtor does not have an equity in such
18            property; and

19            (B) such property is not necessary to an effective
                reorganization…"
20

21    Subsection (2) of 11 U.S. C. Section 362(d) allows the court to grant relief from the

22  automatic stay if the debtor does not have equity in the subject property and if the subject

23  property is not necessary to an effective reorganization.  In re San Clemente Estates, 5 B.R.

24  605 (S.D. Cal. 1980), the court stated that:

4

1  "Section 362(d)(2) reflects Congressional intent to allow creditors to immediately
   proceed against the property where the debtor has no equity and it is unnecessary
2  to the reorganization, even where the debtor can provide adequate protection
   under Section 362(d)(1)." (Emphasis added.)

3

4  Id. 5 B.R. at 610.

5      In re Mikole Developers, Inc., 14 B.R. 524 (1981), involved a claim for relief under 11

6  U.S.C. Section 362(d)(2). The court stated that in determining whether equity exists in the

7  subject property, all encumbrances are totaled, whether or not all the lienholders have joined in

8  the request for relief from stay. Id. at 525. The Ninth Circuit has concurred in this view in

9  Stewart v. Gurley, 745 F.2d 1194 (9th Cir. 1984); see also In re Mellor, 734 F.2d 1396 (9th Cir.

10 1984). An appropriate cost of sale factor should also be added to determine if the debtor has any

11 equity in the property. La Jolla Mortgage Fund v. Rancho El Cajon Associates, 18 B.R. 283,289

12 (Bankr. S.D. CA 1982).

13     In the present case, the Debtor has little or no equity in the Property, as evidenced by the

14 approximate market value compared to the total liens against the Property, principally that of

15 Secured Creditor herein.

16          **THE DEBTOR HAS THE BURDEN OF SHOWING THAT**
            **THE PROPERTY IS NECESSARY TO AN EFFECTIVE**
17          **REORGANIZATION, AND ABSENT SUCH A SHOWING**
            **RELIEF FROM STAY SHOULD BE GRANTED**

18
                                    **III**
19
       A creditor is entitled to relief from the automatic stay under Section 362(d)(2) unless the
20
   debtor has met the burden of establishing that the property is "necessary to an effective
21
   reorganization." Section 362(g)(1) and (2) of the Bankruptcy Code, see In re Roselli, 10 B.R.
22
   665 (Bankr. PA 1981).
23

24

                                    5

1   "Effective" reorganization means that there must exist a reasonable possibility of such a

2   successful reorganization or rehabilitation. <u>In re Vieland</u>, 41 B.R. 134, 142 (Bankr. Ohio 1984).

3   Since this is a Chapter 7 case, there clearly can be no effective reorganization.  Therefore, relief

4   from stay should be granted.

5

6       WHEREFORE, Secured Creditor prays judgment as follows:

7       (1)    For an Order granting relief from Automatic Stay, permitting Secured Creditor to

8   move ahead with Foreclosure proceedings under Secured Creditor's Trust Deed, and to sell the

9   subject Property at a Trustee's Sale under the items of said Trust Deed including necessary

10  action to obtain possession of the Property.

11      (2)    For an Order waiving the 10-day stay provided by Bankruptcy Rule 4001(a)(3).

12      (3)    For an Order binding and effective despite any conversion of this bankruptcy case.

13      (4)    For such other relief as this Court deems appropriate.

