Kim R. Lepore (SBN 019130)
klepore@wrightlegal.net
Jamin S. Neil (SBN 026655)
jneil@wrightlegal.net
**WRIGHT, FINLAY & ZAK, LLP**
18444 N. 25th Ave., Suite 420
Phoenix, Arizona 85023
Telephone: (602) 842-3368
Facsimile: (949) 845-8898

Attorneys for *Defendants*
Select Portfolio Servicing, Inc. and The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-OA7, Mortgage Pass-Through Certificates, Series 2007-OA7

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivaylo Tsvetanov Dodev,<br><br>    Plaintiff,<br><br>    vs.<br><br>Recontrust Company, N.A., Select Portfolio Servicing, Inc., The Bank Of New York Mellon, Corporation, fka The Bank of New York, DOES 1-100, in his/her individual and official capacity,<br><br>    Defendants. | Case No. 2:13-cv-02155-DLR<br><br>**DEFENDANTS SELECT PORTFOLIO SERVICING AND THE BANK OF NEW YORK MELLON, AS TRUSTEE'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

*Defendants* Select Portfolio Servicing, Inc. ("SPS") and The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-OA7, Mortgage Pass-Through Certificates, Series 2007-OA7, *erroneously sued as* The Bank of New York Mellon, Corporation, fka The Bank of New York, ("BNYM"), by and through counsel undersigned, hereby respectfully submit this Reply in support of their Motion to Dismiss *Plaintiff* Ivaylo Tsvetanov Dodev's ("Plaintiff") Third Amended Complaint ("TAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

SPS and BNYM also submit this Reply in opposition to Plaintiff's *Response in*

*Opposition* to the Motion to Dismiss ("Response"). First, the Response, much like the TAC, misapplies and misinterprets the statutes and case law surrounding the "Tender Rule" but, notably, does confirm that **payment was never sent**. Second, Plaintiff's application of the UCC to this case is inappropriate. Third, Plaintiff fails to allege the Loan was actually accelerated. Fourth, the Motion for Relief filed in Plaintiff's bankruptcy case could not have accelerated the Loan. Finally, assuming *arguendo*, the statute of limitations has expired, this Court cannot quiet title absent Plaintiff's payment of the entire Loan balance and BNYM's lien remains on the Property whether or not BNYM is barred from foreclosing.

Accordingly, as both of Plaintiff's claims fail as a matter of law, this Court should dismiss Plaintiff's TAC in its entirety, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV.   ARGUMENT.

**A.   Plaintiff's Interpretation of the "Tender Rule" Is Contrary to Precedent.**

Much like his TAC, Plaintiff maintains that he was not actually required to make payment of all amounts due under the Loan in order to discharge the obligation. In support of this assertion, Plaintiff provides carefully selected portions of cases discussing the issue. Unfortunately for Plaintiff, none of these cases support **his** interpretation of the "Tender Rule."

*1.   "Tender" Defined.*

In his Response, Plaintiff contends that "tender" is merely an "offer by a debtor or obligor to pay another…"[1] and cites to *Somerton State Bank v. Maxey*, 22 Ariz. 365, 369, 197 P. 892, 894 (1921) in support of his position. However, Plaintiff conveniently omits the complete definition of "tender" provided in *Somerton*. Indeed, the Arizona Supreme Court in *Somerton* defined "tender" as follows:

> Tender is an offer to perform a contract, or to pay money, coupled with a present ability to do the act. It imports, not merely the readiness and the ability to pay or perform at the time and place mentioned in the contract, but **also the actual production of the thing to be paid** or delivered over, and an offer of it to the person to whom the tender is to be made; and the act of tender must be such that it needs only acceptance by the one to

---

[1] Doc. 136, p. 5, line 26.

whom it is made to complete the transaction. *Somerton* 197 P. at 894 (internal quotations omitted) (emphasis added).

Accordingly, "tender" requires the actual production of the thing (in this case money) to be tendered. Moreover, if proper tender is made, only acceptance is needed to complete the transaction. Here, the TAC confirms that no funds were ever sent to BNYM or SPS.[2] Indeed, Plaintiff admits that he only "offered to pay the total balance due…"[3] Even if BNYM or SPS had accepted Plaintiff's offer of payment, doing so would not have paid off the Loan and, thus, the transaction could not have been completed. Therefore, pursuant to the *Somerton* Court's definition of "tender," Plaintiff's offer of payment was not, in fact, a "tender."

