1                 UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF ARIZONA
2
                      _____
3
   Ivaylo Tsvetanov Dodev        )
4                                 )
                                  )
5             Plaintiff,          )
                                  )
6        vs.                      )   CV 13-2155-PHX-DLR
                                  )   Phoenix, Arizona
7   ReconTrust Company, N.A.,     )   August 7, 2015
    et al,                        )   9:58 a.m.
8                                 )
                                  )
9             Defendants.         )
   _____)
10

11

12        BEFORE:  THE HONORABLE DOUGLAS L. RAYES, JUDGE

13

14        REPORTER'S TRANSCRIPT OF PROCEEDINGS

15             (Motion Hearing)

16

17

18

19

20
   Official Court Reporter:
21
   David C. German, RMR, CRR
22  Sandra Day O'Connor U.S. Courthouse, Suite 312
   401 West Washington Street, SPC-39
23  Phoenix, Arizona 85003-2151
   (602) 322-7251
24
   PROCEEDINGS TAKEN BY STENOGRAPHIC COURT REPORTER
25  TRANSCRIPT PREPARED BY COMPUTER-AIDED TRANSCRIPTION

1    **APPEARANCES:**

2    **FOR THE PLAINTIFF:**

3         Ivaylo Tsvetanov Dodev, Pro Se
          6312 South 161st Way
4         Gilbert, Arizona 85298-8455

5

     **FOR DEFENDANT RECONTRUST COMPANY, N.A.:**
6
          Bryan Cave, LLP - Phoenix, Arizona
7         Attorneys at Law
          Two N. Central Avenue, Suite 2200
8         Phoenix, Arizona 85004-4406
          By:  Sean K. McElenney, Esq.
9              Coree Elizabeth Neumeyer, Esq.

10
     **FOR DEFENDANTS SELECT PORTFOLIO SERVICING, INCORPORATED,**
11   **BANK OF NEW YORK MELLON:**

12        Wright, Finlay & Zak, LLP - Scottsdale, Arizona
          Attorneys at Law
13        16427 N. Scottsdale Road, Suite 300
          Scottsdale, Arizona 85254
14        By:  Kim Rene Lepore, Esq.

15

16

17

18

19

20

21

22

23

24

25

```
 1                        Phoenix, Arizona
                          August 7, 2015
 2

 3            (Proceedings convened at 9:58 a.m.)

 4            THE COURT:  Please be seated.

 5            THE COURTROOM DEPUTY CLERK:  Civil Case 13-2155,       09:58:49

 6   Dodev versus ReconTrust Company, N.A., and others, on for oral

 7   argument.

 8            Would the parties please announce for the record.

 9            MR. DODEV:  Your Honor, this is Ivaylo Dodev,

10   claimant under this verified action.                          10:03:01

11            THE COURT:  Good morning.

12            MS. LEPORE:  Good morning, Your Honor.  Kim Lepore on

13   behalf of Select Portfolio Servicing and the Bank of New York

14   Mellon as trustee.

15            MS. NEUMEYER:  Good morning, Your Honor.  Coree       10:03:11

16   Neumeyer and Sean McElenney on behalf of defendant ReconTrust

17   Company, N.A.

18            THE COURT:  Okay.  Thank you.

19            Okay.  I just have one issue I want to talk about,

20   and that's the tender.                                        10:03:22

21            Mr. Dodev, I understand you've tendered the payment

22   and no one has accepted it, apparently.

23            I first want to ask the defendants.  Who should

24   Mr. Dodev tender his payment to or who would be the proper

25   party to receive his payment?                                 10:03:39
```

1          MS. LEPORE:  Your Honor, if it's right now, it would

2    be Select Portfolio Servicing as they are the current servicer

3    for the beneficiary, the Bank of New York Mellon as trustee.

4    However, at the time that Mr. Dodev alleges he sent these

5    offers to tender I can't tell you exactly on those dates who          10:03:52

6    was the servicer at the time.

7          THE COURT:  Okay.  But it would be -- the servicer

8    would be the proper party for him to have tendered it to.

9          MS. LEPORE:  That's correct, Your Honor.  That's the

10   person that takes the payments.                                        10:04:06

11         THE COURT:  All right.

12         So, Mr. Dodev, my question is now for you.  Tell me

13   everything you did that forms the basis for your claim that

14   you tendered payment.

