1

Ivaylo Tsvetanov Dodev,

2

c/o 6312 South 161st Way
    Gilbert, Arizona

3

    (480) 457-8888 Phone
    (480) 457-8887 Facsimile

4

    dodev@hotmail.com

5

6

*Pro Se*

7

8

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

10

11

12

**Ivaylo Tsvetanov Dodev,**

| | |
|---|---|
| **Ivaylo Tsvetanov Dodev,** | Case No.  CV-13-02155-PHX-DLR |
| **Plaintiff,** | **NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF AGAINST DEFENDANTS SELECT PORTFOLIO SERVICING, INC. AND THE BANK OF NEW YORK MELLON OR IN THE ALTERNATIVE REQUEST FOR HEARING TO SET A SUPERSEDEAS BOND** |
| **v.** | |
| **ReconTrust Company, NA, et all.,** | |
| **Defendants.** | |
| | **Hon. Douglas L Rayes** |

13

14

15

16

17

18

19

20

21

22

23

    **NOTICE IS HERBY GIVEN TO ALL PARTIES AND THEIR COUNSEL:**

24

    **PLEASE TAKE NOTICE,** that a Motion for Temporary Restraining Order and

25

Injunctive Relief against Defendants Select Portfolio Servicing, Inc. and The Bank of

26

New York Mellon or in The Alternative Request for Hearing to Set A Supersedeas

27

28

Bond barring said Defendants from conducting foreclosure sale, scheduled for this coming Monday, February 8, 2016 at 10 am, on Plaintiff's estate is hereby filed with this Court.

Concurrently, Plaintiff hereby request from this Court a hearing date to obtain a preliminary injunction or set a supersedeas bond.

This Motion is made on the grounds that pecuniary compensation would not afford adequate relief for the loss of Plaintiff's estate, that Defendants are seeking to foreclose on, and that great and irreparable injury will result to Plaintiff before the 9th Circuit Court of Appeals hears this matter.

**This Notice satisfies the requirement of Fed. R. Civ. P. 65(a)(1).**

**February 5th, 2016**

**Ivaylo Tsvetanov Dodev**, *Pro Se* Plaintiff

---

**COMES NOW,** Ivaylo Tsvetanov Dodev, claimant in *pro se* ("Plaintiff"), and hereby moves this Court pursuant to Fed. R. Civ. P. 65(a), (b) and (c) and 62(c) and (d), for Issuance of a Temporary Restraining Order and Imposition of Permanent Injunction against Defendants Select Portfolio Servicing, Inc. and The Bank of New York Mellon ("Defendants"), or in the alternative to hold a hearing to set a supersedeas bond restraining said Defendants, their agents, trustees and successors

from taking any action against Plaintiff's estate, including but not limited to foreclosure action during the course of the ongoing appeal.

This Motion is filed in accordance with Federal Rules of Appellate Procedure ("FRAP"), Rule 8(a):

(a)    Motion for Stay.
       (1)    Initial Motion in the District Court. A party must ordinarily move first in the district court for the following relief:
              (A) a stay of the judgment or order of a district court pending appeal;
              (B) approval of a supersedeas bond; or
              (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.

**FURTHERMORE**, this Motion serves as Temporal Restraining order while pending before this Court.

## I. OVERVIEW

I.    On or about May 4, 2015 Plaintiff filed this Verified Action-at-Law for Quiet Title, his Third Amended Complaint (the "TAC"). (Doc. 122[1].)

II.    The TAC was filed against The Bank of New York Mellon, Select Portfolio Servicing, Inc., ReconTrust Company and unknown type of entities, DOES 1-100 ("Defendants").

III.    Under his TAC, Plaintiff seeks to quite title on his estate under the tender rule and the applicable statute of limitation on contracts in writing.

IV.    On an oral hearing on motions to dismiss held on August 7, 2015 (the "Hearing"), Plaintiff informed this Court and all parties that his attorney rescinded

---

[1] All documents reference herein are incorporated hereto by this reference.

the loan encumbering his estate. <u>See</u> Doc. 152 at 16, and Doc. 152, Exhibit C, incorporated herein by this reference.

V.    No party objected on Plaintiff's rescission. Consequently, any and all actions taken against Plaintiff's estate were and are on a rescinded loan.

VI.    On August 24, 2015, this Court issued an Order granting Defendants' motions to dismiss Plaintiff's TAC (Doc. 149).

VII.    On September 21, 2015, Plaintiff filed Motion for New Trial and/or Relief from an Order, under Fed. R. Civ. P. 59 and 60 (Doc. 152).

VIII.    On October 2, 2015, this Court denied Plaintiff's Motion for Relief from an Order (Doc. 152). (Doc. 156.)

IX.    Consequently, on October 9, 2015, Plaintiff timely filed a Notice of Appeal to the Ninth Circuit (Doc. 159) from a Final Judgment in the above-captioned case dismissing the complaint and action with prejudice (Doc. 155).

X.    In the name of judicial efficiency, on December 18, 2015, Plaintiff and attorney for Defendant ReconTrust filed a stipulated dismissal from the Appeal with respect to their client.

## II. STANDARD APPLICABLE TO GRANT TEMPORARY INJUNCTIVE RELIEF

It is well settled within the Arizona Judicial System that: To satisfy the injunction standard, the moving party must demonstrate the classic four elements: (1) a reasonable probability of success on the merits; (2) that denial of injunctive relief will result in irreparable harm; (3) that granting injunctive relief

will not result in even greater harm to the nonmoving party; and (4) that granting injunctive relief will be in the public interest.    See Saudi Basic Industry Corp. v. Exxon Corp., 364 F.3d 106, citing Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158. Accordingly, where, as shown herein below, all four elements of injunctive relief are established by the moving party, injunctive relief is appropriate.

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." Whitman v. Hawaiian Tug & Barge Corporation/Young Bros., Ltd. Salaried Pension Plan, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998). To obtain a preliminary injunction, the moving party must show either: "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." Walczak v. EPL Prolong, Inc., 198 F.3d 725, 731 (9th Cir. 1999). These are not two separate tests; they represent "extremes of a singular continuum." Id. (quotation omitted).

As to the first required element — likelihood of success on the merits of movant's claims – it is well settled that Plaintiff must establish a reasonable probability of success on the merits, and not a certainty of success.    Oburn v. Shapp, 521 F.2d.

With respect to the second element — the denial of injunctive relief will result in irreparable harm to Plaintiff — it has been held that "in order to demonstrate irreparable harm, [Plaintiff] must demonstrate potential harm which

*cannot be addressed by a legal or equitable remedy following a trial."* <u>Instant Air Freight Co. v. C.F. Airfreight, Inc.,</u> 882 F.2d.  It is a well settled fact that a house is considered the biggest asset in most people's lives. Plaintiff's likelihood of prevailing in the ongoing Appeal is substantially assured based on the arguments presented herein below.  If the Defendants are not immediately enjoined and barred from foreclosing on Plaintiff's estate he will suffer a loss which is irreparable and cannot be adequately compensated for by funds or any other restitution.