14                          MILES, BAUER, BERGSTROM & WINTERS, LLP

15  Dated:    January 23, 2009     By:    /s/ Jeremy T. Bergstrom, Esq.
                                          Jeremy T. Bergstrom, Esq.
16                                        Attorney for Secured Creditor

17  **09-90232/azmrs.dot/slw**

18

19

20

21

22

23

24

                                    6

# Exhibit A

B6D (Official Form 6D) (12/07)

In re    **Ivaylo Tsvetanov Dodev,**
      **Nikolina Markuzov Dodev,**

Case No.    **2:09-bk-00043-CGC**

                      Debtors

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxxxx8065 | | | **First Mortgage** | | | | | |
| **Aurora Loan Services** P.O. Box 1706 Scottsbluff, NE 69363-1706 | | W | **Real property located at 19420 E. Hunt Hwy, Queen Creek, AZ** | | | | | |
| | | | Value $        **400,000.00** | | | | 544,908.90 | 144,908.90 |
| Account No. xxxxxxxxxx7799 | | | **Third Mortgage** | | | | | |
| **Bank of America** P.O. Box 26078 Greensboro, NC 27420 | | W | **Real property located at 19420 E. Hunt Hwy, Queen Creek, AZ** | | | | | |
| | | | Value $        **400,000.00** | | | | 130,835.67 | 130,835.67 |
| Account No. xxxxx8494 | | | **First Mortgage** | | | | | |
| **Countrywide Home Loans** P.O. Box 10219 Van Nuys, CA 91410-0219 | | H | **Residence located at 6312 S. 161st Way, Gilbert AZ** | | | | | |
| | | | Value $        **350,000.00** | | | | 721,199.48 | 371,199.48 |
| Account No. xxxxx6005 | | | **Second Mortgage** | | | | | |
| **Countrywide Home Loans** P.O. Box 10229 Van Nuys, CA 91410-0029 | | H | **Residence located at 6312 S. 161st Way, Gilbert AZ** | | | | | |
| | | | Value $        **350,000.00** | | | | 120,486.87 | 120,486.87 |
| _1_   continuation sheets attached | | | Subtotal (Total of this page) | | | | 1,517,430.92 | 767,430.92 |

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

B6D (Official Form 6D) (12/07) - Cont.

In re    Ivaylo Tsvetanov Dodev,              Case No.   **2:09-bk-00043-CGC**
         Nikolina Markuzov Dodev
                                              _____
                                                          Debtors

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxxxx8735<br><br>Homecomings Financial<br>P.O. Box 205<br>Waterloo, IA 50704-0205 | | W | Second Mortgage<br><br>Real property located at 19420 E. Hunt Hwy, Queen Creek, AZ<br><br>Value $         400,000.00 | | | | 109,486.89 | 109,486.89 |
| Account No. | | | <br><br>Value $ | | | | | |
| Account No. | | | <br><br>Value $ | | | | | |
| Account No. | | | <br><br>Value $ | | | | | |
| Account No. | | | <br><br>Value $ | | | | | |

Sheet ___1___ of ___1___ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | 109,486.89 | 109,486.89 |
| Total (Report on Summary of Schedules) | 1,626,917.81 | 876,917.81 |

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037                          Best Case Bankruptcy

# Exhibit B

B6A (Official Form 6A) (12/07)

In re    **Ivaylo Tsvetanov Dodev,**
        **Nikolina Markuzov Dodev**                  Case No.   **2:09-bk-00043-CGC**
                           Debtors

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Residence located at 6312 S. 161st Way, Gilbert AZ** | **Fee simple** | **C** | **350,000.00** | **841,686.35** |
| **Real property located at 19420 E. Hunt Hwy, Queen Creek, AZ** | **Fee simple** | **C** | **400,000.00** | **785,231.46** |

|  |  |  |
|---|---|---|
| Sub-Total > | **750,000.00** | (Total of this page) |
| Total > | **750,000.00** |  |

  **0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

# Exhibit C

SEE "PREPAYMENT PENALTY ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

LOAN NO.: 6531180433

MIN: 100039265311804332
MERS Phone: 1-888-679-6377

# ADJUSTABLE RATE NOTE
## (MTA - Twelve Month Average Index - Payment Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.