    2. *Cases Cited By Plaintiff Require More Than a Mere Offer of Payment.*[4]

In addition to misconstruing the definition of "tender" outlined in *Somerton*, Plaintiff misstates the discussion of "tender" in four other Arizona cases.[5] First, Plaintiff likens his "situation" to the factual scenario discussed by the Arizona Supreme Court in *Kammert Bros. Enterprises, Inc. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 306, 428 P.2d 678, 683 (1967). The *Kammert* Court found the seller, under a land purchase contract, liable for damages to the buyer, due to seller's anticipatory repudiation. More specific, the Court excused the buyer's actual tender of the purchase amount because of the seller's refusal to sell the property, which was a material breach under the contract.

Unlike the factual scenario in *Kammert*, Plaintiff alleges he has been in default under the Loan since "mid-2008."[6] Accordingly, as Plaintiff was already in material breach, SPS or BNYM could not have anticipatorily repudiated their obligations under the Note and Deed of

---

[2] Plaintiff's Response appears to allege that he was unsure which one, of seven different parties was entitled to payment. He complains that actual payment should not be required as he would have been forced to pay the total amount due to seven different parties. Plaintiff's concerns are wholly unjustified. Had Plaintiff actually paid any one of the alleged seven parties, his quiet title claim as to the remaining six parties would have succeeded under A.R.S. § 12-1101 (assuming the remaining parties continued to assert an interest in the Property).

[3] Doc 122, ¶ 27.

[4] Plaintiff also cites to several cases from other jurisdictions. These decisions, however, are not controlling on Arizona Courts interpreting Arizona law. *State v. Dean*, 226 Ariz. 47, 53, 243 P.3d 1029, 1035 (Ct. App. 2010).

[5] Plaintiff cites to a fifth case, *Best v. Cortez*, 1 CA-CV 12-0593, 2013 WL 5820303, at *1 (Ariz. Ct. App. Oct. 29, 2013), which is unpublished and does not create legal precedent. Moreover, the decision in no way supports Plaintiff's position as the buyer in that case sent a letter of intent to seller exercising a purchase option. The Arizona Court of Appeals concluded that the letter of intent, without the required $75,000.00 payment, was insufficient tender.

[6] Doc 122, ¶ 25.

Trust when Plaintiff merely offered payment. Moreover, Plaintiff's TAC makes clear that his offers were not rejected, rather, his correspondence sent between January and March 2013 was either returned undeliverable or no response was received.[7] Assuming *arguendo*, SPS and BNYM received Plaintiff's offer, lack of response can hardly be equated to anticipatory repudiation.

Second, *Lee v. Nichols*, 81 Ariz. 106, 301 P.2d 1022 (1956) in no way supports Plaintiff's definition of tender as the buyer in that case had deposited funds in the amount of $3,000.00 demonstrating that the buyer "was ready, able and willing to pay the balance on the contract" in the amount of $2,991.85. *Lee*, 301 P.2d at 102.

Third, *United California Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 681 P.2d 390 (Ct. App. 1983), does not bear even the slightest resemblance to the facts of this case. In *United California*, a builder contracted with a lender for a construction loan, the terms of which were outlined in a commitment letter. The builder delivered evidence of its compliance with all terms of the commitment letter in order to obtain the loan, but the lender refused to send funds. The Arizona Court of Appeals upheld the trial court's breach of contract judgment in favor of the builder, finding that the builder had not waived the lender's anticipatory repudiation. In this case, as discussed above, there was no anticipatory repudiation on the part of SPS or BNYM and, therefore, actual tender by Plaintiff of the funds needed to pay off the Loan was not excused.

Fourth, in *Mariposa Dev. Co. v. Stoddard*, 147 Ariz. 561, 711 P.2d 1234 (Ct. App. 1985), the appellees sought to quiet title to certain real property by requesting parties with a purported interest in the property convey their interest in same to appellee via a quitclaim deed prepared by same. In order to compensate each of the parties for executing the quitclaim deed, appellee deposited $100.00 with an escrow company with instructions to release the $100.00 as soon as the quitclaim deeds were executed and recorded. The Arizona Court of Appeals held that the $100.00 deposited with the escrow company was sufficient tender under A.R.S. § 12-1103(B) (which permits an award of attorneys fees to the party quieting

---

[7] Doc 122 ¶¶ 37-40.

title when the adverse party fails to comply with a request to execute a quitclaim deed prior to initiation of a quiet title action). The Arizona Court of Appeals, citing *Somerton* supra, further explained that the "$100.00 was produced and delivered to the agent of the appellees for delivery to the appellants and offered to them. Only the appellants' acceptance was necessary to complete the transaction. This acceptance would have been accomplished by delivery of the executed deed. This was not *565 **1238 merely an indication of the readiness and ability to pay, it was a tender." *Mariposa Dev. Co.*, 711 P.2d 1237-38.

Here, as Plaintiff failed to pay, produce or provide funds to a third-party to be delivered upon SPS or BNYM's release of the obligations under the Loan, no tender was made.