15         MR. DODEV:  Yes, Your Honor.  I will do that.  First          10:04:19

16   I just want to correct the record real quick.

17         On the last hearing we had you asked me if I sent the

18   payment, and as I put in the docket, I have neurological

19   issues based on the stress I've been for six, seven, eight

20   years.  So I did send the payment, and the payment, it was a          10:04:35

21   check, was an instrument, it was lost, and I send it just

22   before another transfer that they said, well, it needs to be

23   sent to this party and that party.

24         So I send it either to ReconTrust or Bank of America

25   but when my process servicer was servicing them they said          10:04:52

1  they're all in the same building, that's why now ReconTrust

2  was closed as a trustee, they're operating in violation of

3  trust law.

4        So that payment, it took weeks or months, and I

5  should get either recorded phone calls or I should get some          10:05:05

6  documentation, they say it got lost, then it was returned, and

7  they said you have to send it to the new servicer.

8        Then seeking legal counsel, that's why I send it to

9  five, six, seven different parties to see who is the right

10 party to send the payment, and then I prepared an offer of          10:05:22

11 default, they didn't accept my offer, and this is how

12 everything is documented on the docket.  This is what happened

13 exactly, just to be clear on that.

14       And then when I was sending my offers to pay there

15 was no payment attached.                                            10:05:36

16       THE COURT:  Let me just make sure I understand.  Is

17 what you've just described to me what you claim is your tender

18 of payment?

19       MR. DODEV:  Well, under Arizona law, as we all

20 know --                                                             10:05:50

21       THE COURT:  Stop.  Stop.  I'm not arguing the law.  I

22 just want to ask you yes or no.  You just described to me what

23 happened from your point of view and I want to know is that

24 what you believe was the tender of payment that you're

25 claiming is your basis of your claim here?                          10:06:02

1            MR. DODEV:  Well, this wasn't an actual payment.

2            THE COURT:  Yes or no, please.

3            MR. DODEV:  The basis of my claim right now they're

4   untendered because there was no payment attached on the

5   docket.                                                          10:06:18

6            THE COURT:  I don't understand.

7            MR. DODEV:  Prior to --

8            THE COURT:  Let me just make this very simple.  Tell

9   me you did that is the basis for your claim that you tendered

10  payment.                                                         10:06:30

11           MR. DODEV:  I send a check.  It was lost and then

12  returned and they said you send it to the wrong party, the

13  loan was already transferred.  Then I sent offer to pay, Your

14  Honor, four offers to pay.  That's all I can say.

15           THE COURT:  You didn't send a check.                    10:06:45

16           MR. DODEV:  That's correct.

17           THE COURT:  Okay.  So you never tendered payment to

18  the proper party, then.

19           MR. DODEV:  I don't know which the parties.  There's

20  eight people that they've been trying to say they're the right  10:06:56

21  party.

22           THE COURT:  And you don't believe -- who -- who do

23  you believe is the right party?