Moreover, the harm resulting from Defendants' wrongful conduct is ongoing, making any assessment of monetary damages even more uncertain and difficult.  Plaintiff has suffered grave damages to his health and financial welfare as alleged in TAC and subsequent motions <u>See</u> Doc. 122 at ¶¶ 26-30 and Doc. 152 at 20.

The third and fourth elements necessary for injunctive relief — that the granting of injunctive relief will not result in even greater harm to the nonmoving party, and that the grant of injunctive relief is in the public interest — are also clearly established in Plaintiff's Complaint and the record before the Court.  No harm will result to Defendants, who Plaintiff alleges: are no longer or never were a valid beneficiary of the debt; are collecting on repudiated debt after his tender, or/and; are barred by the statute of limitation to collect on secured debt - should injunctive relief be granted. For many years, including under this Verified Action, Defendants have avoided any verification of debt as required under State and Federal law. They have <u>defaulted on Plaintiff's Good Faith Offers to Pay</u> the entire amount due.  Moreover,

none of the Defendants provided any authenticated documents under this action, no material fact witnesses, affidavits, verified accounting, or exhibits in order to demonstrate [any] lawful relationship to Plaintiff's loan.

Upon the Court's dismissal of this action with prejudice, Doc. 149, Plaintiff once again reached out to all Defendants and offered to settle the rescinded loan in the name of judicial economy and fear that his health might not allow him to see the end of this action. Counsel for Defendants [SPS and BNY Mellon] was informed that her clients do not have to admit any guilt and that the ongoing appeal will be dismissed if they accepted his offer, which will be finalized with borrowed funds as Plaintiff has not been able to work for years due to the ongoing action (Doc. 122 at ¶ 28). Only ReconTrust accepted his offer and a stipulated dismissal was entered on the docket of the Appellate Court, as aforementioned. See blanket attachment of my good faith effort to settle this action and lawful request for verification of debt prior to conducting trustee sale, Exhibit A, attached hereto and incorporated herein.

SPS and their newly appointed trustee, Tiffany & Bosco, P.A., has blatantly avoided Plaintiff's request to settle outside of court, and has patently continued to avoid verification of the alleged debt, amongst other violations. The Fair Debt Collections Practices Act, 15 USC 1692g, mandates that if the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, the debt collector shall CEASE AND DESIST collection of the debt, or any disputed portion thereof, UNTIL the debt collector obtains VERIFICATION OF THE DEBT.

Conversely, immediate and irreparable harm will result to Plaintiff should injunctive relief be denied, as foreclosure will be conducted.    Accordingly, Plaintiff has clearly satisfied the third element.   The same is also true with respect to the fourth element in that it is clearly within the public interest to legally protect the rights of Plaintiff as an owner of the estate in controversy, owner in possession, and an owner under a Warranty Deed until final adjudication on this action. Defendants have yet to prove <u>any</u> interest in Plaintiff's estate besides a mere recordation on the public record. Plaintiff has explained to this Court that *"…Public filing or recording of a document does not of itself constitute notice of a defense, claim in recoupment or claim to the instrument"* ARS §47-3203(B). (Doc. 122 ¶ 35).

It is also in the public's interest that the TRO be granted because Plaintiff is bringing this action under tender and statute of limitation on secured debt, amongst other allegation, that concern other homeowners who are being foreclosed beyond the statute of limitation elected by the legislator and upheld by the Arizona Court of Appeals. <u>See De Anza Land & Leisure Corp. v. Raineri</u>, 137 Ariz. 262, 11 669 P.2d 1339 (App. 1983) (holding that foreclosure was also barred by statute of limitation). According to Arizona law and case law, foreclosure needs to commenced and end within the statute of limitation, (Docs. 137 at 14-15 and 138 18). <u>See Stein, 214 Ariz.</u> 200, ¶8, 150 P.3d at 775, the legislative history supports the conclusion that the legislature did not intend to extend the time for foreclosure when it enacted § 33-714." <u>Id</u>. ¶21, 22.

/// /// ///

### III. ISSUES PLAINTIFF HAS DESIGNATED TO BRING ON THE APPEAL

(1) Did the Court err by dismissing the TAC with prejudice, without trial, in the presence of a genuine, material factual dispute involving affirmative defenses; (2) Did the Court err by ruling that Plaintiff did not successfully tender his obligation on the loan; (3) Did the Court err by ruling that the applicable statute of limitation on secured debt, under Arizona law, has not elapsed; and (4) Did the Court err by granting Defendants' motions to dismiss in the presence of a loan rescission?

### IV. ARGUMENTS

**(1) Plaintiff [Appellant] alleges that this Court erred by dismissing the TAC without trial in the presence of a genuine, material factual dispute.**

In this Verified Action Plaintiff seeks to quite title on his estate under the tender rule and the applicable statute of limitation on contracts in writing. All defendants argued against the execution of *payment* in their responses, (Docs. 136, 138), and replies (Doc. 142), leaving the properly executed *tender* claim unrebutted. Bringing 'Payment' as a defense in a 12(b)(6) motion is an affirmative action under the Federal Rule of Civil Procedure ("FRCP"). FRCP 8(b)(1)(A). (Docs 137 at 2-3, 138 at 3.)

Having concluded that Payment is an affirmative defense, similar to the accrual of statutes of limitations, we next turn to how Arizona courts resolve genuine, material factual disputes involving affirmative defenses. In general, **such disputes are questions of fact for the jury which cannot be decided through administrative ruling on a motion to dismiss**. See Walk v. Ring, 202 Ariz. 310,

316, ¶ 23, 44 P.3d 990, 996 (2002) (stating that *"determinations of the time when discovery occurs and a cause of action accrues `are usually and necessarily questions of fact for the jury'"* (quoting <u>Doe v. Roe,</u> 191 Ariz. 313, 323, ¶32, 955 P.2d 951, 961 (1998))); <u>accord Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.,</u> 182 Ariz. 586, 591, 898 P.2d 964, 969 (1995) (holding that the trial court correctly let the jury decide when discovery of a contract injury occurred). (Docs 137 at 3, 138 at 3-4.)

Plaintiff has requested a Trial by Jury and this Court took it upon itself to make a determination through administrative motions, ruling that *"Dodev has not alleged facts that would permit this Court to quiet title in his favor."* (Doc. 149 at 9.) This Court's jurisdiction is bound by conclusions of law, <u>not of facts</u>, and it therefore erred by dismissing the TAC without proper discovery and trial by jury. Conversely, Plaintiff [Appellant] foresees that the Court of Appeal will uphold the presiding case law in Arizona and will remand this Court's Order and send this Action to trial.