DECEMBER 12, 2006
[Date]

MESA
[City]

ARIZONA
[State]

**This is a True and Certified Copy of the Original**

23410 SOUTH 161ST WAY, GILBERT, AZ 85298
[Property Address]

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      681,750.00      (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed  ONE HUNDRED FIFTEEN AND 000/1000THS  (    116.000    %) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.    INTEREST

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      1.750      %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the      1st      day of      FEBRUARY, 2007      , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding  THREE AND 400/1000THS  percentage point(s) (    3.400    %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than  9.950  %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

PayOption ARM Note - MTA Index
FE-5312 (0511)

Page 1 of 6

LENDER SUPPORT SYSTEMS, INC. FE5312XX.COU (12/06)

Initials:

3.    **PAYMENTS**
    **(A) Time and Place of Payments**
    I will make a payment every month.
    I will make my monthly payments on the    1st    day of each month beginning on    FEBRUARY, 2007    .
I will make these payments every month until I have paid all the Principal and Interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied
to interest before Principal. If, on    JANUARY 01, 2037    , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at    First Magnus Financial Corporation, An Arizona Corporation
603 North Wilmot Road, Tucson, AZ 85711
or at a different place if required by the Note Holder.

    **(B) Amount of My Initial Monthly Payments**
    Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $    2,435.51
unless adjusted under Section 3(F).

    **(C) Payment Change Dates**
    My monthly payment may change as required by Section 3(D) below beginning on the 1st  day of    FEBRUARY, 2008    ,
and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also
will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment"
is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change
Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest
due then negative amortization will occur.
    I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided
in Section 3(F) or 3(G) below.

    **(D) Calculation of Monthly Payment Changes**
    At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that
would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity
date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The
result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly
payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5%
limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply
to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by
taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to
pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have
the option to pay the Full Payment for my monthly payment.

    **(E) Additions to My Unpaid Principal**
    Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject
to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the
interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment
date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the
interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and
will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate
required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply
the payment as provided in Section 3(A).

    **(F) Limit on My Unpaid Principal; Increased Monthly Payment**
    My unpaid Principal can never exceed the Maximum Limit equal to    ONE HUNDRED FIFTEEN  AND 000/1000THS    percent
(115.000 %) of the Principal amount I originally borrowed. My unpaid principal could exceed that Maximum Limit due to

PayOption ARM Note - MTA Index
FE-5312 (0511)                                           Page 2 of 5                                    Initials ____

Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G) Required Full Payment

On the    fifth    Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H) Payment Options

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) Interest Only Payment: the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Fully Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

4.    NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN    ( 15 ) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

PayOption ARM Note - MTA Index
FE-5312 (0511)                                    Page 3 of 5                                    Initials: ___

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

8.   GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

10.  WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.  SECURED NOTE
In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option

PayOption ARM Note - MTA Index
FE-8312 (0511)                                        Page 4 of 5                              Initials

shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
IVAYLO T DOOEV                    -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                           -Borrower

PayOption ARM Note - MTA Index
FE-5312 (0511)                              Page 5 of 5

# Exhibit D



**Federal Title Agency, LLC**

Recording Requested By:
FIRST MAGNUS FINANCIAL CORPORATION

Return To:
FIRST MAGNUS FINANCIAL CORPORATION

603 N. WILMOT
TUCSON, AZ 85711

Prepared By:

FIRST MAGNUS FINANCIAL CORPORATION
603 N. WILMOT
TUCSON, AZ 85711

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20061646998 12/18/2006 03:48
52354-22-2-2--
ELECTRONIC RECORDING

RECEIVED
JAN 19 2007



610  147338494  D2  001  002

[Space Above This Line For Recording Data]

## DEED OF TRUST

LOAN NO.:  6531180433                    MIN  100039265311804332
ESCROW NO.:  00052354001                 MERS Phone: 1-888-679-6377

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated          DECEMBER 12, 2006
together with all Riders to this document.
(B) "Borrower" is
IVAYLO T. DODEV, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
23410 SOUTH 161ST WAY, GILBERT, AZ  85297
(C) "Lender" is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