In sum, as the definition of "tender" requires more than a mere offer to pay the Loan in full, and none of the cases cited by Plaintiff support his position otherwise, Plaintiff's claim for quiet title based on the "Tender Rule" fails as a matter of law.

**B.   The UCC Is Inapplicable in this Case.**

To further support his claim for quiet title, Plaintiff alleges that upon his offer to pay the amounts due under the Loan, the Loan was discharged under Arizona's version of the Uniform Commercial Code codified at A.R.S. § 47-3101 *et seq*.[8] However, the UCC is inapplicable to the instant case as the Debtor received a bankruptcy discharge of his personal obligations under the Note pursuant to 11 U.S.C. § 727.[9] As such, the Loan converted to a non-recourse loan and SPS's and BNYM's only available remedy is foreclosure under the Deed of Trust. Moreover, as the Arizona Supreme Court made clear that the UCC is inapplicable to deeds of trust, Plaintiff's arguments that he complied with the "tender" requirements imposed by the UCC fail as a matter of law.

*1.   "Tender" Under the UCC Is Inapplicable to Non-Recourse Loans.*

Plaintiff does not dispute that after he received a discharge under 11 U.S.C. § 727 in his bankruptcy case filed in 2009, his personal obligations under the Loan were also

---

[8] Doc. 122, ¶ 42 and Doc. 136 p. 8, lines 1-3
[9] Doc. 122, ¶ 24.

discharged.[10] Moreover, the United States Supreme Court confirmed that even though a mortgagor's interest in a loan has the same properties as a non-recourse loan after a discharge, the mortgagor's security interest in a debtor's property survives. *Johnson v. Home State Bank*, 501 U.S. 78, 86, (1991).

In support of Plaintiff's argument that his "tender" resulted in a discharge of the obligations under the Loan pursuant to the UCC, Plaintiff cites to A.R.S. § 47603(B) which provides in full:

> If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of **recourse** with respect to the obligation to which the tender relates. (Emphasis added).

Most important, the Arizona UCC's description of a discharge following tender is only to applicable to the party have a right of recourse with respect to the underlying obligation. Here, since the Plaintiff received a discharge, BNYM cannot sue Plaintiff based on his default on the Note, but instead, is limited to foreclosing under the Deed of Trust. As the Loan is non-recourse, the UCC is inapplicable.

   *2.   The UCC Does Not Govern Deeds of Trust.*

Similarly, as the Loan became non-recourse following the Plaintiff's receipt of a bankruptcy discharge, SPS and BNYM's only remedy is foreclosure of their lien under provisions of the Deed of Trust. The Arizona Supreme Court, in *Hogan v. Washington Mut. Bank, N.A.,* 230 Ariz. 584, 586, 277 P.3d 781, 783 (2012), unequivocally affirmed that the "UCC does not govern liens on real property." Accordingly, any UCC requirement that Plaintiff may seek to impose on the facts of this case, is completely without merit.

**C.   No Allegation the Loan Was Actually Accelerated.**

As discussed, in the Motion to Dismiss, when an installment contract contains an optional acceleration clause, like the Deed of Trust (Paragraph 22) in this case, an action as to future installments does not accrue until the holder exercises the option to accelerate. Conspicuously absent from Plaintiff's Complaint, is the allegation that SPS or BNYM (or

---

[10] *Id.*

their predecessors in interest) actually accelerated the Loan. Instead, Plaintiff relies on a December 19, 2008 letter indicating that the Loan "will be accelerated" on January 16, 2009.[11] Plaintiff summarily concludes that because of the language "will" in the letter, the Loan must have been accelerated. This conclusion is misguided and ignores additional language in that same letter. Specifically, the letter goes on to state that if the default on the Loan is not cured and the Loan is accelerated, "foreclosure proceedings will be initiated at **that time**."[12] Judicially noticeable documents confirm that no foreclosure was commenced on January 16, 2009. Indeed, the first foreclosure sale of the Property started on August 24, 2011, with the recording of a Notice of Trustee's Sale.[13] Accordingly, as Plaintiff has not alleged that the Loan was accelerated in 2009 and the first foreclosure sale notice was recorded August 24, 2011, any conclusion that the Loan was accelerated before this time is unsupported by the record in this case.