24           MR. DODEV:  Well, I don't know if I can enter an

25  exhibit but everyone says SPS is the right party, and I         10:07:07

```
1   signed, you know, a deed and a note, and when we were under

2   new number it says today Bank of America is the right party.

3           THE COURT:  Hang on a second.  Stop.

4           Who is the right party today?

5           MS. LEPORE:  Bank of New York Mellon as trustee, Your    10:07:22

6   Honor.

7           THE COURT:  Okay.

8           All the parties are here, they all agree that's the

9   proper party.  Are you prepared to pay them tender -- tender

10  the payment to them today?                                      10:07:33

11          MR. DODEV:  Under Arizona law, we have statutes of

12  limitations that --

13          THE COURT:  Did you ever tender payment to them?

14          MR. DODEV:  I -- I do not know that.  I --

15          THE COURT:  Let me see if I understand what happened.    10:07:46

16  You sent a check -- what was the amount of the check you sent?

17          MR. DODEV:  It was based in payoff court, Your Honor,

18  so --

19          THE COURT:  How much was it?

20          MR. DODEV:  Seven, eight hundred thousand dollars.       10:07:56

21          THE COURT:  And you had that amount of funds

22  available to cover that check at that time?

23          MR. DODEV:  Business funds, yes.

24          THE COURT:  Hang on a second.

25          Let me put you under oath for a second.  Would you       10:08:04
```

```
 1   please stand and be sworn?

 2            Raise your right hand.

 3            MR. DODEV:  Yes.

 4            THE DEPUTY COURTROOM CLERK:  Do you swear or affirm

 5   that the testimony you're about to give this Court shall be          10:08:09

 6   the truth, the whole truth and nothing but the truth?

 7            MR. DODEV:  Yes, I do.

 8            THE COURT:  Okay.  I'm going to consider what you're

 9   telling me testimony so I can understand that this is the

10   evidence you have available to present.                              10:08:19

11            When did you send the $700,000 check as payment?

12            MR. DODEV:  It was prior -- before I was informed

13   that Bank of America has nothing to do and --

14            THE COURT:  Can you give me a year?  What year was

15   that?                                                                10:08:38

16            MR. DODEV:  No.  It was 2000 -- well, Your Honor, it

17   was more than two years ago.  That's all I can --

18            THE COURT:  Sometime around 2013?

19            MR. DODEV:  Yes.

20            THE COURT:  Okay.                                           10:08:50

21            MR. DODEV:  Yes.

22            THE COURT:  And you sent a check for over $700,000.

23            MR. DODEV:  Yes.  They said that the check is lost.

24            THE COURT:  Hang on.  I don't want to get there yet.

25   You sent a check for $700,000.                                       10:09:00
```

```
 1              MR. DODEV:  Yeah.

 2              THE COURT:  And you had the funds available to you to

 3    cover the $700,000 check?

 4              MR. DODEV:  That's correct.

 5              THE COURT:  Where were those funds?  In what bank?        10:09:07

 6              MR. DODEV:  At that time I -- I don't have business

 7    accounts right now.  At that time I was banking with either

 8    Bank of America or Wells Fargo.

 9              THE COURT:  Okay.  So if --

10              MR. DODEV:  Actually, I --                                10:09:23

11              THE COURT:  -- we check the -- let me finish.

12              If we check the records with Bank of America or Wells

13    Fargo, one of those two banks will have a $700,000-plus amount

14    in your account in sometime around 2013.

15              MR. DODEV:  I didn't understand the question.            10:09:40

16              THE COURT:  You told me that the check you wrote was

17    on an account for either Wells Fargo or Bank of America for

18    over $700,000 in 2013.

19              MR. DODEV:  Correct.

20              THE COURT:  If we check those records, we'll find        10:09:52

21    that you had that amount of money in one of those banks in

22    2013.

23              MR. DODEV:  In my business accounts, yes.

24              THE COURT:  And what's the name of your business?

25              MR. DODEV:  Pro Shade International.                     10:10:01
```

```
 1              THE COURT:  All right.  So you wrote a check for over
 2   $700,000.
 3              MR. DODEV:  Correct.
 4              THE COURT:  And you sent it to the party you thought
 5   was the proper party because you were going to pay off the          10:10:12
 6   entire loan at that time.
 7              MR. DODEV:  It was based on payoff quote I received.
 8              THE COURT:  Okay.  So you had the amount you needed
 9   to pay off the entire loan and you sent it to -- what party
10   did you send it to?                                                  10:10:25
11              MR. DODEV:  I send it -- I -- I was -- I send it to
12   the offices of Bank of America, ReconTrust, which I was
13   informed it's all the same, in the same office, the same
14   place.
15              THE COURT:  Okay.  And it didn't get there.              10:10:36
16              MR. DODEV:  Well, I followed up.  They said it is
17   lost and then I said I need it back, and then it --
18              THE COURT:  Hang on a second.
19              MR. DODEV:  It took --
20              THE COURT:  Stop.                                         10:10:45
21              Who said it was lost?
22              MR. DODEV:  The people that I called or --
23              THE COURT:  Okay.  I mean, someone at the bank?
24              MR. DODEV:  Yes.  I called that branch.  Yeah.
25              THE COURT:  And they said it was lost or they said      10:11:00
```

UNITED STATES DISTRICT COURT

1  they never received it?