**(2) Plaintiff [Appellant] alleges that this Court erred by ruling that Plaintiff did not tender his obligation on the loan.**

Under Arizona Law there is a clear distinction between a payment and a tender: (It is well-settled in Arizona that a party cannot quiet title pursuant to A.R.S. § 12-1101 until the party has paid off the loan, **or tendered** the balance due under the loan. <u>Farrell v. West,</u> 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941))[1]; (Arizona law does not allow a homeowner to quiet title…until the debt on the home is paid or

---

[1] Adopted from Counsel's Motion to Dismiss Plaintiff's SAC (Doc. 103, at 12) - evidence of the fact that Counsel differentiates between a payment and a tender.

**offered to be paid**. <u>Wolfson v. Bank of America, NA</u>, No. 1 CA-CV 12-0691 ¶6 (Ariz. Ct. App. Mar. 11, 2014). (Docs 137 at 2, 138 at 2.) If payment was an equivalent to tender as this Court suggests (Doc. 149 at 8), the presiding case law would be redundant - reading payment or payment.

Plaintiff alleges that this Court illicitly substituted the rules of tender with the rules of payment; something Plaintiff never claimed prior to the oral Hearing on motion to dismiss held on August 7, 2015, incorporated herein by this reference, when he corrected the record by noticing the Court that payment was sent to one of the parties who claimed interest in his estate. Ground for successful action to quiet the title on his estate according to Doc. 142 at 3, filed by Defendant Select Portfolio Servicing, Inc. ("SPS"):   *"Had Plaintiff actually paid any one of the alleged seven parties, his quiet title claim as to the remaining six parties would have succeeded under ARS § 12-1101 (assuming the remaining parties continued to assert an interest in the Property)."* His testimony, although under an oath, was entirely ignored during the issuing of the Order dismissing this action.

Irrespective of Plaintiff's lawful, supportive of his tender claim, elucidation of the tender rule in relation to many Arizona presiding cases and Arizona Revised Statutes ("ARS"), (Docs 137 at 5-10 and 138 at 7-14), this Court ruled that tender is a payment: "tender requires an actual delivery of money" (Doc. 149 at 6). Contrary to ARS, the legal tender rule, and Arizona case law this Court expected Plaintiff to perform (to pay) not to offer to perform (tender). Differing from <u>Black's Law Dictionary</u>, 4th Edition, page 1637 definition of "tender": *"The offer of performance,*

*not performance itself*, and when unjustifiably refused, places the other party in default and permits party making tender to exercise remedies for breach of contract". (<u>Walker v. Houston,</u> 215 Cal. 742, 12 P.2d 952, 953, 87 A.L.R. 937.)

The Court's ruling is based selectively on only one [part of a] case, <u>Somerton State Bank v. Maxey,</u> 22 Ariz. 365, 369, 197 P. 892, 894 (1921); a case prior to the acceptance of the Uniform Commercial Code ("UCC") by all 50 states and the securitization era, unleashed upon us by the repealing of the Glass Steagall Act in 1999. In 1921 there was no legal tender in America but gold and silver coins of the realm, blessed times when you knew your lender (banker) and received consideration for the promissory note you executed, held by said lender till paid in full in most instances. Things have changed nowadays when borrowers receive credits for loans, based on securitization of their good credit, future earnings, and "loan" documents signed with the "lender". These types of mortgages are called non-traditional mortgages by Sheila Bair (Former FDIC chairperson) in her book <u>Bull by the Horns</u> (Doc. 96 ¶ 210).

Needless to say, expecting to show up at the banker's desk with gold and silver coins is not the tender rule of this judiciary age. Courts have rightfully ruled that common law remedies are altered by superseding congressional and legislative acts as in <u>Williams v. Homestake Mortg. Co.,</u> 968 F.2d 1137, 1140 (11th Cir.1992) (citing 17A Am.Jur.2d *Contracts* § 590, at 600-01 (1991)), among other rulings.

ARS § 47-3603 reads: *"the effect of **tender** is governed by principles of **law applicable to tender** of payment under a simple contract."* Our sister courts from the ninth circuit have elaborated on the rule of tender: *"A **tender** of the amount of a debt, though refused, extinguishes the lien of a pledgee, and will entitle the pledgor to recover the property pledged."* <u>Loughborough v. McNevin,</u> 74 Cal 250 [14 P. 369, 15 P. 773]; 5 Am.St.Rep. 435; *"The principle governing the subject is that **tender** is equivalent to **payment** as to all things which are incidental and accessorial to the debt. The creditor, by refusing to accept, does not forfeit his right to the thing tendered, but he does lose all collateral benefits or securities. The instantaneous effect is to discharge any collateral lien, as a pledge of goods or right of distress."* <u>Tiffany v. St. John,</u> 65 N.Y. 318; 22 Am.Rep. 612: *"A tender of the proper amount due, even if rejected, extinguishes the lien and preclude foreclosure."* <u>Kleckner v. Bank of America</u> (1950) 97 Cal. App.2d 30, 33 [217 P.2d 28]; <u>Lichty v. Whitney</u> (1974) 80Cal. App.2d 696, 701 [182 P.2d 582].

Even though Arizona does not have a clear statute as Oregon (Oregon Statute 81.010: Effect of unaccepted offer in writing to pay or deliver. *"**An offer in writing to pay** a particular sum of money or to deliver a written instrument or specific personal property is, **if not accepted, equivalent to the actual production and tender of the money**, instrument or property")*, Arizona legislators have made it clear that *"the effect of **tender** is governed by principles of **law applicable to tender.**"*[1]

---

[1] A.R.S. § 47-3603

In every Order dismissing Plaintiff's Complaint, in a bedeviling manner this Court sermonizes Plaintiff about claims he never asserted. This Order [Doc. 149] is not an exception, on page 2 [and 4] it reads: "As the Court explained in its order dismissing Dodev's Second Amended Complaint, (Doc. 121 at 8–9), the security interest in the Property created by the DOT passed through bankruptcy unaffected." This verbiage is adopted from Defendant's motions to dismiss, although irrelevant in respect to the tender rule and applicable statute of limitation on secured debt, as raised by Plaintiff. Neither in the TAC nor the Second Amended Complaint did he used his bankruptcy discharge as any claim against the Defendants.

This Court misinterpreted Plaintiff's Good-Faith Offers to Pay as some mere "Good-Faith Letters." (Doc. 149 at 4.)  Plaintiff <u>tendered a payment for the full amount due</u> under ARS § 47-3603 and the American Law of Presentment. (Doc. 122 ¶ 33.) He approached all possible parties, having colorable interest in his estate, not by mere letters but by lawful notifications: NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT, NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPLE, delivered by USPS certified mail, (Doc. 96 at Ex. V).

Under Arizona Law <u>Plaintiff is not required to make a payment to any party unless they are a Holder in Due Course</u> ("HDC"), **ARS §47-3305(C).** As well documented and verified, Plaintiff was NOT certain who was the party entitled to a payment under his Loan, (Doc. 122 ¶¶ 35-39). He had retained an attorney to assist him in finding the right party to no avail, (Doc. 122 ¶ 18). The public record shows

that Bank of America ("BANA") is the only party entitled to a payment (under MERS Min #), (Doc. 117, Ex F).