Lender is a  CORPORATION
organized and existing under the laws of  ARIZONA

Initials:

ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3003  1/01 (rev. 6/02)
VMP-6A(AZ) (0206)                    Page 1 of 15      LENDER SUPPORT SYSTEMS INC. MERS6AAZ.NEW (05/04)



Lender's mailing address is
603 North Wilmot Road, Tucson, AZ 85711
(D) "Trustee" is

Trustee's mailing address is

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated    DECEMBER 12, 2006
The Note states that Borrower owes Lender
SIX HUNDRED EIGHTY ONE THOUSAND SEVEN HUNDRED FIFTY AND NO/100 X X X X X X

Dollars

(U.S. $ 681,750.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    JANUARY 01, 2037
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[XX] Adjustable Rate Rider      [ ] Condominium Rider              [ ] 1-4 Family Rider
[ ] Graduated Payment Rider    [ ] Planned Unit Development Rider  [ ] Biweekly Payment Rider
[ ] Balloon Rider              [ ] Rate Improvement Rider          [ ] Second Home Rider
[ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

Initials _____

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                    of                    MARICOPA                    :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF ......AND BEING MORE PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 304-77-004                        which currently has the address of
                    23410 SOUTH 161ST WAY                              [Street]
         GILBERT                    [City] , Arizona        85297        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials

VMP-6A(AZ) (0206)                    Page 3 of 16                    Form 3003  1/01  (rev. 6/02)

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Time of Essence. Time is of the essence in each covenant of this Security Instrument.

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____
                                                    -Witness


_____
                                                    -Witness


_____ (Seal)          _____ (Seal)
IVAYLO T DODEV                       -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                     -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                     -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                     -Borrower                                        -Borrower

VMP-6A(AZ) (0208)                    Page 14 of 15              Form 3003   1/01  (rev. 6/02)

STATE OF ARIZONA                    ,    Maricopo        County ss:

The foregoing instrument was acknowledged before me this 13th December 2006    by
IVAYLO T DODEV


FAITH E. VILLA
Notary Public - Arizona
Maricopa County
Expires 12/31/09

My Commission Expires: 12/31/09

Notary Public

## EXHIBIT A

A PORTION OF LAND IN THE SOUTHWEST QUARTER OF SECTION 22, TOWNSHIP 2 SOUTH, RANGE 6 EAST, GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF SECTION 22;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 1284.85 FEET;

THENCE NORTH 00 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 415.04 FEET;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 193.02 FEET TO THE POINT OF BEGINNING;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 367.57 FEET;

THENCE NORTH 00 DEGREES 03 MINUTES 42 SECONDS EAST, A DISTANCE OF 9.56 FEET;

THENCE NORTH 18 DEGREES 49 MINUTES 40 SECONDS EAST, A DISTANCE OF 266.94 FEET;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 279.44 FEET;

THENCE SOUTH 00 DEGREES 25 MINUTES 50 SECONDS EAST, A DISTANCE OF 262.23 FEET TO THE POINT OF BEGINNING.

ALTA Commitment – Exhibit A

# EXHIBIT "E"

## CORPORATE RESOLUTION

Be it Resolved that all officers of **Countrywide Home Loans and CTC Real Estate Services,** a member of Mortgage Electronic Registration Systems, Inc. (MERS) are hereby appointed as assistant secretaries and vice presidents of MERS, and, as such, are authorized to:

(1) release the lien of any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(2) assign the lien of any mortgage loan naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage loan is registered on the MERS System, is shown to be registered to the Member;

(3) execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS System that is shown to be registered to the Member, including but not limited to (a) substitution of trustee on Deeds of Trust, (b) Trustee's Deeds upon sale on behalf of MERS, (c) Affidavits of Non-military Status, (d) Affidavits of Judgment, (e) Affidavits of Debt, (f) quitclaim deeds, (g) Affidavits regarding lost promissory notes, and (h) endorsements of promissory notes to VA or HUD on behalf of MERS as a required part of the claims process;