**D.   The Motion for Relief Could Not Have Accelerated the Loan.**

As an alternative to his argument that the Loan "will be accelerated" on January 16, 2009, Plaintiff posits that Countrywide Home Loans Servicing's (BNYM's predecessor) filing of a Motion for Relief from the Automatic Stay ("Motion for Relief"), in Plaintiff's bankruptcy case, somehow constituted an acceleration of the Loan. To arrive at this conclusion, Plaintiff cites to *Barnett v. Hitching Post Lodge, Inc.*, 101 Ariz. 488, 421 P.2d 507 (1966). In *Barnett*, The Arizona Supreme Court held that the appellant was barred by the three month statute of limitations (imposed by former A.R.S. § 14-579) for filing suit on claims that were rejected by the probate estate, because appellant's filing of an initial claim against the estate activated the acceleration clause in the underlying obligation and appellant's suit, on rejection of this claim, was brought more than three months after filing the claim. *Barnett v. Hitching Post Lodge, Inc.*, 101 Ariz. 488, 492, 421 P.2d 507, 511 (1966). Plaintiff then inexplicably equates the filing of a probate claim against the estate to the Motion for Relief.

---

[11] Doc. 122, Exhibit A.
[12] *Id.*
[13] *See* Doc. 1-1, Exhibit A

-7-   CASE NO. 2:13-cv-02155-DLR
**REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**

The purpose of a claim against the probate estate is to apprise the executor of the amount of the demand. *Id.* The purpose of the Motion for Relief was to initiate foreclosure proceedings that had been stayed by Plaintiff's bankruptcy case pursuant to 11 U.S.C. § 362(a).[14] Nowhere in the Motion for Relief is there a demand for payment.[15] Moreover, the Motion for Relief further reflects that all amounts due and owing under the Loan were not accerlated, by itemizing that only $9,949.46 was delinquent and not the total unpaid principal balance of $721,199.48.[16]

Finally, the language in the Motion for Relief suggesting that foreclosure proceedings had been initiated, is unsupported by the record. As discussed in Section C above, the first foreclosure sale of the Property started on August 24, 2011, with the recording of a Notice of Trustee's Sale.[17] The Motion for Relief was filed more than two years earlier on January 23, 2009.[18]

In sum, the Motion for Relief could not have operated as an alternative acceleration of the Loan.

**E.     BNYM's Lien Remains Whether Or Not the Statute of Limitations Expired.**

As discussed in the Motion to Dismiss, "in an action to quiet title, the party invoking the court's jurisdiction is required to do equity and, if it appears there is an unsatisfied balance due a defendant-mortgagee, or his assignee, the court will not quiet the title until and unless he pays off such mortgage lien." *Farrell v. West*, 114 P.2d 910, 911 (Ariz. 1941). As discussed above, Plaintiff has not paid off the Loan and his arguments regarding the "Tender Rule" fail as a matter of law.

As an alternative, Plaintiff argues that since the statute of limitations on foreclosure of the Loan has allegedly expired, this Court should quiet title in his favor. However, assuming *arguendo*, the statute of limitations has expired, BNYM's lien remains valid and secured by the Property until approximately January 1, 2047 (final maturity date on the Loan plus 10

---

[14] *See* Doc. 137, Exhibit A.
[15] *See* Doc. 137-2, Exhibit B.
[16] *Id.*
[17] *See* Doc. 1-1, Exhibit A
[18] *See* Doc. 137, Exhibit A.

years) under A.R.S. § 33-714. As the Loan obligation secured by the Property has **not** been satisfied or discharged (*see* above), it remains intact. In short, absent payment of the amount due under the Loan, Plaintiff cannot quiet title to the consensual lien held by BNYM.

## V. CONCLUSION.

Based on the foregoing and the arguments set forth in the Motion to Dismiss, Plaintiff's Third Amended Complaint must be dismissed as it fails to state a claim upon which relief can be granted.

**WHEREFORE**, for all of the foregoing reasons, SPS and BNYN respectfully request this Court dismiss Plaintiff's Third Amended Complaint with prejudice and award SPS and BNYM their attorneys' fees and costs incurred herein and for such other and further relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED** this 8th day of July, 2015.

**WRIGHT, FINLAY & ZAK, LLP**

/s/ *Jamin S. Neil*
JAMIN S. NEIL
Attorneys for *Defendants* Select Portfolio Servicing, Inc. and The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-OA7, Mortgage Pass-Through Certificates, Series 2007-OA7

The foregoing was electronically filed this <u>8th</u> day of July, 2015.

COPIES of the foregoing were mailed this <u>8th</u> day of July, 2015 to:

Ivaylo Tsvetanov Dodev
6312 S/ 161st Way
Gilbert, AZ 85298
Plaintiff *in propria persona*

Sean K. McElenney. Esq.
Coree E. Neumeyer, Esq.
Eric M. Moores, Esq.
Bryan Case LLP
2 North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
Attorneys for ReconTrust

*/s/ Gretchen Grant*
GRETCHEN GRANT

-10-   CASE NO. 2:13-cv-02155-DLR
**REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**