2      MR. DODEV:  Well, as I said, I -- I will either have

3  a telephone recording, because when it's lawful to record

4  things important like that I do record.  If we go through

5  discovery, I would have a telephone recording on that            10:11:18

6  conversation right now that they said it is lost or I would

7  have something in writing.

8      THE COURT:  Okay.  I'm trying to understand how the

9  bank would know it was lost if they never received it.  Did

10  they say they received it but they lost it or did they say    10:11:30

11  they never received it?

12      MR. DODEV:  I cannot answer this question.  I know it

13  took weeks or months to find out what happened.

14      THE COURT:  But somehow you got the check back?

15      MR. DODEV:  Correct.  I believe so.                          10:11:42

16      THE COURT:  So the bank lost it but you got it back.

17      MR. DODEV:  I believe they sent it back.

18      THE COURT:  They sent it back.  And what -- and was

19  the --

20      MR. DODEV:  Again, it took weeks or months.  I just        10:11:55

21  cannot recall right now.  I just want to correct the record.

22      THE COURT:  When the bank sent it back was there a

23  transmittal letter saying we reject your offer of tender or

24  this check was lost and we want to return it to you or what

25  was -- how did that come back to you?                           10:12:12

1          MR. DODEV:  Well, as I said, I would just reiterate,

2  talking on the phone they said we're not the right party, you

3  have to -- your loan or your package is transferred to another

4  party so you have to send it to another party.

5          THE COURT:  And did you send it to that party?                    10:12:28

6          MR. DODEV:  I did not send it, but then I made sure,

7  as they say at Bank of America, because I have another

8  correspondence that they say -- from Bank of America they say

9  we have nothing to do with your loan.  I made sure that I sent

10 it to Bank of America, Countrywide, Bank of New York Mellon,           10:12:43

11 SPS.

12         THE COURT:  Okay.

13         MR. DODEV:  ReconTrust.  I send them an offer to pay,

14 to be accepted, but there was no instrument or a check

15 attached to the offer that I have submitted in the docket.              10:12:55

16         THE COURT:  Okay.  So you never sent the party who

17 was to receive the payment a check.

18         MR. DODEV:  That's correct, Your Honor.

19         THE COURT:  Okay.

20         All right.  That's what I wanted to get to.                      10:13:06

21         Okay.  Counsel, anything you want to say?

22         MS. LEPORE:  Your Honor, I believe that you -- that

23 that covered the questions.  However, I did want to point out

24 that in 2009 he filed for bankruptcy so he knew at that point

25 who had the loan.  In 2011, since we don't know the exact date          10:13:24

1  this apparent check was sent, 2011 there was a corporation

2  assignment of deed of trust that was recorded saying that the

3  new beneficiary is Bank of New York Mellon.  That was 2011.

4  So if he sent the check in 2013 to Bank of America, he was on

5  notice that that was the incorrect person.                    10:13:43

6          Also --

7          THE COURT:  How would he know where to send --

8          MS. LEPORE:  It's on the record.  It's on the -- it's

9  on the public records.  And there's also supposed to be --

10         THE COURT:  Stop.  It's on what public records?      10:13:52

11         MS. LEPORE:  I'm sorry.  The Maricopa County County

12 Recorder's website.

13         THE COURT:  So for him to find that out he'd have to

14 go to the County Recorder's web site, or was there any other

15 notification given to him?                                    10:14:06

16         MS. LEPORE:  I don't know if something -- I'm

17 assuming something would be sent.  It usually is.  But I can't

18 verify.  But in 2012 servicing was transferred to SPS and

19 there definitely would have been a letter sent out from

20 both -- it's required by law -- from both the prior servicer  10:14:21

21 and the new servicer saying this is where you need to send

22 your payments now.  And that was 2012.

23         THE COURT:  And the SPS would have been the proper

24 party for him to send his payments to in 2012?