Dismissing the fact that most of the above arguments were raised during the Hearing, this Court regurgitated contentions Recon raised in their Reply, (Doc. 142), which was allegedly dismissed, (Doc. 149 at 5). In particular *"The Good-Faith Letters, however, conditioned payment on compliance with several demands."* (Doc. 149 at 6.) No other Defendant raised condition as a defense to Plaintiff's Offers but Recon and only in the motion which this Court seemingly dismissed, (Doc. 142 at 3-5). Plaintiff's Offers to Pay have no demands but a place where parties can meet to exchange the funds. The Offer to Pay reads:

> Again, I also sincerely believe that I have a right to see court admissible evidence that would prove that all Trust Deed and Promissory Note transfers from the original lender to the last purchaser were lawfully endorsed as required by law, rendering the last purchaser as the "holder in due course," and not merely a "holder," and thus having lawful standing to foreclose. (Doc. 96-4 at 22)

This is not a condition but rather a *"sincere belief"* derived from Arizona law, as stated herein above, that precludes parties from making a payment to any party that is not a HDC, ARS §47-3305(C). No conscionable man would ever give close to $900,000 to a party unrelated to his loan documents, especially after being advised by an attorney that is unclear who the right party entitled to a payment is; giving rise to Plaintiff's Good-Faith Offers to Pay submitted to seven different parties. (Doc. 122 ¶¶ 36-39.)  Further, Arizona Law is clear on the matter of surrendering the security instrument upon payment: *"Upon demand of the person to whom presentment is made*

*[SPS furnishing Plaintiff with a payoff statement], the person making presentment must Exhibit the instrument"* ARS §47-3501(B)(2)(a).

Therefore, the "conditions" Plaintiff had against all seven parties to whom Good-Faith Offers to Pay were sent remained within the law of Arizona and they were not conditions but his *"[sincere belief] that [he has] a right to see court admissible evidence"*. If SPS or any other party interpreted Plaintiff "sincere belief" as conditions, they were given ten days to raise their objections. *"Again, I am also requesting that this material information be presented to me within a reasonable **ten (10) days** as time is of the essence."* (Doc. 96-4 at 23.) (Objection to a tender should be made at the time of the tender, and silence is construed as a waiver of any objection.) Mariposa Dev. Co. v. Stoddard, 147 Ariz. 561, 565, 711 P.2d 1234, 1238 (App.1985). (Doc. 137 at 7.) Conversely, Plaintiff [Appellant] foresees that the Court of Appeals will uphold the presiding cases on tender within the Circuit and will remand this Court's Order and send this Action to trial.

**(3) Plaintiff [Appellant] alleges that this Court erred by ruling that the applicable statute of limitation on secured debt, under Arizona law, has not elapsed**

In this present case, there is no dispute that "the operative state of limitation for either foreclosure under the DOT or suit on the Loan is 6 years" (Doc. 129 at 6). See De Anza Land & Leisure Corp. v. Raineri, 137 Ariz. 262, 11 669 P.2d 1339 (App. 1983) (holding that foreclosure was also barred by statute of limitation). According to Arizona law and case law, foreclosure needs to commenced and end within the statute of limitation, (Docs. 137 at 14-15 and 138 18). See Stein, 214 Ariz. 200, ¶8, 150 P.3d

at 775, the legislative history supports the conclusion that the legislature did not intend to extend the time for foreclosure when it enacted § 33-714." Id. ¶21, 22.

The Sport Mart, Inc. v. Knell court noted that in Bamett v. Hitching Post Lodge, Inc., 101 Ariz. 488, 421 P.2d 507 (1966) *"the Supreme Court of Arizona found, inter alia, that an acceleration clause was invoked when the non-defaulting party took the affirmative step of filing a proof of claim against the defaulting party"* seeing as "a proof of claim is a way for a creditor to put essential parties on notice that the debtor/defaulting party owed the creditor money and that the creditor wants to be paid" (*"notice that their debt obligation was now due")* Id. (Doc. 138 at 16.)

Plaintiff was similarly put on notice that *"with respect to Secured Creditor's Trust Deed, the following is due and owing:"* followed by an itemized accounting of unpaid balance plus delinquencies, **totaling $731,148.94,** (Docs 137 at 17 and 138 at 13), during his bankruptcy on January 2009. Thus, the respective statute of limitation to foreclose has now elapsed. Conversely, Plaintiff [Appellant] foresees that the Court of Appeals will uphold the presiding case law in Arizona on statutes of limitation and will remand this Court's Order and send this Action to trial.

**(4) Plaintiff [Appellant] alleges that this Court erred by granting Defendants' motions to dismiss in the presence of loan rescission**

On the Hearing, when questioned about his attorney, Plaintiff informed this Court that being unable to find the right (lawful) party of interest under his loan, his attorney rescinded his loan, Doc. 152, Exhibit C, incorporated herein by this reference. Plaintiff informed the Court that as of the Supreme Court's decision from

January 13, 2015, his loan is null and void as the purported lenders did not take him to court in the 20 day window thereafter. The Supreme Court of the United States ("SCOTUS") unanimously held that: *"A borrower exercising his right to rescind under the Act need only provide written notice to his lender, not file suit within that period. Section 1635(a)'s unequivocal terms—a borrower "shall have the right to rescind . . . by notifying the creditor . . . of his intention to do so" (emphasis added)— leave no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind."* <u>See Jesinoski v. Countrywide Home Loans, Inc</u> 574 U.S. 729 F. 3d 1092 (2015).

**The SCOTUS Decision Is Mandatory Authority For This Court.** The decisions of the SCOTUS are mandatory authority in all courts, federal and state, when the decisions cover points of federal law. As the SCOTUS has itself made clear, *"the lower courts are bound by summary decisions by [the Supreme] Court 'until such time as the Court informs [them] that [they] are not.'"* This is true even if more recent SCOTUS cases appear to undermine the reasoning of the precedent: *"If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of over-ruling its own decisions."*

The SCOTUS Jesinoski decision, where Scalia, J., delivered the opinion for a unanimous Court, tells us that the language of TILA §1635(a) must be taken to mean what it says. When a creditor violates TILA, consumers can exercise their right of

rescission by giving written notice to creditors. 15 U.S.C. § 1635(a). TILA contains no language requiring consumers to give a reason or explanation for exercising their right of rescission, nor to additionally file a lawsuit to preserve their rescission rights.

Conversely, Plaintiff [Appellant] foresees that the Court of Appeal will uphold Appellant's rescission and the Supreme Courte ruling and will remand this Court's Order and send this Action to trial.