(4) take any and all actions and execute all documents necessary to protect the interest of the Member, the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a loan registered on the MERS System that is shown to be registered to the Member, including but not limited to:  (a) executing Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and applicable local bankruptcy rules, (b) entering a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor, or any adjournment thereof, and vote on behalf of the Member, the beneficial owner of such mortgage loan, or MERS, on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute, and return a ballot accepting or rejecting a plan, and (g) execute reaffirmation agreements;

(5) take any and all actions and execute all documents necessary to refinance, amend or modify any mortgage loan registered on the MERS System that is shown to be registered to the Member.

(6) endorse checks made payable to Mortgage Electronic Registration Systems, Inc. to the Member that are received by the Member for payment on any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(7) take any such actions and execute such documents as may be necessary to fulfill the Member's servicing obligations to the beneficial owner of such mortgage loan (including mortgage loans that are removed from the MERS System as a result of the transfer thereof to a non-member of MERS).

I, William C. Hultman, being the Corporate Secretary of Mortgage Electronic Registration Systems, Inc., hereby certify that the foregoing is a true copy of a Resolution duly adopted by the Board of Directors of said corporation effective as of the 10th day of December, 2001, which is in full force and effect on this date and does not conflict with the Certificate of Incorporation or By-Laws of said corporation.

Secretary  WILLIAM C. HULTMAN

# Exhibit B

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS RECONTRUST COMPANY,
N.A'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

1   Jeremy T. Bergstrom, Esq.
    Arizona Bar No. 19399
2   MILES, BAUER, BERGSTROM & WINTERS, LLP
    2200 Paseo Verde Pkwy., Suite 250
3   Henderson, NV 89052
    (702) 369-5960 / FAX (702) 369-4955
4   File No. 09-90232

5   Attorneys for Secured Creditor,
    COUNTRYWIDE HOME LOANS SERVICING, L.P.
6

7                    UNITED STATES BANKRUPTCY COURT
                      FOR THE DISTRICT OF ARIZONA
8

9   In re:                                    Chapter 7

10  IVAYLO TSVETANOV DODEV AND                 Case No.: 2:09-BK-00043-CGC
    NIKOLINA MARKUZOV DODEV AKA
11  NIKOLINA TODOROVA MARKUZOV
    DODEV,
        Debtor(s).
12

13  COUNTRYWIDE HOME LOANS
    SERVICING, L.P.,
14          Movant,

15          vs.

16  IVAYLO TSVETANOV DODEV AND
    NIKOLINA MARKUZOV DODEV AKA
17  NIKOLINA TODOROVA MARKUZOV
    DODEV, Debtor; ROBERT A. MACKENZIE,
18  Trustee,
            Respondents.

19

20          **SUPPLEMENTAL DECLARATION OF MARITA GRAULICH**

21          I, MARITA GRAULICH, declare and state as follows:

22          As to the following facts, I know them to be true of my own personal knowledge, and if

23  called upon to testify in this action, I could and would testify competently thereto.

24          I am an employee of COUNTRYWIDE HOME LOANS SERVICING, L.P., hereinafter

    "Secured Creditor", and am the person most familiar with the subject first Trust Deed loan in

                                          1

1  favor of and/or serviced by Secured Creditor herein and the ongoing Bankruptcy litigation

2  herein. COUNTRYWIDE HOME LOANS SERVICING, L.P. is the successor in interest to

3  MERS, INC. AS NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, the

4  original beneficiary under the subject Trust Deed herein.

5      The subject real property secured said first Trust Deed loan is generally described as

6  23410 South 161st Way, Gilbert, AZ  85297, ("Property" herein) and legally described as

7  follows:

8      SEE EXHIBIT "A"

9      This Secured Creditor is the beneficiary and/or servicer of a Promissory Note dated

10  December 12, 2006, in the principal amount of $681,750.00, which is secured by the above-

11  referenced Deed of Trust.