25         MS. LEPORE:  That's correct, Your Honor.             10:14:37

```
 1            THE COURT:  2013?

 2            MS. LEPORE:  That's correct, Your Honor.

 3            THE COURT:  2014?

 4            MS. LEPORE:  That's correct, Your Honor.

 5            THE COURT:  And today.                          10:14:41

 6            MS. LEPORE:  That's correct, Your Honor.

 7            THE COURT:  Okay.  Does SPS ever receive a check

 8   tendering payment from Mr. Dodev?

 9            MS. LEPORE:  No, Your Honor.

10            THE COURT:  Okay.  Mr. Dodev?                   10:14:55

11            MR. DODEV:  I --

12            THE COURT:  Did you ever send a check to SPS?

13            MR. DODEV:  No, I can never send them a check.

14            THE COURT:  Okay.  That's what I wanted to know.

15            MR. DODEV:  I just disagree with Miss Lepore because  10:15:05

16   under Arizona law, Arizona Revised Statute 47-3203(B), filing

17   something in the public record is not a cause for recoupment

18   of an instrument.

19            So again, I spent tens of thousands of dollars, Your

20   Honor, in attorney fees, you know, and they said we cannot    10:15:21

21   tell you which is the right party.  I have communicated with

22   Bank of New York Mellon.  I never received a response.  And

23   recently I received an e-mail and as -- as we're under this

24   proceeding Bank of New York Mellon told me that Bank of

25   America is my servicer.                                  10:15:40
```

```
 1          THE COURT:  So you've spent tens of thousands of

 2  dollars on attorney's fees just trying to find out who you can

 3  give your payment to.

 4          MR. DODEV:  That's correct.  Yes.

 5          THE COURT:  Who is the attorney that took tens of      10:15:49

 6  thousands --

 7          MR. DODEV:  I --

 8          THE COURT:  Who is the attorney that took tens of

 9  thousands of dollars and couldn't tell you who to send your

10  check to?  Who was that?                                      10:15:56

11          MR. DODEV:  I have his name on the docket under an

12  exhibits, you know, under my complaint.  I can look it up

13  but --

14          THE COURT:  Why don't you tell me who that lawyer

15  was.  I may want to get him on the phone here.                10:16:05

16          MR. DODEV:  It is -- okay.  This is my complaint.

17  The exhibits will be right here.

18          There is the office of Attorney General that I've

19  been in communication.

20          THE COURT:  You don't pay the Attorney General.       10:16:27

21          MR. DODEV:  Okay.  This will be under Miss Lepore's

22  then response, under the exhibits.

23          (Searching records.)

24          If -- I do not know how searchable the exhibits are,

25  Your Honor, but I'm under an oath and his name and his        10:17:52
```

document and phone number is under the exhibits and he sent a

lot of packages to different parties just like I did and I

never brought this as a claim under this court but he said you

have to rescind the loan, and this loan, it was rescinded by

him.  He was authorized.  I never brought this as a defense          10:18:11

because we're barred by the statutes of limitations and I

brought tender and statutes.  But I have his name on the

docket and this is only one of the many attorneys I have

talked to and -- you know, and --

THE COURT:  You spent tens of thousands of dollars          10:18:27

for lawyers to try to find who you can make your payment to

and none of them could do it.

MR. DODEV:  In my house it's big with files, you

know, six foot tall everywhere.

THE COURT:  When did you pay these lawyers this          10:18:42

money?  2013?

MR. DODEV:  No.  It's -- well, if Miss Lepore is

saying 2012 SPS the loan was transferred to them it means my

check and all of that was sent prior to that, obviously,

because I sent it to the offices of Bank of America.  So the          10:18:58

attorneys, it was prior to that.

But I do not believe that SPS has the loan since

2012.  This is incorrect.  Probably 2013, more or less, they

have -- what I've been informed from Bank of America that was

transferred, so probably during 2011, 2010, and I have --          10:19:16

1  again, you told once that I can file this extensive pages in

2  the docket and complaints.  Unfortunately, that's a small

3  portion for everything I went through trying to settle that

4  matter, you know, before we'll engage this Court in this

5  venue.                                                          10:19:38

6          THE COURT:  Okay.  Let me just see if I can

7  summarize, then, what you've presented.

8          In 2012 or '13 --

9          MR. DODEV:  Yes.

10         THE COURT:  -- you were prepared to tender payment    10:19:48

11 for the entire amount due on your loan.

12         MR. DODEV:  Yes.

13         THE COURT:  And you had the funds available to in

14 your account, either Wells Fargo or Bank of America account.