## V. PLAINTIFF HAS RIGHT TO APPEAL A JUDGMENT WITHOUT EXECUTION AND IS ENTITLED TO HEARING TO SET SUPERSEDEAS BOND

This Motion is filed pursuant to Fed. R. Civ. P. 65(a), (b) and (c) and 62(c) and/or (d). Rule 62 allows:

> (c) INJUNCTION PENDING AN APPEAL. While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.
> (d) STAY WITH BOND ON APPEAL. If an appeal is taken, the appellant may obtain a stay by supersedeas bond.

When read in unison with ARS 12-2108, is clearly showing that **everyone** who appeals is entitled to a stay under ARS 12-2108 (providing they post the bond), *"If a plaintiff in **any** civil action obtains a judgment under any legal theory, the amount of the bond that is necessary to stay execution during the course of all appeals or discretionary reviews of that judgment by any appellate court **shall be set...**"*

*//// //// ////*

The Courts have spoken on the purpose of a supersedeas bond and a lower court's duty with regard thereto. In <u>Allison v. Chatwin</u>, 99 Ariz. 99, 103, 407 P.2d 69, the Court made clear its view of both:

> "The purpose of the supersedeas bond is to afford the party appealing from a lower court order to **stay any further proceedings in the cause being appealed until such time as the appeal has been ruled upon by the reviewing court.** Therefore, the lower court, upon notice of appeal, should determine as quickly as possible the amount of the supersedeas bond, stay execution for a reasonable time to permit the party appealing to post the bond, and thereby stay and preserve the status quo. Otherwise the effect might be to render nugatory the purpose of the supersedeas bond."

The trial court has the duty to *"stay execution for a reasonable time" and to "determine as quickly as possible the amount of the (supersedeas) bond"*, along with protecting Plaintiff estate from foreclosure sale during the appeal.

> "Herein, when the trial court **acted erroneously in not staying the Sheriff's sale** for a reasonable time, it effectively rendered nugatory the very purpose of a supersedeas bond, for petitioners' real property was sold at public sale. It admits of no other conclusion but that **the status quo was not preserved for title** to the foreclosed land is now in the judgment creditor, who purchased the property at the sale, and who now may convey it to a bona fide purchaser. **If petitioners then were to prevail on appeal they will still have lost their land, which is unique and therefore an award of money would be an inadequate reimbursement.**"
>
> "In view of the trial court's grievous errors and the facts of this particular case, we are of the opinion that the **sale of petitioners' real property must be set aside.** We think such is the necessary and proper disposition because **a substantial wrong and injustice has been done petitioners** and furthermore, because Pioneer will not be deprived of any substantial rights by our order for if the lower court had not erred, Pioneer's judgment of foreclosure **would have been held in the status quo and not been executed** pending the determination of petitioners' appeal which is presently before the Court of Appeals." (emphasis added). <u>Hackin v. Superior Court, Maricopa County</u> 102 Ariz. 93 (1967) 425 P.2d 420.

## VI. CONCLUSION

Plaintiff declares that he has done everything conscionable in his good faith attempts to reach a resolution with Defendants and their newly appointed trustee, Tiffany & Bosco, P.A., outside of these proceedings and all of his efforts have been futile. This Motion is prepared in haste as Defendants have just changed the pending foreclosure sale from HOLD to a Trustee Sale. The whole record and the fact that Defendants have not proven any interest in Plaintiff's estate on the record should be considered and incorporated herein by this reference.

Filing this Motion, at earlier time, was going to be premature as the case at bar was not ripe for request for this emergency relief and the TRO could have expired before the scheduled foreclosure sale. If there was no scheduled foreclosure sale, as the case herein, there is no possibility if occurring of irreparable damage to Plaintiff. Arizona Rule of Civil Procedure 65(d)(1) provides, in relevant part, that "[e]very restraining order shall expire by its terms within such time after entry, *not to exceed 10 days,* as the court fixes, unless *within the time so fixed* the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period." Ariz. R. Civ. P. 65(d)(1) (emphasis added). "A temporary restraining order must expire within ten days and may be extended only for good cause." DePasquale

v. Superior Court In and For Cnty. of Maricopa, 181 Ariz. 333, 336, 890 P.2d 628, 631 (Ct. App. 1995).

THEREFORE, Plaintiff's Motion and the record satisfy each and every element necessary for the grant of Temporal Restraining Order and Imposition of Injunctive Relief during the ongoing appeal. Assuming arguendo that they do not, Plaintiff moves this Court to set a hearing to determine a supersedeas bond.

Respectfully submitted on this 5th day of February, 2016.

**Ivaylo Tsvetanov Dodev**, *Pro Se* Plaintiff

**Signed under penalty of perjury under the laws of the State of Arizona**

## CERTIFICATE OF SERVICE

**ORIGINAL** and **ONE COPY,** are hand-delivered and filed to The United States District Court for the District of Arizona this 5th day of February, 2016, and filed for the record. I certify that the following parties through their attorneys of record are registered as ECF Filers and will be served by the CM/ECF system: SELECT PORTFOLIO SERVING, INC. and THE BANK OF NEW YORK MELLON.

**Ivaylo Tsvetanov Dodev, Plaintiff**
**6312 South 161st Way, Gilbert, Arizona**
**(480) 457-8888 Phone**
**(480) 457-8887 Fax**

# Exhibit A

**October 5, 2015, 8:00 AM**

Ivaylo Tsvetanov Dodev,

c/o  6312 South 161st Way
    Gilbert, Arizona
    (480) 457-8888 Phone
    (480) 457-8887 Facsimile
    dodev@hotmail.com

**TO:**
**SELECT PORTFOLIO**
**SERVICING, Inc.**
**LEGAL DEPARTMENT**
**Fax: 801-293-3936**
*f 801-270-7856*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Ivaylo Tsvetanov Dodev,** | **Case No.  CV-13-02155-PHX-DLR** |
|         **Plaintiff,** | **(Hon. Douglas L Rayes)** |
| **v.** | |
| **ReconTrust Company, NA, et all.,** | |
|         **Defendants.** | |

**TO: Legal**

    I have filed a legal action against you [SPS] in the District Court of Arizona, under the above captioned case, that has been litigated for close to two years. Prior to escalating the case to the 9th Circuit I would like to propose a settlement, in the name of judicial prudence.

    Please contact me to discuss a settlement under the above captioned case.

    Time is of the essence.

Signed by: *[signature]*

        **Ivaylo Dodev (480) 457-8888**
        **6312 South 161st Way**
        **Gilbert, Arizona**
        **SPS acct # 001452088**

USPS Certified Mail # 7015 0640 0006 5393 9316

Ivaylo Dodev
c/o 6312 South 161st Way
Gilbert, Arizona 85298

### LAWFUL NOTIFICATION AND REQUEST FOR INFORMATION
**TO:**
Tiffany and Bosco, P.A.
2525 East Camelback Road
Suite 700
Phoenix, AZ 85016

**Attn: Unknown—Unsigned Correspondence Received**
**Re: Your File # 14-01441**

August 20, 2015

On or about July 26, 2015 a collection letter was received from your office.