12      On or about January 5, 2009, Debtor commenced the current Chapter 7 Bankruptcy

13  proceeding in this Court.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

2

1    Payments have not been applied to the Debtor's loan for all post-petition payments due

2    and owing.  With respect to Secured Creditor's Trust Deed, the following is due and owing:

3    <u>Unpaid Principal Balance</u>                                         =        $721,199.48

4    <u>Total Arrearages</u>

5    2 monthly payments at $2,933.62 each                    =        $5,867.24
     (November 1, 2008 through December 1, 2008)

6    1 monthly payment at $2,913.62                              =        $2,913.62
7      (January 1, 2009)

8    Late Charges                                                          =        $130.91

9    Escrow Shortage                                                   =        $337.69

10   Bankruptcy Attorney's Fees and Costs                   =        $550.00

11   Filing Fee                                                              =        $150.00

     **TOTAL DELINQUENCIES**                                  =        **$9,949.46**

12   **TOTAL Unpaid Principal plus Delinquencies**     =        **$731,148.94**

13

14   Furthermore, a monthly payment becomes due on February 1, 2009, and same becomes due on

15   the first (1st) day of every month thereafter, and a late charge becomes due on any payment not

16   paid within fifteen (15) days from the date the monthly payment is due.

17   The unpaid principal balance plus delinquencies set forth hereinabove does not include

18   accrued interest.  The actual payoff amount will be higher than the amount set forth hereinabove

19   and will be disclosed by supplemental declaration.

20   ///

21   ///

22   ///

23   ///

24   ///

3

1    In the event Secured Creditor obtains title to the Property at its foreclosure sale, Secured

2   Creditor will incur substantial fees and costs in reselling the Property.  Based on past experience

3   of the Secured Creditor, the additional cost is a minimum of eight to ten percent.  This cost is

4   primarily commission fees on resale, and title and closing costs.  Further, it is typical to incur

5   further expense for putting the Property in marketable condition.

6    Secured Creditor has elected to initiate foreclosure proceedings on the subject property

7   with respect to the subject Trust Deed.  However, Secured Creditor is precluded from proceeding

8   to publish the necessary notices and commencing said foreclosure action during the pendency of

9   this Bankruptcy.

10    I declare under penalty of perjury under the laws of the United States and the State of

11   Texas that the foregoing is true and correct.

12    Executed this _15_ day of ___Jun_____, 2009, at Richardson, Texas.

13

14                               MARITA GRAULICH

15

16   SUBSCRIBED AND SWORN to before me

     This _15_ day of __Jan_____, 2009.

17

18

19   _____
     NOTARY PUBLIC

20

21   09-90232/azsupdec.dot/slw

22

23

24

4

# Exhibit A

# EXHIBIT A

A PORTION OF LAND IN THE SOUTHWEST QUARTER OF SECTION 22, TOWNSHIP 2 SOUTH, RANGE 6 EAST, GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, DESCRIBED AS FOLLOWS;

COMMENCING AT THE SOUTHWEST CORNER OF SECTION 22;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 1284.85 FEET;

THENCE NORTH 00 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 415.04 FEET;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 193.02 FEET TO THE POINT OF BEGINNING;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 367.57 FEET;

THENCE NORTH 00 DEGREES 03 MINUTES 42 SECONDS EAST, A DISTANCE OF 9.56 FEET;

THENCE NORTH 18 DEGREES 49 MINUTES 40 SECONDS EAST, A DISTANCE OF 266.94 FEET;

THENCE NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST, A DISTANCE OF 279.44 FEET;

THENCE SOUTH 00 DEGREES 25 MINUTES 50 SECONDS EAST, A DISTANCE OF 262.23 FEET TO THE POINT OF BEGINNING.

ALTA Commitment – Exhibit A