15         MR. DODEV:  Yes, but again, it's business funds.      10:19:59

16 Correct.

17         THE COURT:  And you wrote a check on your business

18 account --

19         MR. DODEV:  Correct.

20         THE COURT:  -- that you sent to Bank of America as    10:20:07

21 final payment of all that was due.  Somewhere that check got

22 lost, either at the bank or in the mail, but it ended up

23 coming back to you, and then you were puzzled because you did

24 not know where to pay the final tender amount so you hired

25 lawyers and spent tens of thousands of dollars on lawyers'    10:20:30

1  fees for one purpose, and that purpose was to find who you can

2  pay your payment to.

3      MR. DODEV:  Your Honor, that's correct.  I just --

4  because we're in the record, I -- that particular lawyer I

5  spent close to 10,000 but then I have spent so much money in        10:20:47

6  so many different ways.

7      THE COURT:  All right.  Let me just finish so I make

8  sure I'm summarizing.

9      So you spent over, it sounds like during the course

10  of about a year or more, tens of thousands of dollars on a        10:20:58

11  lawyer who unsuccessfully spent his time trying to locate

12  where you could pay over $700,000 to pay off your loan, the

13  lawyer couldn't figure it out, so you wrote to everybody you

14  thought conceivable would possibly be the person you pay and

15  say I'm sitting here with this check, I'd like to pay you but        10:21:22

16  I don't know who to send it to, will someone please tell me

17  who I should pay.

18      MR. DODEV:  I would say that's absolutely correct.

19  And I --

20      THE COURT:  And your letter was unconditional;        10:21:34

21  there's no conditions attached saying you tell me who it is

22  and I'll pay you.  You didn't ask them for anything else, did

23  you?

24      MR. DODEV:  No.  The only condition is they have

25  to -- my neighbor, he sent a payment for $850,000.        10:21:43

```
 1              THE COURT:  I don't care about your neighbor.  My
 2   question is, did you have any conditions on your tender
 3   letter?
 4              MR. DODEV:  I send it to seven parties.  The
 5   condition is they have to say they're the party that they can    10:21:57
 6   release the lien, you know, I cannot --
 7              THE COURT:  All they have to do is tell you they can
 8   release the lien.
 9              MR. DODEV:  Otherwise, I'm liable for this funds to
10   my business, you know, partners and --                           10:22:09
11              THE COURT:  And they didn't have to have the original
12   deed of trust in your mind; they just had to convey to you
13   that they had the authority to release the lien.
14              MR. DODEV:  I do not want to paraphrase my offers
15   that I have submitted in the docket but I know that I was        10:22:23
16   asking to give me an address.  I even called them and followed
17   up on this offers to give me an escrow or a place that we can
18   meet and exchange the funds because I was -- I'm liable for
19   this funds.
20              THE COURT:  Okay.                                     10:22:37
21              MR. DODEV:  And for my partners.
22              THE COURT:  And you're still ready to tender the
23   payment?
24              MR. DODEV:  There is material factual dispute, Your
25   Honor.                                                           10:22:42
```

```
 1          THE COURT:  That's not -- my question is yes or no.
 2          MR. DODEV:  Only the final decision of the Court that
 3   says that Arizona statutes of limitations do not mean
 4   anything.  I have put right here in my complaint --
 5          THE COURT:  You have a check that you're willing to      10:22:57
 6   pay right now to tender payment?
 7          MR. DODEV:  I have tried -- I have tried to contact
 8   my partners, and I'm on the record, for more than four or five
 9   months and I'm not getting responses.  On the record they're
10   in Greece and they have their -- you know, hence forward        10:23:11
11   different things as we see.  So that's -- that's on the
12   record.  I cannot answer to that, but --
13          THE COURT:  Okay.  So your answer is no, you're not
14   ready to pay today?
15          MR. DODEV:  Well, I'm not -- I'm not here to pay          10:23:26
16   today.  We're --
17          THE COURT:  Okay.
18          MR. DODEV:  We're -- you know, under Arizona law,
19   under administrative motions we cannot decide statutes of
20   limitations and tender, Your Honor, you know.                   10:23:37
21          THE COURT:  All right.  Thank you.
22          MR. DODEV:  This is under Arizona law.
23          THE COURT:  All right.
24          MR. DODEV:  I'm willing -- I'm ready to pay -- as I
25   put in my complaint, I'm ready to pay if there is final order   10:23:46
```

1  of the Court and says the statutes of limitations or tender or

2  anything that the case law has established in the state of

3  Arizona they do not apply in my case for skin color or

4  whatever the reason is then I would be willing to raise the

5  funds, and I have put this in my complaint under judicial          10:24:04

6  notice.