You are hereby in receipt of notice under the authority of the Fair Debt Collections Practices Act, State and Federal law, regarding your above referenced file number, that part, or all, of the alleged debt is DISPUTED and it is hereby demanded a validation and verification, in writing, as follows:

1) A copy of the ORIGINAL signed contract and other supporting documentation that gave rise to the alleged obligation that Bank of New York Mellon, FKA Bank of New York , as Trustee, on behalf of the registered holders of Alternative Loan Trust 2007-OA7, Mortgage Pass Through Certificates Series 2007-OA7 is claiming owed.

2) An authorization by the registered holders of Alternative Loan Trust 2007-OA7, Mortgage Pass Through Certificates Series 2007-OA7 to Bank of New York Mellon, FKA Bank of New York giving right to collect debt on their behalf.

3) Memorandum of laws and authorities that give right to a claim of the registered holders of Alternative Loan Trust 2007-OA7, Mortgage Pass Through Certificates Series 2007-OA7 to the Collateralized Debt Obligation ("CDO").

4) Unbroken chain of title showing that the purported loan is a part of the Mortgage Pass Through Certificates Series 2007-OA7; duly and lawfully transferred under the terms of the Trust.

5) Statement, under penalty of perjury:

    a.) that your client, Select Portfolio Servicing, Inc. ("SPS"), is the bona fide [purported] loan servicer and will produce an ORIGINAL signed contract or power of attorney, between itself and the Bank of New York Mellon, for my own and a judge's inspection should there be a trial to contest these matters.

    b.) that, as a debt collector, you or the purported loan servicer SPS have not purchased evidence of debt and are proceeding with this collection activity solely in the name of the original contracting party.

    c.) the name and address of all persons, corporations, associations, legal firms or any other parties and entities having an interest in the collection or legal proceedings regarding the alleged debt.

    d.) and provide written verification from the purported creditor (beneficiary) and the registered holders of Alternative Loan Trust 2007-OA7, Mortgage Pass Through Certificates Series 2007-OA7 that you are authorized to act on their behalf in this debt collection action.

    e.) that purported creditor (beneficiary) has taken reasonable and prudent diligence to verify that the amount claimed owed is in fact a legitimate debt prior to instigating this action and making said claims, and that all relevant correspondence has been reviewed prior to initiating this claim.

    f.) and will provide a verified accounting for my own and a judge's inspection should there be a trial to contest these matters.

    g.) that the purported debt is not paid by any third party, FDIC, Credit Default Swap insurance or others.

    h.) that you know and understand that certain clauses in a contract of adhesion are unenforceable unless the party to whom the contract is extended could have selectively rejected the clause.

6) Production of the account and general ledger statement showing the full accounting of the alleged obligation you are attempting to collect from me, signed and sworn by the person responsible for maintaining these records and having firsthand knowledge as to their accuracy and authenticity, and able to testify under oath to that effect.

Moreover, the alleged debt is paid, tendered or barred from collection by Arizona law, otherwise repudiated. Further attempt to collect thus debt is wanton violation of the Fair Debt Collections Practices Act and Arizona law. Electing to do so, you accept upon your selves to reimburse me for the cost I may incur to defend myself in court, and the emotional and physical harm I may suffer.

Contacting me again after receipt of this notice without providing procedurally proper validation of the alleged debt constitutes a scheme of fraud by advancing a writing that you know, or should know, is false, with the intention that the courts and/or others rely on the written communication to impair or damage my credit rating, my reputation, my standing in the community, as well as intentionally inflicting financial and emotional harm upon me. I take this notice, and my rights, very seriously and expect Tiffany and Bosco, P.A. to do the same.

I expect responses within 20 business days of receipt of letter to the above confirmations and that they be made in writing and sent via certified mail to the address listed above.

Your failure to respond in truth, fact, and evidence, to each of the above requests is Tiffany & Bosco, P.A. and SPS's tacit admission to the fact the you have no valid and lawful claim against me or my estate.

A response to this lawful notification that is not signed by an authorized agent of Tiffany & Bosco, P.A. will be perceived as no response received.

TIME IS OF THE ESSENCE

By: _____

Ivaylo Dodev (Authorized Representative)

English        Customer Service        USPS Mobile                                    Register / Sign In

**≋USPS.COM**

# USPS Tracking®

 Customer Service ›
Have questions? We're here to help.

 Get Easy Tracking Updates ›
Sign up for My USPS.

Tracking Number: **70150640000653939316**

## Product & Tracking Information

**Postal Product:**
First-Class Mail®

**Features:**
Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **August 24, 2015 , 11:25 am** | Delivered | PHOENIX, AZ 85016 |

Your item was delivered at 11:25 am on August 24, 2015 in PHOENIX, AZ 85016

| August 22, 2015 , 6:46 am | Business Closed | PHOENIX, AZ 85016 |
| August 22, 2015 , 6:14 am | Sorting Complete | PHOENIX, AZ 85016 |
| August 22, 2015 , 5:56 am | Arrived at Unit | PHOENIX, AZ 85016 |
| August 22, 2015 , 12:24 am | Departed USPS Facility | PHOENIX, AZ 85026 |
| August 20, 2015 , 8:53 pm | Arrived at USPS Facility | PHOENIX, AZ 85026 |
| August 20, 2015 , 2:47 pm | Departed Post Office | HIGLEY, AZ 85236 |
| August 20, 2015 , 10:59 am | Acceptance | HIGLEY, AZ 85236 |

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary.

Sign up for My USPS ›



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

PHOENIX, AZ 85016

| Certified Mail Fee | $3.45 | |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $0.00 | |
| ☐ Return Receipt (electronic) | $0.00 | |
| ☐ Certified Mail Restricted Delivery | $0.00 | |
| ☐ Adult Signature Required | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $0.00 | |
| Postage | $0.49 | |
| Total Postage and Fees | $3.94 | |

0381 01
Postmark Here
08/20/2015

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, April 2015    See Reverse for Instructions

USPS Certified Mail # *7015 1520 0001 3943 3103*

Ivaylo Dodev
c/o 6312 South 161st Way
Gilbert, Arizona 85298

## LAWFUL NOTIFICATION LETTER
## <u>NOTICE TO SUE</u>
## FINAL REQUEST FOR VERIFICATION OF DEBT
## DECLARATION OF WILLINGNESS TO EMIT FULL PAYMENT

**TO:**

Tiffany and Bosco, P.A.
2525 East Camelback Road
Suite 700
Phoenix, AZ 85016
CC:
Select Portfolio Servicing, Inc.
Arizona Attorney General

**Re: Your File # 14-01441**

December 18, 2015

On or about July 26, 2015 a collection letter was received from your office.
On or about August 20, 2015 I sent to you a debt validation letter, via certified mail #
7015 0640 0006 5393 9316, received by you on **August 24, 2015 , 11:25 am.**  As of yet,
your firm has not complied with my request, thus you are in violation of the **Fair Debt
Collections Practices Act ("FDCPA").**

The FDCPA mandates, 15 USC 1692g, that if the consumer notifies the debt collector in
writing within the thirty-day period described in subsection (a) that the debt, or any
portion thereof, is disputed, the debt collector shall CEASE AND DESIST collection of
the debt, or any disputed portion thereof, UNTIL the debt collector obtains
VERIFICATION OF THE DEBT.