7          THE COURT:  For what?  For skin color?  Is that what

8  you said?

9          MR. DODEV:  For whatever reason.  I do not know.  If

10  there is a final order of the Court, the statutes of              10:24:14

11  limitations and tender rules they do not apply in my case, I

12  do believe that they apply.  You know, Judge Snow put an order

13  on the docket and says that I would familiarize myself with

14  the federal rules of civil procedure and local rules of civil

15  procedure.  I have read tens of thousands of pages and I         10:24:31

16  believe that, you know, I followed the orders of the courts.

17          THE COURT:  All right.  Thank you.

18          All right.  Has anyone received tender of payment, a

19  letter saying, well, unconditionally I'll pay you, just tell

20  me who has the authority to release the lien?                    10:24:50

21          MS. LEPORE:  No, Your Honor.

22          MS. NEUMEYER:  No, Your Honor.

23          MR. DODEV:  I'm sorry.  I didn't hear the question.

24          THE COURT:  You told me that you sent a letter saying

25  I'll pay whoever has authority to release the lien.             10:25:02

1              MR. DODEV:  Every letter I send, Your Honor, it's not

2    hearsay, it's sent with certified mail.

3              THE COURT:  All right.

4              Okay.  Anything else either party wants to add?

5              MS. LEPORE:  No, Your Honor.                        10:25:16

6              MR. DODEV:  Yes.  I would like to move the Court,

7    Your Honor, if I can.  Mr. Moores' motion, reply to my

8    response, it was due July on the 20th.  He just filed it

9    August on the 4th.  On the hearing last year in August on the

10   27th you were very adamant that the parties -- no.  Actually, 10:25:35

11   he didn't show on that hearing and he said it was a scheduling

12   order.

13             So afterwards he moved the Court the motion --

14             THE COURT:  Whoa.  Stop.

15             You didn't get what name?                          10:25:47

16             THE COURT REPORTER:  I didn't get the name he just

17   referenced.

18             MR. DODEV:  Mr. Moores.  He's attorney for

19   ReconTrust.

20             THE COURT REPORTER:  Can you spell his name for me? 10:25:59

21             MR. DODEV:  M-O-O-R-E-S.

22             And Mr. Morse said, well, I need my motions to

23   dismiss to be reinstated, I'm sorry, we had a scheduling

24   order.  Then the Court made an order, which is order 88, and

25   the Court instructed Mr. Moores and all to make sure he would 10:26:10

```
 1   be on top of his schedule and not do that again.

 2          Then we get another hearing, you know, on December

 3   2014, and this is the hearing that you were adamant and there

 4   was a minute entry and the minute entry reads that all replies

 5   are due according to the rules of civil procedure.  This was        10:26:29

 6   the hearing on December the 5th, 2014.

 7          The last hearing that we had, which is June the 4th,

 8   2015, Miss Lepore, she had the same free will to amend without

 9   asking the leave of Court, without following rule of civil

10   procedure, and I'm quoting, you said Mr. Dodev is right, I          10:26:50

11   will let it slide.

12          So Mr. Moores filed with no leave of Court, he did

13   not follow federal rule of civil procedures, and then he had

14   the tenacity to file a notice just noticing the Court, oh, I'm

15   late, because there's a scheduling order.                          10:27:06

16          So I'm moving this Court to strike this motion

17   because it's in violation of federal rule of civil procedure

18   and --

19          THE COURT:  Hang on.  What's the name of the motion

20   you're asking me to strike?                                        10:27:16

21          MR. DODEV:  The motion, Your Honor, is Document 145,

22   and it says defendant ReconTrust Company NA reply in support

23   of motion to dismiss third amended complaint.

24          THE COURT:  Okay.  You're asking me to strike the

25   reply.                                                             10:27:28
```

```
1              MR. DODEV:  That's correct.

2              THE COURT:  All right.

3              MR. DODEV:  It was filed 30 days later with no leave

4    after you instruct the parties --

5              THE COURT:  Okay.                                          10:27:35

6              MR. DODEV:  -- time and time again not to do that.

7              THE COURT:  All right.  Let me find out.

8              What's the response to that?

9              MS. NEUMEYER:  Your Honor, we do acknowledge that the

10   reply was late-filed.  This was not an act of bad faith.           10:27:47

11   There was a docketing error.  There was a change in

12   administrative assistants during this time and the -- when

13   Mr. Dodev's response came in it fell through the cracks and

14   didn't get properly docketed on any of our calendars, and for

15   that reason it did not get timely filed.  As soon as we            10:28:08

16   realized the inadvertent error, which was the same day as we

17   filed the reply, we promptly got a reply on file with the

18   Court.

19             THE COURT:  Okay.  Let me look at it.  I'll have to

20   take this under advisement.                                        10:28:24

21             Did you file a written motion, Mr. Dodev, or are you

22   just making the oral motion right now?

23             MR. DODEV:  Your Honor, she just filed that two days

24   ago, and then last night he filed a notice, and a notice is

25   something you give if you're late for dinner.  You know, in        10:28:35
```