Page 1 of 5

You are hereby in receipt of a SECOND and FINAL good faith notice under the authority of the FDCPA, State and Federal law, regarding your above referenced file number, and are duly placed on notice that the alleged debt is DISPUTED and it is hereby demanded a validation and verification, in writing by you (alleged trustee) or your client (alleged mortgage servicer), which includes elements as follows:

1) A copy of the ORIGINAL signed contract and other supporting documentation that gave rise to the alleged obligation that Bank of New York Mellon, FKA Bank of New York , as Trustee, on behalf of the registered holders of Alternative Loan Trust 2007-OA7, Mortgage Pass Through Certificates Series 2007-OA7 is claiming owed.

2) An authorization by the registered holders of Alternative Loan Trust 2007-OA7, Mortgage Pass Through Certificates Series 2007-OA7 to Bank of New York Mellon, FKA Bank of New York giving right to collect debt on their behalf.

3) Memorandum of laws and authorities that give right to a claim of the registered holders of Alternative Loan Trust 2007-OA7, Mortgage Pass Through Certificates Series 2007-OA7 to the Collateralized Debt Obligation ("CDO").

4) Unbroken chain of title showing that the purported loan is a part of the Mortgage Pass Through Certificates Series 2007-OA7; duly and lawfully transferred under the terms of the Trust.

5) Statement, under penalty of perjury:

    a.) that your client, Select Portfolio Servicing, Inc. ("SPS"),  is the bona fide [purported] loan servicer and will produce an ORIGINAL signed contract or power of attorney, between itself and the Bank of New York Mellon, for my own and a judge's inspection should there be a trial to contest these matters.

    b.) that, as a debt collector, you or the purported loan servicer SPS have not purchased evidence of debt and are proceeding with this collection activity solely in the name of the original contracting party.

    c.) the name and address of all persons, corporations, associations, legal firms or any other parties and entities having an interest in the collection or legal proceedings regarding the alleged debt.

    d.)  and provide written verification from the purported creditor (beneficiary) and the registered holders of Alternative Loan Trust 2007-OA7, Mortgage Pass Through

Certificates Series 2007-OA7 that you are authorized to act on their behalf in this debt collection action.

e.) that purported creditor (beneficiary) has taken reasonable and prudent diligence to verify that the amount claimed owed is in fact a legitimate debt prior to instigating this action and making said claims, and that all relevant correspondence has been reviewed prior to initiating this claim.

f.) and will provide a verified accounting for my own and a judge's inspection should there be a trial to contest these matters.

g.) that the purported debt is not paid by any third party, FDIC, Credit Default Swap insurance or others.

h.) that you know and understand that certain clauses in a contract of adhesion are unenforceable unless the party to whom the contract is extended could have selectively rejected the clause.

6) Production of the account and general ledger statement showing the full accounting of the alleged obligation you are attempting to collect from me, signed and sworn by the person responsible for maintaining these records and having firsthand knowledge as to their accuracy and authenticity, and able to testify under oath to that effect.

7) Provide evidence that the Statute of Limitations has not expired on this account.

Contacting me again after receipt of this notice without providing procedurally proper validation of the alleged debt constitutes a scheme of fraud by advancing a writing that you know, or should know, is false, with the intention that the courts and/or others rely on the written communication to impair or damage my credit rating, my reputation, my standing in the community, as well as intentionally inflicting financial and emotional harm upon me. It would be permissible, however, if you contact me with request for further clarification about the disputed matter or the above elements.

I expect responses within 10 business days[1] of receipt of this notice to the above confirmations and that they be made in writing and sent via certified mail to the address listed above. Your failure to respond in truth, fact, and evidence, to each of the above requests is Tiffany & Bosco, P.A. and SPS's tacit admission to the fact the you have no valid and lawful claim against me or my estate.

---

[1] If you find 10 days to be insufficient, despite the fact that the initial debt validation letter was sent fourth months ago, please request an extension from me in writing.

This is an attempt to validate the alleged debt and to correct the record, and any information obtained will be used for that purpose in a court of law. Disregarding this Second and Final Notice for Verification of Debt will construe a malicious attempt to steal private property under color of law and tacit acceptance of all legal and other fees associated with, me, protecting my property rights in court, and the emotional and physical harm I may suffer.

A response to this lawful notification that is not signed by an authorized agent of Tiffany & Bosco, P.A. will be perceived as no response received.


**TIME IS OF THE ESSENCE**

**December 18, 2015**


By: _Ivaylo Dodev_
Ivaylo Dodev


P.S. Please proceed to the **DECLARATION OF WILLINGNESS TO EMIT FULL PAYMENT,** irrevocable part of this Legal Notice, continued on the following page …)

## DECLARATION OF WILLINGNESS TO EMIT FULL PAYMENT

I, Ivaylo Tsvetanov Dodev, being over 21 years of age and of sound mind, declare and state as follows:

1. I am the lawful owner (the "Owner") of the real property you have wrongly recorded a Notice of Trustee's Sale, in the Official Records of Maricopa County Recorder's Office, under No. 20150540480.

2. The purported property address given on said notice is erroneous.

3. The Owner declares that he will pay the alleged mortgage in full upon receipt of the hereby requested Final Verification of Debt.

4. The Owner declares that he will pay the debt under Arizona law as defined under Steinberger v. McVey ex rel., Appl. WL333575, p. 13, 2014

5. The Owner deposes and declares under penalty of perjury under the laws of the state of Arizona that this declaration is made in good faith.


December 18, 2015                          By: _____
State of Arizona                                    Ivaylo Dodev



≥USPS.COM

# USPS Tracking®

**Tracking Number:** 70151520000139433103

**On Time**
**Expected Delivery Day: Monday, December 21, 2015**

## Product & Tracking Information

**Postal Product:**
First-Class Mail®

**Features:**
Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **December 21, 2015 , 4:36 pm** | Delivered | **PHOENIX, AZ 85016** |

Your item was delivered at 4:36 pm on December 21, 2015 in PHOENIX, AZ 85016.

| | | |
|---|---|---|
| December 21, 2015 , 8:51 am | Out for Delivery | PHOENIX, AZ 85016 |
| December 21, 2015 , 8:41 am | Sorting Complete | PHOENIX, AZ 85016 |
| December 21, 2015 , 7:49 am | Arrived at Unit | PHOENIX, AZ 85016 |
| December 19, 2015 , 8:54 pm | Departed USPS Facility | PHOENIX, AZ 85026 |
| December 18, 2015 , 11:25 pm | Arrived at USPS Facility | PHOENIX, AZ 85026 |
| December 18, 2015 , 3:34 pm | Departed Post Office | QUEEN CREEK, AZ 85142 |
| December 18, 2015 , 12:44 pm | Acceptance | QUEEN CREEK, AZ 85142 |

Email Updates

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®

PHOENIX, AZ 85016

| | |
|---|---|
| Certified Mail Fee $3.45 | 0540 98 |

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)   $ _____
☐ Return Receipt (electronic)   $ _____
☐ Certified Mail Restricted Delivery   $ _____
☐ Adult Signature Required   $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark Here

Postage    $0.49

Total Postage and Fees   $3.94

12/18/2015

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7015 1520 0001 3943 3103

## Track Another Package

Tracking (or receipt) number

70151520000139433103          Track It

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary.