 1  court you follow federal rule and local rule of civil

 2  procedure.

 3          THE COURT:  All right.

 4          MR. DODEV:  Especially when you're instructed do that

 5  no more.                                                          10:28:44

 6          THE COURT:  I'll consider this an oral motion to

 7  strike and I'll consider your response and I'll rule on it

 8  after I've had a chance to look at what the papers say.  Okay?

 9          MR. DODEV:  Thank you.

10          And I apologize that I cannot find that exhibit but     10:28:54

11  it is attached probably to my response to Mr. Moores, and

12  attorney name is there, his letterhead, and after he said we

13  cannot do anything with your loan just on the record, you

14  know, he prepared a document that he rescinded the loan, and

15  the Supreme Court just ruled that if the loan is rescinded and  10:29:11

16  if they don't bring me to court 20 days after the rescission

17  of the loan there is no loan.  But again, I did not bring that

18  as a defense under this action because I believe that the

19  tender rule and the statutes of limitations, you know, the

20  case law is very strong in Arizona.  But just to correct the    10:29:27

21  record, this is what that attorney did.

22          THE COURT:  Okay.  All right.

23          Did you guys know who that attorney was he's talking

24  about?

25          MS. LEPORE:  I do not, Your Honor.                       10:29:39

```
 1           MS. NEUMEYER:  No, Your Honor.

 2           THE COURT:  Because I'd like to talk to him because

 3   he --

 4           MR. DODEV:  We can look at --

 5           THE COURT:  -- spent a lot of money for someone who        10:29:43

 6   didn't get the job done.

 7           MR. DODEV:  If we can look at my attachment probably,

 8   my response to Mr. Moores, ReconTrust, probably it's attached

 9   right there.

10           THE COURT:  Okay.  Well --                                 10:29:54

11           MR. DODEV:  Because it's not --

12           THE COURT:  We're out of time now, but I'll take this

13   under advisement.

14           We'll stand in recess.  Thank you.

15           MS. LEPORE:  Thank you, Your Honor.                        10:30:02

16           MS. NEUMEYER:  Thank you, Your Honor.

17           MR. DODEV:  Thank you.

18           (Proceedings recessed at 10:30 a.m.)

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

1

2                          C E R T I F I C A T E

3

4

5        I, DAVID C. GERMAN, Official Court Reporter, do hereby

6   certify that I am duly appointed and qualified to act as

7   Official Court Reporter for the United States District Court

8   for the District of Arizona.

9        I FURTHER CERTIFY that the proceedings and testimony

10  reported by me on the date specified herein regarding the

11  afore-captioned matter are contained fully and accurately in

12  the notes taken by me upon said matter; that the same were

13  transcribed by me with the aid of a computer; and that the

14  foregoing is a true and correct transcript of the same, all

15  done to the best of my skill and ability.

16

17

18       DATED at Phoenix, Arizona, this 1st day of December,

19  2015.

20

21

22                           s/David C. German
                             _____
                             DAVID C. GERMAN, RMR, CRR
23

24

25