Sign up for My USPS ›



USPS Certified Mail # *7015 1520 0001 3943 6289*

Ivaylo Dodev
c/o 6312 South 161st Way
Gilbert, Arizona 85298

## LAWFUL NOTIFICATION LETTER
### SECOND NOTICE TO SUE

**TO:**

Tiffany and Bosco, P.A.
2525 East Camelback Road
Suite 700
Phoenix, AZ 85016

**Re: Your File # 14-01441**
**A Legal Action against you may be filed and ongoing at the time of receipt of this letter.**

January 25, 2016

On or about July 26, 2015 a collection letter was received from your office.
On or about August 20, 2015 I sent to you a debt validation letter, via certified mail #
7015 0640 0006 5393 9316, received by you on **August 24, 2015 , 11:25 am.** On or
about December 18, 2015 I sent to you a SECOND and FINAL debt validation letter, via
certified mail # 7015 1520 0001 3943 3103, received by you on **December 21, 2015 ,
4:36 am. Both of the aforementioned letters are incorporated herein by this
reference and stand unanswered.**

The **Fair Debt Collections Practices Act ("FDCPA")** mandates, 15 USC 1692g, that if
the consumer notifies the debt collector in writing within the thirty-day period described
in subsection (a) that the debt, or any portion thereof, is disputed, the debt collector shall
CEASE AND DESIST collection of the debt, or any disputed portion thereof, UNTIL the
debt collector obtains VERIFICATION OF THE DEBT.

As of today, January 25, 2016, your firm has not complied with my request, thus you are in violation of the FDCPA. The only response ever received by me is a letter dated December 29, 2015. The letter did not provide any validation of debt and erroneously alleged that "[o]ur office has provided the Verification of Debt dated 08/31/2015," when no such validation was ever received by me. Your letter is in response to my second validation of debt—Notice to Sue, Final Request for Verification of Debt and Declaration of Willingness to Remit Full Payment—which was prompted by lack of response to the first request for validation of debt, evidence that no "verification of debt" was ever provided by your firm.

Pease take notice that your bad faith letter, avoidance to verify the debt you are collecting and wanton misrepresentation that such validation was sent on August 31, 2015 will be entered as evidence against your firm in a court of law, when/if legal action is brought against you. Take further notice that your letter neither provided proof that the alleged validation of debt (as twice requested) was ever sent to me, nor included validation of debt in itself.

Furthermore, you are hereby notified that due to lack of debt verification I have contacted the purported beneficiary, The Bank of New York Mellon, with request to verify the debt and they have directed me to a servicer, who is not your client, other than Select Portfolio Servicing, Inc. ("SPS"). In other words, the beneficiary of the loan does not have a relationship with SPS and does not recognize them as servicer. Being duly noted of this fact and in possession of my signed under perjury declaration of willingness to pay the alleged debt, under Arizona law, if owed and due, the court may find that you are using your official and individual capacity to steal or collude to steal real property under color of law – while abusing your office as trustee under Arizona law.

Furthermore, under Arizona law a mere "… recording of a document [SPS claims interest via trustee sale] does not of itself constitute notice of a defense or claim in recoupment" ARS 47-3202(B), and when the interest in the note of a party trying to enforce the note is challenged, that party has the burden of proof ARS 47-3308(A). In this matter we have countless violations of State and Federal law; the legal notices your firm received have made you aware of some of them and if the scheduled foreclosure is not canceled this matter will be litigated in a court of law.

This is an attempt to validate the alleged debt and pay it in full if due and owed, and any information obtained will be used for that purpose in a court of law. Disregarding this Lawful Notification will construe a malicious attempt to steal private property under color of law and tacit acceptance of all legal and other fees associated with me protecting my property rights in court, and the emotional and physical harm I may suffer.

A response to this lawful notification that is not signed by an authorized agent of Tiffany & Bosco, P.A. will be perceived as no response received.


**TIME IS OF THE ESSENCE**

**January 25, 2016**


By: _____
        Ivaylo Dodev

USPS.com® - USPS Tracking®

English     Customer Service     USPS Mobile          Register / Sign In



≡USPS.COM

# USPS Tracking®

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

PHOENIX, AZ 85016

OFFICIAL USE

Certified Mail Fee   $   $0.00

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)   $ _____
☐ Return Receipt (electronic)   $ $0.00
☐ Certified Mail Restricted Delivery   $ $0.00
☐ Adult Signature Required   $ $0.00
☐ Adult Signature Restricted Delivery   $

Postage   $0.49

Total Postage and Fees   $3.91

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

Postmark Here   QUEEN CREEK

7015 1520 0001 3943 6289

Tracking Number: **70151520000139436289**

**On Time**
**Expected Delivery Day: Wednesday, January 27, 2016**

## Product & Tracking Information

**Postal Product:**     **Features:**
First-Class Mail®     Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION | |
|---|---|---|---|
| **January 27, 2016 , 10:56 am** | Delivered | **PHOENIX, AZ 85016** | Email Updates |

Your item was delivered at 10:56 am on January 27, 2016 in PHOENIX, AZ 85016.

| | | |
|---|---|---|
| January 27, 2016 , 6:23 am | Out for Delivery | PHOENIX, AZ 85016 |
| January 27, 2016 , 6:13 am | Sorting Complete | PHOENIX, AZ 85016 |
| January 27, 2016 , 6:04 am | Arrived at Unit | PHOENIX, AZ 85016 |
| January 26, 2016 , 11:36 pm | Departed USPS Facility | PHOENIX, AZ 85026 |
| January 25, 2016 , 10:28 pm | Arrived at USPS Facility | PHOENIX, AZ 85026 |
| January 25, 2016 , 7:12 pm | Departed Post Office | QUEEN CREEK, AZ 85142 |
| January 25, 2016 , 4:33 pm | Acceptance | QUEEN CREEK, AZ 85142 |

## Track Another Package

Tracking (or receipt) number

| 70151520000139436289, |     Track It |
|---|---|

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary.

Sign up for My USPS ›

